ARI HOLTZBLATT (*pro hac vice*)
  Ari.Holtzblatt@wilmerhale.com
WILMER CUTLER PICKERING
  HALE AND DORR LLP
1875 Pennsylvania Avenue NW
Washington, DC 20006
Telephone:  (202) 663-6000
Facsimile:  (202) 663-6363

*Attorney for Defendants*
FACEBOOK, INC. and
MARK ZUCKERBERG

## UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

## SAN FRANCISCO DIVISION

| | |
|---|---|
| CHILDREN'S HEALTH DEFENSE, <br><br> Plaintiff, <br><br> v. <br><br> FACEBOOK, INC., ET AL., <br><br> Defendants. | Case No. 3:20-cv-05787-SI <br><br> **DECLARATION OF ARI HOLTZBLATT IN SUPPORT OF DEFENDANTS' OPPOSITION TO PLAINTIFF'S REQUEST FOR CASE MANAGEMENT AND SUBSTITUTED SERVICE ORDERS** |

I, Ari Holtzblatt, declare as follows:

1.     I am a partner at Wilmer Cutler Pickering Hale and Dorr LLP.  I represent Defendants Facebook, Inc. and Mark Zuckerberg in the above-captioned action.

2.     At 12:23 EST on September 9, 2020, Plaintiff's counsel informed Defendants that Plaintiff would only consent to a stipulation under Local Rule 6-2 providing Plaintiff with 60 days to respond to any Rule 12 motions.  Ex. A.

3.     About two hours later, I participated in a telephone call with counsel for Plaintiff regarding the briefing schedule on any Rule 12 motions in this matter and the timing of a meet and confer between the parties concerning, among other things, the preservation of electronically stored information and Facebook's application of its upcoming amendment to Section 3.2 of its Terms of Service.  Regarding the briefing schedule, I initially explained that Defendants did not consent to the requested 60-days for Plaintiff's Opposition and instead wished to maintain the 45-day extension previously agreed upon.

4.     Plaintiff's counsel noted that, while he had previously agreed to a 45-day extension, he now requested the additional time in light of:  (1) Defendants' request for 30 days to file replies in support of their Rule 12 motions; (2) the fact that he would likely be responding to multiple motions; and (3) the intervening holidays and case management conference.

5.     While Defendants preferred the original 45-day extension, I ultimately consented to Plaintiff's request for 60 days in the interest of reaching an agreement and avoiding unnecessary motion practice before this Court.

6.     On the September 9 call, Plaintiff's counsel also requested that lead counsel for the parties meet and confer as required under Rule 26(f) on September 16, 2020—over two months before the case management conference scheduled for November 20, 2020.

7.     I explained that I would need to confer with my clients regarding the date of the meet and confer but that it was unlikely that Defendants would be prepared for the Rule 26(f) meet and confer so far in advance of the case management conference.

8.      Plaintiff's counsel also raised Facebook's upcoming amendment to Section 3.2 of Facebook's Terms of Service.  That amendment, effective October 1, 2020, will provide that

- 1 -

DECLARATION OF ARI HOLTZBLATT IN SUPPORT
OF DEFENDANTS' OPPOSITION

Facebook "can remove or restrict access to your content, services, or information if we determine that doing so is reasonably necessary to avoid or mitigate adverse legal or regulatory impacts to Facebook." *Terms of Service*, *available at* https://www.facebook.com/legal/terms/preview.

9.      I asked Plaintiff's counsel to explain the relevance of the upcoming amendment to Section 3.2 of Facebook's Terms of Service, and he stated that he was concerned about potential spoliation implications if Facebook were to apply the rule to Children's Health Defense.  I further explained that I would need to consult with my clients before I could agree to a further meeting regarding the upcoming amendment to Section 3.2.

10.      Following the telephone call, at 3:27 p.m. EST, I sent Plaintiff's counsel, via email, revised stipulations reflecting the additional two weeks requested to oppose any Rule 12 motions. *See* Ex. B.  The revised stipulations did not address electronic service or any meet-and-confer regarding Rule 26(f) issues or the upcoming amendment to Section 3.2.

11.      Plaintiff's counsel responded about an hour later stating:  "You have my consent to file these Stipulations and [Proposed] Order."  Ex. C.  Plaintiff's counsel attached the stipulations in PDF format to which counsel had consented.  *Id.*  Plaintiff's counsel's email "[s]eparately" asked: (1) "to confirm whether Wilmer Hale will or will not accept service" on behalf of Mark Zuckerberg; (2) whether Defense counsel would accept electronic service of several attached orders; and (3) "to confirm the September 16 phone call or suggest another day / time you would prefer for the Section 3.2 discussion and another day / time for the initial ESI-related discussion." Ex. C.

12.      I responded via email shortly after 5:00 p.m. EST informing Plaintiff's counsel that Defendants would file the agreed-upon stipulations and explaining that I would get back to him regarding the requests to accept electronic service.  I also made clear that "[w]e did not agree to calendar a call regarding ESI-retention protocols at this time" and that I would have to confer with my clients before "get[ting] back to [him] about the two phone conversations" requested.  Ex. D.

13.      Plaintiff's counsel did not respond to my 5:00 p.m. email.  My office filed the agreed-upon stipulations about two hours later, shortly before 7:00 p.m. EST.

- 2 -

DECLARATION OF ARI HOLTZBLATT IN SUPPORT
                                                                                                        OF DEFENDANTS' OPPOSITION

14.     I subsequently conferred with my clients regarding accepting electronic service for Mark Zuckerberg.  On the evening of September 10, 2020, I emailed Plaintiff's counsel informing him that my firm agreed to accept substitute electronic service on behalf of Mr. Zuckerberg and to accept electronic service of the orders attached to Plaintiff's counsel's previous email.  Ex. E.

15.     On September 14, 2020, I emailed Plaintiff's counsel to ask Plaintiff to "explain more specifically" Plaintiff's "concerns" regarding the update to Section 3.2 of Facebook's Terms of Service and, in particular, "why [Plaintiff] believe[s] CHD could run afoul of the new policy or why CHD otherwise fears that Facebook is likely to enforce this particular policy against CHD." Ex. F.

16.     Plaintiff's counsel responded on September 23, 2020.  In a letter, counsel stated  that he believed application of amended Section 3.2 of Facebook's Terms of Service would "constitute unlawful retaliation" against CHD and potentially implicate Facebook's retention of ESI.  Ex. G, at 11, 13.  The letter did not explain why CHD believes it could run afoul of the new policy or why CHD fears that Facebook is likely to enforce the new policy against CHD.  *Id.*

17.     To my knowledge, my firm has no relationship with Science Feedback.

I declare under penalty of perjury that the foregoing is true and correct.

Executed on this 24th day of September 2020 in Washington, D.C.


By:   /s/ *Ari Holtzblatt*
　　　　Ari Holtzblatt