ROGER I. TEICH
California State Bar No. 147076
290 Nevada Street
San Francisco, CA 94110
Telephone:  (415) 948-0045
E-Mail Address:  rteich@juno.com

ROBERT F. KENNEDY, JR.
MARY HOLLAND
Children's Health Defense
1227 North Peachtree Parkway, Suite 202
Peachtree City, GA 30269
Telephone:  (917) 743-3868
E-Mail Address:  mary.holland@childrenshealthdefense.org

Attorneys for Plaintiff
CHILDREN'S HEALTH DEFENSE

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| CHILDREN'S HEALTH DEFENSE,<br><br>           Plaintiff,<br><br>     v.<br><br>FACEBOOK, INC., et al., ,<br><br>           Defendants. | Case No. 20-cv-05787-SI<br><br>**PLAINTIFF'S REPLY IN SUPPORT OF REQUEST FOR SUBSTITUTED SERVICE OF FOREIGN DEFENDANT SCIENCE FEEDBACK; REPLY DECLARATIONS OF GOOLAM MONSOOR AND ROGER TEICH AND EXHIBIT "A" THERETO**<br><br>Fed. R. Civ. P. 4(f)(3) |

# TABLE OF CONTENTS

Page #

TABLE OF AUTHORITIES ..................................................................................................ii

PLAINTIFF'S REPLY IN SUPPORT OF REQUEST FOR SUBSTITUTED SERVICE OF FOREIGN DEFENDANT SCIENCE FEEDBACK; REPLY DECLARATIONS OF GOOLAM MONSOOR AND ROGER TEICH AND EXHIBIT "A" THERETO ......................................1

    I. OVERVIEW .................................................................................................................1

    II. SUPPLEMENTAL FACTS ........................................................................................2

        A.    Facebook's Opposition.................................................................3

        B.    Plaintiff's Efforts to Serve Science Feedback..............................4

        C.    Plaintiff's Exigent Need to Effect Service on Science Feedback. ..............6

        D.    Facebook's "Partnership" with Science Feedback.....................7

        E.    Allegations of the Complaint Concerning Facebook's Extensive Coordination with Science Feedback in Acts of Censorship and Fraudulent Misrepresentation....................................................8

    III. LEGAL STANDARDS ..............................................................................................9

    IV. DISCUSSION ..........................................................................................................10

    V. CONCLUSION .........................................................................................................11

# TABLE OF AUTHORITIES

**Federal Cases**

Comm'r of Internal Revenue v. Banks,
    543 U.S. 426 (2005) .................................................................................................. 10

Coy v. Lilith Games (Shanghai) Co.,
    2020 U.S. Dist. LEXIS 164665 (N.D. Cal. September 9, 2020) .............................. 3, 4, 6, 10

Elrod v. Burns,
    427 U.S. 347 (1976) .................................................................................................... 6

Facebook, Inc. v. Banana Ads, LLC,
    2012 U.S. Dist. LEXIS 42160 (N.D. Cal. 2012) ..................................................... 11

Glenn K. Jackson, Inc. v. Roe,
    273 F.3d 1192 (9th Cir. 2001) .................................................................................... 2

Klein v. City of San Clemente,
    584 F.3d 1196 (9th Cir. 2009) .................................................................................... 6

Louis Vuitton Malletier, S.A. v. Akanoc Solutions, Inc.,
    2008 U.S. Dist. LEXIS 116789 (N.D. Cal. 2008) ...................................................... 3

Mullane v. Central Hanover Bank & Trust, Co.,
    339 U.S. 306 (1950) .......................................................................................... 3, 4, 10

Oracle Corp. v. Druglogic, Inc.,
    2012 U.S. Dist. LEXIS 83506 (N.D. Cal. 2012) ........................................................ 3

Richmond Techs., Inc. v. Aumtech Bus. Solutions,
    2011 U.S. Dist. LEXIS 71269 (N.D. Cal. 2011) ..................................................... 6, 9

Rio Props., Inc. v. Rio Int'l Interlink,
    284 F.3d 1007 (9th Cir. 2002) ..................................................................... 6, 9, 10, 11

SCC Alameda Point LLC v. City of Alameda,
    897 F. Supp. 2d 886 (N.D. Cal. 2012) ........................................................................ 3

Volkswagenwerk Aktiengesellschaft v. Schlunk,
    486 U.S. 694 (1988) .................................................................................................... 4

**United States Constitution**

First Amendment .................................................................................................................. 6

**Federal Rules of Civil Procedure**

Rule 4 ................................................................................................................................... 1
Rule 4(f) ............................................................................................................................... 9
Rule 4(f)(1) .............................................................................................................. 4, 9, 10
Rule 4(f)(2) ........................................................................................................................ 10
Rule 4(f)(2)(C)(i) ................................................................................................................ 9
Rule 4(f)(3) .......................................................................................................... 1, 2, 6, 9, 10
Rule 4(h)(2) ................................................................................................................... 9, 10
Rule 16 ................................................................................................................................. 1

**Miscellaneous Authorities**

Convention on Service Abroad of Judicial and Extrajudicial Documents in Civil
 and Commercial Matters, Nov. 15, 1965 ("Hague Convention"),
 20 U.S.T. 361, Art. 10 ..................................................................................................... 4

Emily Atkin, *Facebook creates fact-checking exemption for climate deniers*,
 https://heated.world/p/facebook-creates-fact-checking-exemption ........................................ 9

Facebook revised Terms of Service
 § 3.2 ................................................................................................................................. 2

French Code of Civil Procedure
 Article 688-6 .................................................................................................................... 5

Model Rules of Prof'l Conduct
 Rule 1.2(a) ...................................................................................................................... 11

Restatement (Third) of Agency
 § 1.01 (Am. Law Inst. 2006) .......................................................................................... 11

Science Feedback
 https://sciencefeedback.co/ .............................................................................................. 4
 https://sciencefeedback.co/about/ ................................................................................... 7
 https://sciencefeedback.co/partners-funders-donors/ ...................................................... 7

ROGER I. TEICH
California State Bar No. 147076
290 Nevada Street
San Francisco, CA 94110
Telephone:  (415) 948-0045
E-Mail Address:  rteich@juno.com

ROBERT F. KENNEDY, JR.
MARY HOLLAND
Children's Health Defense
1227 North Peachtree Parkway, Suite 202
Peachtree City, GA 30269
Telephone:  (917) 743-3868
E-Mail Address:  mary.holland@childrenshealthdefense.org

Attorneys for Plaintiff
CHILDREN'S HEALTH DEFENSE

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| CHILDREN'S HEALTH DEFENSE,<br><br>Plaintiff,<br><br>v.<br><br>FACEBOOK, INC., et al., ,<br><br>Defendants. | Case No. 20-cv-05787-SI<br><br>**PLAINTIFF'S REPLY IN SUPPORT OF REQUEST FOR SUBSTITUTED SERVICE OF FOREIGN DEFENDANT SCIENCE FEEDBACK; REPLY DECLARATIONS OF GOOLAM MONSOOR AND ROGER TEICH AND EXHIBIT "A" THERETO**<br><br>Fed. R. Civ. P. 4(f)(3) |

**I.**

**OVERVIEW**

Plaintiff Children's Health Defense ("CHD") moved for Fed. R. Civ. P. ("Rule") 4 orders for substituted service of defendant Mark Zuckerberg and foreign defendant Science Feedback, and Rule 16 scheduling and meet and confer orders. (Dkt. #28.) Following the filing

of the motion, this Court issued a stipulated scheduling order (Dkt. #29),[1] and WilmerHale, counsel for Facebook /Zuckerberg, agreed to accept service on his behalf. (Dkt. #35.) While the Guidelines for Professional Practice in this District encourage "good faith efforts" of counsel to resolve or informally limit issues, plaintiff can find no other authority to compel Facebook at this time to meet and confer on related issues of its ESI-retention protocols and a standstill with respect to its revised Terms of Service § 3.2 prior to its effective date.[2] Thus, the one "live" issue still before the Court is Plaintiff's request for a Rule 4(f)(3) order for substituted electronic service of Science Feedback, a French organization, through Facebook's agent, WilmerHale, (see Dkt. #28 at 6-7), on the grounds that this alternative method of service both comports with due process requirements, and meets the facts and exigencies of the case, including but not limited to current COVID-19 conditions.

## II.

## SUPPLEMENTAL FACTS

As a threshold matter, this Court may, in its discretion, consider new facts or different legal arguments in the reply brief than those that were presented in the moving papers. Glenn K. Jackson, Inc. v. Roe, 273 F.3d 1192, 1202 (9th Cir. 2001) (quotation omitted). As discussed infra, Facebook denies having an ongoing relationship with Science Feedback of a sort which makes substituted service "reasonably calculated" to apprise Science Feedback of the pendency of the action. (Dkt. #43 at 2-3.) Plaintiff's supplemental factual submission is offered

---

[1] Plaintiff's objection was to factual omissions in opposing counsel's declaration relating to Plaintiff's "good cause" and other conditions precedent to the stipulation, see Dkt. #24-1, ¶¶ 4-5, not to the briefing schedule itself.

[2] Thus, while Plaintiff's request for a court-ordered meet and confer may not be ripe, neither is it "moot, meritless, or made-up" nor "with no apparent relevance to this litigation," as Defendants suggest. (Opp. at 1, 2.) In any event, on September 30, 2020, Facebook's lead counsel responded by letter in terms which, while not agreeing to, or even proposing any date, suggest that she is at least willing to discuss these matters by phone. (See Dkt. #43-11 at 11-14.)

to rebut Facebook's assertion as well as to apprise the Court of Plaintiff's ongoing efforts to serve Science Feedback by conventional means. Consideration of this evidence is proper for both purposes, and the Court should exercise its discretion to so consider it. See, e.g., Coy v. Lilith Games (Shanghai) Co., 2020 U.S. Dist. LEXIS 164665, *4 (N.D. Cal. September 9, 2020) (considering a "supplemental submission" by plaintiff which showed that the attempted service under the Hague Convention was not successful); SCC Alameda Point LLC v. City of Alameda, 897 F. Supp. 2d 886, 898 n.5 (N.D. Cal. 2012) (denying objection to reply evidence offered to show that defendant's opposition evidence lacked personal knowledge or was incomplete); Oracle Corp. v. Druglogic, Inc., 2012 U.S. Dist. LEXIS 83506, *15 (N.D. Cal. 2012) (denying objection to reply evidence offered in direct response to factual assertions made in opposition papers, where objector was also given opportunity to address the new evidence at the hearing); Louis Vuitton Malletier, S.A. v. Akanoc Solutions, Inc., 2008 U.S. Dist. LEXIS 116789, *2 n.1 (N.D. Cal. 2008) (same).

### A.   Facebook's Opposition.

Facebook opposes Plaintiff's request in one paragraph, the gist of which is that:

> [S]uch service would violate well-established due-process principles because it would not be "reasonably calculated, under all the circumstances, to apprise [Science Feedback] of the pendency of the action." Mullane v. Central Hanover Bank & Trust, Co., 339 U.S. 306, 314 (1950). Science Feedback has no corporate relationship to Facebook. It is nothing more than an independent contractor; the Complaint alleges only that Facebook engaged Science Feedback as a fact-checker, and that Facebook compensates Science Feedback for providing fact-checking services, Compl. ¶¶ 20, 86, 119, 122; and counsel for Facebook has no independent relationship with Science Feedback, Holtzblatt Decl. ¶ 17; Mehta Decl. ¶ 4. None of these facts establish that service on Facebook would be "reasonably calculated" to apprise Science Feedback of the pendency of the action.

(Dkt. #43 at 2-3.) The 'due process' requirement is not in dispute, but Facebook is incorrect that electronic service of Facebook through its agent WilmerHale would not be "reasonably

calculated, under all the circumstances, to apprise [Science Feedback] of the pendency of the action." Mullane v. Central Hanover Bank & Trust, Co., 339 U.S. at 314.

The rub here is Facebook's ipse dixit that "Science Feedback has no corporate relationship to Facebook. It is nothing more than an independent contractor[,]" a proposition for which Facebook offers no evidentiary support of its own, but instead selectively cites the allegations of the verified complaint. As explained infra, the full factual details set forth in the complaint as well as the supplemental evidence submitted with this reply demonstrate an ongoing "partnership" — a set of coordinated actions with common purposes — between Facebook and Science Feedback. In addition, Science Feedback has already received actual notice of the summons and complaint, a factor which should weigh heavily, particularly given COVID-19 constraints on effecting service by conventional means.

### B. Plaintiff's Efforts to Serve Science Feedback.

Science Feedback is located in France, which is a signatory to the Hague Convention referenced in Rule 4(f)(1). The Hague Convention requires signatory countries to establish a Central Authority to receive requests for service of documents from other countries and to serve those documents by methods compatible with the internal laws of the receiving state. See Volkswagenwerk Aktiengesellschaft v. Schlunk, 486 U.S. 694, 698-99 (1988). Service through a country's Central Authority is the principal means of service under the Hague Convention. Article 10 of Convention also permits other forms of service, such as service "by postal channels," through judicial officers, or other competent process servers of the state of destination." See Convention on Service Abroad of Judicial and Extrajudicial Documents in Civil and Commercial Matters, Nov. 15, 1965 ("Hague Convention"), 20 U.S.T. 361, Art. 10. Plaintiff is reliably informed and thereupon believes that service through the French central authority would cost $1,000, and could take two to three months (if not even more time under current conditions), which would seriously delay proceedings in this case. (Teich Dec. ¶ 2.)

As in the recent case of Coy v. Lilith Games (Shanghai) Co., 2020 U.S. Dist. LEXIS 164665, discussed infra, Plaintiff has expended significant amounts of time and effort to serve Science Feedback by conventional means. As in Coy, Science Feedback's website –

https://sciencefeedback.co/ – does not list any physical address, email address, or agent for receiving process; indeed, Plaintiff has already submitted two summonses to the Court with alternative addresses (Dkts. ## 7, 13), neither of which proved availing. (Teich Dec., ¶ 3.) On or about August 19, 2020, Plaintiff retained ASAP Legal, Inc. to effect "rush service attempts" of Science Feedback through its Paris affiliate, Nationwide Legal Services, pursuant to the Hague Service Convention, paid ASAP Legal, Inc. $1,685.63 for international service, translation and reconfiguration fees, and agreed to pay another $250 to $350 for postal service, which was intiated by ASAP Legal Services via DHL express shipment on or about September 28, 2020. (Teich Dec., ¶ 4; Exh. "A".)  Plaintiff is informed and thereupon believes that postal service requires the signed return receipt of the recipient under French law, and therefore is unlikely to be effective with Mr. Vincent. (Id.) Plaintiff also spent $430, and multiple hours in largely-volunteered time to translate the case-related documents from English into French, in conformity with the requirements of service of process in France under the Hague Service Convention, and French Code of Civil Procedure Article 688-6 which provides that "The process shall be notified in the language of the originating State. Notwithstanding the above, the addressee who does not know the language in which the process is drawn may refuse the notification thereof and ask that it be translated or be subjoined with a translation in the French language at the instance and at the expense of the petitioner." (Id.)

On September 22, 2020, Mr. Goolam Monsoor, a private process server employed by Nationwide Legal in Paris, France, attempted to serve the English and French documents at the Science Feedback organization address he had on file, at 16 rue Cécile Furtado Heine, 75014 Paris, France. There he was informed that Science Feedback and Mr. Emmanuel Vincent, its founder and president, had recently relocated himself as well as the organization. Mr. Monsoor found Mr. Vincent's mobile phone on the internet, called Mr. Vincent at that number, and made an appointment to meet with him at a different location, 7 rue de Tocqueville 75017 Paris, France.

When they met later that day (September 22, 2020), Mr. Vincent refused to sign the waiver of process form. When he was shown the package of service documents, Mr. Vincent

told Mr. Monsoor that he "had already received those documents by mail" at a third address, 65 Avenue Philippe Auguste, 75011 Paris, France. On August 17, 2020, plaintiff had mailed the summons and complaint and other case-related documents by prepaid U.S. mail to Science Feedback at 40 rue Alexandre Dumas, 75011, Paris France 11. (Dkt. #4.) Presumably (though not definitively), these documents were forwarded to the 65 Avenue Phillippe Auguste address, where Mr. Vincent received actual notice of the lawsuit. Mr. Vincent refused to sign for any documents from Mr. Monsoor, but authorized Mr. Monsoor to photograph the documents on his landing, and also signed a writing indicating that "J'ai bien reçu les documents de la part de Monsieur Monsoor," which translates as "I received documents from Mr. Monsoor." (Monsoor Dec., ¶¶ 1-8; see also Dkt. #44 (proof of service).) As in Coy, "[a]ll of this establishes that 'the district court's intervention' on the issue of service is appropriate in this case. The question is what method of alternate service to order." Coy, 2020 U.S. Dist. LEXIS 164665, at **5-6 (quoting Rio Props., Inc. v. Rio Int'l Interlink, 284 F.3d 1007, 1016 (9th Cir. 2002)).

### C. Plaintiff's Exigent Need to Effect Service on Science Feedback.

The Advisory Committee Notes to Rule 4(f)(3) indicate that it is appropriately used "in cases of urgency if conventional methods will not permit service within the time required by the circumstances." In Richmond Techs., Inc. v. Aumtech Bus. Solutions, 2011 U.S. Dist. LEXIS 71269, *44 (N.D. Cal. 2011), Judge Koh credited plaintiff's representation that it could not accomplish timely service through the foreign state's central authority and that it had need to serve the foreign defendant with "greater urgency than the Hague Convention can accommodate." Here, the Court has issued an order for briefing on the other four U.S. defendants' response to the Complaint such that their responses are due October 23, 2020. (Dkt. #29.) Plaintiff alleges violations of its First Amendment rights, the loss of which "for even minimal periods of time, unquestionably constitutes irreparable injury." Klein v. City of San Clemente, 584 F.3d 1196, 1207-08 (9th Cir. 2009) (quoting Elrod v. Burns, 427 U.S. 347, 3737 (1976)). Plaintiff intends to seek expedited discovery, yet Facebook's counsel has opined that discovery is "premature" in part because the foreign defendant has not yet been served. (Teich Dec., ¶ 5.) Additionally, Mr. Vincent and Science Feedback have already received

actual notice of the action, (presumably) by forwarded receipt of plaintiff's mailed service documents (Dkt. #4), and Mr. Vincent as Founder and President of Science Feedback has also been personally served by a conventional attempt on a date (September 22, 2020) which, if effective, puts it on track to respond to the complaint along with the other four U.S. defendants. (Monsoor Dec., ¶¶ 1, 2, 4-10.)

### D. Facebook's "Partnership" with Science Feedback.

Significantly, for purposes of this motion, Science Feedback itself professes to be in "partnership" with Facebook in an active and ongoing relationship, and the complaint describes a pattern and practice of extensive coordination between these two entities with respect to much of the censorship and fraud scheme at issue in this action.

On its website, https://sciencefeedback.co/about/, Science Feedback describes itself as "a non-profit organization registered in France whose mission is defined in its status as to improve the credibility of science-related information online, in the media and on social media." Under "Partners, Funders & Donors," the website states that "Science Feedback is <u>partnering</u> with Facebook to verify the credibility of viral content as part of the third-party fact-checking initiative." https://sciencefeedback.co/partners-funders-donors/ (emphasis added). Thus, Facebook is listed first and most prominently above a handful of other, more obscure "institutions that account for <u>at least 5%</u> of Science Feedback resources since 2015." <u>Id.</u> (emphasis added). To be sure, neither Facebook nor Science Feedback makes public disclosure of the amount of Facebook's support, or the percentage of Science Feedback's "resources" for which Facebook's donation accounts beyond that it is "at least 5%," but it is reasonable to infer that Facebook's donation is more than – and separate from – its payment for specific "fact-checker" services. Facebook's factually-unsupported assertion that Science Feedback is "nothing more than an independent contractor" (Dkt. #43 at 2-3) does not square with Science Feedback's description of their relationship.

///

///

///

### E. Allegations of the Complaint Concerning Facebook's Extensive Coordination with Science Feedback in Acts of Censorship and Fraudulent Misrepresentation.

In its complaint, Plaintiff specifically alleges that "Defendant Science Feedback is a French non-profit organization to which Facebook donates, and which Facebook has specifically engaged as a "fact-checker" to flag selected content on CHD's Facebook page as "false information," insert oppositional articles in its place on CHD's page, and divert users from CHD's own content on that false basis." (Dkt. #1, ¶ 20.) Plaintiff alleges that Facebook and Science Feedback, inter alia, engaged in a scheme to defraud CHD by, among other conduct, multiple acts of misrepresentation of fact to third parties. (Id., ¶¶ 53, 69-88, 94-99, 119-123.) Plaintiff specifically alleges that "Facebook has also misrepresented as fact to all third-party users that Facebook relied upon an 'independent fact-checker,' when the criteria that Science Feedback has actually applied is neither neutral, reliable, nor up-to-date, nor for that matter is Science Feedback 'independent' of its contractual payor." (Id., ¶ 86.) Plaintiff further alleges that Facebook "contracted with Science Feedback, a French organization which Facebook funds, to 'fact-check' CHD's content, and directed Science Feedback to deploy Facebook's circular WHO and CDC definitions of 'vaccine misinformation.' Science Feedback is wholly dependent upon Facebook, both financially and editorially. On information and belief, neither Facebook nor Science Feedback makes any genuinely independent effort to check the veracity of the censored or labeled CHD content. Instead, Facebook created a classification system that provides Science Feedback with a limited set of nine pre-populated classifications to apply to a posting." (Id., ¶¶ 119-120.)

Finally, plaintiff alleges that "Science Feedback fact-checkers have an obvious incentive to categorize a post as "False" rather than an accurate but less damaging classification of "Opinion," because that is the only way Facebook will insert the clear warning with a prominent link to Science Feedback's oppositional article. Facebook deceives its users by materially misrepresenting that its "fact-checkers" are "independent," contractually or editorially. Significantly, the arrangement also permits Facebook and Science Feedback to

create categorical exemptions from "fact-checking" where it suits Zuckerberg's political or other biases, e.g., the "opinion" exemption for climate science deniers. Emily Atkin, *Facebook creates fact-checking exemption for climate deniers*, supra, https://heated.world/p/facebook-creates-fact-checking-exemption." (Dkt. #1, ¶ 122.)

Defendants' opposition ignores these specific allegations of Facebook's financial donations to and editorial control of Science Feedback. Instead, Facebook suggests that "the Complaint alleges only that Facebook engaged Science Feedback as a fact-checker, and that Facebook compensates Science Feedback for providing fact-checking services," citing only portions of the complaint at ¶¶ 20, 86, 119, 122. (Dkt. #43 at 3.) The Court can look beyond that disingenuous assertion, and examine the full factual allegations of the Complaint, as well as the other facts and circumstances suggesting that Science Feedback has already received actual notice of the lawsuit, but conventional means of service may not suffice.

### III.
### LEGAL STANDARDS

Rule 4(h)(2) provides for service of corporations in a foreign country "in any manner prescribed by Rule 4(f) for serving an individual, except personal delivery under (f)(2)(C)(i)." Rule 4(f), in turn, provides several means by which a plaintiff may serve an individual "at a place not within any judicial district of the United States." Pursuant to Rule 4(f)(1), an individual or corporation may be served in a foreign country "by an internationally agreed means of service that is reasonably calculated to give notice, such as those authorized by the Hague Convention on the Service Abroad of Judicial and Extrajudicial Documents." Rule 4(f)(3) further provides for service "by any other means not prohibited by international agreement, as the court orders." Fed. R. Civ. P. 4(f)(3). Under the Ninth Circuit's analysis in Rio Props., Inc., 284 F.3d at 1014, Rule 4(f)(3) is "neither a 'last resort' nor 'extraordinary relief.' It is merely one means among several which enables service of process on an international defendant." Richmond Techs., Inc., 2011 U.S. Dist. LEXIS 71269, *39 (citing Rio Props., Inc., 284 F.3d at 1014-15).

In Coy, Judge Donato recently set forth the applicable legal standard and evidentiary burden as follows:

> Under Federal Rules of Civil Procedure 4(h)(2) and 4(f)(3), a foreign business entity may be served in any manner directed by the Court that is not prohibited by international agreement. See Rio Props., Inc. v. Rio Int'l Interlink, 284 F.3d 1007, 1014 (9th Cir. 2002). "Court-directed service under Rule 4(f)(3) is as favored as service available under Rule 4(f)(1) or Rule 4(f)(2)," and it is in the district court's "sound discretion" to "determin[e] when the particularities and necessities of a given case require alternate service of process under Rule 4(f)(3)." Id. at 1015-16. A wide variety of alternatives may be ordered under Rule 4(f)(3), but to comport with due process, "the method of service crafted by the district court must be 'reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections.'" Id. at 1016 (citation omitted).

Coy, 2020 U.S. Dist. LEXIS 164665, *2.

### IV.
### DISCUSSION

This Court can be confident that service upon Facebook through WilmerHale is reasonably calculated to apprise the French defendant of the pendency of the action and afford it an opportunity to present its objections, and accords with the requirements of due process.

Facebook may be correct that Science Feedback has no formal "corporate relationship" to Facebook, in that Science Feedback is not owned by Facebook. But that is not the standard. Rather, due process requires only that service on Facebook through its agent WilmerHale will be "reasonably calculated, under all the circumstances, to apprise [Science Feedback] of the pendency of the action."[3] Mullane, 339 U.S. at 314. Under these circumstances, substituted

---

[3] A lawyer must act as the client's agent. See Comm'r of Internal Revenue v. Banks, 543 U.S. 426, 436 (2005) (describing the attorney-client relationship as "a quintessential principal-

electronic service on Facebook meets that test. See, e.g., Facebook, Inc. v. Banana Ads, LLC, 2012 U.S. Dist. LEXIS 42160, *7 (N.D. Cal. 2012) (Hague Service Convention does not expressly prohibit email service).

Thus, it does not matter that Facebook's counsel, WilmerHale, or its staff in this case "has no independent relationship with Science Feedback, Holtzblatt Decl. ¶ 17; Mehta Decl. ¶ 4." (Dkt. #43 at 3.) The relevant factual basis for substituted service here is that Facebook itself has a relationship with Science Feedback which warrants substitute service through Facebook's attorney-agent, and that Plaintiff lacks alternate conventional means to accomplish timely service. Rio Props., Inc., 284 F.3d at 1016.

## V.

## CONCLUSION

Plaintiff has expended considerable effort to serve Science Feedback in order to align its response date with the four U.S. defendants, and move the case on an expedited schedule commensurate with its stakes. Facebook opposes the motion, but has not presented any colorable evidence to contradict Plaintiff's detailed allegations that Facebook underwrites and supervises Science Feedback in connection with the events at issue in this case. The Court should also consider these collaborative facts offered in rebuttal to Facebook's opposition: (1) Science Feedback's website statement that it receives donations from Facebook and "partners" with Facebook on its science-related "misinformation" campaign; and (2) Mr. Vincent's statement that he had already received the case-related documents by mail and that, while he refused to sign for them, he acknowledged personal receipt of those same

---

agent relationship"). Agency "arises when one person (a 'principal') manifests assent to another person (an 'agent') that the agent shall act on the principal's behalf and subject to the principal's control, and the agent manifests assent or otherwise consents so to act." Restatement (Third) of Agency § 1.01 (Am. Law Inst. 2006). A lawyer derives authority to act on behalf of the client once the client has so consented, and she must carry out the client's wishes concerning the objectives of the representation. Model Rules of Prof'l Conduct r. 1.2(a).

1  documents from plaintiff's process server. For these reasons, Plaintiff requests the Court issue
2  an order for immediate substitute electronic service of Science Feedback through Facebook's
3  attorney-agent WilmerHale.

4      Dated:  October 1, 2020

5                                       Respectfully submitted,



ROBERT F. KENNEDY, JR.
Founder and Chairman, Children's Health Defense

MARY S. HOLLAND
General Counsel, Children's Health Defense

ROGER I. TEICH

Counsel for Plaintiff
Children's Health Defense