**JASSY VICK CAROLAN LLP**
KEVIN L. VICK (SBN 220738)
 kvick@jassyvick.com
800 Wilshire Blvd.
Suite 800
Los Angeles, CA 90017
Telephone: (310) 870-7048
Facsimile: (310) 870-7010

*Attorneys for Defendant The Poynter*
*Institute for Media Studies, Inc.*

**THOMAS & LOCICERO PL**
CAROL JEAN LOCICERO (*pro hac vice*)
 clocicero@tlolawfirm.com
MARK R. CARAMANICA (*pro hac vice*)
 mcaramanica@tlolawfirm.com
 601 South Boulevard
Tampa, FL 33606
Telephone: (813) 984-3060
Facsimile: (813) 984-3070

 -and-

DANIELA B. ABRATT (*pro hac vice*)
 dabratt@tlolawfirm.com
 915 Middle River Drive, Suite 309
Fort Lauderdale, FL 33304
Telephone: (954) 703-3416
Facsimile: (954) 400-5415

*Attorneys for Defendant The Poynter*
*Institute for Media Studies, Inc.*

## UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

## SAN FRANCISCO DIVISION

| | |
|---|---|
| CHILDREN'S HEALTH DEFENSE, a Georgia non-profit organization,<br><br>Plaintiff,<br><br>v.<br><br>FACEBOOK, INC., a Delaware corporation; MARK ZUCKERBERG, a California resident; SCIENCE FEEDBACK, a French corporation; POYNTER INSTITUTE, a Florida corporation; and DOES 1-20.<br><br>Defendants. | Case No.:  3:20-cv-05787-SI<br><br>**DEFENDANT THE POYNTER INSTITUTE FOR MEDIA STUDIES, INC.'S NOTICE OF MOTION AND MOTION TO DISMISS VERIFIED COMPLAINT**<br><br>**[REQUEST FOR JUDICIAL NOTICE, AND PROPOSED ORDER FILED CONCURRENTLY]**<br><br>DATE: FEBRUARY 5, 2021<br>TIME: 10:00 A.M.<br>COURTROOM: 1-17TH FLOOR |

TO PLAINTIFF, ALL OTHER PARTIES AND THEIR COUNSEL:

PLEASE TAKE NOTICE THAT on February 5, 2021, at 10:00 a.m., or as soon thereafter as counsel may be heard in Courtroom 1-17th Floor, of the United States District Courthouse for the Northern District of California, San Francisco Courthouse, 450 Golden Gate Avenue, San Francisco, California 94102, the Honorable Susan Illston, presiding, Defendant The Poynter Institute for Media Studies, Inc. ("Poynter," and incorrectly sued as Poynter Institute), will and hereby does move for an order dismissing with prejudice, and without leave to amend, the Verified Complaint (Doc. 1) filed by Plaintiff Children's Health Defense ("CHD") on August 17, 2020.

Poynter brings this motion pursuant to Federal Rule of Civil Procedure 12(b)(6) and Civil Local Rule 7-2.  Defendant's motion is based upon this Notice of Motion, the accompanying Memorandum of Points and Authorities, the concurrently-filed Request for Judicial Notice, all other matters for which this Court may take judicial notice, the pleadings, files, and the records in this action, and on any argument heard by the Court.

Dated: October 23, 2020

**JASSY VICK CAROLAN LLP**

By:   */s/ Kevin L. Vick*
      KEVIN L. VICK

**THOMAS & LOCICERO PL**

By:   */s/ Carol Jean LoCicero*
      CAROL JEAN LOCICERO

- 1 -

# **TABLE OF CONTENTS**

NOTICE OF MOTION AND MOTION TO DISMISS VERIFIED COMPLAINT ..................... 1

TABLE OF CONTENTS............................................................................................................ i

TABLE OF AUTHORITIES .................................................................................................... ii

MEMORANDUM OF POINTS AND AUTHORITIES ............................................................ 2

    I.      INTRODUCTION ......................................................................................................... 2

    II.     STATEMENT OF RELEVANT FACTS ..................................................................... 3

    III.    PROCEDURAL STANDARDS APPLICABLE TO MOTIONS TO DISMISS......... 6

    IV.    CHD FAILS TO STATE ANY CLAIMS AGAINST POYNTER ............................. 7

        a.    However Cast, CHD's Complaint is an Attack on Poynter's First Amendment-Protected Speech ........................................................................................... 8

        b.    Count I (*Bivens*) Fails Because CHD Cannot Plausibly Allege Any Government Action or Constitutional Violation Against Poynter.............................................. 10

        c.    Count II (False Advertising) Fails Because Poynter's Alleged Action Was Not Commercial But Core Social Speech Protected by the First Amendment............ 12

        d.    Count III (RICO Fraud) Fails Under the First Amendment and is Fatally Plead….................................................................................................................. 16

            i.    The First Amendment Bars the RICO Claim ................................................. 16

            ii.    The RICO Claim is Not Alleged with Requisite Specificity......................... 17

        e.    Count IV (Declaratory Relief) Fails Because it Seeks to Restrain Protected Speech. ................................................................................................................... 20

    V.     CONCLUSION........................................................................................................... 21

SIGNATURE ATTESTATION............................................................................................... 22

CERTIFICATE OF SERVICE ............................................................................................... 22

    THE POYNTER INSTITUTE FOR MEDIA STUDIES, INC.'S MOTION TO DISMISS VERIFIED COMPLAINT

1

## TABLE OF AUTHORITIES

2

**CASES**

3

*Allen v. The Ghoulish Gallery*,
   No. 06-cv-371-NLS, 2007 WL 1555739 (S.D. Cal. May 23, 2007) ............................ 20

4

*Architectural Mailboxes, LLC v. Epoch Design, LLC*,
   No. 10-cv-974, 2011 WL 1630809 (S.D. Cal. Apr. 28, 2011) ...................................... 14

5

6

*Art of Living Foundation v. Does*,
   No. 10–CV–05022–LHK, 2011 WL 2441898 (N.D. Cal. June 15, 2011) ...................... 9

7

*Ashcroft v. Iqbal*,
   556 U.S. 662 (2009).......................................................................................... *passim*

8

9

*Baugh v. CBS, Inc.*,
   828 F. Supp. 745 (N.D. Cal. 1993) ............................................................................ 7

10

*Beasley v. Conagra Brands, Inc.*,
   374 F. Supp. 3d 869 (N.D. Cal. 2019) ...................................................................... 14

11

12

*Bell Atlantic Corp. v. Twombly*,
   550 U.S. 544 (2007)................................................................................... 6,11,13

13

*Bivens v. Six Unknown Named Agents of the Federal Bureau of Narcotics*,
   403 U.S. 388 (1971).................................................................................... 10,11

14

15

*Blatty v. New York Times Co.*,
   42 Cal. 3d 1033 (Cal. 1986).................................................................................... 8

16

*Bolger v. Young Drug Products Corp.*,
   463 U.S. 60 (1983)................................................................................................ 13

17

18

*Bosley Medical Institute, Inc. v. Kremer*,
   403 F.3d 672 (9th Cir. 2005) ................................................................................ 15

19

*Boule v. Hutton*,
   328 F.3d 84 (2d Cir. 2003)..................................................................................... 15

20

21

*Brown v. Electronic Arts, Inc.*,
   724 F.3d 1235 (9th Cir. 2013) ................................................................................ 7

22

*Bulan v. JP Morgan Chase Bank*,
   No. C-10-05952 EDL, 2011 WL 13266527 (N.D. Cal. Apr. 6, 2011) ......................... 17

23

24

*Cervantes v. Countrywide Home Loans, Inc.*,
   656 F.3d 1034 (9th Cir. 2011) ................................................................................ 7

25

*Coastal Abstract Service, Inc. v. First American Title Ins. Co.*,
   173 F.3d 725 (9th Cir. 1999) ................................................................................ 13

26

27

ii

28

THE POYNTER INSTITUTE FOR MEDIA
STUDIES, INC.'S MOTION TO DISMISS
VERIFIED COMPLAINT

*Cochran v. NYP Holdings, Inc.*,
210 F.3d 1036 (9th Cir. 2000) ........................................................................10

*Connick v. Myers*,
461 U.S. 138 (1983).........................................................................................8

*Cook, Perkiss, and Liehe, Inc. v. Northern California Collection Service Inc.*,
911 F.2d 242 (9th Cir. 1990) ..........................................................................13

*Correctional Services Corp. v. Malesko*,
534 U.S. 61 (2001)...............................................................................10,11,12

*De Havilland v. FX Networks, LLC*,
21 Cal. App. 5th 845 (2018) .............................................................................7

*Destfino v. Reiswig*,
630 F.3d 952 (9th Cir. 2011) ..........................................................................18

*Exeltis USA Inc. v. First Databank, Inc.*,
No. 17-cv-04810-HSG, 2017 WL 6539909 (N.D. Cal. Dec. 21, 2017) ...........20

*Farah v. Esquire Magazine*,
736 F.3d 528 (D.C. Cir. 2013) ....................................................................14,15

*Gardner v. Martino*,
563 F.3d 981 (9th Cir. 2009) ............................................................................8

*Garrison v. State of Louisiana.*,
379 U.S. 64 (1964)...........................................................................................8

*Gilbert v. Sykes*,
147 Cal. App. 4th 13 (2007) ...........................................................................8,9

*Graf v. Peoples*,
No. CV 07–4731–VAP, 2008 WL 4189657 (C.D. Cal. Sept. 4, 2008) ............18

*Hustler Magazine, Inc. v. Falwell*,
485 U.S. 46 (1988)...........................................................................................9

*Kennedy Funding, Inc. v. Chapman et al.*,
No. C 09-01957 RS, 2010 WL 4509805 (N.D. Cal. Nov. 1, 2010)...............20,21

*L.A. Taxi Cooperative, Inc. v. Uber Technologies., Inc.*,
114 F. Supp. 3d 852 (N.D. Cal. 2015) .............................................................15

*Marca v. Capella University*,
No. SACV 05-642-MLG, 2007 WL 9705901 (C.D. Cal. Sept. 28, 2007) .........20

*Marina Point Development Associates v. United States*,
364 F. Supp. 2d 1144 (C.D. Cal. 2005) ...........................................................17

*Mattel, Inc. v. MCA Records, Inc.*,
296 F.3d 894 (9th Cir. 2002) ..........................................................................15

iii

THE POYNTER INSTITUTE FOR MEDIA
STUDIES, INC.'S MOTION TO DISMISS
VERIFIED COMPLAINT

*Monterey Plaza Hotel Ltd. Partnership v. Local 483 of Hotel Employees & Restaurant Employees Union, AFL-CIO*,
  215 F.3d 923 (9th Cir. 2000) ...............................................................................18,19

*National Organization For Women, Inc. v. Scheidler*,
  510 U.S. 249 (1994)...........................................................................................16

*Nebraska Press Association v. Stuart*,
  427 U.S. 539 (1976)...........................................................................................20

*New York Times Co. v. Sullivan*,
  376 U.S. 254 (1964)......................................................................................8,9,13

*New York Times Co. v. United States*,
  403 U.S. 713 (1971)...........................................................................................20

*Peak Health Center v. Dorfman*,
  No. 19-cv-04145-D, 2019 WL 5893188 (N.D. Cal. Nov. 12, 2019)....................8

*Reader's Digest Association v. Superior Court*,
  37 Cal. 3d 244 (Cal. 1984).................................................................................8

*Rice v. Fox Broadcasting Co.*,
  330 F.3d 1170 (9th Cir. 2003) .........................................................................13

*Savage v. Council on American-Islamic Relations, Inc.*,
  No. C 07-6076 SI, 2008 WL 2951281 (N.D. Cal. July 25, 2008). ..................16,18

*Scheidler v. National Organization for Women, Inc.*,
  537 U.S. 393 (2003)...........................................................................................19

*Schreiber Distribution Co. v. Serv-Well Furniture Co., Inc.*,
  806 F.2d 1393 (9th Cir. 1986) .........................................................................17

*SDV/ACCI, Inc. v. AT&T Corp.*,
  522 F.3d 955 (9th Cir. 2008). .............................................................................9

*Shwarz v. United States*,
  234 F.3d 428 (9th Cir. 2000) .............................................................................7

*Solarcity Corp. v. Sunpower Corp.*,
  No. 16-CV-05509-LHK, 2017 WL 1739169 (N.D. Cal. May 4, 2017) ..............21

*Steckman v. Hart Brewing, Inc.*,
  143 F.3d 1293 (9th Cir. 1998) ...........................................................................7

*Sugarman v. Muddy Waters Capital LLC*,
  No. 19-cv-04248-MMC, 2020 WL 633596 (N.D. Cal. Feb. 3, 2020)  .............19

*Swearingen v. Santa Cruz Natural, Inc.*,
  No. 13-cv-04921-SI, 2016 WL 4382544 (N.D. Cal. Aug. 17, 2016) ................14

*Underwager v. Channel 9 Australia*,
  69 F.3d 361 (9th Cir. 1995) .............................................................................10

iv

*United States v. Dupre*,
  339 F. Supp. 2d 534 (S.D.N.Y. 2004).............................................................19

*Virginia State Board of Pharmacy v. Virginia Citizens Consumer Council, Inc.*,
  425 U.S. 748 (1976)............................................................................................13

*Wojnarowicz v. American Family Association*,
  745 F. Supp. 130 (S.D.N.Y. 1990)................................................................... 15

*Ziglar v. Abassi*,
  137 S. Ct. 1843, 1857 (2017) ............................................................................12

**STATUTES**

15 U.S.C. § 1125(a)(1)(B) .......................................................................................14

18 U.S.C. § 1343 .................................................................................................18,19

**FEDERAL RULES**

Fed. R. Civ. P. 9(b) ..........................................................................................14,17,18

Fed. R. Civ. P. 12(B)(6) .........................................................................................1,7

Civ. L.R. 7-2 ...............................................................................................................1

**MISCELLANEOUS**

Arjun Walia, *Study: The Flu Vaccine Is "Significantly Associated" With An Increased Risk of Coronaviruses – Not COVID-19*, COLLECTIVE EVOLUTION, (Apr. 16, 2020),
https://www.collective-evolution.com/2020/04/16/study-the-flu-vaccine-is-significantly-associated-with-an-increased-risk-of-coronaviruses-not-covid19/

Emily Venezky, *"New study: The flu vaccine is 'significantly associated' with an increased risk of coronavirus"*, POLITIFACT, (Apr. 16, 2020),
https://www.politifact.com/factchecks/2020/jul/16/facebook-posts/2017-18-flu-season-study-does-not-include-covid-19/

Greg G. Wolff, *Influenza vaccination and respiratory virus interference among Department of Defense personnel during the 2017–2018 influenza season*, SCIENCEDIRECT, (Jan. 10, 2020),
https://www.sciencedirect.com/science/article/pii/S0264410X19313647#

v

THE POYNTER INSTITUTE FOR MEDIA STUDIES, INC.'S MOTION TO DISMISS VERIFIED COMPLAINT

1

## MEMORANDUM OF POINTS AND AUTHORITIES

2

**I.      INTRODUCTION**

3

When it comes to protecting free speech rights, this case presents a rich irony.  Plaintiff

4

Children's Health Defense ("CHD") brings a four-count complaint alleging coordinated

5

machinations to squelch its anti-vaxxer messaging while simultaneously asking this Court to squelch

6

the defendants' corresponding free speech rights on this hotly-debated issue.  In a 115-page, 242-

7

paragraph complaint, CHD sues the following parties for alleged *Bivens,* RICO and Lanham Act

8

violations and for declaratory relief: (1) Facebook, (2) Facebook founder and CEO Mark

9

Zuckerberg, (3) The Poynter Institute for Media Studies, Inc. ("Poynter"),[1] (4) Science Feedback,

10

and (5) 20 unknown Does.  Why?  Because they have allegedly dared to present the public with

11

information CHD apparently believes runs counter to the controversial messaging it propagates on

12

its own Facebook page.

13

With respect to Poynter, the specific allegations are threadbare.  Buried among the pages of

14

allegations asserting, for example, government-private sector conspiracies to promote harmful

15

vaccine policies and globally deploy undersea internet cables that permit Facebook to spread

16

dangerous high-speed data networks, there is a single allegation about Poynter.  At paragraph 89 of

17

the Complaint, CHD finally reveals it is upset about a fact-check Poynter's PolitiFact service

18

performed – not on CHD content – but on a third-party article about the flu vaccine published by a

19

group called Collective Evolution.

20

CHD's claims against Poynter arise from PolitiFact's analysis of the accuracy of this *third-*

21

*party* news article's headline discussing flu vaccines and their relation to coronaviruses, an article

22

that CHD chose to share.  The PolitiFact criticism of the Collective Evolution article's headline was

23

24

25

26

27

28

---

[1] Incorrectly sued as the Poynter Institute.  The Verified Complaint also named PolitiFact as a separate defendant.  PolitiFact is a branded news fact-checking service operated by Poynter and does not exist as a distinct legal entity.  *See* Doc. 46.  On October 7, 2020, CHD voluntarily dismissed PolitiFact from this lawsuit.  *See* Doc. 50.

2

THE POYNTER INSTITUTE FOR MEDIA
STUDIES, INC.'S MOTION TO DISMISS
VERIFIED COMPLAINT

1    itself a protected act of free speech by Poynter.  In fact, Collective Evolution agreed and later

2    revised the headline.  At root, Poynter's speech is itself protected by the First Amendment.

3           CHD attempts to use this Court as a counterpunch in the marketplace of ideas, where its

4    fringe views seek a larger audience.  Poynter's act of media criticism on a third-party article

5    discussing flu vaccines and their relation to coronaviruses falls within the First Amendment's

6    broad protections; CHD's claims against Poynter must be dismissed with prejudice.  No

7    amendment should be allowed because there are no additional facts to be plead that would cure the

8    fatal First Amendment defects.  Specific grounds for dismissing the Complaint are set forth below.

9    **II.     STATEMENT OF RELEVANT FACTS**

10          This statement of facts is limited to those bearing directly on Poynter and the related

11   (failed) counts against it.  This Court need not consider any additional allegations to fully dismiss

12   Poynter.

13          As alleged in the Complaint, CHD is a non-profit membership organization founded in

14   2015 whose mission is to "educate the public about the risks and harmful effects of chemical

15   exposures upon prenatal and children's health, including from particular vaccines and

16   environmental health hazards, such as 5G and wireless networks and products, and to advocate for

17   social change both legislatively and through judicial action."  Doc. 1, Compl. at ¶ 14.  Robert F.

18   Kennedy, Jr. founded and leads CHD.  *See id.* at ¶¶ 14, 24.  In approximately November of 2017,

19   CHD created a Facebook page where, among other things, it "uploads articles or video posts from

20   the CHD website to its Facebook page on a daily (or more frequent) basis, along with other

21   articles or video posts, and hyperlinks to CHD's archived articles of interest to its community."

22   *Id.* at ¶ 33.

23          Poynter is a Florida non-profit organization.  *See id.* at ¶ 21.  The Complaint (errantly)

24   alleges that PolitiFact is a wholly-owned subsidiary of Poynter.  *See id.*  In reality, PolitiFact is a

25   branded news fact-checking service operated by Poynter.  *See supra* note 1.  Facebook engages

26   entities like Poynter/PolitiFact (as well as co-defendant Science Feedback) to conduct news fact-

27   checking services on content shared within its social media platform.  *See* Doc. 1, Compl. at ¶ 21.

28

3

The Complaint alleges that "[o]n or about April 16, 2020 and thereafter, Facebook and PolitiFact, its purportedly 'independent fact-checker,' blocked CHD from displaying an article concerning a study in the journal Collective-Evolution.com[2] which found a 'significantly' greater risk of contracting coronavirus among individuals in the study who received the influenza vaccine, and Facebook and Politi[F]act fraudulently misrepresented to all third-party users that the post was 'False Information Checked by independent fact-checkers.'" *See id*. at ¶ 89.  Paragraph 89 of the Complaint includes a screenshot of CHD's sharing of the subject article with the PolitiFact fact-check appended.  Multiple salient points are evident from this screenshot:

A.  The subject article is not the speech of CHD, nor is it about CHD;

B.  The article originated from a third-party website, collective-evolution.com;

C.  The Collective Evolution article was shared by CHD on its Facebook page on April 16, 2020 as the global COVID-19 pandemic was blossoming;

D.   The title of the subject Collective Evolution article is "*New Study: The Flu Vaccine is 'Significantly Associated' With An Increased Risk of Coronavirus*";

E.  The appended PolitiFact fact-check rated the Collective Evolution article's headline as "false," noting that the article in question related to 2017-18 flu season data, which could not include COVID-19, a strain first discovered in late 2019;

F.  The subject Collective Evolution article was shared, commented on, and otherwise engaged with on the CHD Facebook page hundreds of times; and

G.  Access to the Collective Evolution article was not "blocked" on the CHD page, but instead contained the PolitiFact fact-check.

*See id*.

Paragraph 91 of the Complaint then provides a screenshot from PolitiFact's July 16, 2020 full explanation (with sourcing) for its fact-check on the subject Collective Evolution article,

---

[2] The Collective Evolution article, in turn, discusses a study published in a journal titled "Vaccine."  Collective Evolution itself is not a research journal.  *See* https://www.sciencedirect.com/science/article/pii/S0264410X19313647#.

THE POYNTER INSTITUTE FOR MEDIA
                                                    STUDIES, INC.'S MOTION TO DISMISS
                                                    VERIFIED COMPLAINT

which was being "shared on social media."  *See* Compl. at ¶ 91; Poynter's Request for Judicial

Notice ("RJN," concurrently filed with this Motion), **Ex. A** at 1.[3]  Among other things, the fact-

check noted that the scientific study cited in the article related to coronaviruses prevalent in 2017-

18, and did not concern the current COVID-19 coronavirus strain that has caused the worldwide

pandemic.  *See id.* at 2.  Based on this and other disclosed bases, PolitiFact determined the

Collective Evolution headline to be "ambiguous and misleading," thus rating it as "false."  *Id.* at 3.

CHD acknowledges that such fact-checking conclusions at times inherently involve matters of

opinion based on disclosed fact (*see* Compl. at ¶ 123) and tellingly fails to mention that Collective

Evolution itself apparently accepted PolitiFact's conclusion.  Accordingly, and consistent with

Poynter's fact-checking critique, Collective Evolution has since corrected the article's headline on

its website.  It now reads: "*Study: The Flu Vaccine Is 'Significantly Associated' With An Increased*

*Risk of Coronaviruses — **Not COVID-19**.*"[4] (emphasis added).

      While the Complaint is littered with assertions of a vast conspiracy and coordinated

fraudulent schemes among the defendants designed to silence CHD's message, damage its

reputation, and suppress its fundraising abilities, CHD alleges nothing more specific with respect

to Poynter's role in this so-called conspiracy beyond the single fact-check on the Collective

Evolution article headline – content CHD concedes originates from a third party.  *See* Compl. at ¶

53(D), 89.  And because it cannot do so, CHD fails to allege even a single, more specific factual

allegation as to Poynter under any of the four pleaded counts.  Regarding the *Bivens* claim (Count

I), there are no specific allegations of any coordination between government, government actors

like U.S. Representative Adam Schiff, and Poynter.  CHD just pronounces these relationships and

the alleged plot to violate its First and Fifth Amendment rights.  *See id.* at ¶¶ 171-188.  The same

---

[3] Plaintiff does not include a complete copy of the fact-check, a copy of which is also available online at: https://www.politifact.com/factchecks/2020/jul/16/facebook-posts/2017-18-flu-season-study-does-not-include-covid-19/.

[4] A copy of the subject article with the revised headline is found within Poynter's RJN at **Ex. B**. A copy of the article with the revised headline is also publicly available at: https://www.collective-evolution.com/2020/04/16/study-the-flu-vaccine-is-significantly-associated-with-an-increased-risk-of-coronaviruses-not-covid19/.

holds true for the Lanham Act false advertising claim (Count II), which, regardless of unfair

competition law's inapplicability to the *marketplace of ideas*, preoccupies itself with allegations

directed toward Facebook and Mark Zuckerberg.[5]  *See id.* at ¶¶ 189-223.  Like Count I, the civil

RICO claim (Count III) provides no more factual allegations as to Poynter's role in the alleged

conspiracy other than Poynter's engaging in its own First Amendment right to fact-check the

third-party content.  Somehow, this miraculously equates to wire fraud.  Again, CHD founds a

RICO conspiracy with the other defendants on nothing more than the single fact-check.  *See id.* at

¶¶ 224-236.  Finally, Count IV, which seeks declaratory and injunctive relief, is perhaps most

troubling of all.  It is, on its face, simply inapplicable to Poynter under the alleged facts, and asks

this Court to unconstitutionally enjoin Defendants' ability to publish any views potentially

challenging those espoused by CHD on controversial topics like vaccination safety.

### III.   PROCEDURAL STANDARDS APPLICABLE TO MOTIONS TO DISMISS

To survive a Rule 12(b)(6) motion for failure to state a claim, "a complaint must contain

sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"

*Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544,

570 (2007)).  A plaintiff must allege concrete *facts* raising the right to relief from merely

"speculative" to "plausible." *Twombly*, 550 U.S. at 555, 570.  Determining plausibility "is a

context-specific task that requires the reviewing court to draw on its judicial experience and

common sense."  *See Iqbal*, 556 U.S. at 679.  When pleaded facts "do not permit the court to infer

more than the mere possibility of misconduct, the complaint" fails to show entitlement to relief as

required by Federal Rule of Civil Procedure 8(a)(2).  *Id.*

A plaintiff further cannot simply regurgitate labels, conclusions, and "a formulaic

recitation of the elements of a cause of action." *Twombly*, 550 U.S. at 555.  "[N]aked assertions

devoid of further factual enhancement" are also insufficient to survive a motion to dismiss.  *Iqbal*,

---

[5] By noting that the Complaint's allegations are almost entirely directed to other defendants, Poynter is not suggesting that such allegations are accurate, or that the counts against those parties have any independent merit.  Poynter maintains this action should be entirely dismissed as to all defendants with prejudice but limits its arguments to the claims specifically made against it.

556 U.S. at 678 (internal quotations omitted); *see also Brown v. Elec. Arts, Inc.*, 724 F.3d 1235, 1248 (9th Cir. 2013) (courts may disregard "unreasonable inferences or . . . legal conclusions cast in the form of factual allegations.").  Finally, a "court need not accept as true [] allegations that contradict facts that may be judicially noticed by the court[.]" *Shwarz v. U.S.*, 234 F.3d 428, 435 (9th Cir. 2000).

Poynter has been sued for exercising its own First Amendment rights.  It is therefore proper for this Court to give the Complaint heightened scrutiny that favors early disposition. *See*, *e.g.*, *Baugh v. CBS, Inc.*, 828 F. Supp. 745, 752-55 (N.D. Cal. 1993) ("Summary disposition is particularly favored in cases involving First Amendment rights," noting "California's preference for speedy resolution of free speech cases."); *De Havilland v. FX Networks, LLC*, 21 Cal. App. 5th 845, 871 (2018) ("Because unnecessarily protracted litigation would have a chilling effect upon the exercise of First Amendment rights, speedy resolution of cases involving free speech is desirable.") (citations omitted).

Because CHD can allege no set of facts that would ever subject Poynter to liability, this is also a case where leave to amend should not be granted.  *See Cervantes v. Countrywide Home Loans, Inc.*, 656 F.3d 1034, 1042 (9th Cir. 2011) (affirming dismissal without leave to amend because "amendment would be futile"); *Steckman v. Hart Brewing, Inc.*, 143 F.3d 1293, 1298 (9th Cir. 1998) (affirming grant of motion to dismiss with prejudice and noting that the general rule allowing for amendment "does not extend to cases in which any amendment would be an exercise in futility").

## IV.   CHD FAILS TO STATE ANY CLAIMS AGAINST POYNTER.

CHD has alleged no bases for relief against Poynter.  First, CHD cannot avoid the obvious First Amendment infirmities inherent in its claims, which are solely focused on Poynter's protected speech.  That speech relates to a matter of public concern, is not about CHD, and constitutes protected opinion.  Additionally, each claim fails in its own substantive right because CHD cannot plead any plausible factual allegations to substantiate them.  Applicable First Amendment defenses are discussed first, followed by consideration of each of CHD's defective

THE POYNTER INSTITUTE FOR MEDIA
STUDIES, INC.'S MOTION TO DISMISS
VERIFIED COMPLAINT

1    counts against Poynter.  All told, the claims against Poynter are wholly unsupported in law and

2    alleged fact.  They should be dismissed with prejudice, and without leave to amend.

3          **a.   However Cast, CHD's Complaint is an Attack on Poynter's First Amendment-**

4               **Protected Speech**.

5    "[S]peech concerning public affairs is more than self-expression; it is the essence of self-

6    government." *Garrison v. State of La.*, 379 U.S. 64, 74-75 (1964).  "The First and Fourteenth

7    Amendments embody our 'profound national commitment to the principle that debate on public

8    issues should be uninhibited, robust, and wide-open….'" *Id.* at 75 (*quoting New York Times Co.*

9    *v. Sullivan*, 376 U.S. 254, 270 (1964)).  That is, speech on matters of public concern lies at the

10   core of what the First Amendment protects.  *See Connick v. Myers*, 461 U.S. 138, 145 (1983)

11   ("speech on public issues occupies the 'highest rung of the hierarchy of First Amendment values,'

12   and is entitled to special protection.").

13   As explained, CHD has sued Poynter because it allegedly suffered damage from a "false"

14   fact-check on a third-party news article headline.  But artful pleading does not permit it to avoid

15   confronting the First Amendment.  *See Peak Health Ctr. v. Dorfman*, No. 19-cv-04145-D, 2019

16   WL 5893188, at *8 (N.D. Cal. Nov. 12, 2019) ("plaintiffs cannot avoid First Amendment

17   limitations by 'creative pleading[s]' that 'affix a label other than 'defamation' to injurious

18   falsehood claims") (internal citation omitted); *Gardner v. Martino*, 563 F.3d 981, 992 (9th Cir.

19   2009) (any claim brought as a result of constitutionally-protected speech is still subject to the First

20   Amendment requirements governing defamation).

21   Stated another way, the First Amendment circumscribes "all claims whose gravamen is the

22   alleged injurious falsehood of a statement."  *Blatty v. New York Times Co.*, 42 Cal. 3d 1033, 1042

23   (Cal. 1986).  Thus, "liability cannot be imposed on any theory for what has been determined to be

24   a constitutionally protected publication."  *Reader's Digest Ass'n v. Superior Court*, 37 Cal. 3d

25   244, 265 (Cal. 1984) (dismissing libel and false light claims on same constitutional grounds).

26   Other California courts, as well as the U.S. Supreme Court, have dismissed derivative claims

27   where an underlying defamation claim failed.  *See Gilbert v. Sykes*, 147 Cal. App. 4th 13, 34

28

THE POYNTER INSTITUTE FOR MEDIA
                                                STUDIES, INC.'S MOTION TO DISMISS
                                                VERIFIED COMPLAINT

(2007) ("the collapse of [plaintiff's] defamation claim spells the demise of all other causes of action in the cross-complaint such as . . . intentional infliction of emotional distress, all of which allegedly arise from the same publications on [defendant's] Web site."); *Hustler Magazine, Inc. v. Falwell*, 485 U.S. 46, 50, 54-56 (1988) (plaintiff cannot evade constitutional defenses to a libel claim by restyling claim as intentional infliction claim).

Like Dr. Sykes and Jerry Falwell, CHD cannot sidestep First Amendment protections by avoiding labeling what is fundamentally a (failed) defamation claim a, well, defamation claim. Under the applicable case law, CHD's claims fail for at least two reasons. First, the challenged fact-check on Collective Evolution's speech does not discuss or identify CHD and was, therefore, not "of and concerning" CHD. Since the U.S. Supreme Court's 1964 decision in *Sullivan*, the "of and concerning" requirement has been of constitutional magnitude. *Sullivan*, 376 U.S. at 288 ("We also think the evidence was constitutionally defective in another respect: it was incapable of supporting the jury's finding that the allegedly libelous statements were made 'of and concerning' respondent."). Notably, like here, the Court in *Sullivan* also recognized that the speech at issue never actually identified the plaintiff police chief L.B. Sullivan by name or position. Therefore, it was not "of and concerning" him for defamation purposes. *See Sullivan*, 376 U.S. at 288-89.

When no reasonable reader would conclude the challenged speech refers to a plaintiff, no defamation can lie. *See id.* at 288; *see also Blatty*, 42 Cal. 3d at 1046; *Art of Living Found. v. Does*, No. 10–CV–05022–LHK, 2011 WL 2441898, at *6 (N.D. Cal. June 15, 2011) ("[t]he First Amendment requires a plaintiff to establish that the statement on which the defamation claim is based is 'of and concerning' the plaintiff.") (citation omitted). Determining whether a statement is "of and concerning" a plaintiff is a question of law. *See SDV/ACCI, Inc. v. AT&T Corp.*, 522 F.3d 955, 959 (9th Cir. 2008). Here, the fact check did not involve CHD's speech, but on its face, the speech of a third-party, Collective Evolution. The Court need look no farther than the Collective Evolution post and PolitiFact fact-check embedded in paragraph 89 of the Complaint. The fact-check simply was not "of and concerning" CHD.

CHD's claims must also fail because the speech complained of constitutes protected opinion based on disclosed facts.  *See, e.g.*, *Cochran v. NYP Holdings, Inc.*, 210 F.3d 1036, 1038 (9th Cir. 2000) (per curiam) (finding that calling someone a liar was, in context, a protected opinion in part because the facts underlying the opinion were disclosed in the column); *Underwager v. Channel 9 Austl.*, 69 F.3d 361, 367 (9th Cir. 1995) (same and also noting such phrases like "lying" also amount to non-actionable rhetorical hyperbole).  The fact-check reviewed the Collective Evolution headline and article, along with additional cited sources, and determined that the headline was misleading.  *See* RJN, **Ex. A**.  Thus, Poynter rated the headline as "false."  *Id.*  This also necessarily dooms every count against Poynter because both *Bivens* and RICO liability require unconstitutional or otherwise illegal action, Lanham Act false advertising requires false commercial speech, and CHD has no right to restrict constitutionally protected speech as requested in its declaratory/injunctive relief count.

### b.  Count I (*Bivens*) Fails Because CHD Cannot Plausibly Allege Any Government Action or Constitutional Violation Against Poynter.

In *Bivens*, the Supreme Court recognized an implied private right of action for damages against federal agents acting under color of law when those agents engage in unconstitutional conduct.  *See Bivens v. Six Unknown Named Agents of the Fed. Bureau of Narcotics*, 403 U.S. 388, 389 (1971).  This simple recitation of the nature of a *Bivens* claim reveals the flaws in CHD's theory.  Poynter is not a federal agent but a private corporation.  There are no plausible allegations in the Complaint that Poynter took any action on behalf of any government.  There are also no plausible allegations that Poynter engaged in any unconstitutional conduct.  In reality, the actions CHD alleges Poynter took are themselves fully protected under the First Amendment.

As a threshold matter, the Supreme Court has made clear that a *Bivens* claim can never even proceed against a corporate entity.  *See Corr. Servs. Corp. v. Malesko*, 534 U.S. 61, 63 (2001).  In declining to permit a plaintiff to sue a private corporation that contracted with the federal government to house federal prisoners and detainees, the Court noted that "[t]he purpose of *Bivens* is to deter individual officers from committing constitutional violations."  *Id.* at 70.  Permitting a

THE POYNTER INSTITUTE FOR MEDIA STUDIES, INC.'S MOTION TO DISMISS VERIFIED COMPLAINT

corporate defendant to be sued would undermine the deterrent effect of *Bivens* "[f]or if a corporate defendant is available for suit, claimants will focus their attention on it, and not the individual directly responsible for the alleged injury." *Id.* at 71.  Poynter's status as a non-profit corporation is plain and undisputed, and CHD acknowledges its corporate status.  *See* Compl. at Case Caption, ¶ 21.  Poynter must be dismissed with prejudice.

Beyond this, CHD has failed to allege any facts that even remotely suggest Poynter had any connection to the kind of state action required to support a *Bivens* claim.  Again, the sole factual allegation as to Poynter is its act of fact-checking the Collective Evolution article.  *See* Compl. at ¶¶ 89-93.  Moreover, the factual allegations contained within Count I almost exclusively relate to alleged actions of Facebook and Mark Zuckerberg with respect to purported coordination with Rep. Adam Schiff, the Centers for Disease Control and Prevention, and the World Health Organization.  *See* Compl. at ¶¶ 176-188.  Nowhere in the Complaint does CHD allege Poynter undertook any action on the state's behalf or otherwise worked with state actors to violate CHD's constitutional rights.  Count I fails *Twombly/Iqbal* as to Poynter in this regard and must be dismissed on this ground as well.

Most importantly, CHD cannot allege any constitutional violation committed by Poynter. CHD alleges that it has been deprived of its First and Fifth Amendment rights but again alleges no specific facts as to how Poynter purportedly restricted those rights.  Indeed, however misguided, those allegations are again directed at Facebook and Mr. Zuckerberg.  There are no specific factual allegations that Poynter took any action to restrict CHD's speech or hamper its fundraising abilities, much less in an unconstitutional manner.  It is indeed an ironic twist for CHD to claim that its constitutional rights were violated by Poynter's exercise of those same rights.  This Court should not credit such hypocrisy.

CHD would also have this Court expand *Bivens* beyond all recognition.  Post-*Bivens*, the Supreme Court has been reluctant to broaden its scope:

In 30 years of *Bivens* jurisprudence we have extended its holding only twice, to provide an otherwise nonexistent cause of action against *individual officers* alleged

THE POYNTER INSTITUTE FOR MEDIA
STUDIES, INC.'S MOTION TO DISMISS
VERIFIED COMPLAINT

to have acted unconstitutionally, or to provide a cause of action for a plaintiff who lacked *any alternative remedy* for harms caused by an individual officer's unconstitutional conduct.

*Malesko*, 534 U.S. at 70 (emphasis in original); *see also Ziglar v. Abassi*, 137 S. Ct. 1843, 1857 (2017) (noting the Court's reticence to expand *Bivens* to new contexts or categories of defendants and that finding implied causes of action is now a "disfavored" judicial action) (*citing Iqbal*, 556 U.S. at 675).

For these reasons, Count I must be dismissed with prejudice.

### c.   Count II (False Advertising) Fails Because Poynter's Alleged Action Was Not Commercial But Core Social Speech Protected by the First Amendment.

Count II of the Complaint is a claim against all Defendants for false advertising under the Lanham Act, 15 U.S.C. § 1125(a)(1)(B).  *See* Compl. at ¶ 190.  As to Poynter, this count fails because federal false advertising claims require damage resulting from materially false statements of fact contained in commercial advertising or promotion.  No such commercial or promotional activity exists here.  The fact-check was not directed at CHD, much less commercial speech about a competing "product" or "service."  The allegations in Count II do not focus on Poynter, but, again, are preoccupied with actions purportedly taken by Facebook and/or Mark Zuckerberg.  *See* Compl. at ¶¶ 190-223.  Count II must, therefore, also be dismissed with prejudice.

As the case law cited in the Complaint recognizes, to sustain a false advertising claim against Poynter under 15 U.S.C. § 1125(a)(1)(B), CHD must establish:

(1) Poynter made a false statement of fact about its own or another's product in an advertisement;

(2) the advertisement did or could have the tendency to deceive a substantial portion of CHD's audience;

(3) the false statement is material so that it is likely to influence a purchasing decision of CHD's audience;

(4) Poynter caused its falsely advertised goods to enter the marketplace; and

THE POYNTER INSTITUTE FOR MEDIA
STUDIES, INC.'S MOTION TO DISMISS
VERIFIED COMPLAINT

1   (5) CHD was or likely was injured as a result.

2   *See Rice v. Fox Broad. Co.*, 330 F.3d 1170, 1180 (9th Cir. 2003) (*citing Cook, Perkiss, & Liehe,*

3   *Inc. v. N. Cal. Collection Serv.*, 911 F.2d 242, 244 (9th Cir. 1990)), *overruled on other grounds.*

4   For Poynter's fact-check to constitute advertising or promotion under the Lanham Act it

5   must be: (1) deemed commercial speech; (2) determined that Poynter is in commercial

6   competition with CHD; (3) undertaken for the purpose of influencing consumers to purchase

7   Poynter's products/services instead; and (4) sufficiently disseminated to the relevant consumer

8   market.  *See Rice*, 330 F.3d at 1181 (*citing Coastal Abstract Serv., Inc. v. First Am. Title Ins. Co.*,

9   173 F.3d 725, 735 (9th Cir. 1999)).

10   Commercial speech is, at its core, "speech which does 'no more than propose a

11   commercial transaction.'"  *See Bolger v. Young Drug Prods. Corp.*, 463 U.S. 60, 66 (1983)

12   (*quoting Va. State Bd. of Pharmacy v. Va. Citizens Consumer Council, Inc.*, 425 U.S. 748, 762

13   (1976)).  Even in cases where a defendant concedes the speech is an advertisement (which is not

14   the case here), courts will look to other factors such as whether the speech at issue mentions a

15   specific product and whether there is an economic motivation to engage in the speech.  *See*

16   *Bolger*, 463 U.S. at 66-67 (citations omitted).  In fact, the *Sullivan* case, cited previously, was one

17   in which the subject speech concerning the Montgomery Police Department's treatment of civil

18   rights protesters was contained in an advertisement that solicited donations.  *See Sullivan*, 376

19   U.S. at 256-57.  Yet, the Court still found the speech to be core political speech, thus requiring the

20   police chief plaintiff to show that the statements he claimed were defamatory were made with

21   "actual malice."  *See id.* at 279-83.

22   CHD's false advertising claim simply cannot pass *Twombly/Iqbal* plausibility standards

23   and further fails as a matter of law.  For starters, Poynter obviously made no false statement about

24   a product in the context of an advertisement or promotion.  Rather, as discussed repeatedly and

25   admitted by CHD, Poynter published a rating based on disclosed facts.  Next, it is equally clear

26   that the fact-check article does not meet the definition of an "advertisement."  It proposes no

27   commercial transaction on its face.  Poynter offers no product for sale in the marketplace through

28

13

1   this reporting.  Finally, CHD cannot plausibly claim that Poynter's single act of fact-checking a

2   third-party article headline and fully disclosing the bases for its conclusion – one which Collective

3   Evolution accepted – could have caused any "consumer" to be deceived and otherwise alter

4   purchasing behavior.  While facially legally defective, this count also fails to meet the heightened

5   pleading specificity courts routinely apply to false advertising claims under Federal Rule of Civil

6   Procedure 9(b)[6] because they typically involve fraud allegations.  *See*, *e.g.*, *Architectural*

7   *Mailboxes, LLC v. Epoch Design, LLC*, No. 10-cv-974, 2011 WL 1630809, at *5 (S.D. Cal. Apr.

8   28, 2011) (collecting cases applying FRCP 9(b) to Lanham Act false advertising claims and noting

9   it requires pleading the specific "who, what, when, why, and how of the alleged false

10  advertising."); *Beasley v. Conagra Brands, Inc.*, 374 F. Supp. 3d 869, 874 (N.D. Cal. 2019)

11  (applying FRCP 9(b) to California state law false advertising claim); *Swearingen v. Santa Cruz*

12  *Nat., Inc.*, No. 13-cv-04921-SI, 2016 WL 4382544, at *2 (N.D. Cal. Aug. 17, 2016) (same).

13          Finally, as mentioned, the only market that exists here is a non-commercial one: the

14  *marketplace of ideas* where freedom to speak and comment upon matters of public debate are

15  constitutionally protected.  Attempts to contort such speech into false advertising claims are

16  routinely rejected.  For example, in *Farah v. Esquire Magazine*, the District of Columbia Court of

17  Appeals affirmed a lower court's dismissal of defamation, Lanham Act false advertising, and

18  various other claims regarding an *Esquire Magazine* Politics Blog posting critical of a book

19  promoting the birther conspiracy surrounding President Barack Obama—who three weeks before

20  the book's release disclosed his long-form Hawaii birth certificate.  *See Farah v. Esquire*

21  *Magazine*, 736 F.3d 528, 530 (D.C. Cir. 2013).  Specifically, the post satirically stated that the

22  book had been recalled one day after its release, and the publisher was now offering refunds.  *See*

23  *id.*  In upholding dismissal of the author's and publisher's false advertising claim, the court

24  rejected the argument that the parties were competitors for purposes of the Lanham Act.  *See id.* at

25

26  _____

    [6] "In alleging fraud or mistake, a party must state with particularity the circumstances constituting
27  fraud or mistake.  Malice, intent, knowledge, and other conditions of a person's mind may be
    alleged generally."  Fed. R. Civ. P. 9(b).

28

CASE NO.: 3:20-CV-05787-SI                                THE POYNTER INSTITUTE FOR MEDIA
                                                          STUDIES, INC.'S MOTION TO DISMISS
                                                          VERIFIED COMPLAINT

541.  The court observed, "The mere fact that the parties may compete in the *marketplace of ideas* is not sufficient to invoke the Lanham Act.  To the contrary, it reinforces *Esquire*'s position that its blog post was political speech aimed at critiquing Farah and Corsi's position on the birth certificate question."  *Id.*  It concluded by noting that the Lanham Act is not designed to impose liability on those "communicating ideas or expressing points of view."  *Id.* (*citing Bosley Med. Inst., Inc. v. Kremer*, 403 F.3d 672 (9th Cir. 2005)).

Other courts have held similarly, noting that when speech is not purely commercial, Lanham Act overreach can tread upon First Amendment rights.  *See Boule v. Hutton*, 328 F.3d 84, 91-92 (2d Cir. 2003) (statements in news article on fraud in the art market were not commercial speech because they involved matters of public concern and appeared "in a forum that has traditionally been granted full protection under the First Amendment"); *Mattel, Inc. v. MCA Records, Inc.*, 296 F.3d 894, 906-07 (9th Cir. 2002) (use of Barbie mark in song lampooning Barbie image is fully protected speech even if song itself is commercially promoted); *Wojnarowicz v. Am. Family Ass'n*, 745 F. Supp. 130, 141 (S.D.N.Y. 1990) (dismissing Lanham Act false advertising claim related to distribution of pamphlet critical of public funding of art projects defendant found distasteful, noting that the pamphlet did not constitute advertising or promotion and that the act "has never been applied to stifle criticism of the goods or services of another by one, such as a consumer advocate, who is not engaged in marketing or promoting a competitive product or service."); *L.A. Taxi Coop. v. Uber Techs., Inc.*, 114 F. Supp. 3d 852, 864-65 (N.D. Cal. 2015) (dismissing Lanham Act false advertising claim because challenged statements appeared in context of news media articles on matter of public debate—the safety of taxi and Uber rides).

At bottom, CHD has failed to plead a plausible Lanham Act false advertising claim and could never overcome the First Amendment barriers to such a claim anyway.  Count II should be dismissed with prejudice.

**d.  Count III (RICO Fraud) Fails Under the First Amendment and is Fatally Plead.**

The First Amendment also bars CHD's RICO claim because Poynter's alleged conduct is protected speech.  CHD also cannot state a RICO cause of action with the requisite specificity nor can it state specific facts as to each element of the claim.  Count III also fails.

**i.  The First Amendment Bars the RICO Claim.**

While the specifics of CHD's RICO claim are difficult to discern, it is clear from the Complaint overall that the RICO claim rests on the same fact-check.  Somehow, that single journalistic effort magically equates to a predicate wire fraud act and is part of the alleged RICO conspiracy among the defendants to damage CHD.  *See* Compl. at ¶¶ 224-236.  Again, the First Amendment is a bar, and the Supreme Court recognizes the free speech risks RICO claims can pose.  It is "prudent to notice that RICO actions could deter protected advocacy and to caution courts applying RICO to bear in mind the First Amendment interests that could be at stake." *Nat'l Org. For Women, Inc. v. Scheidler*, 510 U.S. 249, 265 (1994) (Souter, J., concurring).  Dismissal is therefore appropriate when "somewhat elastic RICO predicate acts may turn out to be fully protected First Amendment activity." *Id.* at 264.

This Court has also previously recognized the important First Amendment rights implicated where, as here, "the gravamen of [the] plaintiff's dispute is with the ideas that defendants may or may not espouse." *Savage v. Council on American-Islamic Relations, Inc.*, No. C 07-6076 SI, 2008 WL 2951281, at *10 (N.D. Cal. July 25, 2008) (Illston, J.).  In *Savage*, the plaintiff, a nationally syndicated radio host, accused the defendants of supporting terrorist organizations and sued them under RICO for posting a four-minute clip from plaintiff's show and their criticism of plaintiff's anti-Muslim remarks.  *Id.* at *1.  This Court explained that nearly all of the defendants' activities that formed the basis of the RICO claim "are related to speech and thus may have First Amendment protection." *Id.* at *10.  This Court also noted that "there would be 'grave concerns were ... defendants held liable under civil RICO for engaging in the expression of dissenting political opinions in a manner protected under the First Amendment.'" *Id.* at *12;

THE POYNTER INSTITUTE FOR MEDIA
STUDIES, INC.'S MOTION TO DISMISS
VERIFIED COMPLAINT

1  *see also Marina Point Dev. Assocs. v. U.S.*, 364 F. Supp. 2d 1144, 1149 (C.D. Cal. 2005) (RICO

2  claim dismissed because defendant was immune from liability based on its petitioning activities

3  under First Amendment).

4  Because CHD's alleged injury stems from Poynter's speech, as in *Savage*, it must "show

5  with 'convincing clarity' that defendants' allegedly injurious false statement or portrayal of

6  *plaintiff's own speech* was done 'with actual malice-that is, with knowledge that it was false or

7  with reckless disregard of whether it was false or not.'"  *Id.*  Here, CHD has made no such

8  allegation.  CHD has not alleged any criminal activity on the part of Poynter that would constitute

9  a RICO predicate act.  To the contrary, all that is alleged is that Poynter engaged in protected

10  speech. The RICO count fails.

11  ### ii.  The RICO Claim is Not Alleged with Requisite Specificity.

12  As with Count II, CHD must allege a wire fraud "with particularity" under FRCP 9(b),

13  including specifying "the who, what, when, where, and how" of the alleged fraudulent conduct,

14  and "where multiple defendants are involved, the plaintiff must, at a minimum, identify the role of

15  each defendant in the alleged fraudulent scheme."  *Bulan v. JP Morgan Chase Bank*, No. C-10-

16  05952 EDL, 2011 WL 13266527, at *5 (N.D. Cal. Apr. 6, 2011) (citations omitted).  Where wire

17  fraud is alleged as the underlying conduct, "such fraud must be pled with particularity which

18  'requires the identification of the circumstances constituting fraud so that the defendant can

19  prepare an adequate answer from the allegations.'"  *Id.* (quoting *Schreiber Distr. Co. v. Serv-Well

20  Furniture Co., Inc.*, 806 F.2d 1393, 1400 (9th Cir. 1986)).

21  Preliminarily, CHD has improperly incorporated all 223 prior paragraphs into this cause of

22  action and then fails to state specifically which of those allegations are material to the RICO claim

23  and Poynter.  Rather, it merely lumps together all defendants to assert their actions constituted the

24  common fraud scheme:

25      all named defendants . . . aided in one or another aspect of their common fraud

26      scheme: to label Plaintiff's page "unreliable" and "out-of-date" and redirect users to

27      the CDC; to label Plaintiff's speech-content "False" when it is critical of vaccine or

28

THE POYNTER INSTITUTE FOR MEDIA
STUDIES, INC.'S MOTION TO DISMISS
VERIFIED COMPLAINT

1    5G network safety, accomplishing this censorship through the shame machinations

2    of "content moderators" and "independent fact-checkers"; and to conceal their true

3    purposes of profiting from vaccine manufacturer advertising ad from their own

4    vaccine and 5G network development . . .

5    *See* Compl. at ¶¶ 224, 228.  This overbroad pleading style is improper and requires dismissal, for

6    it is impossible for Poynter to understand specifically what of its own actions CHD incorporates

7    into this count.  *See Destfino v. Reiswig*, 630 F.3d 952, 958 (9th Cir. 2011) (dismissing shotgun

8    pleading where "the complaint grouped multiple defendants together and failed to 'set out which

9    of the defendants made which of the fraudulent statements/conduct.'"); *Savage*, 2008 WL

10   2951281, at *14 (finding plaintiff failed to meet the requirements of FRCP 9(b) where he merely

11   "set[] forth a redundant narrative of allegations and conclusions of law, but ma[de] no attempt to

12   allege what facts are material to his claims under the RICO statute, or which facts are used to

13   support what claims under particular subsections of RICO."); *Graf v. Peoples*, No. CV 07–4731–

14   VAP, 2008 WL 4189657, at *6 (C.D. Cal. Sept. 4, 2008) ("Plaintiff's RICO claims incorporate the

15   Complaint's initial lengthy description of many different asserted acts of wrongdoing by various

16   Defendants. Plaintiff does not expressly identify any RICO predicate acts, but simply incorporates

17   his previous allegations. Such 'shotgun' pleading is insufficient to plead a RICO claim.").

18         Moreover, CHD has otherwise failed to adequately allege the multiple elements necessary

19   to state a viable RICO claim, namely, "(1) conduct (2) of an enterprise (3) through a pattern (4) of

20   racketeering activity (known as 'predicate acts') (5) causing injury to plaintiff's 'business or

21   property.'"  *See Graf*, 2008 WL 4189657, at *6.

22          For example, the "conduct" – or predicate act – on which CHD relies simply does not

23   constitute wire fraud.  This is because the wire fraud statute explicitly requires an intent to "obtain

24   *money or property* [from the one who is deceived] by means of false or fraudulent pretenses,

25   representations, or promises."  *See Monterey Plaza Hotel Ltd. P'ship v. Local 483 of Hotel*

26   *Employees & Restaurant Employees Union, AFL-CIO*, 215 F.3d 923, 926-27 (9th Cir. 2000)

27   (citing 18 U.S.C. § 1343) (dismissing RICO claim where defendant "did not *obtain* property by

28

18

deceiving [plaintiff] or its customers . . . [defendant's] conduct may have been vexatious or harassing, but it was not acquisitive.") (emphasis in original).  And reputation, business goodwill, and customers are not "property" for purposes of this statute. *Id.*

For example, in *Sugarman v. Muddy Waters Capital LLC*, plaintiffs sued defendants under RICO for the publication of allegedly false and misleading statements about plaintiffs on a blog and other website and claimed that readers ceased doing business with the plaintiffs as a result. No. 19-cv-04248-MMC, 2020 WL 633596, at *1 (N.D. Cal. Feb. 3, 2020).  The plaintiffs claimed these readers – not the plaintiffs themselves – were defrauded by the defendants. *Id.* at *2.  But because the plaintiffs did not allege any facts to show that defendants actually obtained any money or property, this Court dismissed the RICO action, ruling that the alleged "conduct" did not constitute wire fraud.  *Id.* at *3; *see also Scheidler v. Nat'l Org. for Women, Inc.*, 537 U.S. 393, 404-05, 411 (2003) (RICO claim dismissed where predicate act, which required that defendant "obtain" property, was unsubstantiated: "even when [defendants'] acts of interference and disruption achieved their ultimate goal of 'shutting down' [plaintiffs' business], such acts did not constitute extortion because petitioners did not 'obtain' respondents' property."). Similarly here, CHD has not alleged that Poynter obtained any money or property from CHD or any of its allegedly "defrauded" readers.[7]

CHD has similarly failed to allege any facts to support the remaining elements of the RICO claim, and the failure to properly allege any one element defeats this claim. Count III must be dismissed.

---

[7] Moreover, CHD has failed to allege any facts that demonstrate Poynter published the fact-check with a specific intent to defraud, a requisite element for wire fraud.  *See U.S. v. Dupre*, 339 F. Supp. 2d 534, 539-40 (S.D.N.Y. 2004) ("Under the wire fraud statute, even false representations or statements or omissions of material facts do not amount to a fraud unless done with fraudulent intent.  However misleading or deceptive a plan may be, it is not fraudulent if it was devised or carried out in good faith.").  Accordingly, Poynter's alleged conduct simply does not constitute the requisite conduct under the RICO statute.

1

2

e.   **Count IV (Declaratory Relief) Fails Because it Seeks to Restrain Protected Speech.**

3    Finally, CHD's request for injunctive and declaratory relief against Poynter is flatly

4    unconstitutional.  First, any order halting speech bears a "heavy presumption" of

5    unconstitutionality because prior restraints "are the most serious and the least tolerable

6    infringement on First Amendment rights." *Neb. Press Ass'n v. Stuart*, 427 U.S. 539, 558-59

7    (1976).  "The damage can be particularly great when the prior restraint falls upon the

8    communication of news and commentary on current events." *Id.* at 559.  As such, courts have

9    repeatedly struck down injunctions against speech because they are flagrant First Amendment

10   violations.  *See*, *e.g.*, *New York Times Co. v. U.S.*, 403 U.S. 713, 714 (1971) (per curiam).

11   Because Plaintiff seeks to enjoin Poynter's future speech, the proposed injunction

12   constitutes an impermissible prior restraint.  *See Marca v. Capella Univ.*, No. SACV 05-642-

13   MLG, 2007 WL 9705901, at *2 (C.D. Cal. Sept. 28, 2007) (refusing to order an injunction on

14   speech alleged to be misleading and false); *Allen v. The Ghoulish Gallery*, No. 06-cv-371-NLS,

15   2007 WL 1555739, at *3 (S.D. Cal. May 23, 2007) ("Defamatory statements cannot be restrained;

16   the remedy for defamation is a damages action after publication."); *Exeltis USA Inc. v. First

17   Databank, Inc.*, No. 17-cv-04810-HSG, 2017 WL 6539909, at *4-5 (N.D. Cal. Dec. 21, 2017)

18   (denying injunction as impermissible prior restraint). The irony of CHD's requested relief is again

19   patent: it requests an injunction on others' protected speech while belaboring its own First

20   Amendment rights.  *See* Compl. at ¶ 240.

21   With regard to the requested declaratory relief, CHD seeks judicial guidance "so that

22   Plaintiff may ascertain its rights to publish content on those pages without any interference,

23   censorship, warning labels, 'shadowbanning,' 'deboosting,' 'sandboxing,' or other deceptive

24   means and methods employed by defendants…" Compl. at ¶ 241.  But the relief sought here is

25   essentially a request for an adjudication on the same (failed) issues raised within the prior three

26   counts of the Complaint and, therefore, does not represent an independent claim.  *See Kennedy

27   Funding, Inc. v. Chapman*, No. C 09-01957 RS, 2010 WL 4509805, at *2 (N.D. Cal. Nov. 1,

28

20

2010) (dismissing without leave to amend claim for declaratory relief where it sought an adjudication on the same underlying issue in another count); *Solarcity Corp. v. Sunpower Corp.*, No. 16-CV-05509-LHK, 2017 WL 1739169, at *3 (N.D. Cal. May 4, 2017) (same).  Count IV must be dismissed as to Poynter.

## V.   CONCLUSION

For the foregoing reasons, Poynter's Motion to Dismiss should be granted, with prejudice and without leave to amend.

Dated: October 23, 2020

**JASSY VICK CAROLAN LLP**
By:   */s/ Kevin L. Vick*
     KEVIN L. VICK

**THOMAS & LOCICERO PL**
 By:   */s/ Carol Jean LoCicero*
     CAROL JEAN LOCICERO

*Attorneys for Defendant,*
*The Poynter Institute for Media Studies, Inc.*

THE POYNTER INSTITUTE FOR MEDIA STUDIES, INC.'S MOTION TO DISMISS VERIFIED COMPLAINT

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

## SIGNATURE ATTESTATION

I am the ECF User whose identification and password are being used to file the foregoing. Pursuant to Civil Local Rule 5-1(i), I hereby attest that the other signatures have concurred in this filing.

Dated: October 23, 2020                    By:    */s/ Kevin L. Vick*
                                                                            Kevin L. Vick

## CERTIFICATE OF SERVICE

I hereby certify that on October 23, 2020, I electronically filed the above document with the Clerk of the Court using CM/ECF which will send electronic notification of such filing to all registered counsel.

Dated: October 23, 2020                    By:    */s/ Kevin L. Vick*
                                                                            Kevin L. Vick

- 22 -

THE POYNTER INSTITUTE FOR MEDIA
                                                     STUDIES, INC.'S MOTION TO DISMISS
                                                     VERIFIED COMPLAINT