ROGER I. TEICH
California State Bar No. 147076
290 Nevada Street
San Francisco, CA 94110
Telephone: (415) 948-0045
E-Mail Address: rteich@juno.com

ROBERT F. KENNEDY, JR. (*pro hac vice*)
MARY HOLLAND (*pro hac vice*)
Children's Health Defense
1227 North Peachtree Parkway, Suite 202
Peachtree City, GA 30269
Telephone: (917) 743-3868
E-Mail Address: mary.holland@childrenshealthdefense.org

Attorneys for Plaintiff
CHILDREN'S HEALTH DEFENSE

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| CHILDREN'S HEALTH DEFENSE,<br><br>Plaintiff,<br><br>v.<br><br>FACEBOOK, INC., et al.,<br><br>Defendants. | Case No. 3: 20-cv-05787-SI<br><br>**PLAINTIFF'S MOTION FOR LEAVE TO FILE SECOND AMENDED COMPLAINT**<br><br>Fed. R. Civ. P. 15<br><br>Date: January 8, 2021<br>Time: 10:00 a.m.<br>Courtroom 1 – 17th Floor |

## NOTICE OF MOTION

Please take notice that on Friday, January 8, 2021 at 10:00 a.m. in Courtroom 1 of the Phillip Burton Federal Building and United States Courthouse, 450 Golden Gate Avenue, San Francisco, California, Plaintiff Children's Health Defense ("CHD") will, and hereby does, move the Court to grant it leave to file a Second Amended Complaint.

## INTRODUCTION

Plaintiff CHD, by and through undersigned counsel, moves this Court to grant it leave to file a Second Amended Complaint.

On August 17, 2020, Plaintiff filed a Complaint (Dkt. #1), and on November 13, 2020, a First Amended Complaint (Dkt. #64). In its Second Amended Complaint, attached hereto as Exhibit A, CHD seeks to add seven paragraphs which raise factual allegations of additional U.S. Government involvement with Defendants which bear on the *Bivens*[1] "color of law" analysis of Claim 1.

*First*, new Paragraph 98 alleges that U.S. State Department and National Endowment for Democracy ("NED") direct funding of defendant The Poynter Institute for Media Studies, Inc. ("Poynter"), and/or of Poynter's International Fact-Checking Network ("IFCN") unit. New Paragraphs 99-101 allege that, under Executive Order 13747 (2016), the U.S. Secretary of State coordinates private sector initiatives which advance the Global Health Security Agenda ("GHSA"), including "bio-security" measures such as the censorship at issue in Claim 1. Direct funding is an element of *Bivens* analysis, different in kind from the currently-alleged flow of monetary contributions from Facebook and Mark Zuckerberg to the Centers for Disease Control and Prevention ("CDC") Foundation (*see* First Amended Complaint, Dkt. #64, paras. 46-48, 94-97). The government's GHSA "bio-security" agenda supplies a significant additional nexus between the public and private action at issue here.

---

[1]   *Bivens v. Six Unknown Named Agents of Fed. Bureau of Narcotics*, 403 U.S. 388 (1971).

*Second*, new Paragraph 102 alleges newly-revealed "cyberwar" coordination between the U.K. and U.S. Governments, including with social media platforms, to take down or disrupt the online content of certain websites which publish COVID-19 "anti-vaccine propaganda."

*Third*, new Paragraph 103 alleges the existence of a Federal Bureau of Investigation ("FBI")-private sector partnership known as "InfraGard," in which Facebook participates.

*Fourth*, new Paragraph 104 alleges that defendant Mark Zuckerberg himself is under direct and severe pressure from these or other U.S. government actors to censor any criticism of government "bio-security" policies on his social media platform. Finally, new Paragraph 104 alleges that Plaintiff requires process to prove the non-obvious role of the U.S. government in implementing, requiring, or actively encouraging defendants' specific censorship at issue, precisely *because* it is concealed from public scrutiny. This is so particularly in light of the high priority that the U.S. Government assigns to the task of shaping the public debate on vaccine safety issues. *See, e.g.*, *Agency for Int'l Dev. v. Alliance for Open Soc'y Int'l, Inc.*, 570 U.S. 205 (2013) (government requirement that non-governmental recipients of anti-HIV/AIDS funding explicitly agree with government policy to oppose prostitution violates the First Amendment).

CHD makes this request for leave to file a Second Amended Complaint pursuant to Rule 15(a)(2) of the Federal Rules of Civil Procedure, the pleadings and papers on file in this action, and the memorandum below. The Verified Second Amended Petition is being lodged simultaneously with this motion.

**PROCEDURAL HISTORY AND PETITIONER'S PROPOSED AMENDMENT**

On August 17, 2020, CHD filed its 95-page Verified Complaint alleging four claims for relief: (1) First and Fifth Amendments (*Bivens*); (2) Lanham Act (15 U.S.C. § 1125(a)); (3) RICO Fraud (18 U.S.C. § 1962); and (4) Declaratory Relief. (Dkt. #1.) On September 9, 2020, the parties stipulated that Defendants Facebook, Inc., Mark Zuckerberg, Poynter, and

Politifact's response to the Complaint would be due October 23, 2020.[2] (Dkt. #23.) On September 11, 2020, pursuant to stipulation, the Court ordered that Plaintiff's opposition be filed by December 21, 2020, and Defendants' reply by January 21, 2020. (Dkt. #29.)

On October 23, 2020, Facebook/ Zuckerberg and Poynter filed separate motions to dismiss the Complaint with prejudice. (Dkts. #54, 56.) On November 9, 2020, pursuant to Stipulation, the Court ordered that Plaintiff file its Amended Complaint by November 13, 2020, pursuant to Fed. R. Civ. P. 15(a)(1)(B); Defendants' motions to dismiss Plaintiff's Amended Complaint by December 21, 2020; Plaintiff's oppositions to Defendants' renewed motions to dismiss by February 5, 2021; and Defendants' replies by March 5, 2021. (Dkt. #63.) The Court set March 19, 2021 as the date for hearing the motions to dismiss and for the initial case management conference, and stayed all discovery between these parties unless and until the motions to dismiss are denied in whole or in part. (*Id.*)

On November 13, 2020, Plaintiff filed its 148-page verified First Amended Complaint (Dkt. #64.) During the ensuing three weeks, Plaintiff learned of three additional and very signicant modes of U.S. Government involvement with Defendants which bear on the *Bivens* "color of law" analysis. The instant motion follows.

For purposes of clarity, and for ease of reference, CHD summarizes its requested amendments here:

New ¶ 98.   Defendant Poynter lists among its major funders the NED, which "receives an annual appropriation from the U.S. Congress through the Department of State." The U.S. Department of State is also a direct funder of IFCN, a unit of Poynter, contributing, in combination with NED, 10% of IFCN's budget in 2019.

---

[2]   On September 22, 2020, Plaintiff's private process server effected physical service of the Complaint on French defendant Science Feedback through Emanuel Vincent, its founder and director, but he refused to sign a return receipt for the documents. (Dkt. #45-1.) Consistent with this Court's Order (Dkt. #48), Plaintiff is continuing to attempt service on Science Feedback, including through the Hague Convention.  On October 7, 2020, Plaintiff voluntarily dismissed without prejudice defendant PolitiFact, which is a fictitious name registered by Poynter for its "fact-checker" service, and not a separate legal entity. (Dkts. #47, 50.)

New ¶ 99.    Executive Order 13747 (2016) declares that it is the policy of the United States to advance the Global Health Security Agenda ("GHSA"). Section 3(b)(vii) of that Order directs the Secretary of State to "coordinate [. . .] the United States Government relationship with [. . .] domestic GHSA nongovernmental stakeholders, including the private sector."

New ¶ 100.   Consistent with the high priority it gives to "bio-security" in U.S. foreign policy, the GHSA seeks to build alliances between government and the private sector, inter alia, to improve immunization rates, strengthen real-time bio-surveillance, and establish a global health security workforce. As part of this mission, Executive Order 13747 authorized the State Department to recruit private corporations -- including social media platforms and their enablers, such as Facebook and Poynter/Science Feedback -- to suppress speech such as Plaintiff's solely because it is critical of GHSA's agenda, and the risks which that agenda poses to public health.

New ¶ 101.   The WHO's January 2019 announcement declaring "vaccine hesitancy" to be a major threat to global health was a byproduct of the State Department's GHSA "bio-security" agenda. Rep. Schiff's March 2019 public letter to Facebook, referenced elsewhere in the First Amended Complaint, was in furtherance of the public-private "partnership" at the core of the GHSA. (*See* First Amended Complaint, Dkt. #64, at paras. 1, 60-67, 71, 79, 293-94, 302-304, 307, 311, 313.) The State Department made its donations (including through NED) to Poynter and its IFCN to induce "fact-checker" censorship of criticism by Plaintiff, among others, of government policies respecting the GHSA and its goals of mandatory universal immunization. Thus, at least one of the defendants (Poynter) receives direct government funding as part of the complex web of public/private relationships evidently at work here.

New ¶ 102.   Within the past month, the British Government — acting in conjunction with the U.S. Government — has undertaken "cyber-warfare operations" to take down or disrupt the online content of websites which publish purportedly foreign state-sponsored COVID-19 "anti-vaccine propaganda." Lucy Fisher & Chris Smyth, *GCHQ in cyberwar on anti-vaccine propaganda*, THE TIMES (Nov. 9, 2020), https://www.thetimes.co.uk/article/gchq-

in-cyberwar-on-anti-vaccine-propaganda-mcjgjhmb2. Indeed, a British Cabinet Office spokesman recently stated, "As we edge closer to a [COVID-19] vaccine we continue to work closely with social media companies and other organizations to anticipate and mitigate *any* emerging anti-vax narratives and promote authoritative sources of information." Emer Scully, *British Army's Information Warfare Unit will be deployed to tackle anti-vaccine propaganda ahead of jab rollout*, DAILY MAIL (Nov. 28, 2020), https://www.dailymail.co.uk/news/article-8997437/British-Armys-information-warfare-unit-deployed-tackle-anti-vaccine-propaganda.html (emphasis added). Thus, it appears that the U.K.-U.S. Government censorship campaign is designed to target *any* content — even from a legitimate 501(c)(3) entity such as Plaintiff — which raises concerns, however well-founded, about the safety or efficacy of experimental COVID-19 vaccines, or the lack of unbiased regulatory or pharmaceutical company oversight of vaccines generally.

New ¶ 103.   The FBI, in its role with respect to U.S. "critical infrastructure," also collaborates with Facebook through its public-private partnership ("InfraGard"), to censor information on Facebook's platform that expresses criticism of government "bio-security" policies. A 2019 InfraGard publication stressed that "[w]e also need social media companies to continue to refine the algorithms that power their services to better distinguish quality information from deceptions or otherwise misleading information." *The Anti-Vaxxers Movement and National Security*, THE INFRAGARD JOURNAL, Volume 2, Issue 1 (June 2019), https://www.infragardnational.org/wp-content/uploads/2019/07/InfraGard_June_2019_Article3.pdf.

New ¶ 104.   Plaintiff requires process to discover in greater detail the precise means by which the U.S. Government – including, inter alia, through its GHSA funding of Poynter/IFCN, its Infragard FBI/private "partnership," and/or its U.K. "cyberwar" collaboration - implements, requires, or actively encourages the Facebook censorship at issue. On recent information and belief, Zuckerberg himself is under direct and severe pressure from the above named or other U.S. government actors to censor any criticism of government "bio-security" policies on his social media platform. In addition to these allegations, Plaintiff

requires process to prove the *non-obvious* role of the U.S. government in defendants' specific conduct at issue – precisely *because* that role is concealed from public scrutiny.

## LEGAL PRINCIPLES GOVERNING AMENDMENT

Federal Rule of Civil Procedure 15(a)(2) permits pleadings to be amended by leave of court when justice so requires. Leave to amend should be liberally granted, as the purpose of pleadings is to facilitate a proper decision on the merits. *DCD Programs, Ltd. v. Leighton*, 833 F.2d 183, 186 (9th Cir. 1987) ("Rule 15's policy of favoring amendments to pleadings should be applied with 'extreme liberality'"); *Eminence Capital, LLC v. Aspeon, Inc.*, 316 F.3d 1048, 1052 (9th Cir. 2003) (Rule 15 "is to be applied with extreme liberality"); *Howey v. United States*, 481 F.2d 1187 (9th Cir. 1973). The Supreme Court has explained:

> Rule 15 (a) declares that leave to amend "shall be freely given when justice so requires"; this mandate is to be heeded. *See generally*, 3 Moore, Federal Practice (2d ed. 1948), paras. 15.08, 15.10. . . . In the absence of any apparent or declared reason -- such as undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of allowance of the amendment, futility of amendment, etc. -- the leave sought should, as the rules require, be "freely given."

*Foman v. Davis*, 371 U.S. 178, 182 (1962); *see also Riley v. Taylor*, 62 F.3d 86, 89-92 (3rd Cir. 1995). Such factors are not given equal weight; prejudice to the opposing party is the most important factor, *see Eminence Capital, LLC. v. Aspeon*, 316 F.3d 1048, 1052 (9th Cir. 2002), and delay alone is insufficient reason to deny leave to amend, *see Bowles v. Reade*, 198 F.3d 752, 758 (9th Cir. 1999).

## AMENDMENT IS PROPER AND IN THE
## INTERESTS OF JUSTICE IN PLAINTIFF'S CASE

Pursuant to the above standards, the requested leave to amend should be granted. None of the factors that might militate against permitting an amendment are present. As an initial

matter, Plaintiff has acted diligently in seeking the proposed amendment. Undersigned counsel filed a 148-page First Amended Complaint by right a short time ago on November 13, 2020 (Fed. R. Civ. P. 15(a)(1)(B)). Thereafter, counsel were informed of additional information (some of which are truly new facts) which bears significantly on the *Bivens* "color of law" Claim 1. Counsel have promptly brought this information to the Court's attention, which adds as many facts to those allegations as it is within Plaintiff's power to procure without subpoena power. Moreover, Plaintiff's request will not create an undue delay of the proceedings, as none of the Defendants has filed a response to the First Amended Complaint.[3] On these facts, there can be no suggestion that Plaintiff has acted in a dilatory fashion or in bad faith.

Nor will Defendants suffer any undue prejudice by the Court's allowance of an amendment. In their original motion to dismiss, Facebook/Zuckerberg took the position that Plaintiff did not allege that any federal actor was sufficiently intertwined with Facebook's censorship of CHD's content so as to to sustain Plaintiff's *Bivens* claim that Facebook's conduct constitutes state action. *See, e.g.*, Dkt. #56, p. 11 of 33. Undoubtedly, Defendants will continue to assert this position. Plaintiff strongly disagrees with Defendants' stance and will vigorously oppose any motion to dismiss brought by Defendants. The new allegations are clearly germane to, and provide additional support for, Plaintiff's *Bivens* claim. The Court, of course, need not determine these issues now. The essential point at this stage is that Defendants have been on notice of the *Bivens* claim since Plaintiff's original complaint was filed on August 17, 2020. There can be no reasonable argument that Defendants' ability to litigate the claim will be impaired by Plaintiff's requested amendment. *See Howey v. United States*, 481 F.2d 1187, 1190-92 (9th Cir. 1973) (finding lack of prejudice because the party opposing amendment had, through the course of the litigation, been "on notice" of the grounds underlying the movant's claim and were "prepared to litigate the substantive issues"). In sum,

---

[3] Plaintiff maintains that, to the extent Rule 16 is applicable, there is also "good cause" to alter the Court's November 9, 2020 briefing schedule order, if necessary. *See* Fed. R. Civ. P. 16(b)(4) ("A schedule may be modified only for good cause and with the judge's consent").

Plaintiff's proposed amendment will do nothing to alter the parties' respective positions in this litigation, and thus Defendants cannot show that they will be prejudiced by Plaintiff's request.

     Finally, Plaintiff's requested amendment would not be futile, as each of the seven new paragraphs adds additional facts to the complex web of public-private relationships which lie at the heart of the *Bivens* claim. Thus, it would not prove futile for Plaintiff to make the requested amendment or for the Court to consider the fully-pleaded claims presented therein in the context of Defendants' renewed motions to dismiss.

## CONCLUSION

     For the reasons stated above, CHD requests an order granting it leave to file the Verified Second Amended Complaint and Exhibits lodged herewith.

Dated: December 4, 2020        Respectfully submitted,

ROBERT F. KENNEDY, JR.
Founder and Chairman, Children's Health Defense

MARY S. HOLLAND
General Counsel, Children's Health Defense



ROGER I. TEICH

Counsel for Plaintiff
Children's Health Defense

9     PLAINTIFF'S MOTION FOR LEAVE
TO FILE SECOND AMENDED COMPLAINT
*CHD v. Facebook* et al.; Case No. 3:20-cv-05787-SI