**JASSY VICK CAROLAN LLP**
KEVIN L. VICK (SBN 220738)
 kvick@jassyvick.com
800 Wilshire Blvd.
Suite 800
Los Angeles, CA 90017
Telephone: (310) 870-7048
Facsimile: (310) 870-7010

*Attorneys for Defendant The Poynter*
*Institute for Media Studies, Inc.*

**THOMAS & LOCICERO PL**
CAROL JEAN LOCICERO (*pro hac vice*)
 clocicero@tlolawfirm.com
MARK R. CARAMANICA (*pro hac vice*)
 mcaramanica@tlolawfirm.com
 601 South Boulevard
Tampa, FL 33606
Telephone: (813) 984-3060
Facsimile: (813) 984-3070

 -and-

DANIELA B. ABRATT (*pro hac vice*)
 dabratt@tlolawfirm.com
 915 Middle River Drive, Suite 309
Fort Lauderdale, FL 33304
Telephone: (954) 703-3416
Facsimile: (954) 400-5415

*Attorneys for Defendant The Poynter*
*Institute for Media Studies, Inc.*

**UNITED STATES DISTRICT COURT**

**NORTHERN DISTRICT OF CALIFORNIA**

**SAN FRANCISCO DIVISION**

| | |
|---|---|
| CHILDREN'S HEALTH DEFENSE, a Georgia non-profit organization,<br><br>                    Plaintiff,<br><br>     v.<br><br>FACEBOOK, INC., a Delaware corporation; MARK ZUCKERBERG, a California resident; SCIENCE FEEDBACK, a French corporation; THE POYNTER INSTITUTE FOR MEDIA STUDIES, INC., a Florida corporation; and DOES 1-20.<br><br>                    Defendants. | Case No.:  3:20-cv-05787-SI<br><br>**DEFENDANT THE POYNTER INSTITUTE FOR MEDIA STUDIES, INC.'S NOTICE OF MOTION AND MOTION TO DISMISS VERIFIED SECOND AMENDED COMPLAINT**<br><br>DATE: MARCH 19, 2021<br>TIME: 10 A.M.<br>COURTROOM: 1-17TH FLOOR |

TO PLAINTIFF, ALL OTHER PARTIES AND THEIR COUNSEL:

PLEASE TAKE NOTICE THAT on March 19, 2021, at 10 a.m., or as soon thereafter as counsel may be heard in Courtroom 1-17th Floor, of the United States District Courthouse for the Northern District of California, San Francisco Courthouse, 450 Golden Gate Avenue, San Francisco, California 94102, the Honorable Susan Illston, presiding, Defendant The Poynter Institute for Media Studies, Inc. ("Poynter") will and hereby does move for an order dismissing with prejudice, and without leave to amend, the Verified Second Amended Complaint ("SAC," Doc. 65-1) filed by Plaintiff Children's Health Defense ("CHD") on December 4, 2020.

Poynter brings this motion pursuant to Federal Rule of Civil Procedure 12(b)(6) and Civil Local Rule 7-2.  Defendant's motion is based upon this Notice of Motion, the accompanying Memorandum of Points and Authorities, the pleadings, files, and records in this action, and on any argument heard by the Court.

Dated: December 21, 2020

**JASSY VICK CAROLAN LLP**

By:     */s/ Kevin L. Vick*
          KEVIN L. VICK

**THOMAS & LOCICERO PL**

By:     */s/ Carol Jean LoCicero*
          CAROL JEAN LOCICERO

- 1 -

CASE NO.: 3:20-CV-05787-SI

THE POYNTER INSTITUTE FOR MEDIA
STUDIES, INC.'S MOTION TO DISMISS
VERIFIED SECOND AMENDED COMPLAINT

1

## <u>TABLE OF CONTENTS</u>

NOTICE OF MOTION AND MOTION TO DISMISS VERIFIED SECOND AMENDED COMPLAINT ........................................................................................................................ 1

TABLE OF CONTENTS ....................................................................................................... i

TABLE OF AUTHORITIES ................................................................................................. ii

MEMORANDUM OF POINTS AND AUTHORITIES ....................................................... 2

    I.       INTRODUCTION ....................................................................................... 2

    II.      STATEMENT OF RELEVANT FACTS ................................................... 3

    III.    PROCEDURAL STANDARDS APPLICABLE TO MOTIONS TO DISMISS ........ 7

    IV.    CHD FAILS TO STATE ANY CLAIMS AGAINST POYNTER ............................. 9

        a.    Count I (*Bivens*) Fails Because CHD Cannot Plausibly Allege Any Government Action or Constitutional Violation Against Poynter ............................................. 9

        b.    Count II (False Advertising) Fails Because Poynter's Alleged Action Was Not Commercial But Core Speech Protected by the First Amendment ...................... 12

        c.    Count III (RICO Fraud) Fails Under the First Amendment and is Fatally Plead… .............................................................................................................. 15

            i.    The First Amendment Bars the RICO Claim ................................. 16

            ii.    The RICO Claim is Not, and Cannot Be, Alleged with Requisite Specificity .................................................................................... 17

        d.    Count IV (Declaratory Relief) Fails Because it Seeks to Restrain Protected Speech. ............................................................................................................. 20

        e.    However Cast, CHD's Claims Are an Attack on Poynter's First Amendment-Protected Speech ............................................................................................. 21

    V.      CONCLUSION ......................................................................................... 23

SIGNATURE ATTESTATION ............................................................................................ 25

CERTIFICATE OF SERVICE ............................................................................................. 25

i

THE POYNTER INSTITUTE FOR MEDIA STUDIES, INC.'S MOTION TO DISMISS VERIFIED SECOND AMENDED COMPLAINT

1

**<u>TABLE OF AUTHORITIES</u>**

2

**CASES**

3

*Allen v. The Ghoulish Gallery*,
   No. 06-cv-371-NLS, 2007 WL 1555739 (S.D. Cal. May 23, 2007) ........................................ 20,21

4

*Architectural Mailboxes, LLC v. Epoch Design, LLC*,
   No. 10-cv-974, 2011 WL 1630809 (S.D. Cal. Apr. 28, 2011) ...................................................... 14

5

6

*Art of Living Foundation v. Does*,
   No. 10–CV–05022–LHK, 2011 WL 2441898 (N.D. Cal. June 15, 2011) .................................... 23

7

*Ashcroft v. Iqbal*,
   556 U.S. 662 (2009) .......................................................................................................... *passim*

8

9

*Baugh v. CBS, Inc.*,
   828 F. Supp. 745 (N.D. Cal. 1993) ............................................................................................... 7

10

*Beam v. Naha*,
   783 F. App'x 715 (9th Cir. 2019) ............................................................................................... 11

11

12

*Beasley v. Conagra Brands, Inc.*,
   374 F. Supp. 3d 869 (N.D. Cal. 2019) ....................................................................................... 14

13

*Bell Atlantic Corp. v. Twombly*,
   550 U.S. 544 (2007) ....................................................................................................... 8,9,11,13

14

15

*Bender v. General Services Administration*,
   539 F. Supp. 2d 702 (S.D.N.Y. 2008) ........................................................................................ 11

16

*Bivens v. Six Unknown Named Agents of the Federal Bureau of Narcotics*,
   403 U.S. 388 (1971) ....................................................................................................... 9,10,11

17

18

*Blatty v. New York Times Co.*,
   42 Cal. 3d 1033 (Cal. 1986) .................................................................................................. 22,23

19

*Bolger v. Young Drug Products Corp.*,
   463 U.S. 60 (1983) ..................................................................................................................... 13

20

21

*Bosley Medical Institute, Inc. v. Kremer*,
   403 F.3d 672 (9th Cir. 2005) ...................................................................................................... 15

22

*Boule v. Hutton*,
   328 F.3d 84 (2d Cir. 2003) ......................................................................................................... 15

23

24

*Brown v. Electronic Arts, Inc.*,
   724 F.3d 1235 (9th Cir. 2013) ...................................................................................................... 8

25

*Bulan v. JP Morgan Chase Bank*,
   No. C-10-05952 EDL, 2011 WL 13266527 (N.D. Cal. Apr. 6, 2011) ......................................... 17

26

27

ii

28

*Cervantes v. Countrywide Home Loans, Inc.*,
    656 F.3d 1034 (9th Cir. 2011) ........................................................................9

*Coastal Abstract Service, Inc. v. First American Title Ins. Co.*,
    173 F.3d 725 (9th Cir. 1999) .......................................................................13

*Cochran v. NYP Holdings, Inc.*,
    210 F.3d 1036 (9th Cir. 2000) ....................................................................23

*Connick v. Myers*,
    461 U.S. 138 (1983)....................................................................................21

*Cook, Perkiss, and Liehe, Inc. v. Northern California Collection Service Inc.*,
    911 F.2d 242 (9th Cir. 1990) ......................................................................12

*Correctional Services Corp. v. Malesko*,
    534 U.S. 61 (2001)............................................................................10,11,12

*De Havilland v. FX Networks, LLC*,
    21 Cal. App. 5th 845 (2018) ..........................................................................7

*Destfino v. Reiswig*,
    630 F.3d 952 (9th Cir. 2011) ....................................................................9,18

*Exeltis USA Inc. v. First Databank, Inc.*,
    No. 17-cv-04810-HSG, 2017 WL 6539909 (N.D. Cal. Dec. 21, 2017) ......................21

*Farah v. Esquire Magazine*,
    736 F.3d 528 (D.C. Cir. 2013) ................................................................14,15

*Gardner v. Martino*,
    563 F.3d 981 (9th Cir. 2009) ......................................................................22

*Garrison v. State of Louisiana.*,
    379 U.S. 64 (1964)......................................................................................21

*Gilbert v. Sykes*,
    147 Cal. App. 4th 13 (2007) ........................................................................22

*Graf v. Peoples*,
    No. CV 07–4731–VAP, 2008 WL 4189657 (C.D. Cal. Sept. 4, 2008) ......................18

*Hustler Magazine, Inc. v. Falwell*,
    485 U.S. 46 (1988)......................................................................................22

*Kelly v. United States*,
    140 S. Ct. 1565 (2020).................................................................................19

*Kennedy Funding, Inc. v. Chapman et al.*,
    No. C 09-01957 RS, 2010 WL 4509805 (N.D. Cal. Nov. 1, 2010)............................21

*Knievel v. ESPN*,
    393 F.3d 1068 (9th Cir. 2005) .......................................................................8

*L.A. Taxi Cooperative, Inc. v. Uber Technologies., Inc.*,

- iii -

114 F. Supp. 3d 852 (N.D. Cal. 2015) .......................................................................................15

*Lee v. City of Los Angeles,*
250 F.3d 668 (9th Cir. 2001) ......................................................................................................8

*Malley v. San Jose Midtown Development. LLC,*
No. 5:20-cv-01925 2020 WL 5877575 (N.D. Cal. Oct. 2, 2020) ...........................................8,9

*Marca v. Capella University,*
No. SACV 05-642-MLG, 2007 WL 9705901 (C.D. Cal. Sept. 28, 2007) .................................20

*Marina Point Development Associates v. United States,*
364 F. Supp. 2d 1144 (C.D. Cal. 2005) ...................................................................................16

*Mattel, Inc. v. MCA Records, Inc.,*
296 F.3d 894 (9th Cir. 2002) ...................................................................................................15

*Monachelli v. Hortonworks, Inc.,*
225 F. Supp. 3d 1045 (N.D. Cal. 2016) .....................................................................................9

*Monterey Plaza Hotel Ltd. Partnership v. Local 483 of Hotel Employees & Restaurant Employees Union, AFL-CIO,*
215 F.3d 923 (9th Cir. 2000) ...................................................................................................19

*Morse v. N. Coast Opportunities, Inc.,*
118 F.3d 1338 (9th Cir. 1997) ............................................................................................10,11

*National Organization For Women, Inc. v. Scheidler,*
510 U.S. 249 (1994).................................................................................................................16

*Nebraska Press Association v. Stuart,*
427 U.S. 539 (1976)..................................................................................................................20

*New York Times Co. v. Sullivan,*
376 U.S. 254 (1964)................................................................................................13,21,22,23

*New York Times Co. v. United States,*
403 U.S. 713 (1971)..................................................................................................................20

*Pacific Recovery Solutions v. United Behavioral Health,*
No. 4:20-v-02249 YG, 2020 WL 7439310 (N.D. Cal. Dec. 18, 2020)....................................19

*Peak Health Center v. Dorfman,*
No. 19-cv-04145-D, 2019 WL 5893188 (N.D. Cal. Nov. 12, 2019) ..........................................22

*Reader's Digest Association v. Superior Court,*
37 Cal. 3d 244 (Cal. 1984)......................................................................................................22

*Rendell-Baker v. Kohn,*
457 U.S. 830 (1982)............................................................................................................10,11

*Rice v. Fox Broadcasting Co.,*
330 F.3d 1170 (9th Cir. 2003) .............................................................................................12,13

*Royce International Broadcasting Corp. v. Field,*

- iv -

THE POYNTER INSTITUTE FOR MEDIA
STUDIES, INC.'S MOTION TO DISMISS
VERIFIED SECOND AMENDED COMPLAINT

No. C 99-4169 SI, 2000 WL 236434 (N.D. Fla. Feb. 23, 2000) ....................................................18

*Savage v. Council on American-Islamic Relations, Inc.*,
   No. C 07-6076 SI, 2008 WL 2951281 (N.D. Cal. July 25, 2008). ......................................16,17,18

*Scheidler v. National Organization for Women, Inc.*,
   537 U.S. 393 (2003).............................................................................................................................19

*Schreiber Distribution Co. v. Serv-Well Furniture Co., Inc.*,
   806 F.2d 1393 (9th Cir. 1986) ........................................................................................................17

*SDV/ACCI, Inc. v. AT&T Corp.*,
   522 F.3d 955 (9th Cir. 2008). ...........................................................................................................23

*Shwarz v. United States*,
   234 F.3d 428 (9th Cir. 2000) ..............................................................................................................8

*Solarcity Corp. v. Sunpower Corp.*,
   No. 16-CV-05509-LHK, 2017 WL 1739169 (N.D. Cal. May 4, 2017) ........................................21

*Steckman v. Hart Brewing, Inc.*,
   143 F.3d 1293 (9th Cir. 1998) ............................................................................................................9

*Sugarman v. Muddy Waters Capital LLC*,
   No. 19-cv-04248-MMC, 2020 WL 633596 (N.D. Cal. Feb. 3, 2020) ........................................19

*Swearingen v. Santa Cruz Natural, Inc.*,
   No. 13-cv-04921-SI, 2016 WL 4382544 (N.D. Cal. Aug. 17, 2016) ...........................................14

*Underwager v. Channel 9 Australia*,
   69 F.3d 361 (9th Cir. 1995) ..............................................................................................................23

*United States v. Dupre*,
   339 F. Supp. 2d 534 (S.D.N.Y. 2004)..............................................................................................20

*Virginia State Board of Pharmacy v. Virginia Citizens Consumer Council, Inc.*,
   425 U.S. 748 (1976)............................................................................................................................13

*Wojnarowicz v. American Family Association*,
   745 F. Supp. 130 (S.D.N.Y. 1990).................................................................................................. 15

*Ziglar v. Abassi*,
   137 S. Ct. 1843 (2017) ......................................................................................................................12

**STATUTES**

15 U.S.C. § 1125(a)(1)(B) .......................................................................................................................12

18 U.S.C. § 1343 .......................................................................................................................................18

**FEDERAL RULES**

Fed. R. Civ. P. 9(b) .......................................................................................................................14,17,18

Fed. R. Civ. P. 12(B)(6) .........................................................................................................................1,7

- v -

THE POYNTER INSTITUTE FOR MEDIA
STUDIES, INC.'S MOTION TO DISMISS
VERIFIED SECOND AMENDED COMPLAINT

Civ. L.R. 7-2 ........................................................................................................................1

**MISCELLANEOUS**

Greg G. Wolff, *Influenza vaccination and respiratory virus interference among Department of Defense personnel during the 2017–2018 influenza season*, SCIENCEDIRECT, (Jan. 10, 2020), https://www.sciencedirect.com/science/article/pii/S0264410X19313647# ......................................5

POYNTER, "Mission & Vision," *last visited* Dec. 21, 2020, https://www.poynter.org/mission-vision/ .....................................................................................................................................4

*The Poynter Institute 2019 Year in Review*, Jan. 2020, *available at* https://docs.google.com/presentation/d/1bDI75pm1iG_odCe-owzm_s7_IUze4cYjxE1Kt7tdE8Y/edit#slide=id.g6d37f6490d_1_18 ........................................4

POYNTER, "About," *last visited* Dec. 21, 2020, https://www.poynter.org/about/ ............................4

THE POYNTER INSTITUTE FOR MEDIA STUDIES, INC.'S MOTION TO DISMISS VERIFIED SECOND AMENDED COMPLAINT

1

## MEMORANDUM OF POINTS AND AUTHORITIES

2

## I.   INTRODUCTION

3      As stated in Poynter's motion to dismiss the original complaint in this matter (Doc. 54),

4 when it comes to protecting free speech rights, this case presents a rich irony.  Through this lawsuit

5 CHD hopes to squelch any speech it deems antagonistic to its anti-vaccination/anti-5G positions by

6 claiming that such speech somehow infringes on CHD's own speech rights.  As Poynter's original

7 motion to dismiss demonstrated, the free-flowing marketplace of ideas rejects such proscription.  But

8 in response to that motion (and Facebook's/Zuckerberg's motion to dismiss (Doc. 56)), CHD chose

9 to dodge the defendants' legal arguments, opting instead to file, not one, but two amended

10 complaints.[1]  The SAC fares no better than CHD's two prior pleadings.  CHD simply doubles down

11 on the same flawed counts originally raised, while injecting more irrelevant and bombastic

12 allegations that again fail to support any plausible claims.  Despite its expansion to 391 paragraphs,

13 now spanning 180 pages and 200 pages of exhibits, the SAC remains a paper tiger.  It must be

14 dismissed with prejudice.

15      Specifically, CHD sues the following parties for alleged *Bivens*, civil RICO, and Lanham Act

16 violations, and for declaratory relief: (1) Facebook, (2) Facebook founder and CEO Mark

17 Zuckerberg, (3) Poynter,[2] (4) Science Feedback, and (5) 20 unknown Does.  Why?  Because they

18 have dared to present the public with information CHD apparently believes runs counter to the

19 controversial messaging it propagates on its own Facebook page.

20      With respect to Poynter, CHD has failed for the third time to assert specific allegations that

21 raise any viable claims.  Buried among the pages of allegations asserting, for example, thin

22

23 ---

[1] To relieve this Court from having to hear CHD's motion to file the SAC and speed substantive
24 resolution based on CHD's third effort to state a claim, the defendants stipulated to allowing the
amendment.  *See* Doc. 66.

25

26 [2] CHD's original complaint also named PolitiFact as a defendant.  PolitiFact is a branded news fact-
checking service operated by Poynter and does not exist as a distinct legal entity.  *See* Doc. 46.  On
October 7, 2020, CHD voluntarily dismissed PolitiFact from this lawsuit.  *See* Doc. 50.

27

2

28

THE POYNTER INSTITUTE FOR MEDIA
STUDIES, INC.'S MOTION TO DISMISS
VERIFIED SECOND AMENDED COMPLAINT

government-private sector conspiracies to promote vaccine policies and globally deploy undersea internet cables that permit Facebook to spread dangerous high-speed data networks, there remains a single allegation of "false" speech allegedly made by Poynter.  At paragraph 151 of the SAC, CHD finally reveals it is upset about a fact-check Poynter's PolitiFact service performed – not on CHD speech – but on a third-party article about the flu vaccine published by a group called Collective Evolution, an article that CHD chose to share on its Facebook page.

CHD's claims against Poynter arise from PolitiFact's analysis of the accuracy of this *third-party* news article's headline discussing flu vaccines and their relation to coronaviruses.  The PolitiFact criticism of Collective Evolution's headline was itself an act of free speech protected by the First Amendment.  And the marketplace of ideas worked perfectly; Collective Evolution agreed with Poynter and revised the headline.  *See* Doc. 65-4 at 60.

CHD attempts to use this Court as its counterpunch in the marketplace of ideas, where its fringe views seek a larger audience.  Poynter's analysis of a third-party article falls squarely within First Amendment protection and the SAC must be dismissed with prejudice.  CHD has wasted hundreds of pages of allegations in the process.  It has taken its best shot, but it remains clear that no additional facts can cure the fatal First Amendment defects.  No further amendment should be permitted.  Specific grounds for dismissing the SAC with prejudice are set forth below.

## II.    STATEMENT OF RELEVANT FACTS

This statement of facts is limited to those bearing directly on Poynter and the related (failed) counts against it.  This Court need not consider any additional allegations to fully dismiss Poynter.

As alleged in the SAC, CHD is a non-profit membership organization founded in 2015 whose mission is to "educate the public about the risks and harmful effects of chemical exposures upon prenatal and children's health, including from particular vaccines and environmental health hazards, such as 5G and wireless networks and products, and to advocate for social change both legislatively and through judicial action."  Doc. 65-1, SAC at ¶ 14.  Robert F. Kennedy, Jr. founded and leads CHD.  *See id.* at ¶¶ 14, 24.  In approximately November of 2017, CHD created

- 3 -

a Facebook page where, among other things, it "uploads articles or video posts from the CHD website to its Facebook page on a daily (or more frequent) basis, along with other articles or video posts, and hyperlinks to CHD's archived articles of interest to its community." *Id.* at ¶ 33.

Poynter is a Florida corporate non-profit organization. *See id.* at ¶ 21.  Poynter is a well-known journalism institution that existed well before CHD (or Facebook).  Founded in 1975, it is a recognized world leader in the field of journalism and ethics training, newsroom diversity and leadership, and fostering local news.  It has also established itself as a regarded fact-checking entity.  Stated broadly, its mission is to champion freedom of expression, civil dialogue, and compelling journalism that helps people participate in a healthy democracy.[3]  As part of this mission, for example, in 2019 Poynter partnered with more than 470 organizations, including NPR, The Washington Post, PBS, and ESPN, for various teaching workshops on reporting and ethics.[4]  Poynter also strives to improve community trust in journalism and to help young people identify credible news through a program created in tandem with Stanford University.[5]

PolitiFact is a branded news fact-checking service operated by Poynter.  As part of its fact-checking service, PolitiFact maintains companion websites with other media partners, including, for example, Capital Public Radio in Sacramento, California.  PolitiFact also engages with social media companies like Facebook to fact-check content shared on social media platforms.  *See* Doc. 65-1, SAC at ¶ 21.  To date, PolitiFact has published over 16,000 facts checks on content appearing in various media.[6]

---

[3] *See* POYNTER, "Mission & Vision," *last visited* Dec. 10, 2020, https://www.poynter.org/mission-vision/.

[4] *See The Poynter Institute 2019 Year in Review*, Jan. 2020, *available at* https://docs.google.com/presentation/d/1bDI75pm1iG_odCe-owzm_s7_IUze4cYjxE1Kt7tdE8Y/edit#slide=id.g6d37f6490d_1_18.

[5] *See id.* at 27.

[6] *See* About, POYNTER, *last visited* Dec. 10, 2020, https://www.poynter.org/about/.

As mentioned earlier, Poynter's inclusion in this lawsuit still stems from one fact-check of content appearing on Facebook.  The SAC alleges that "[o]n or about April 16, 2020 and thereafter, Facebook and PolitiFact, its purportedly 'independent fact-checker,' blocked CHD from displaying an article concerning a study in the journal Collective-Evolution.com[7] which found a 'significantly' greater risk of contracting coronavirus among individuals in the study who received the influenza vaccine, and Facebook and Politi[F]act fraudulently misrepresented to all third-party users that the post was 'False Information Checked by independent fact-checkers.'" *See id*. at ¶ 151.  Paragraph 152 of the SAC includes a screenshot of CHD's sharing of the subject article with the PolitiFact fact-check appended.  Multiple salient points are evident from this screenshot:

A.  The subject article is not the speech of CHD, nor is it about CHD;

B.  The article originated from a third-party website, collective-evolution.com;

C.  The Collective Evolution article was shared by CHD on its Facebook page on April 16, 2020 as the global COVID-19 pandemic was exploding;

D.  The (original) title of the subject Collective Evolution article is "*New Study: The Flu Vaccine is 'Significantly Associated' With An Increased Risk of Coronavirus*";

E.  The appended PolitiFact fact-check rated Collective Evolution's headline as "false," noting that the article related to 2017-18 flu season data, which could not include COVID-19, a strain first discovered in late 2019;

F.  The subject Collective Evolution article was shared, commented on, and otherwise engaged with on the CHD Facebook page hundreds of times; and

G.  Access to the Collective Evolution article was not "blocked" on the CHD page, but instead contained the PolitiFact fact-check.

*See id*. at ¶ 152.

---

[7] The Collective Evolution article, in turn, discusses a study published in a journal titled "Vaccine."  Collective Evolution itself is not a research journal.  *See* https://www.sciencedirect.com/science/article/pii/S0264410X19313647#.

THE POYNTER INSTITUTE FOR MEDIA
STUDIES, INC.'S MOTION TO DISMISS
VERIFIED SECOND AMENDED COMPLAINT

Paragraph 154 of the SAC then provides a screenshot from PolitiFact's July 16, 2020 explanation (with sourcing) for its fact-check on the Collective Evolution article.  *See* SAC at ¶ 154.  CHD also attaches the full PolitiFact fact-check of that article as an exhibit.  *See* Doc. 65-4 at 59, 68-79. Among other things, the fact-check noted that the scientific study cited in the article related to coronaviruses prevalent in 2017-18, and did not concern the current COVID-19 strain that has caused the worldwide pandemic.  *See id.* at 68.  Based on this and other disclosed bases, PolitiFact determined the Collective Evolution headline to be "ambiguous and misleading," thus rating it as "false."  *Id.*  CHD acknowledges that such fact-checking conclusions at times inherently involve matters of opinion based on disclosed facts (*see* SAC at ¶ 214) and tellingly omits that Collective Evolution itself apparently accepted PolitiFact's conclusion, correcting the article's headline.  It now reads: "*Study: The Flu Vaccine Is 'Significantly Associated' With An Increased Risk of Coronaviruses — **Not COVID-19**.*"  *See* Doc. 65-4 at 60 (emphasis added).

While the SAC is littered with bold assertions of a vast conspiracy and coordinated fraudulent schemes among the defendants designed to silence CHD's message, damage its reputation, and suppress its fundraising abilities, CHD's allegations against Poynter remain anemic.[8]  *See* SAC at ¶¶ 151-155.  Regarding the *Bivens* claim (Count I), there are no specific, plausible allegations of any coordination between government, government actors like U.S. Representative Adam Schiff, and Poynter.  *See id.* at ¶¶ 303-328.  The same holds true for the Lanham Act false advertising claim (Count II), which, regardless of unfair competition law's inapplicability to the *marketplace of ideas*, preoccupies itself with allegations directed toward Facebook and Mark Zuckerberg.[9]  *See id.* at ¶¶ 329-372.  Like Count I, the civil RICO claim

---

[8] In a deep subsection of the SAC styled "Facebook's Adverse Motives…Zuckerberg's Personal Involvement and Biases," CHD obliquely references another alleged "Poynter/PolitiFact" fact-check regarding a claim that the Gates Foundation was responsible for the paralysis of 496,000 children in India when it tested a polio vaccine but does not connect it to the claims against Poynter.  *See* SAC ¶ 264.

[9] By noting that the SAC's allegations are almost entirely directed to other defendants, Poynter is not suggesting that such allegations are accurate, or that the counts against those parties have any independent merit.  Poynter maintains this action should be entirely dismissed as to all defendants with prejudice but limits its arguments to the claims specifically made against it.

(Count III) provides no more factual allegations as to Poynter's role in the alleged conspiracy other than Poynter's engaging in its own First Amendment right to fact-check the Collective Evolution third-party content.  Somehow, this equates to wire fraud.  Again, CHD hangs a RICO conspiracy against Poynter on nothing more than the single fact-check.  *See id*. at ¶¶ 373-385. Finally, Count IV, which seeks declaratory and injunctive relief, is perhaps most troubling of all. *See* SAC ¶¶ 386-391.  It is, on its face, simply inapplicable to Poynter under the alleged facts, and asks this Court to unconstitutionally enjoin Defendants' ability to publish any views potentially challenging those espoused by CHD on controversial topics like vaccination safety.

Finally, as discussed in section IV.e. on page 21, while CHD attempts to dodge First Amendment flaws,[10] it is clear that the fact-check cited is, at bottom, protected opinion involving a third-party.  Fundamentally, in challenging alleged false speech, the First Amendment mandates the speech be "of and concerning" CHD, and not opinion.  These realities doom all counts.

## III.   PROCEDURAL STANDARDS APPLICABLE TO MOTIONS TO DISMISS

Poynter has been sued for exercising its First Amendment rights.  It is therefore proper for this Court to give the SAC heightened scrutiny that favors early disposition. *See*, *e.g.*, *Baugh v. CBS, Inc.*, 828 F. Supp. 745, 752-55 (N.D. Cal. 1993) ("Summary disposition is particularly favored in cases involving First Amendment rights," noting "California's preference for speedy resolution of free speech cases."); *De Havilland v. FX Networks, LLC*, 21 Cal. App. 5th 845, 871 (2018) ("Because unnecessarily protracted litigation would have a chilling effect upon the exercise of First Amendment rights, speedy resolution of cases involving free speech is desirable.") (citations omitted).

To survive a Rule 12(b)(6) motion for failure to state a claim, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"

---

[10] CHD in fact recognizes that its allegations implicate First Amendment law.  Mortally tangled in its own allegations, CHD parrots the actual malice First Amendment standard: all defendants "were aware [of], or acted with reckless disregard" to the alleged "falsities" of the Collective Evolution fact-check.  *See* SAC at ¶ 155.  Parroting the law cannot save CHD's first, second, or third complaint.

THE POYNTER INSTITUTE FOR MEDIA
STUDIES, INC.'S MOTION TO DISMISS
VERIFIED SECOND AMENDED COMPLAINT

*Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).  A plaintiff must allege concrete *facts* raising the right to relief from merely "speculative" to "plausible." *Twombly*, 550 U.S. at 555, 570.  Determining plausibility "is a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *See Iqbal*, 556 U.S. at 679.  When pleaded facts "do not permit the court to infer more than the mere possibility of misconduct, the complaint" fails to show entitlement to relief as required by Federal Rule of Civil Procedure 8(a)(2).  *Id.*

A plaintiff cannot simply regurgitate labels, conclusions, and "a formulaic recitation of the elements of a cause of action." *Twombly*, 550 U.S. at 555.  "[N]aked assertions devoid of further factual enhancement" are also insufficient to survive a motion to dismiss.  *Iqbal*, 556 U.S. at 678 (internal quotations omitted); *see also Brown v. Elec. Arts, Inc.*, 724 F.3d 1235, 1248 (9th Cir. 2013) (courts may disregard "unreasonable inferences or . . . legal conclusions cast in the form of factual allegations.").  Finally, a "court need not accept as true [] allegations that contradict facts that may be judicially noticed by the court[.]" *Shwarz v. U.S.*, 234 F.3d 428, 435 (9th Cir. 2000).

Moreover, in ruling on a motion to dismiss, a court may take judicial notice of items and documents outside the pleadings when such items are referenced in the complaint.  *See, e.g., Lee v. City of Los Angeles*, 250 F.3d 668, 688-89 (9th Cir. 2001) ("a court may consider material which is properly submitted as part of the complaint on a motion to dismiss without converting the motion to dismiss into a motion for summary judgment . . . [and] [i]f the documents are not physically attached to the complaint, they may be considered if the documents' authenticity . . . is not contested and the plaintiff's complaint necessarily relies on them.") (quotations omitted); *Knievel v. ESPN*, 393 F.3d 1068, 1076-77 (9th Cir. 2005) (on motion to dismiss, taking judicial notice of entire news article at issue in defamation claim where Plaintiff referenced only portion of the same in complaint); *Malley v. San Jose Midtown Dev. LLC*, No. 5:20-cv-01925, 2020 WL 5877575, at *3 (N.D. Cal. Oct. 2, 2020) ("[t]he incorporation by reference doctrine allows the Court to consider documents that are extensively referred to in the complaint or that form the basis

- 8 -

of the plaintiff's claims."); *Monachelli v. Hortonworks, Inc.*, 225 F. Supp. 3d 1045, 1055 n.1 (N.D. Cal. 2016) (same).

In addition, "shotgun pleadings," such as the SAC, are subject to dismissal where they "'overwhelm defendants with an unclear mass of allegations and make it difficult or impossible for defendants to make informed responses to the plaintiff's allegations,' and are 'unacceptable' under the pleading standards of Rule 8, *Iqbal*, and *Twombly*." *See Gillespie v. Cty. of Alameda*, No. 20-cv-03735-DMR, 2020 WL 5106858, at *2 (N.D. Cal. Aug. 31, 2020) (quoting *Sollberger v. Wachovia Sec., LLC*, No. SACV 09-0766 AG (ANx), 2010 WL 2674456, at *4 (C.D. Cal. June 30, 2010)). A complaint that alleges "everyone did everything" constitutes one form of shotgun pleading. *Destfino v. Reiswig*, 630 F.3d 952, 958 (9th Cir. 2011).

CHD's multiple complaints fails these clear standards. CHD has thrice attempted—and failed—to allege facts subjecting Poynter to liability. A fourth chance should not be given. *See Cervantes v. Countrywide Home Loans, Inc.*, 656 F.3d 1034, 1042 (9th Cir. 2011) (affirming dismissal without leave to amend because "amendment would be futile"); *Steckman v. Hart Brewing, Inc.*, 143 F.3d 1293, 1298 (9th Cir. 1998) (affirming grant of motion to dismiss with prejudice and noting that the general rule allowing for amendment "does not extend to cases in which any amendment would be an exercise in futility").

## IV. CHD FAILS TO STATE ANY CLAIMS AGAINST POYNTER.

CHD has alleged no bases for relief against Poynter. First, each claim fails in its own substantive right because CHD cannot plead any plausible factual allegations to substantiate them. Second, CHD cannot avoid the obvious First Amendment infirmities inherent in its claims, which are solely focused on Poynter's protected speech. That speech relates to a matter of public concern, is not about CHD, and constitutes protected opinion. Ultimately, CHD has failed three times to allege any viable claims. Accordingly, the SAC should be dismissed with prejudice.

### a. Count I (*Bivens*) Fails Because CHD Cannot Plausibly Allege Any Government Action or Constitutional Violation Against Poynter.

In *Bivens*, the Supreme Court recognized an implied private right of action for damages

- 9 -

1    against federal agents acting under color of law when those agents engage in unconstitutional

2    conduct.  *See Bivens v. Six Unknown Named Agents of the Fed. Bureau of Narcotics*, 403 U.S.

3    388, 389 (1971).  This simple recitation of the nature of a *Bivens* claim dooms CHD's theory.

4    Poynter is not a federal agent but a private corporation.  There are no plausible allegations in the

5    SAC that Poynter took any action on behalf of any government.  There are also no plausible

6    allegations that Poynter engaged in any unconstitutional conduct.  In reality, the actions CHD

7    alleges Poynter took are themselves fully protected under the First Amendment.

8          As a threshold matter, the Supreme Court has made clear that a *Bivens* claim can never

9    proceed against a corporate entity.  *See Corr. Servs. Corp. v. Malesko*, 534 U.S. 61, 63 (2001).  In

10   declining to permit a plaintiff to sue a private corporation that contracted with the federal

11   government to house federal prisoners and detainees, the Court noted that "[t]he purpose of *Bivens*

12   is to deter individual officers from committing constitutional violations."  *Id.* at 70.  Permitting a

13   corporate defendant to be sued would undermine the deterrent effect of *Bivens* "[f]or if a corporate

14   defendant is available for suit, claimants will focus their attention on it, and not the individual

15   directly responsible for the alleged injury."  *Id.* at 71.  Poynter's corporate status is plain,

16   undisputed, and affirmatively acknowledged by CHD.  *See* SAC at Case Caption, p. 2, ¶ 21.

17   Poynter's status is a complete bar to the *Bivens* claim.

18         Beyond this, CHD has failed to allege facts that even remotely suggest Poynter had any

19   connection to the kind of state action required to support a *Bivens* claim.[11]  Again, the crucial

20

21   _____

     [11] Furthermore, CHD attempts to use contributions from two donors to establish that Poynter acted

22   on behalf of the government.  *See* SAC ¶ 98.  In paragraph 98, CHD asserts that Poynter (and its
     International Fact-Checking Network) receives some level of funding through an organization

23   known as the National Endowment for Democracy, which in turn allegedly receives
     Congressionally allocated funding from the U.S. Department of State, along with some direct

24   funding from the Department of State.  But allegations of funding receipt fail to plausibly establish
     that Poynter acted on behalf of the federal government.  This remains true even when, unlike

25   Poynter, the private organization is primarily funded by government and highly regulated.  *See*
     *Rendell-Baker v. Kohn*, 457 U.S. 830, 840-41 (1982) (holding that dependence on state funding

26   does not transform the acts of a private entity into those of the government for similar Section
     1983 state action analysis); *Morse v. N. Coast Opportunities, Inc.*, 118 F.3d 1338, 1341 (9th Cir.

27   1997) (relying on *Rendell-Baker* to analyze *Bivens* and Section 1983 issues involving non-profit,
     private entity and affirming Rule 12(b)(6) dismissal because "governmental funding and extensive

28

                                                  - 10 -

factual allegation Poynter can discern is its act of fact-checking the Collective Evolution article. *See* SAC at ¶¶ 151-155.  Moreover, Count I's factual allegations almost exclusively relate to asserted actions of Facebook and Zuckerberg with respect to purported coordination with Rep. Adam Schiff, the Centers for Disease Control and Prevention, and the World Health Organization. *See* SAC at ¶¶ 303-328.  Nowhere in the SAC does CHD plausibly allege Poynter undertook any action on the state's behalf or otherwise worked with state actors to violate CHD's constitutional rights.[12]  Count I fails *Twombly/Iqbal* as to Poynter and must be dismissed on this ground as well.

Most importantly, CHD cannot allege any constitutional violation committed by Poynter. CHD alleges that it has been deprived of its First and Fifth Amendment rights but again provides no specific facts as to how Poynter purportedly restricted those rights.  However misguided, CHD's allegations are directed at Facebook and Mr. Zuckerberg, not Poynter.  There are no specific factual allegations establishing Poynter took any action to restrict CHD's speech or hamper its fundraising abilities, much less in an unconstitutional manner.  In reality, CHD seeks to punish Poynter's exercise of its First Amendment rights.  This Court should not credit such hypocrisy.

CHD would also have this Court expand *Bivens* beyond all recognition.  The Supreme Court has been reluctant to broaden *Bivens*' scope:

> In 30 years of *Bivens* jurisprudence we have extended its holding only twice, to provide an otherwise nonexistent cause of action against *individual officers* alleged to have acted unconstitutionally, or to provide a cause of action for a plaintiff who lacked *any alternative remedy* for harms caused by an individual officer's unconstitutional conduct.

---

regulation without more will not suffice to establish governmental involvement in the actions of a private entity."); *Beam v. Naha*, 783 F. App'x 715, 716 (9th Cir. 2019) (holding *Bivens* claim failed *Rendell-Baker* government action analysis despite substantial federal funding).  And again, even if funding were to suffice, Poynter, as a corporate entity, cannot be sued under *Bivens*.  *See Malesko*, 534 U.S. at 63; *Bender v. Gen. Srvs. Admin.*, 539 F. Supp. 2d 702, 708 (S.D.N.Y. 2008) ("*Bivens* actions may not be brought against private corporations, even when they act under the color of federal law.").

[12] Moreover, CHD's conclusory allegation that Facebook controlled Poynter and dictated its fact-checks is not only false, but also a far cry from anything resembling action on behalf of the *government*.  *See id.* at ¶ 21.

- 11 -

CASE NO.: 3:20-CV-05787-SI                THE POYNTER INSTITUTE FOR MEDIA
                                          STUDIES, INC.'S MOTION TO DISMISS
                                          VERIFIED SECOND AMENDED COMPLAINT

1   *Malesko*, 534 U.S. at 70 (emphasis in original); *see also Ziglar v. Abassi*, 137 S. Ct. 1843, 1857

2   (2017) (noting the Court's reticence to expand *Bivens* to new contexts or categories of defendants

3   and that finding implied causes of action is now a "disfavored" judicial action) (*citing Iqbal*, 556

4   U.S. at 675).

5       For these reasons, Count I must be dismissed with prejudice.

6       **b.  Count II (False Advertising) Fails Because Poynter's Alleged Action Was Not**
        **Commercial But Core Speech Protected by the First Amendment.**

7

8       Count II of the SAC is a claim against all Defendants for false advertising under the

9   Lanham Act, 15 U.S.C. § 1125(a)(1)(B).  *See* SAC at ¶ 329.  As to Poynter, this count fails

10  because federal false advertising claims require damage resulting from materially false statements

11  of fact contained in commercial advertising or promotion.  No such commercial or promotional

12  activity exists here.  The fact-check was not directed at CHD, much less commercial speech about

13  a competing "product" or "service."  The allegations in Count II are conclusory and do not focus

14  on Poynter, but, again, are preoccupied with actions purportedly taken by Facebook and/or

15  Zuckerberg.  *See* SAC at ¶¶ 329-372.  Count II must also be dismissed with prejudice.

16      As the case law cited in the SAC recognizes, to sustain a false advertising claim against

17  Poynter under 15 U.S.C. § 1125(a)(1)(B), CHD must establish:

18      (1) Poynter made a false statement of fact about Poynter's own or another's product in an

19          advertisement;

20      (2) the advertisement did or could have the tendency to deceive a substantial portion of

21          CHD's audience;

22      (3) the false statement is material so that it is likely to influence a purchasing decision of

23          CHD's audience;

24      (4) Poynter caused its falsely advertised goods to enter the marketplace; and

25      (5) CHD was or likely was injured as a result.

26  *See Rice v. Fox Broad. Co.*, 330 F.3d 1170, 1180 (9th Cir. 2003) (*citing Cook, Perkiss, & Liehe,*

27  *Inc. v. N. Cal. Collection Serv.*, 911 F.2d 242, 244 (9th Cir. 1990)), *overruled on other grounds.*

28

- 12 -

Here, to constitute advertising or promotion under the Lanham Act, Poynter's fact-check must be: (1) deemed commercial speech; (2) from a commercial organization in competition with CHD; (3) undertaken for the purpose of influencing consumers to purchase Poynter's products/services instead; and (4) sufficiently disseminated to the relevant consumer market. *See Rice*, 330 F.3d at 1181 (*citing Coastal Abstract Serv., Inc. v. First Am. Title Ins. Co.*, 173 F.3d 725, 735 (9th Cir. 1999)).

Commercial speech is, at its core, "speech which does 'no more than propose a commercial transaction.'" *See Bolger v. Young Drug Prods. Corp.*, 463 U.S. 60, 66 (1983) (*quoting Va. State Bd. of Pharmacy v. Va. Citizens Consumer Council, Inc.*, 425 U.S. 748, 762 (1976)). Even in cases where a defendant concedes the speech is an advertisement (which is not the case here), courts will look to other factors such as whether the speech at issue mentions a specific product and whether there is an economic motivation to engage in the speech. *See Bolger*, 463 U.S. at 66-67 (citations omitted). In fact, the landmark defamation case *New York Times Co. v. Sullivan*, 376 U.S. 254 (1964), was one in which the subject speech concerning the Montgomery Police Department's treatment of civil rights protesters was contained in an advertisement that solicited donations. *See Sullivan*, 376 U.S. at 256-57. Yet, the Court still deemed the ad core political speech, thus requiring the police chief plaintiff to show that the statements he claimed were defamatory were made with "actual malice." *See id.* at 279-83.

CHD's false advertising claim simply cannot pass *Twombly/Iqbal* plausibility standards and further fails as a matter of law. For starters, Poynter obviously made no false statement about a product in the context of an advertisement or promotion. Rather, as discussed repeatedly and admitted by CHD, Poynter published a rating based on disclosed facts about flu vaccines and COVID-19. Next, it is equally clear that the fact-check article does not meet the definition of an "advertisement." It proposes no commercial transaction on its face. Poynter offers no product for sale in the marketplace through this reporting. In addition, Poynter and CHD are not commercial competitors. Finally, CHD cannot plausibly claim that Poynter's single act of fact-checking a third-party article headline and fully disclosing the bases for its conclusion – one which Collective

THE POYNTER INSTITUTE FOR MEDIA STUDIES, INC.'S MOTION TO DISMISS VERIFIED SECOND AMENDED COMPLAINT

Evolution accepted – could have caused any "consumer" to be deceived and otherwise alter purchasing behavior.  The Count is legally deficient and falls short of the heightened pleading specificity courts routinely apply to false advertising claims under Federal Rule of Civil Procedure 9(b)[13] because they typically involve fraud allegations.  *See*, *e.g.*, *Architectural Mailboxes, LLC v. Epoch Design, LLC*, No. 10-cv-974, 2011 WL 1630809, at *5 (S.D. Cal. Apr. 28, 2011) (collecting cases applying FRCP 9(b) to Lanham Act false advertising claims and noting it requires pleading the specific "who, what, when, why, and how of the alleged false advertising."); *Beasley v. Conagra Brands, Inc.*, 374 F. Supp. 3d 869, 874 (N.D. Cal. 2019) (applying FRCP 9(b) to California state law false advertising claim); *Swearingen v. Santa Cruz Nat., Inc.*, No. 13-cv-04921-SI, 2016 WL 4382544, at *2 (N.D. Cal. Aug. 17, 2016) (same).

Finally, as mentioned, the only market that exists here is a non-commercial one: the *marketplace of ideas* where freedom to speak and comment upon matters of public debate are constitutionally protected.  Attempts to contort such speech into false advertising claims are routinely rejected.  For example, in *Farah v. Esquire Magazine*, the District of Columbia Court of Appeals affirmed a lower court's dismissal of defamation, Lanham Act false advertising, and various other claims regarding an *Esquire Magazine* Politics Blog posting critical of a book promoting the birther conspiracy surrounding President Barack Obama—who three weeks before the book's release disclosed his long-form Hawaii birth certificate.  *See Farah v. Esquire Magazine*, 736 F.3d 528, 530 (D.C. Cir. 2013).  Specifically, the post satirically stated that the book had been recalled one day after its release, and the publisher was now offering refunds.  *See id.*  In upholding dismissal of the author's and publisher's false advertising claim, the court rejected the argument that the parties were competitors for purposes of the Lanham Act.  *See id.* at 541.  The court observed, "The mere fact that the parties may compete in the *marketplace of ideas* is not sufficient to invoke the Lanham Act.  To the contrary, it reinforces *Esquire*'s position that

---

[13] "In alleging fraud or mistake, a party must state with particularity the circumstances constituting fraud or mistake.  Malice, intent, knowledge, and other conditions of a person's mind may be alleged generally."  Fed. R. Civ. P. 9(b).

- 14 -

its blog post was political speech aimed at critiquing Farah and Corsi's position on the birth

certificate question." *Id.* It concluded by noting that the Lanham Act is not designed to impose

liability on those "communicating ideas or expressing points of view." *Id.* (*citing Bosley Med.*

*Inst., Inc. v. Kremer*, 403 F.3d 672 (9th Cir. 2005)).

Other courts have held similarly, noting that when speech is not purely commercial,

Lanham Act overreach can tread upon First Amendment rights. *See Boule v. Hutton*, 328 F.3d 84,

91-92 (2d Cir. 2003) (statements in news article on fraud in the art market were not commercial

speech because they involved matters of public concern and appeared "in a forum that has

traditionally been granted full protection under the First Amendment"); *Mattel, Inc. v. MCA*

*Records, Inc.*, 296 F.3d 894, 906-07 (9th Cir. 2002) (use of Barbie mark in song lampooning

Barbie image is fully protected speech even if song itself is commercially promoted);

*Wojnarowicz v. Am. Family Ass'n*, 745 F. Supp. 130, 141 (S.D.N.Y. 1990) (dismissing Lanham

Act false advertising claim related to distribution of pamphlet critical of public funding of art

projects defendant found distasteful, noting that the pamphlet did not constitute advertising or

promotion and that the act "has never been applied to stifle criticism of the goods or services of

another by one, such as a consumer advocate, who is not engaged in marketing or promoting a

competitive product or service."); *L.A. Taxi Coop. v. Uber Techs., Inc.*, 114 F. Supp. 3d 852, 864-

65 (N.D. Cal. 2015) (dismissing Lanham Act false advertising claim because challenged

statements appeared in context of news media articles on matter of public debate—the safety of

taxi and Uber rides). Poynter's speech deserves equal protection.

At bottom, CHD has failed to plead a plausible Lanham Act false advertising claim against

Poynter and could never overcome the First Amendment barriers to such a claim anyway. The

Court need not accept its conclusory allegations. Count II should be dismissed with prejudice.

### c.  Count III (RICO Fraud) Fails Under the First Amendment and is Fatally Plead.

The First Amendment also bars CHD's civil RICO claim. CHD further cannot state a

RICO cause of action with the requisite specificity nor can it state specific facts as to each element

of the claim. Count III too, therefore, fails.

- 15 -

THE POYNTER INSTITUTE FOR MEDIA
                                        STUDIES, INC.'S MOTION TO DISMISS
                                        VERIFIED SECOND AMENDED COMPLAINT

#### i. The First Amendment Bars the RICO Claim.

While the specifics of CHD's RICO claim are difficult to discern, it is clear from the SAC overall that CHD hinges this claim on Poynter's Collective Evolution fact-check.  Somehow, that single journalistic effort magically equates to a predicate wire fraud act and is part of the alleged RICO conspiracy among all defendants to damage CHD.  *See* SAC at ¶¶ 373-385.  Again, the First Amendment is a bar, and the Supreme Court recognizes the free speech risks RICO claims can pose.  It is "prudent to notice that RICO actions could deter protected advocacy and to caution courts applying RICO to bear in mind the First Amendment interests that could be at stake."  *Nat'l Org. For Women, Inc. v. Scheidler*, 510 U.S. 249, 265 (1994) (Souter, J., concurring).  Dismissal is therefore appropriate when "somewhat elastic RICO predicate acts may turn out to be fully protected First Amendment activity." *Id.* at 264.

This Court has also previously recognized the important First Amendment rights implicated where, as here, "the gravamen of [the] plaintiff's dispute is with the ideas that defendants may or may not espouse."  *Savage v. Council on American-Islamic Relations, Inc.*, No. C 07-6076 SI, 2008 WL 2951281, at *10 (N.D. Cal. July 25, 2008) (Illston, J.).  In *Savage*, the plaintiff, a nationally syndicated radio host, accused the defendants of supporting terrorist organizations and sued them under RICO for posting a four-minute clip from plaintiff's show and their criticism of plaintiff's anti-Muslim remarks.  *Id.* at *1.  This Court explained that nearly all of the defendants' activities that formed the basis of the RICO claim "are related to speech and thus may have First Amendment protection."  *Id.* at *10.  This Court also noted that "there would be 'grave concerns were ... defendants held liable under civil RICO for engaging in the expression of dissenting political opinions in a manner protected under the First Amendment.'"  *Id.* at *12; *see also Marina Point Dev. Assocs. v. U.S.*, 364 F. Supp. 2d 1144, 1149 (C.D. Cal. 2005) (RICO claim dismissed because defendant was immune from liability based on its petitioning activities under First Amendment).

Because CHD's alleged injury stems from Poynter's speech, as in *Savage*, it must "show with 'convincing clarity' that defendants' allegedly injurious false statement or portrayal of

- 16 -

*plaintiff's own speech* was done 'with actual malice-that is, with knowledge that it was false or with reckless disregard of whether it was false or not.'" *Id.*  Here, CHD has not, and cannot, allege any facts to show Poynter acted with actual malice in publishing a *false* fact-check on *CHD* speech.  Again, the fact-check was on an article from Collective Evolution, not CHD, and Collective Evolution accepted the fact-check and revised its headline.  *See* Doc. 65-4 at 60. Moreover, the fact-check cited numerous reputable sources as the basis for the "false" rating, and accordingly CHD cannot show that Poynter acted with "reckless disregard" for the truth.  *See id.* at 68.  CHD has further not alleged any activity on the part of Poynter that would constitute a RICO predicate act.  To the contrary, all that is alleged is that Poynter engaged in protected speech. The RICO count fails.

### ii. The RICO Claim is Not, and Cannot Be, Alleged with Requisite Specificity.

As with Count II, CHD must allege a wire fraud "with particularity" under FRCP 9(b), including specifying "the who, what, when, where, and how" of the alleged fraudulent conduct, and "where multiple defendants are involved, the plaintiff must, at a minimum, identify the role of each defendant in the alleged fraudulent scheme." *Bulan v. JP Morgan Chase Bank*, No. C-10-05952 EDL, 2011 WL 13266527, at *5 (N.D. Cal. Apr. 6, 2011) (citations omitted).  Where wire fraud is alleged as the underlying conduct, "such fraud must be pled with particularity which 'requires the identification of the circumstances constituting fraud so that the defendant can prepare an adequate answer from the allegations.'" *Id.* (quoting *Schreiber Distr. Co. v. Serv-Well Furniture Co., Inc.*, 806 F.2d 1393, 1400 (9th Cir. 1986)).

Preliminarily, CHD fails to state specifically which allegations are material to the RICO claim and to Poynter's particular alleged involvement.  Rather, it merely lumps together all defendants to assert their actions constitute a common fraud scheme:

> all named defendants . . . aided in one or another aspect of their common fraud scheme: to label Plaintiff's page "unreliable" and "out-of-date" and redirect users to the CDC; to label Plaintiff's speech-content "False" when it is critical of vaccine or 5G network safety, accomplishing this censorship through the shame machinations of "content moderators" and "independent fact-checkers"; and to

- 17 -

THE POYNTER INSTITUTE FOR MEDIA
STUDIES, INC.'S MOTION TO DISMISS
VERIFIED SECOND AMENDED COMPLAINT

1

2

> conceal their true purposes of profiting from vaccine manufacturer advertising ad
> from their own vaccine and 5G network development . . .

3

4

*See* SAC at ¶ 377.  This overbroad pleading style is improper and requires dismissal, for it is

5

impossible for Poynter to understand specifically what actions of its own CHD incorporates into

6

this count.  *See Destfino*, 630 F.3d at 958 (dismissing shotgun pleading where "the complaint

7

grouped multiple defendants together and failed to 'set out which of the defendants made which of

8

the fraudulent statements/conduct.'"); *Savage*, 2008 WL 2951281, at *14 (finding plaintiff failed

9

to meet the requirements of FRCP 9(b) where he merely "set[] forth a redundant narrative of

10

allegations and conclusions of law, but ma[de] no attempt to allege what facts are material to his

11

claims under the RICO statute, or which facts are used to support what claims under particular

12

subsections of RICO."); *Graf v. Peoples*, No. CV 07–4731–VAP, 2008 WL 4189657, at *6 (C.D.

13

Cal. Sept. 4, 2008) ("Plaintiff's RICO claims incorporate the Complaint's initial lengthy

14

description of many different asserted acts of wrongdoing by various Defendants. Plaintiff does

15

not expressly identify any RICO predicate acts, but simply incorporates his previous allegations.

16

Such 'shotgun' pleading is insufficient to plead a RICO claim.").

17

Moreover, CHD has otherwise failed to adequately allege the multiple elements necessary

18

to state a viable RICO claim, namely, "(1) conduct (2) of an enterprise (3) through a pattern (4) of

19

racketeering activity (known as 'predicate acts') (5) causing injury to plaintiff's 'business or

20

property.'"  *See Graf*, 2008 WL 4189657, at *6; *Royce Int'l Broad. Corp. v. Field*, No. C 99-4169

21

SI, 2000 WL 236434, at *4-6 (N.D. Fla. Feb. 23, 2000) (Illston, J.) (dismissing wire fraud action

22

without leave to amend where plaintiff asserted garden-variety business dispute and failed to

23

establish elements for the RICO statute, whose goal is "eradict[ing] organized, long-term criminal

24

activity.")

25

For example, the "conduct" – or predicate act – on which CHD relies simply does not

26

constitute wire fraud.  This is because the wire fraud statute explicitly requires an intent to "obtain

27

*money or property* [from the one who is deceived] by means of false or fraudulent pretenses,

28

representations, or promises."  *See Kelly v. U.S.*, 140 S. Ct. 1565, 1571-73 (2020) (the *object* of a

wire fraud scheme must be to deprive the victim of "money or property"); *Monterey Plaza Hotel*

- 18 -

THE POYNTER INSTITUTE FOR MEDIA
STUDIES, INC.'S MOTION TO DISMISS
VERIFIED SECOND AMENDED COMPLAINT

1    *Ltd. P'ship v. Local 483 of Hotel Employees & Restaurant Employees Union, AFL-CIO*, 215 F.3d

2    923, 926-27 (9th Cir. 2000) (citing 18 U.S.C. § 1343) (dismissing RICO claim where defendant

3    "did not *obtain* property by deceiving [plaintiff] or its customers . . . [defendant's] conduct may

4    have been vexatious or harassing, but it was not acquisitive.") (emphasis in original).  And

5    reputation, business goodwill, and customers are not "property" for purposes of this statute. *Id.*

6          For example, in *Sugarman v. Muddy Waters Capital LLC*, plaintiffs sued defendants under

7    RICO for the publication of allegedly false and misleading statements about plaintiffs on a blog

8    and website, claiming readers ceased doing business with the plaintiffs as a result. No. 19-cv-

9    04248-MMC, 2020 WL 633596, at *1 (N.D. Cal. Feb. 3, 2020).  The plaintiffs claimed these

10   readers – not the plaintiffs themselves – were defrauded by the defendants.  *Id.* at *2.  But because

11   the plaintiffs did not allege any facts to show that defendants actually obtained any money or

12   property, this Court dismissed the RICO action, ruling that the alleged "conduct" did not

13   constitute wire fraud.  *Id.* at *3; *see also Scheidler v. Nat'l Org. for Women, Inc.*, 537 U.S. 393,

14   404-05, 411 (2003) (RICO claim dismissed where predicate act, which required that defendant

15   "obtain" property, was unsubstantiated: "even when [defendants'] acts of interference and

16   disruption achieved their ultimate goal of 'shutting down' [plaintiffs' business], such acts did not

17   constitute extortion because petitioners did not 'obtain' respondents' property."); *Pacific Recovery*

18   *Sols. v. United Behavioral Health*, No. 4:20-v-02249 YG, 2020 WL 7439310, at *6-*7 (N.D. Cal.

19   Dec. 18, 2020) (dismissing RICO claim in First Amended Complaint with prejudice where

20   plaintiffs' injury was merely derivative of the injury of those who were allegedly defrauded).

21   Similarly here, CHD cannot allege that Poynter obtained any money or property from CHD or any

22   of its allegedly "defrauded" readers.[14]

23

24

---

25   [14] Moreover, CHD has failed to allege any facts that plausibly demonstrate Poynter published the
     fact-check with a specific intent to defraud, a requisite element for wire fraud.  *See U.S. v. Dupre*,

26   339 F. Supp. 2d 534, 539-40 (S.D.N.Y. 2004) ("Under the wire fraud statute, even false
     representations or statements or omissions of material facts do not amount to a fraud unless done

27   with fraudulent intent.  However misleading or deceptive a plan may be, it is not fraudulent if it
     was devised or carried out in good faith.").  Accordingly, Poynter's alleged conduct simply does

28   not constitute the requisite intentional conduct.

- 19 -

1

2

3

CHD has similarly failed to allege any facts to support the remaining elements of the RICO claim, and the failure to properly allege any one element defeats the entire claim. Count III must be dismissed.

4

5

       **d.** **Count IV (Declaratory Relief) Fails Because it Seeks to Restrain Protected Speech.**

6

7

8

9

10

11

12

13

Finally, CHD's request for injunctive and declaratory relief against Poynter is flatly unconstitutional.  First, any order halting speech bears a "heavy presumption" of unconstitutionality because prior restraints "are the most serious and the least tolerable infringement on First Amendment rights."  *Neb. Press Ass'n v. Stuart*, 427 U.S. 539, 558-59 (1976).  "The damage can be particularly great when the prior restraint falls upon the communication of news and commentary on current events."  *Id.* at 559.  As such, courts have repeatedly struck down injunctions against speech because they are flagrant First Amendment violations.  *See*, *e.g.*, *New York Times Co. v. U.S.*, 403 U.S. 713, 714 (1971) (per curiam).

14

15

16

17

18

19

20

21

22

23

24

25

26

27

CHD seeks to publish on its page "without any interference, censorship, [and] warning labels," and requests an injunction because the "injuries are continuing in nature."  *See* SAC ¶¶ 390-391.  Moreover, it specifically requests this Court issue an injunction ordering Facebook "to desist from any further warnings or classifications."  *See id.* at p. 150, Prayer for Relief.  Because CHD seeks to enjoin Poynter's future speech, the proposed injunction constitutes an impermissible prior restraint.  *See Marca v. Capella Univ.*, No. SACV 05-642-MLG, 2007 WL 9705901, at *2 (C.D. Cal. Sept. 28, 2007) (refusing to order an injunction on speech alleged to be misleading and false); *Allen v. The Ghoulish Gallery*, No. 06-cv-371-NLS, 2007 WL 1555739, at *3 (S.D. Cal. May 23, 2007) ("Defamatory statements cannot be restrained; the remedy for defamation is a damages action after publication."); *Exeltis USA Inc. v. First Databank, Inc.*, No. 17-cv-04810-HSG, 2017 WL 6539909, at *4-5 (N.D. Cal. Dec. 21, 2017) (denying injunction as impermissible prior restraint). The irony of CHD's requested relief is again patent: it requests an injunction on others' protected speech while belaboring its own First Amendment rights.  *See* SAC at ¶¶ 390-391.

28

1

With regard to the requested declaratory relief, CHD seeks judicial guidance "so that

2

Plaintiff may ascertain its rights to publish content on those pages without any interference,

3

censorship, warning labels, 'shadowbanning,' 'deboosting,' 'sandboxing,' or other deceptive

4

means and methods employed by defendants…"  SAC at ¶ 384.  But the relief sought here is

5

essentially a request for an adjudication on the same (failed) issues raised within the prior three

6

counts of the SAC and, therefore, does not represent an independent claim.  *See Kennedy Funding,*

7

*Inc. v. Chapman*, No. C 09-01957 RS, 2010 WL 4509805, at *2 (N.D. Cal. Nov. 1, 2010)

8

(dismissing without leave to amend claim for declaratory relief where it sought an adjudication on

9

the same underlying issue in another count); *Solarcity Corp. v. Sunpower Corp.*, No. 16-CV-

10

05509-LHK, 2017 WL 1739169, at *3 (N.D. Cal. May 4, 2017) (same).  Count IV must be

11

dismissed as to Poynter.

12

### e.   However Cast, CHD's Claims Are an Attack on Poynter's First Amendment-Protected Speech.

13

14

"[S]peech concerning public affairs is more than self-expression; it is the essence of self-

15

government."  *Garrison v. State of La.*, 379 U.S. 64, 74-75 (1964).  "The First and Fourteenth

16

Amendments embody our 'profound national commitment to the principle that debate on public

17

issues should be uninhibited, robust, and wide-open….'"  *Id.* at 75 (*quoting Sullivan*, 376 U.S. at

18

270).  That is, speech on matters of public concern lies at the core of what the First Amendment

19

protects.  *See Connick v. Myers*, 461 U.S. 138, 145 (1983) ("speech on public issues occupies the

20

'highest rung of the hierarchy of First Amendment values,' and is entitled to special protection.").

21

As explained, CHD has sued Poynter because it allegedly suffered damage from a "false"

22

fact-check on a third-party news article headline.  But nearly 400 paragraphs of allegations

23

notwithstanding, CHD cannot avoid confronting the First Amendment.  *See Peak Health Ctr. v.*

24

*Dorfman*, No. 19-cv-04145-D, 2019 WL 5893188, at *8 (N.D. Cal. Nov. 12, 2019) ("plaintiffs

25

cannot avoid First Amendment limitations by 'creative pleading[s]' that 'affix a label other than

26

'defamation' to injurious falsehood claims") (internal citation omitted); *Gardner v. Martino*, 563

27

F.3d 981, 992 (9th Cir. 2009) (any claim brought as a result of constitutionally-protected speech is

28

still subject to the First Amendment requirements governing defamation).

Stated another way, the First Amendment circumscribes "all claims whose gravamen is the alleged injurious falsehood of a statement." *Blatty v. New York Times Co.*, 42 Cal. 3d 1033, 1042 (Cal. 1986). Thus, "liability cannot be imposed on any theory for what has been determined to be a constitutionally protected publication." *Reader's Digest Ass'n v. Superior Court*, 37 Cal. 3d 244, 265 (Cal. 1984) (dismissing libel and false light claims on same constitutional grounds). Other California courts, as well as the U.S. Supreme Court, have dismissed derivative claims where an underlying defamation claim failed. *See Gilbert v. Sykes*, 147 Cal. App. 4th 13, 34 (2007) ("the collapse of [plaintiff's] defamation claim spells the demise of all other causes of action in the cross-complaint such as . . . intentional infliction of emotional distress, all of which allegedly arise from the same publications on [defendant's] Web site."); *Hustler Magazine, Inc. v. Falwell*, 485 U.S. 46, 50, 54-56 (1988) (plaintiff cannot evade constitutional defenses to a libel claim by restyling claim as intentional infliction claim).

Like Dr. Sykes and Jerry Falwell, CHD cannot sidestep First Amendment protections by labeling what is fundamentally a (failed) defamation claim another cause of action. CHD recognizes that this case is fundamentally about speech, as it specifically references the elements of defamation under California law in the Lanham Act claim in Count II (*see* SAC ¶¶ 343-345).

Under applicable case law, CHD's claims fail for at least two reasons. First, the challenged fact-check on Collective Evolution's speech does not discuss or identify CHD and was, therefore, not "of and concerning" CHD. Since the U.S. Supreme Court's 1964 decision in *Sullivan*, the "of and concerning" requirement has been of constitutional magnitude. *Sullivan*, 376 U.S. at 288 ("We also think the evidence was constitutionally defective in another respect: it was incapable of supporting the jury's finding that the allegedly libelous statements were made 'of and concerning' respondent."). Notably, like here, the Court in *Sullivan* also recognized that the speech at issue never actually identified the plaintiff police chief L.B. Sullivan by name or position. Therefore, it was not "of and concerning" him for defamation purposes. *See Sullivan*, 376 U.S. at 288-89.

1    When no reasonable reader would conclude the challenged speech refers to a plaintiff, no

2 defamation can lie. *See id.* at 288; *see also Blatty*, 42 Cal. 3d at 1046; *Art of Living Found. v.*

3 *Does*, No. 10–CV–05022–LHK, 2011 WL 2441898, at *6 (N.D. Cal. June 15, 2011) ("[t]he First

4 Amendment requires a plaintiff to establish that the statement on which the defamation claim is

5 based is 'of and concerning' the plaintiff.") (citation omitted).  Determining whether a statement is

6 "of and concerning" a plaintiff is a question of law. *See SDV/ACCI, Inc. v. AT&T Corp.*, 522 F.3d

7 955, 959 (9th Cir. 2008).   Here, the fact check did not involve CHD's speech, but on its face, the

8 speech of a third-party, Collective Evolution.  The Court need look no farther than the Collective

9 Evolution post and PolitiFact fact-check embedded in paragraph 152 of the SAC.  The fact-check

10 simply was not "of and concerning" CHD.

11    Second, CHD's claims must also fail because the speech complained of constitutes

12 protected opinion based on disclosed facts. *See*, *e.g.*, *Cochran v. NYP Holdings, Inc.*, 210 F.3d

13 1036, 1038 (9th Cir. 2000) (per curiam) (finding that calling someone a liar was, in context, a

14 protected opinion in part because the facts underlying the opinion were disclosed in the column);

15 *Underwager v. Channel 9 Austl.*, 69 F.3d 361, 367 (9th Cir. 1995) (same and also noting such

16 phrases like "lying" also amount to non-actionable rhetorical hyperbole).  The fact-check

17 reviewed the Collective Evolution headline and article, along with additional cited sources, and

18 determined that the headline was misleading.[15]  *See* Doc. 65-4 at 68. Thus, Poynter rated the

19 headline as "false." *Id.*  This also necessarily dooms every count against Poynter because both

20 *Bivens* and RICO liability require unconstitutional or otherwise illegal action, Lanham Act false

21 advertising requires false commercial speech, and CHD has no right to restrict constitutionally

22 protected speech as requested in its declaratory/injunctive relief count.

23 **V.    CONCLUSION**

24    For the foregoing reasons, Poynter's Motion to Dismiss the Verified Second Amended

25 Complaint should be granted with prejudice.

26

27 _____

28 [15] As previously noted, for this reason as well CHD cannot allege any facts to establish that
Poynter acted with actual malice in publishing the fact-check.

CASE NO.: 3:20-CV-05787-SI                    THE POYNTER INSTITUTE FOR MEDIA
                                              STUDIES, INC.'S MOTION TO DISMISS
                                              VERIFIED SECOND AMENDED COMPLAINT

1   Dated: December 21, 2020                    **JASSY VICK CAROLAN LLP**
2                                               By:    _/s/ Kevin L. Vick_____
                                                       KEVIN L. VICK
3
                                                **THOMAS & LOCICERO PL**
4                                               By:    _/s/ Carol Jean LoCicero_____
                                                       CAROL JEAN LOCICERO
5
6                                               *Attorneys for Defendant,*
                                                *The Poynter Institute for Media Studies, Inc.*
7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**SIGNATURE ATTESTATION**

I am the ECF User whose identification and password are being used to file the foregoing.

Pursuant to Civil Local Rule 5-1(i), I hereby attest that the other signatures have concurred in this

filing.

Dated: December 21, 2020                    By:     */s/ Kevin L. Vick*                                 
                                                          Kevin L. Vick


**CERTIFICATE OF SERVICE**

I hereby certify that on December 21, 2020, I electronically filed the above document with

the Clerk of the Court using CM/ECF which will send electronic notification of such filing to all

registered counsel.

Dated: December 21, 2020                    By:     */s/ Kevin L. Vick*                                 
                                                          Kevin L. Vick

Case No.: 3:20-cv-05787-SI                                  THE POYNTER INSTITUTE FOR MEDIA
                                                            STUDIES, INC.'S MOTION TO DISMISS
                                                            VERIFIED SECOND AMENDED COMPLAINT