ROGER I. TEICH
California State Bar No. 147076
290 Nevada Street
San Francisco, CA 94110
Telephone:  (415) 948-0045
E-Mail Address:  rteich@juno.com

ROBERT F. KENNEDY, JR.
MARY HOLLAND
Children's Health Defense
1227 North Peachtree Parkway, Suite 202
Peachtree City, GA 30269
Telephone:  (917) 743-3868
E-Mail Address:  mary.holland@childrenshealthdefense.org

Attorneys for Plaintiff
CHILDREN'S HEALTH DEFENSE

# UNITED STATES DISTRICT COURT

# NORTHERN DISTRICT OF CALIFORNIA

# SAN FRANCISCO DIVISION

| | |
|---|---|
| CHILDREN'S HEALTH DEFENSE,<br><br>              Plaintiff,<br><br>       v.<br><br>FACEBOOK, INC., et al.,<br><br>              Defendants. | Case No. 3:20-cv-05787-SI<br><br>**PLAINTIFF'S OPPOSITION TO DEFENDANTS FACEBOOK AND MARK ZUCKERBERG'S MOTION TO DISMISS**<br><br>Fed. R. Civ. P. 12(b)(6) |

Plaintiff's Opposition to Defendants
Facebook and Zuckerberg's Motion to Dismiss
*CHD v. Facebook* et al.; Case No. 3:20-cv-05787-SI

# **TABLE OF CONTENTS**

Page #

TABLE OF AUTHORITIES .................................................................................................. iii

MEMORANDUM OF POINTS AND AUTHORITIES IN OPPOSITION TO DEFENDANTS
FACEBOOK AND ZUCKERBERG'S MOTION TO DISMISS ............................................ 1

FACTUAL STATEMENT ..................................................................................................... 1

ARGUMENT .......................................................................................................................... 4

    I.     DEFENDANTS DISTORT THE "PLAUSIBILITY" REQUIREMENT OF FED.
         R. CIV. P. 12(B)(6). .................................................................................................... 4

    II.    CHD HAS FULLY AND ADEQUATELY PLEADED ITS CONSTITUTIONAL
         CLAIMS ........................................................................................................................ 4

         A.     Defendants Are Not Entitled to Dismissal on State Action Grounds. ................... 4

               1.    CHD Has Plausibly Alleged Governmental Coercion. ............................... 5

               2.    CHD Has Alleged Significant Encouragement Through Section 230
                    of the Communications Decency Act. ........................................................ 6

               3.    CHD Has Plausibly Pleaded Joint Activity. .............................................. 7

         B.     Defendants' *Bivens* Arguments Misapprehend the Law. ........................................ 8

               1.    The Ninth Circuit Permits First Amendment *Bivens* Claims. ..................... 8

               2.    CHD's Injunctive Claim Is Not a *Bivens* Claim. ....................................... 9

         C.     CHD'S Takings Claims Are Adequately Pleaded. ................................................ 9

               1.    Takings Claims May Be Brought Against Corporate Defendants. ............. 9

               2.    CHD Has Plausibly Pleaded a Taking. ...................................................... 10

    III.   CHD HAS ADEQUATELY PLEADED ITS RICO FRAUD CLAIM (COUNT 3). ...... 10

         A.     CHD Has Alleged Multiple Acts of Wire Fraud. .................................................. 10

         B.     CHD Has Statutory Standing to Bring its Civil RICO Claim. .............................. 15

         C.     CHD Has Adequately Pleaded a RICO Pattern. .................................................. 16

    IV.   CHD HAS ADEQUATELY PLEADED ITS LANHAM ACT CLAIM (COUNT 2). ..... 16

         A.     Defendants' Claim that CHD Lacks Standing Because Facebook "Does Not
             Compete" with CHD Contradicts Supreme Court Precedent. ............................. 17

         B.     CHD Has Adequately Alleged Promotion and Commercial Speech. ................... 18

    V.    DEFENDANTS' AFFIRMATIVE DEFENSES FAIL AS A MATTER OF LAW ......... 19

i

**Plaintiff's Opposition to Defendants
Facebook and Zuckerberg's Motion to Dismiss**
*CHD v. Facebook* et al.; Case No. 3:20-cv-05787-SI

A.    The First Amendment Does Not Bar Claims Based in Fraud............................. 19

B.    Defendants' Actual Malice Defense Fails as a Matter of Law and Fact. ............ 20

    1.    The Actual Malice Requirement Does Not Apply to CHD's RICO or Lanham Act Claims. .................................................................................. 20

    2.    CHD Has Adequately Pleaded Actual Malice. ......................................... 21

C.    Defendants Are Not Entitled to Dismissal on the Basis of Section 230 Immunity................................................................................................................ 23

    1.    Section 230 Immunity Does Not Apply to Lanham Act or RICO Claims Alleging "Anti-Competitive Conduct."........................................ 23

    2.    Section 230 Also Does Not Apply By Its Own Terms. ........................... 24

    3.    CHD Has Adequately Pleaded Agency. ................................................... 24

    4.    CHD Plausibly Alleges that Defendants Are Responsible for the Creation and Development of Fact-Checker Content That Precludes Section 230 Immunity.............................................................................. 25

    5.    As Applied Here, Section 230's Constitutionality Would Raise Serious Issues of Law and Fact That Cannot Be Resolved on this Rule 12(b)(6) Motion. ..................................................................................... 26

VI.    CHD HAS ADEQUATELY PLEADED CLAIMS AGAINST ZUCKERBERG. .......... 27

CONCLUSION ................................................................................................................... 28

**Plaintiff's Opposition to Defendants**
**Facebook and Zuckerberg's Motion to Dismiss**
*CHD v. Facebook* et al.; Case No. 3:20-cv-05787-SI

# <u>TABLE OF AUTHORITIES</u>

**Federal Cases**

*Adams v. Johnson*,
    355 F.3d 1179 (9th Cir. 2004) ................................................................................9

*AFGE Local 1 v. Stone*,
    502 F.3d 1027 (9th Cir. 2007) ..............................................................................9

*Amalgamated Food Employees Union v. Logan Valley Plaza*,
    391 U.S. 308 (1968) .............................................................................................7

*Animal Legal Def. Fund v. HVFG LLC*,
    939 F. Supp. 2d 992 (N.D. Cal. 2013) ...............................................................12

*Ariix, LLC v. NutriSearch, Corp.*,
    2021 U.S. App. LEXIS 1776 (9th Cir. Jan. 22, 2021) .....................17, 18, 19, 21

*Armstrong v. United States*,
    364 U.S. 40 (1960) ..............................................................................................10

*Ashcroft v. Iqbal*,
    556 U.S. 662 (2009) ..............................................................................................4

*Asurvio LP v. Malwarebytes Inc.*,
    2020 U.S. Dist. Lexis 53906 (C.D. Cal. 2020) ..................................................23

*Atlantic Coast Demolition & Recycling v. Board of Chosen Freeholders*,
    112 F.3d 652 (3d Cir. 1997)................................................................................27

*Bantam Books, Inc. v. Sullivan*,
    372 U.S. 58 (1963) ................................................................................................5

*Bell Atl. Corp. v. Twombly*,
    550 U.S. 544 (2007)...............................................................................4, 24, 28

*Bias v. Wells Fargo & Co.*,
    942 F. Supp. 2d 915 (N.D. Cal. 2013) ...............................................................14

*Birthright v. Birthright, Inc.*,
    827 F. Supp. 1114 (D.N.J. 1993) ..................................................................17, 19

*Boise Cascade Corp. v. United States*,
    296 F.3d 1339 (Fed. Cir. 2002)...........................................................................10

*Boule v. Egbert*,
    980 F.3d 1309 (9th Cir. 2020) ..............................................................................8

*Bridge v. Phoenix Bond & Indem. Co.*,
    553 U.S. 639 (2008)............................................................................................15

iii

**Plaintiff's Opposition to Defendants**
**Facebook and Zuckerberg's Motion to Dismiss**
*CHD v. Facebook* et al.; Case No. 3:20-cv-05787-SI

*Brill v. Correct Care Sols.*,
    LLC, 286 F. Supp. 3d 1210 (D. Colo. 2018) ....................................................................4

*Burton v. Wilmington Parking Authority*,
    365 U.S. 715 (1961) .......................................................................................................8

*Cal Pure Pistachios, Inc. v. Primex Farms, LLC*,
    2010 U.S. Dist. LEXIS 148263 (C.D. Cal. 2010).........................................................17

*Camps Newfound/Owatonna v. Town of Harrison*,
    520 U.S. 564 (1997) .....................................................................................................17

*Carlin Communications, Inc. v. Mountain States Tel.*,
    827 F.2d 1291 (9th Cir. 1987) ........................................................................................5

*Carpenter v. United States*,
    484 U.S. 19 (1987) .......................................................................................................13

*Cent. Hudson Gas & Elec. Corp. v. Pub. Serv. Comm'n of N.Y.*,
    447 U.S. 557 (1980) .....................................................................................................19

*Coastal Abstract Serv. v. First Am. Title Ins. Co.*,
    173 F.3d 725 (9th Cir. 1999) ..................................................................................21, 27

*Cohen v. Cowles Media Co.*,
    501 U.S. 663 (1991) .....................................................................................................20

*Committee for Idaho's High Desert, Inc. v. Yost*,
    92 F.3d 814 (9th Cir. 1996) ..........................................................................................17

*Correctional Servs. Corp. v. Malesko*,
    534 U.S. 61 (2001) .........................................................................................................8

*Denver Area Educ. Telecomm. Consortium, Inc. v. FCC*,
    518 U.S. 727 (1996) .....................................................................................................27

*Divino Grp. LLC v. Google LLC*,
    2021 U.S. Dist. LEXIS 3245 (N.D. Cal. Jan. 6, 2021) ..................................................8

*Dreamstime.com, LLC v. Google, LLC*,
    2019 U.S. Dist. LEXIS 94573 (N.D. Cal. 2019) ..........................................................20

*Eastman Chemical Co. v. Plastipure, Inc.*,
    775 F.3d 230, 236-37) (2014) .......................................................................................19

*Eastwood v. National Enquirer, Inc.*,
    123 F.3d 1249 (9th Cir. 1999) ..................................................................................21, 22

*Enigma Software Grp. USA, LLC v. Bleeping Computer LLC*,
    194 F. Supp. 3d 263 (S.D.N.Y. 2016).....................................................................24, 25

**Plaintiff's Opposition to Defendants**
**Facebook and Zuckerberg's Motion to Dismiss**
*CHD v. Facebook* et al.; Case No. 3:20-cv-05787-SI

*Enigma Software Grp. USA, LLC v. Malwarebytes, Inc.*,
   946 F.3d 1040 (9th Cir. 2019) ......................................................................23

*Evans v. Valero Energy Corp.*,
   No. CV F 07-0130 (E.D. Cal. Mar. 6, 2007) ..................................................5

*Fair Hous. Council v. Roommates.com, LLC*,
   521 F.3d 1157 (9th Cir. 2008) .................................................................24, 26

*Feminist Women's Health Ctr. v. Roberts*,
   1989 U.S. Dist. LEXIS 5837 (W.D. Wash. 1989) ........................................20

*FTC v. Accusearch Inc.*,
   570 F.3d 1187 (10th Cir. 2009) ...................................................................26

*George v. Edholm*,
   752 F.3d 1206 (9th Cir. 2014) .....................................................................27

*Giboney v. Empire Storage & Ice Co.*,
   336 U.S. 490 (1949) ...................................................................................19

*H.J. Inc. v. Nw. Bell Tel. Co.*,
   492 U.S. 229 (1989) ...................................................................................16

*Harmoni Int'l Spice, Inc. v. Hume*,
   914 F.3d 648 (9th Cir. 2019) .......................................................................16

*Harte-Hanks Comms., Inc. v. Connaughton*,
   491 U.S. 657 (1989) ...................................................................................21

*Hartman v. Gilead Sciences, Inc.*,
   536 F.3d 1049 (9th Cir. 2008) .....................................................................28

*Hoffman v. Capital Cities/ABC Inc.*,
   255 F.3d 1180, 1185 (9th Cir. 2001) ...........................................................21

*Holmes v. Sec. Inv'r Prot. Corp.*,
   503 U.S. 258 (1992) ...................................................................................15

*Horne v. Dep't of Agric.*,
   576 U.S. 351 (2015) ...................................................................................10

*Huntleigh USA Corp. v. United States*,
   525 F.3d 1370 (Fed. Cir. 2008).....................................................................10

*Huon v. Denton*,
   841 F.3d 733 (7th Cir. 2016) .............................................................24, 25, 26

*Johnson v. Knowles*,
   113 F.3d 1114 (9th Cir. 1997) .......................................................................7

**Plaintiff's Opposition to Defendants**
**Facebook and Zuckerberg's Motion to Dismiss**
*CHD v. Facebook* et al.; Case No. 3:20-cv-05787-SI

*Kimzey v. Yelp! Inc.*,
   836 F.2d 1263 (9th Cir. 2016) ...................................................................................26

*Lansing v. City of Memphis*,
   202 F.3d 821 (6th Cir. 2000) .......................................................................................8

*Larson v. Domestic & For. Comm. Corp.*,
   337 U.S. 682 (1949).....................................................................................................9

*Lauren Moshi LLC v. Fuentes*,
   2020 U.S. Dist. Lexis 82920 (C.D. Cal. 2020) ...................................................11, 19

*Lexmark International, Inc. v. State Control Components, Inc.*,
   572 U.S. 118 (2004)...................................................................................................17

*Living Designs, Inc. v. E.I. Dupont de Nemours & Co.*,
   431 F.3d 353 (9th Cir. 2005) .....................................................................................10

*Loretto v. Teleprompter Manhattan CATV Corp.*,
   458 U.S. 419 (1982).....................................................................................................9

*M.L. v. Craiglist, Inc.*,
   2020 U.S. Dist. LEXIS 166334 (W.D. Wash. Sept. 11, 2020)..................................24

*Manufactured Home Communities, Inc. v. County of San Diego*,
   544 F.3d 959 (9th Cir.2008) ......................................................................................12

*Marshall's Locksmith Service, Inc. v. Google*,
   LLC, 925 F.3d 1263 (D.C. Cir. 2019) .......................................................................26

*Mavrix Photographs, LLC v. LiveJournal, Inc.*,
   873 F.3d 1045 (9th Cir. 2017) ...................................................................................25

*McNally v. United States*,
   483 U.S. 350 (1987)...................................................................................................13

*Mendoza v. Zirkle Fruit Co.*,
   301 F.3d 1163 (9th Cir. 2002) ...................................................................................16

*Mid-Atl. Telecom. v. Long Distance Servs.*,
   18 F.3d 260 (4th Cir. 1994) .......................................................................................15

*Milkovich v. Lorain Journal Co.*,
   497 U.S. 1 (1990)........................................................................................................12

*Mimedx GRP., Inc. v. Osiris Therapeutics, Inc.*,
   2017 U.S. Dist. LEXIS 114105 (S.D.N.Y. 2017).......................................................19

*Ministerio Roca Solida v. McKelvey*,
   820 F.3d 1090 (9th Cir. 2016) .....................................................................................9

vi
**Plaintiff's Opposition to Defendants
Facebook and Zuckerberg's Motion to Dismiss**
*CHD v. Facebook* et al.; Case No. 3:20-cv-05787-SI

*Minneci v. Pollard,*
  565 U.S. 118 (2012)..................................................................................8

*Mitchum v. Hurt,*
  73 F.3d 30 (3rd Cir. 1995) .....................................................................9

*New York Times Co. v. Sullivan,*
  376 U.S. 254 (1964)...............................................................................20

*Norwood v. Harrison,*
  413 U.S. 455 (1973)............................................................................1, 27

*P&G v. Amway Corp.,*
  242 F.3d 539 (5th Cir. 2001) ....................................................15, 18, 20, 21

*Parks Sch. Of Bus. v. Symington,*
  51 F. 3d 1480 (9th Cir. 1995) .................................................................4

*Partington v. Bugliosi,*
  56 F.3d 1147 (9th Cir. 1995) ................................................................12

*Philip Morris v. Harshbarger,*
  1997 U.S. Dist. LEXIS 21012 (D. Mass. 1997) ...................................10

*Pizza Hut, Inc. v. Papa John's Int'l., Inc.,*
  227 F.3d 489 (5th Cir. 2000) ................................................................12

*Rahl v. N.Y. Tel. Co.,*
  2010 U.S. Dist. LEXIS 86866 (N.D.N.Y. 2010) .....................................9

*Railway Employees' Dep't v. Hanson,*
  351 U.S. 225 (1956).............................................................................6, 7

*Rattner v. Netburn,*
  930 F.2d 204 (2d Cir. 1991)....................................................................5

*Rawson v. Recovery Innovations, Inc.,*
  2017 U.S. Dist. LEXIS 176870 (W.D. Wash. 2017) ...............................4

*Resolute Forest Prods. v. Greenpeace Int'l,*
  2019 U.S. Dist. LEXIS 10263 (N.D. Cal. 2019) ...................................16

*Roberts v. AT&T Mobility LLC,*
  877 F.3d 833 (9th Cir. 2017) ................................................................27

*Rodriguez v. Swartz,*
  899 F.3d 719 (9th Cir. 2018) ..................................................................8

*Royce Int'l Broadcasting Corp. v. Field,*
  2000 U.S. Dist. LEXIS 2369 (N.D. Cal. 2000) ....................................16

**Plaintiff's Opposition to Defendants**
**Facebook and Zuckerberg's Motion to Dismiss**
*CHD v. Facebook* **et al.; Case No. 3:20-cv-05787-SI**

*Savage v. Council on Am.-Islamic Relations, Inc.*,
   2008 U.S. Dist. LEXIS 60545 (N.D. Cal. 2008) ................................................................20

*SEC v. Pirate Investor LLC*,
   580 F.3d 233 (4th Cir. 2009) ...........................................................................................20

*Skinner v. Railway Lab. Execs. Ass'n.*,
   489 U.S. 602 (1989) ........................................................................................................6, 7

*Sun Sav. and Loan Ass'n v. Dierdorff*,
   825 F.2d 187 (9th Cir. 1987) ...........................................................................................16

*Suzuki Motor Corp. v. Consumers Union of United States, Inc.*,
   330 F.3d 1110 (9th Cir. 2003) .........................................................................................23

*Threshold Enters. Ltd. v. Pressed Juicery, Inc.*,
   445 F. Supp. 3d 139 (N.D. Cal. 2020) .............................................................................13

*TransFresh Corp. v. Ganzerla & Assoc.*,
   862 F. Supp. 2d 1009 (N.D. Cal. 2012) ...........................................................................19

*U.S. Trust Co. v. New Jersey*,
   431 U.S. 1 (1977) ............................................................................................................10

*Underwager v. Channel 9 Austl.*,
   69 F.3d 361 (9th Cir. 1995) .............................................................................................12

*United Brentwood Acad. v. Tenn. Secondary Sch. Athletic Ass'n*,
   531 U.S. 288 (2001) ......................................................................................................4, 5

*United States ex rel. Polukoff v. St. Mark's Hosp.*,
   895 F.3d 730 (10th Cir. 2018) .........................................................................................22

*United States v. Clarke*,
   445 U.S. 253 (1980) ........................................................................................................10

*United States v. Hills*,
   2018 U.S. Dist. LEXIS 105804 (N.D. Ohio 2018) ...........................................................12

*United States v. Hussain*,
   972 F.3d 1138 (9th Cir. 2020) .........................................................................................11

*United States v. Lew*,
   875 F.2d 219 (9th Cir. 1989) ...........................................................................................12

*United States v. Lopez-Martinez*,
   2020 U.S. Dist. LEXIS 174251 (D.P.R. Sept. 21, 2020) ..................................................12

*United States v. Miller*,
   953 F.3d 1095 (9th Cir. 2020) .........................................................................................13

**Plaintiff's Opposition to Defendants**
**Facebook and Zuckerberg's Motion to Dismiss**
*CHD v. Facebook* et al.; Case No. 3:20-cv-05787-SI

*United States v. Rezko*,
   2007 U.S. Dist. LEXIS 73517 (N.D. Ill. Oct. 2, 2007)......................................13

*United States v. Shields*,
   844 F.3d 819 (9th Cir. 2016) .............................................................................15

*United States v. Sorich*,
   523 F.3d 702 (7th Cir. 2007) .............................................................................12

*United States v. Spano*,
   421 F.3d 599 (7th Cir. 2005) .............................................................................12

*United States v. Treadwell*,
   593 F.3d 990 (9th Cir. 2010) .............................................................................13

*United States v. Woods*,
   335 F.3d 993 (9th Cir. 2003) .............................................................................14

*Usher v. City of Los Angeles*,
   828 F.2d 556 (9th Cir. 1987) ...............................................................................4

*Virginia State Board of Pharmacy v. Virginia Citizens Consumer Council*,
   425 U.S. 748, 771 (1976).....................................................................................20

*West Va. Bd. of Ed. v. Barnette*,
   319 U.S. 624 (1943)...............................................................................................8

*Xcentric Ventures, LLC v. Borodkin*,
   798 F.3d 1201 (9th Cir. 2015) ...........................................................................16

*Zieper v. Metzinger*,
   392 F. Supp. 2d 516 (S.D.N.Y. 2005)..................................................................5

**California Cases**

*Castillo v. Glenair, Inc.*,
   23 Cal. App. 5th 262 (Cal. App. 2018)...............................................................25

**United States Constitution**

   Fifth Amendment .................................................................................................1
   First Amendment ....................................................................................... 8, *passim*

**Federal Statutes**

Lanham Act.................................................................................................... 1, *passim*
   § 43(a) .................................................................................................................17
   § 43(a)(1)(A) .......................................................................................................21
   § 43(a)(1)(B) ..................................................................................................20, 21

**Plaintiff's Opposition to Defendants
Facebook and Zuckerberg's Motion to Dismiss**
*CHD v. Facebook* et al.; Case No. 3:20-cv-05787-SI

42 U.S.C.
    § 1983.................................................................................................................8

47 U.S.C.
    § 230........................................................................................................ 3, *passim*
    § 230(c)(1) ..........................................................................................................5
    § 230(c)(2) .......................................................................................................6, 7
    § 230(c)(2)(A) ................................................................................................6, 26
    § 230(f)(3) ....................................................................................................24, 26

**California Statutes**

Labor Code
    §§ 2775-2776 .....................................................................................................25
    § 2776 (a)(1) ......................................................................................................25

**Federal Rules of Civil Procedure**

    Rule 9(b) ............................................................................................................19
    Rule 12(b)(6) ................................................................................................ 4, *passim*

**Other Authorities**

*Fact-Checking on Facebook*, FACEBOOK FOR BUSINESS, https://tinyurl.com/y33wyhe2
    (last accessed Dec. 20, 2021) .......................................................................2, 11

*Fees and Eligibility*, FACEBOOK SOCIAL IMPACT (2021),
    https://socialimpact.facebook.com/charitable-giving/#Fees-and-eligibility.......................13

x

**Plaintiff's Opposition to Defendants
Facebook and Zuckerberg's Motion to Dismiss**
*CHD v. Facebook* et al.; Case No. 3:20-cv-05787-SI

## MEMORANDUM OF POINTS AND AUTHORITIES IN OPPOSITION TO DEFENDANTS FACEBOOK AND ZUCKERBERG'S MOTION TO DISMISS

Since May 2019, Defendants Facebook and Mark Zuckerberg have engaged in a deliberate, systematic effort to degrade and destroy Plaintiff Children's Health Defense ("CHD") by fraudulently branding CHD's Facebook content as false, fraudulently directing users to competitor sites, and fraudulently preventing Facebook users from donating to CHD. The reason for Defendants' animus against CHD is clear. CHD is a nonprofit organization dedicated to exposing the truth about the severe health dangers of certain vaccines and technologies in which Defendants have immense, multi-billion-dollar financial interests. As alleged in detail in the Second Amended Complaint ("SAC"), federal actors and agencies encouraged, coerced, and jointly participated in Defendants' ongoing misconduct. As a result, Defendants' conduct amounts to state action violating CHD's First and Fifth Amendment rights. The threat to free speech is especially grave here because governmental agents have in essence deputized Facebook to do what the government itself is "constitutionally forbidden to accomplish." *Norwood v. Harrison*, 413 U.S. 455, 465 (1973). Defendants' conduct also constitutes well-pleaded corporate fraud under RICO and the Lanham Act. Defendants' motion to dismiss should be denied.

## FACTUAL STATEMENT

Plaintiff CHD, a nonprofit organization headquartered in Georgia, believes that our children are being exposed to health- and life-threatening dangers by the vaccine industry from which large pharmaceutical corporations reap hundreds of billions of dollars in revenues. CHD also believes that 5G wireless technology, promoted by behemoth Internet interests, poses similarly high risks. CHD further believes that our national health watchdog, the Centers for Disease Control and Prevention ("CDC") and other federal agencies, are untrustworthy, having accepted tens of millions of dollars in funding by the very pharmaceutical and Internet companies (again including Facebook) whose products it evaluates.[1] SAC ¶¶ 5, 7-8, 14-15, 24-34, 40-59, 228-59, 281-93.

---

[1] While CHD's views challenge corporate and governmental orthodoxy, CHD is not the only party sounding these alarms. For example, a 2020 study of over 2000 young children published in a peer-reviewed Sage medical journal found that vaccination led to a higher incidence of several major adverse health consequences; as the article points out, while each separate vaccine is allegedly safety-tested by its manufacturer before going to market, much less is known about the cumulative effect of the multi-vaccine regime administered to our children. SAC ¶¶ 129, 234-35; Exh. "B" at 80-82, 89-91. Numerous

1                 **Plaintiff's Opposition to Defendants
Facebook and Zuckerberg's Motion to Dismiss**
*CHD v. Facebook* **et al.; Case No. 3:20-cv-05787-SI**

To alert the public to these grave dangers, CHD posts links to articles in reputable scientific journals and publishes opinions expressed by doctors, scientists, and others, including its founder, Robert F. Kennedy, Jr. SAC ¶¶ 15, 27-34. All such material is constitutionally protected speech on matters of serious public concern. Even the Defendants in this case do not claim otherwise.

But Facebook and Zuckerberg have multi-billion-dollar for-profit financial interests in the very vaccine programs and wireless technology that CHD is warning against. SAC ¶¶ 274-91. Facebook has substantial direct investments and stakes in 5G technology, and Zuckerberg has invested $45 billion in a for-profit vaccine development corporation. *Id.* ¶¶ 281, 284-91. As a result, Defendants have waged a campaign to degrade, discredit and defund CHD.

Since January 2019, Defendants have repeatedly posted labels and overlays directly on CHD's Facebook page branding CHD content as "false," out of date, and unreliable. SAC ¶¶ 68-70, 78-79, 81-82, 115-195, 340, 346-355. Facebook represents to its users that these are determinations reached by trustworthy, "independent," "third-party" "fact-checkers." *Id.* ¶¶ 79; MTD Exh. 1 (*Fact-Checking on Facebook*, FACEBOOK FOR BUSINESS, https://tinyurl.com/y33wyhe2 (last accessed Dec. 20, 2021)). Facebook further represents to its users that these "independent" "fact-checkers" do not evaluate matters of opinion, but only label content "false" when that content asserts provably false facts. *Id.* ¶¶ 90, 218-21; MTD Exh. 1.

The truth is that Facebook's "fact-checkers" are not independent third parties at all. Instead, they are Facebook's agents, paid for and controlled by Facebook, which retains ultimate authority over their output. They have been directed by Facebook, both through express instructions and through Facebook algorithms that flag content for "fact-checking" review, to target those who dare to dispute CDC and WHO orthodoxy on vaccine safety -- which happens to align with Facebook's and Zuckerberg's corporate interests. SAC ¶¶ 20-21, 58, 68, 79(F), 87-94, 105-114, 210-21 311-12.

CHD's content is not false; nor is it out of date or unreliable. On the contrary, the label "false"

---

studies have found serious potential health risks, including cancer risks, in 5G technology. *Id.*¶¶ 244-59. And the editors of the British Medical Journal, one of the world's oldest and most respected medical journals, have written, "Despite the agency's disclaimers, the CDC does receive millions of dollars in industry gifts and funding," raising questions about its neutrality and raising the danger of "industry put[ting] their message in the mouths of a trusted third party." *Id.* ¶ 44.

2

**Plaintiff's Opposition to Defendants
Facebook and Zuckerberg's Motion to Dismiss
*CHD v. Facebook* et al.; Case No. 3:20-cv-05787-SI**

that Defendants have affixed to CHD content is itself a falsehood. To give just one egregious example, Facebook labeled as "False" an opinion post by a board-certified pediatrician based on her *own* 40-year clinical history of children *she* treated, and what she came to see as systemic denial of the existence of vaccine injury by the public health system. SAC ¶¶ 139-50; Exh. "B" at 92-104. This is just one of the at least fifteen instances pleaded with specificity in the Complaint of Defendants' falsely labeling CHD content as inaccurate. As further alleged, and as shown in greater detail below, Defendants' labeling of CHD content as "false" is not only itself a falsehood; it is a knowing and reckless falsehood. SAC ¶¶ 87, 115-95. In all of this misconduct, Defendant Zuckerberg played a substantial, personal role. He has huge personal and corporate stakes in vaccine and 5G technology development, and pharmaceutical industry ad revenue. SAC ¶¶ 260-93. He has a well-publicized interest in universal vaccination, and has stated that "the science is completely clear: vaccinations work." *Id.* ¶¶ 266-68. And he has involved himself in a number of Facebook's censorship decisions in matters where he had far less to lose. *Id.* ¶¶ 269-71.

In their campaign to block and discredit CHD content, Facebook and Zuckerberg were not acting merely as private parties. On the contrary, due to a combination of three factors, they were functioning as governmental actors. *First*, Defendants were pressured and threatened by an influential United States Congressman to suppress so-called "vaccine misinformation," stunningly defined to include any content "that casts doubt on the safety or efficacy of vaccines." *Second*, they were encouraged and induced by the immunity provided them by Section 230 of the Communications Decency Act. *Third*, they acted with the joint participation of the CDC—a federal agency— and its proxy, the WHO, with whom Facebook partnered to create its fact-checking protocol. SAC ¶¶ 1, 40-51, 56-64, 69-70, 98-104, 308, 312, 364-68.

At the same time, Defendants fraudulently promoted CHD's direct competitors. The false warning labels and overlays that Facebook affixed to CHD content expressly touted the CDC and Facebook's "fact-checking" organizations as superior sources of health safety information and encouraged users to click to those organizations' sites, where users would find prominent invitations to donate. SAC ¶¶ 70, 81-85, 109-95; Exh. "B." These "fact-checking" organizations are CHD's competitors because they are rival nonprofits offering health safety information to the online market and directly compete with CHD for donation dollars. In other words, Defendants were deliberately seeking

3

Plaintiff's Opposition to Defendants
Facebook and Zuckerberg's Motion to Dismiss
*CHD v. Facebook* et al.; Case No. 3:20-cv-05787-SI

to stop users from donating to CHD, instead diverting them to CHD's competitors—and as part of this scheme deactivated CHD's donate button on its Facebook page. *Id.* ¶¶ 80, 198-99, 319-22. In these efforts, Defendants were highly successful. In May 2019, CHD received $24,872 in donations from its Facebook users; since then, that figure has dropped to zero. *Id.* ¶ 223.

## ARGUMENT

## I. DEFENDANTS DISTORT THE "PLAUSIBILITY" REQUIREMENT OF FED. R. CIV. P. 12(B)(6).

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). Plausibility requires pleading "suggestive" facts, *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 557 n.5 (2007), which rise above the mere conceivability or possibility of unlawful conduct. *Iqbal*, 556 at 678. The Court takes "all allegations of material fact as true and construe[s] them in the lights most favorable to the non-moving party[,]" including all reasonable inferences. *Parks Sch. Of Bus. v. Symington*, 51 F. 3d 1480, 1484 (9th Cir. 1995); *Usher v. City of Los Angeles*, 828 F.2d 556, 561 (9th Cir. 1987). Defendants ask this Court to sit as a factfinder and dismiss Plaintiff's SAC by favoring their exculpatory hypotheses over Plaintiff's pleaded facts and inferences from those facts that "plausibly suggest" a right to relief. *Twombly*, 550 U.S. at 557. The Court should deny Defendants' request.

## II. CHD HAS FULLY AND ADEQUATELY PLEADED ITS CONSTITUTIONAL CLAIMS (COUNTS 1 AND 4).

Against CHD's constitutional claims, Defendants contend that they are not state actors and that in any event these claims are somehow blocked under *Bivens* doctrine. Neither position is correct.

### A. Defendants Are Not Entitled to Dismissal on State Action Grounds.

A state action determination is "necessarily a fact-bound inquiry." *United Brentwood Acad. v. Tenn. Secondary Sch. Athletic Ass'n*, 531 U.S. 288, 298 (2001). Where the "true nature of the State's involvement may not be immediately obvious," and "detailed inquiry may be required in order to determine whether the test is met," a Rule 12(b)(6) dismissal on state action grounds is inappropriate. *Rawson v. Recovery Innovations, Inc.*, 2017 U.S. Dist. LEXIS 176870, at *8 (W.D. Wash. 2017) (citation omitted) (denying motion to dismiss); *Brill v. Correct Care Sols.*, LLC, 286 F. Supp. 3d 1210,

Plaintiff's Opposition to Defendants
Facebook and Zuckerberg's Motion to Dismiss
*CHD v. Facebook* et al.; Case No. 3:20-cv-05787-SI

1217 (D. Colo. 2018). Here, the pleaded facts easily support an inference of state action. The Supreme Court has laid out three tests under which private party conduct can be state action:  "when [the private party's conduct] results from the State's exercise of 'coercive power,' when the State provides 'significant encouragement, either overt or covert,' or when a private actor operates as a 'willful participant in joint activity'" with the government. *Brentwood*, 419 U.S. at 296 (citations omitted). These three tests are not exhaustive, *see id*., can be overlapping, and ultimately demand a "totality of the circumstances" analysis. *Evans v. Valero Energy Corp*., No. CV F 07-0130 (E.D. Cal. Mar. 6, 2007) at *9. All three tests are satisfied here.

### 1.   CHD Has Plausibly Alleged Governmental Coercion.

Governmental coercion exists for state action purposes when public officials threaten a private party with adverse legal consequences unless the party engages in certain conduct. *Carlin Communications, Inc. v. Mountain States Tel*., 827 F.2d 1291, 1295 (9th Cir. 1987) (Sneed, J.) (finding state action where official threatened private telephone company with prosecution unless it stopped carrying certain content) (*citing Bantam Books, Inc. v. Sullivan*, 372 U.S. 58, 68 (1963)). "The test is objective: whether the official's comments 'can reasonably be interpreted as intimating that some form of punishment or adverse regulatory action will follow the failure to accede to the official's request." *Zieper v. Metzinger*, 392 F. Supp. 2d 516, 525 (S.D.N.Y. 2005) (*quoting Rattner v. Netburn*, 930 F.2d 204, 208 (2d Cir. 1991)). A plaintiff need not prove that the official's threat "was the real motivating force" behind the private party conduct. *Carlin*, 827 F.2d at 1295. State action still exists even if the private party "*would have acted as he did independently*" of the official's threat. *Id*. (emphasis in original).

Plaintiff has alleged just such coercion here. In 2019, influential Congressman Adam Schiff wrote a letter, in his official capacity "as a Member of Congress," to Zuckerberg pressuring Facebook to remove so-called "vaccine misinformation," which Schiff defined (incredibly) to include any "information . . . that casts doubt on the safety or efficacy of vaccines." SAC ¶¶ 60-64. A few months later, Schiff, as Chairman of the House Intelligence Committee, publicly threatened "behemoth" "social media companies" with removal of their critical Section 230(c)(1) immunity if they failed to suppress content Congress disfavored. *Id.* ¶ 64. There can be no doubt that these statements (as well as other

5                                    **Plaintiff's Opposition to Defendants**
**Facebook and Zuckerberg's Motion to Dismiss**
*CHD v. Facebook* et al.; Case No. 3:20-cv-05787-SI

Schiff conduct alleged in the SAC and other governmental contact with Facebook to be shown through

discovery) "could reasonably be interpreted as intimating that some form of . . . adverse regulatory

action [would] follow [Facebook's] refusal" to suppress CHD's so-called "vaccine misinformation." At

a minimum, these allegations of threat and coercion raise discoverable, triable issues of fact unfit for

resolution on a motion to dismiss.

### 2.   CHD Has Alleged Significant Encouragement Through Section 230 of the Communications Decency Act.

Two Supreme Court cases hold that a statutory provision like 47 U.S.C. § 230(c)(2), by

immunizing private parties against liability if they engage in conduct the government seeks to promote,

constitutes sufficient encouragement to turn private action into state action. *Skinner v. Railway. Lab.*

*Execs' Ass'n.*, 489 U.S. 602, 615 (1989); *Railway Employees' Dep't v. Hanson*, 351 U.S. 225, 231-32

(1956). *Skinner* is especially pertinent here. In *Skinner*, the Court found state action in employee urine

and breath tests conducted by *private* companies after the federal government enacted regulations

immunizing those companies from liability if they performed such tests. Like 47 U.S.C. § 230, the

regulations did not compel the tests; rather, they were merely "permissive." *Skinner*, 489 U.S. at 611.

But because (1) the regulations "*removed all legal barriers*" to such testing; (2) the government had

"made plain" a "*strong preference*" for such testing; (3) employees were not "*free to decline*" the tests if

they wished to remain employed; and (4) the government had made plain *a "desire" to "share in the*

*fruits*" of such testing, the private testing constituted state action. *Id*. at 615 (emphasis added).

The instant case is materially identical. First, Section 230(c)(2)(a) "removed all legal barriers" to

Facebook's censorship of "objectionable" content. Second, the federal government -- through the CDA

itself and in numerous other ways to be proved through discovery, including the Schiff conduct referred

to in the SAC -- has made plain its "strong preference" that Facebook remove "objectionable" content,

specifically so-called "vaccine misinformation," and that Facebook demonetize parties like CHD who

publicize such information. Third, Facebook users are not "free to decline" Facebook's content

overlays.[2]   Finally, the federal government has repeatedly made plain its "desire" to "share in the fruits"

---

[2]     Justice Marshall wrote, in striking the balance between private interests and free speech in a
different context, "Ownership does not always mean absolute dominion. The more an owner, for his

6                                    **Plaintiff's Opposition to Defendants**
**Facebook and Zuckerberg's Motion to Dismiss**
*CHD v. Facebook* et al.; Case No. 3:20-cv-05787-SI

of mega-platforms' content-moderation and content-flagging activities.[3] As in *Skinner*, these are "clear indices of the Government's encouragement, endorsement, and participation," *Skinner*, 489 U.S. at 611, constituting adequate allegations of state action as a matter of law.[4]

### 3. CHD Has Plausibly Pleaded Joint Activity.

"The joint action test for state action is met where private parties are 'willful participants in joint activity with the [government] or its agents.'" *Johnson v. Knowles*, 113 F.3d 1114, 1119 (9th Cir. 1997) (citation omitted). In addition to the inducement provided by 47 U.S.C. § 230(c)(2)'s immunity, a host of other facts pleaded in the SAC plausibly show joint action here. *See supra*, at 3. These facts show *inter alia*, that (1) the CDC, a federal agency, the WHO, as its proxy, and Zuckerberg stated repeatedly that they were "in discussion" or "working together" to "reduce [contain, or remove] the spread of [vaccine-related] inaccuracies, or "misinformation," and "reach individuals with [] targeted health information," which resulted in Facebook's actions against CHD[5] (SAC ¶¶ 49-52, 69-70, 308); (2) Facebook promotes its "Preventive Health App" for universal vaccination as another form of ongoing collaboration with the CDC (*id.* ¶¶ 56-58); (3) Defendants are contributors to and partners with the CDC Foundation, a quasi-agency proxy that serves as the CDC's fundraising arm (*id.* ¶¶ 40-48); (4) under the Global Health Security Agenda ("GHSA"), the State Department recruits private sector partners – Facebook – to "neutralize vaccine hesitancy," and funds, through intermediaries both Poynter, and its IFCN (*id.* ¶¶ 98-101); (5) the FBI and its entity, InfraGard, and federal agents acting "in conjunction with" the British Government, actively encourage Facebook's participation in the GHSA to shape the

---

advantage, opens up his property for use by the public in general, the more do his rights become circumscribed by the statutory and constitutional rights of those who use it." *Amalgamated Food Employees Union v. Logan Valley Plaza*, 391 U.S. 308, 325 (1968). Here, in this new context, the Court must strike the balance between an entity (Facebook) exercising "monopolistic-like power" over a communications medium, and the actual freedom of an individual user to decline its overlays.

[3]   As will be shown through discovery, the federal government has repeatedly sought and obtained information from Facebook secured by Facebook's monitoring of "dangerous" content.

[4]   In *Hanson*, the Court found state action in private company closed-shop agreements—contracts between an employer and a union requiring all employees to join the union—because a federal statute not only permitted such agreements, but *preempted all state laws* that could have made the union or employer liable for them. 351 U.S. at 232. Similarly, Section 230 preempts all state laws that could make platforms like Facebook liable for blocking or restricting content it deems "objectionable."

[5]   Facebook's contention that CHD has quoted this statement "out-of-context" (MTD at 9, n.10) underscores that the extent of this public-private partnership, and Zuckerberg's role, are issues of fact.

Plaintiff's Opposition to Defendants
Facebook and Zuckerberg's Motion to Dismiss
*CHD v. Facebook* et al.; Case No. 3:20-cv-05787-SI

public debate on vaccines through censorship and demonetization of CHD (*id.* ¶¶ 102-04); and (6)
federal actors and Facebook benefit from these actions. Thus, the SAC plausibly alleges that federal
actors actively participated in the program design and methods by which Facebook identified and
labeled CHD speech as "false" and demonetized CHD's page.[6] Accordingly, CHD's allegations of state
action satisfy all three *Brentwood* tests—coercion, significant encouragement, and joint activity—and
Defendants' attempt to dismiss CHD's constitutional claims on state action grounds should be denied.[7]

### B.  Defendants' *Bivens* Arguments Misapprehend the Law.

Defendants contend that *Bivens* should not be "expanded" to cover the First Amendment
violation alleged here and Facebook is not a proper *Bivens* defendant under *Correctional Servs. Corp. v.
Malesko*, 534 U.S. 61 (2001). (MTD at 11-12.) Defendants misapprehend the law.

### 1.  The Ninth Circuit Permits First Amendment *Bivens* Claims.

Ninth Circuit precedent expressly permits *Bivens* claims for violations of "well-established First
Amendment" doctrine, at least when no adequate remedies are available. *Boule v. Egbert*, 980 F.3d
1309, 1316 (9th Cir. 2020). No doctrine in First Amendment law is better established than the prohibition
against censorship of opinion. *West Va. Bd. of Ed. v. Barnette*, 319 U.S. 624, 642 (1943) ("If there is any
fixed star in our constitutional constellation, it is that no official, high or petty, can prescribe what shall
be orthodox in politics, nationalism, religion, or other matters of opinion"). Moreover, no law other than
the First Amendment bars Facebook from engaging in viewpoint discrimination. "[E]ven though an
alternative remedy need not be 'perfectly congruent' with *Bivens* or 'perfectly comprehensive,' it still
must be 'adequate.'" *See Rodriguez v. Swartz,* 899 F.3d 719, 739 (9th Cir. 2018) (*quoting Minneci v.*

---

[6]  *Lansing v. City of Memphis*, 202 F.3d 821, 833 (6th Cir. 2000), which Facebook cites, was
decided on summary judgment after the Court considered, inter alia, the contents of communications
between the quasi-state agency and the state regarding plaintiff and protest speech at a city festival.
"Only by sifting facts and weighing circumstances can the nonobvious involvement of the State in
private conduct be attributed its true significance." *Burton v. Wilmington Parking Authority*, 365 U.S.
715, 722 (1961).

[7]  *Divino Grp. LLC v. Google LLC*, 2021 U.S. Dist. LEXIS 3245 at *15-16 (N.D. Cal. Jan. 6, 2021)
(finding no state action) is distinguishable. First, plaintiff in *Divino* erroneously pleaded a 42 U.S.C.
§ 1983 claim, *id.*, whereas CHD correctly pleads a *Bivens* claim. Second, in *Divino*, there were no
allegations of coercion or joint action. *Id.* Third, the *Divino* court incorrectly characterized *Skinner* as a
case involving "compulsion," *id. at * 18,* when, as stated above, the relevant regulations in *Skinner* were
purely "permissive," not mandatory. Here, Mr. Schiff's letter to Zuckerberg exerted the compulsion,
sharpened by Schiff's remarks on Section 230, not Section 230 by itself. *Cf. id.* *17.

**Plaintiff's Opposition to Defendants
Facebook and Zuckerberg's Motion to Dismiss
*CHD v. Facebook* et al.; Case No. 3:20-cv-05787-SI**

*Pollard*, 565 U.S. 118, 120, 129 (2012); *Adams v. Johnson*, 355 F.3d 1179, 1185 n.3 (9th Cir. 2004)).
Hence CHD plainly has a First Amendment *Bivens* damages claim against Zuckerberg, and because no
other law permits suit against Facebook for its past acts of viewpoint discrimination against CHD,
*Malesko* doesn't apply.

### 2.   CHD's Injunctive Claim Is Not a *Bivens* Claim.

"*Bivens* is both inappropriate and unnecessary" for injunctive (as opposed to damages) claims
against federal actors. *Ministerio Roca Solida v. McKelvey*, 820 F.3d 1090, 1094 (9th Cir. 2016). The
federal courts' power to order injunctive relief against federal actors' ongoing constitutional violations is
well established by case law long predating *Bivens*. *See Larson v. Domestic & For. Comm. Corp.*, 337
U.S. 682, 690 (1949); *Mitchum v. Hurt*, 73 F.3d 30, 35 (3rd Cir. 1995) (Alito, J.) ("The power of the
federal courts to grant equitable relief for constitutional violations has long been established" and *Bivens*
limitations do not apply to such claims); *see also AFGE Local 1 v. Stone*, 502 F.3d 1027, 1038 (9th Cir.
2007) (approving of *Mitchum*). Therefore Defendants' *Bivens* arguments do not apply to CHD's claim
for injunctive relief against both Facebook and Zuckerberg for their ongoing First Amendment
violations. SAC ¶¶ 12, 388-91, Prayer for Relief.

### C.   CHD'S Takings Claims Are Adequately Pleaded.

Defendants' failure to mention CHD's takings claims is unsurprising. There is no legal basis for
dismissing these claims.

### 1.   Takings Claims May Be Brought Against Corporate Defendants.

It is well established that takings claims can be stated against private corporations that act under
color of law or otherwise satisfy the state action doctrine. *See, e.g.*, *Loretto v. Teleprompter Manhattan
CATV Corp.*, 458 U.S. 419 (1982) (sustaining takings claims brought against company that acted
pursuant to state statute); *Rahl v. N.Y. Tel. Co.*, 2010 U.S. Dist. LEXIS 86866, at *11 (N.D.N.Y. 2010)
(refusing to dismiss takings claim against corporation where factual issues concerning "state action"
existed).[8]

---

[8]     Facebook's assertion that it cannot be sued for First Amendment damages under *Bivens* (MTD at
11), has nothing to do with CHD's takings claims, because takings claims are not *Bivens* claims. They
are not dependent on judge-created remedies but arise out of the Clause's "self-executing character."

9                                          **Plaintiff's Opposition to Defendants
Facebook and Zuckerberg's Motion to Dismiss**
*CHD v. Facebook* et al.; Case No. 3:20-cv-05787-SI

## 2.   CHD Has Plausibly Pleaded a Taking.

The Takings Clause "protects 'private property' without any distinction between different types." *Horne v. Dep't of Agric.*, 576 U.S. 351, 358 (2015); *see Huntleigh USA Corp. v. United States*, 525 F.3d 1370, 1377 (Fed. Cir. 2008) (Takings Clause protects "real property, personal property, and intangible property") (citations omitted)). In addition, "[c]ontract rights are a form of property and as such may be taken for a public purpose provided that just compensation is paid." *U.S. Trust Co. v. New Jersey*, 431 U.S. 1, 19 n.16 (1977) (citation omitted).

Here, as alleged in the SAC and conceded by Facebook's own terms of service, CHD had protected property interests in its Facebook pages, content, and fundraising button. (SAC ¶¶ 36, 322.) The SAC alleges takings of this property when, inter alia, Facebook: (1) deactivated CHD's fundraising button, destroying all its economic value (*id.* ¶¶ 320-22); and (2) appropriated, physically occupied and physically invaded CHD's pages and content by superimposing on them overlays with warning labels and links to Facebook-supported content. (*id.* ¶¶ 130, 162, 180.) *See Horne*, 576 U.S. at 358; *Philip Morris v. Harshbarger*, 1997 U.S. Dist. LEXIS 21012, at *15 (D. Mass. 1997) (*citing Armstrong v. United States*, 364 U.S. 40, 48 (1960)) (destroying "all economic value in intangible personal property" can constitute a taking); *U.S. Trust*, 431 U.S. at 19 n.16 (taking of contract rights can require just compensation); *Boise Cascade Corp. v. United States*, 296 F.3d 1339, 1353 (Fed. Cir. 2002) ("physical invasion" or occupation of property constitutes a *per se* taking, "no matter how slight"). Thus, Facebook's motion to dismiss as it relates to CHD's takings claims must be denied.

## III. CHD HAS ADEQUATELY PLEADED ITS RICO FRAUD CLAIM (COUNT 3).

### A.  CHD Has Alleged Multiple Acts of Wire Fraud.

The elements of a civil RICO claim are: "(1) conduct (2) of an enterprise (3) through a pattern (4) of racketeering activity (known as 'predicate acts') (5) causing injury to plaintiff's business or property." *Living Designs, Inc. v. E.I. Dupont de Nemours & Co.*, 431 F.3d 353, 361 (9th Cir. 2005). CHD has pleaded all these elements in detail, alleging that Defendants conducted a content-moderating

---

*United States v. Clarke*, 445 U.S. 253, 256 (1980) (a property owner "is entitled to bring [an inverse condemnation] action as a result of 'the self-executing character'" of the Takings Clause).

10

**Plaintiff's Opposition to Defendants**
**Facebook and Zuckerberg's Motion to Dismiss**
*CHD v. Facebook* et al.; Case No. 3:20-cv-05787-SI

enterprise through a pattern of at least fifteen predicate acts of wire fraud, including Defendants' posting of false fact-checking labels on CHD content, Facebook's fraudulent deactivation of CHD's donate button and ads, deceptive demotion of content, and concealment through material omissions. (SAC ¶¶ 79(A)-(J), 222-26, 322, 332-33, 374-78, 383-85.) Here, CHD responds only to arguments raised in Defendants' brief.[9] Defendants do not and cannot seriously dispute that CHD has alleged the use of interstate wires to perpetrate a fraudulent scheme through numerous acts of intentional deception and misrepresentation, thus satisfying the "three elements of wire fraud." *United States v. Hussain*, 972 F.3d 1138, 1143 (9th Cir. 2020). As pleaded in the SAC, the fraudulent scheme was, through deception and artifice, to defund and damage CHD due to the immense financial interests Defendants have in the vaccines and technologies whose health dangers CHD exposes. (SAC ¶¶ 374-80.)

Defendants claim that their labeling of CHD content as "false" was not a statement of fact, but merely an "interpretation of the facts," and therefore somehow not actionable as fraud or falsehood. (MTD 13-14.) But this claim flies in the face of Facebook's own statements to its users that its fact-checkers target only "particularly clear hoaxes" and "provably false claims[,] not claims that . . . consist of minor inaccuracies[,] [or] individual expression, opinions and debate." *Fact-Checking on Facebook*, FACEBOOK FOR BUSINESS, https://tinyurl.com/y33wyhe2 (last accessed Dec. 21, 2020) (MTD Exh. 1 at 1). (Dkt. #69-2 at 2.) On this motion, it must be assumed that CHD's health warnings were true and accurate (as indeed they were); that Facebook's labeling CHD content as "false" was itself false (as indeed it was); and that a reasonable Facebook user would have read those "false" labels as *factual* assertions that CHD was spreading misinformation that had been proven false by scientific data (which CHD was emphatically not doing). The short answer to Facebook's "opinion" defense is that Facebook calls what it is doing "*fact*-checking."

Facebook's warning label on the top of CHD's page is also an actionable falsehood because it implies the same objective factual assertion as the "false" labels it goes hand in hand with: that the "information" on CHD's page is "unreliable" and "out-of-date" (*i.e.*, "untrue"); and its labeled posts are

---

[9]     *See, e.g.*, *Lauren Moshi LLC v. Fuentes*, 2020 U.S. Dist. Lexis 82920, at *18 (C.D. Cal. 2020) (arguments not raised in movant's opening brief are waived).

11                                                          **Plaintiff's Opposition to Defendants**
**Facebook and Zuckerberg's Motion to Dismiss**
*CHD v. Facebook* et al.; Case No. 3:20-cv-05787-SI

proven "false" or "partly false" fact, not protected interpretations of disclosed fact. SAC ¶¶ 27-34, 70, 81-86, 343-55 & Exh. "B"; *see also Milkovich v. Lorain Journal Co.*, 497 U.S. 1, 18-19 (1990); *Manufactured Home Communities, Inc. v. County of San Diego*, 544 F.3d 959, 964 (9th Cir.2008) (accusation of "lying" without expressly disclosing factual basis); *Pizza Hut, Inc. v. Papa John's Int'l., Inc.*, 227 F.3d 489 (5th Cir. 2000) ("better pizza" more than puffery in context); *Animal Legal Def. Fund v. HVFG LLC*, 939 F. Supp. 2d 992, 1001-02 (N.D. Cal. 2013) ("the humane choice" to describe foie gras could be false).[10] CHD has adequately alleged numerous acts of actionable misrepresentation.

Defendants also invoke the requirement that, to commit wire fraud, the perpetrator must seek to "obtain money or property from the one who is deceived." *United States v. Lew*, 875 F.2d 219, 221 (9th Cir. 1989). Defendants contend, mistakenly, that this requirement is somehow unsatisfied here. (MTD at 23.) First, it is well established that a perpetrator of fraud cannot evade liability by claiming that the money fraudulently obtained went to third parties. "A participant in a scheme to defraud is guilty even if he is an altruist and all the benefits of the fraud accrue to other participants." *United States v. Spano*, 421 F.3d 599, 603 (7th Cir. 2005) (Posner, J.) (upholding mail fraud conviction). This rule fully applies where the money obtained through the fraud goes to parties unconnected to the scheme, including "*to charities.*" *United States v. Sorich*, 523 F.3d 702, 709-10 (7th Cir. 2007); s*ee also, e.g*, *United States v. Lopez-Martinez*, 2020 U.S. Dist. LEXIS 174251, at *38 (D.P.R. Sept. 21, 2020) ("A participant in a scheme to defraud is guilty even if he is an 'altruist.'"); *United States v. Hills*, 2018 U.S. Dist. LEXIS 105804, at *10 (N.D. Ohio 2018) (same).

Although Defendants are far from altruists, this was precisely the kind of fraudulent scheme they perpetrated here. Defendants sought to deceive visitors to CHD's Facebook page into giving their charitable dollars not to CHD, but to other, competing nonprofit organizations. (While success is not an element of a RICO fraud claim, Defendants were highly successful: CHD's fundraising through its

---

[10]     Alternatively, the Court should permit discovery to elucidate the "reasonable expectations of the audience" under the totality of the circumstances. *See e.g.*, *Milkovich*, 497 U.S. at 7 (summary judgment); *Partington v. Bugliosi*, 56 F.3d 1147 (9th Cir. 1995); *Underwager v. Channel 9 Austl.*, 69 F.3d 361, 366 (9th Cir. 1995). Evidence of how Facebook intends its messages to be received will only bolster CHD's showing of audience expectations. SAC ¶ 205 (Facebook intended to "reintroduce ['fear of being outed as a miscreant'] to the online world]") So, too, will the aggrieved authors of CHD's posts, deceived users, and experts on the social media context.

**Plaintiff's Opposition to Defendants
Facebook and Zuckerberg's Motion to Dismiss**
*CHD v. Facebook* **et al.; Case No. 3:20-cv-05787-SI**

Facebook page, which totaled $ 24,872 in the month preceding the fraudulent scheme, dwindled to zero

afterward. SAC ¶ 223.) Defendants pursued this goal, as alleged in the SAC, by: (a) convincing users

that CHD was not deserving of donation dollars by falsely labeling CHD content as "false"; (b)

fraudulently deactivating CHD's donation button; (c) diverting CHD visitors through its false "fact-

checking" click-through screens to web pages of organizations that directly compete with CHD for

donations and whose pages prominently invite visitors to make donations; and (d) fraudulently

promoting those competitor entities as champions of children's health, superior sources of health

information, and hence more deserving recipients of donation dollars. SAC ¶¶ 21, 94, 98, 100-01, 159

(donate button) & Ex. "B".[11] Thus, accepting CHD's allegations as true and drawing reasonable

inferences in CHD's favor, Defendants were deliberately seeking to induce the victims of their

deception (visitors to CHD's Facebook page) to give money to Facebook's self-described "partners"

(e.g., its fact-checker entities) with whom it has substantial financial ties. Such allegations plainly state a

claim of wire fraud. *Cf, e.g.*, *United States v. Rezko*, 2007 U.S. Dist. LEXIS 73517, at *13-14 (N.D. Ill.

Oct. 2, 2007) (wire fraud adequately pleaded where defendant was alleged to have sought to cause

money to go to defendant's "associates").

     Second, as the SAC further alleges, Defendants sought to obtain property from the victims of

their deception (visitors to CHD's Facebook page) by taking from them the right to control whether or

how much of their money to spend on CHD.[12] SAC ¶¶ 198, 322, 336, 384-85. The wire fraud statute

protects an owner's right to decide how to spend money, even if defendants' actions do not cause them

any actual monetary loss. *Carpenter v. United States*, 484 U.S. 19, 25-28 (1987); *McNally v. United*

*States*, 483 U.S. 350, 360 (1987). *United States v. Treadwell*, 593 F.3d 990, 997 (9th Cir. 2010),

---

[11]    The Court may take judicial notice of the existence and content of these websites, in particular, their solicitation of donations from visitors to the fact-check content at issue here. *See Threshold Enters. Ltd. v. Pressed Juicery, Inc.*, 445 F. Supp. 3d 139, 146 (N.D. Cal. 2020).

[12]    Facebook provides fundraising tools to *any* U.S.-based 501(c)(3) organization, such as CHD, in a purportedly content-neutral way. *Fees and Eligibility*, Facebook Social Impact (2021), https://socialimpact.facebook.com/charitable-giving/#Fees-and-eligibility. Facebook also purports to "not control or direct what people and others do or say, and we are not responsible for their actions or conduct (whether online or offline) or any content that they share (including offensive, inappropriate, obscene, unlawful and other objectionable content)." SAC ¶ 37 (Term ¶ 4(3),) Facebook misled CHD and users into believing those purportedly content-neutral Terms and tools would govern CHD's page, which deceptions furthered Facebook's overall scheme.

Plaintiff's Opposition to Defendants
Facebook and Zuckerberg's Motion to Dismiss
*CHD v. Facebook* et al.; Case No. 3:20-cv-05787-SI

*overruled in part on other grounds by United States v. Miller*, 953 F.3d 1095, 1102 (9th Cir. 2020)

(finding intent where misrepresentation deprived victim of opportunity to weigh true benefits and risks

of transaction, regardless of whether or not the victim lost money).

Moreover, while Facebook's services are free to its users, Facebook is a digital ad company and

the chief products that it monetizes are those same users' attention and "impressions."[13] Facebook

benefits monetarily and in its accrual of goodwill by meeting the demand of its primary web advertisers,

particularly its most profitable segment of large corporate customers.[14] The management of user

perceptions done in the name of "handling misinformation" has an advertising, marketing, and public

relations value for pharmaceutical company advertisers, whose equivalent can be calculated in

marketing dollars. Thus, Facebook profits directly, and in intangible goodwill and partner brand

protection, by misleading visitors to CHD's page to click through its false labels and fact-checks to view

new prompts and impressions under the deception that CHD's page contains false, unreliable, and out-

of-date information. SAC ¶¶ 262-63, 274-93, 332, 385.

Facebook's wire fraud scheme also encompasses its demonetization of CHD and deceptive

demotion of all of its 5G and vaccine posts, on the basis of CHD's supposedly false (but actually

accurate) posts, and concealment of its overarching purposes and its immense adverse financial interests.

SAC ¶¶ 79(E), 201-03, 336, 375; *see United States v. Woods*, 335 F.3d 993, 998 (9th Cir. 2003) (wire

fraud encompasses entire fraudulent scheme, including all acts "calculated to deceive," not merely

"misrepresentation[s] of . . . fact"). Facebook argues that it did not fail to disclose any fact it had an

independent duty to disclose (MTD at 24), but failures to disclose can be actionable in wire fraud where

the fraud has a "dual nature" due to the interconnection of defendants' deliberate misrepresentation and

omission. *Bias v. Wells Fargo & Co.*, 942 F. Supp. 2d 915, 939 (N.D. Cal. 2013). Here, all of

---

[13]     "Impressions" occur whenever an advertisement is displayed on a user's screen, no matter if it is clicked or not. From Facebook's standpoint, user impressions have monetary value, and are an essential part of its revenue streams.

[14]     Facebook also benefits in goodwill and ongoing partnerships with public health institutions such as the CDC and WHO, thereby enhancing both its credibility and attractiveness as a marketing platform for its corporate pharmaceutical partners. Redirection of user traffic and impressions to purportedly "authoritative" health sources like the CDC and WHO is essentially a form of "in-kind" advertising benefit from Facebook, whose equivalent can be calculated in advertising dollars.

**Plaintiff's Opposition to Defendants**
**Facebook and Zuckerberg's Motion to Dismiss**
*CHD v. Facebook* et al.; Case No. 3:20-cv-05787-SI

Facebook's failures to disclose were interwoven with its misrepresentations about the falsity of CHD's page and posts, and its implicit promises to refrain from conduct not otherwise authorized by its Terms.[15] Many of these fraudulent practices and omissions were aimed at deceiving CHD itself, and through these deceptions Defendants took valuable property from CHD—its right to control its own web page, its right to control the dissemination of that page, and its right to solicit donations from visitors to that page. CHD has pleaded multiple acts of RICO wire-fraud.

### B.  CHD Has Statutory Standing to Bring its Civil RICO Claim.

To have standing under RICO, CHD must allege that the RICO violation proximately caused injury to its business or property. *Holmes v. Sec. Inv'r Prot. Corp.*, 503 U.S. 258, 268 (1992). Facebook argues that this proximate cause requirement is not met when the defendants' fraudulent misrepresentations to a plaintiff's potential customers caused those customers to take their dollars elsewhere; to Defendants, this is somehow a "multi-step theory of causation" outside the reach of proximate cause. (MTD at 25.) But Defendants neglect to mention that the Supreme Court has described this very scenario as satisfying RICO's injury requirements:

> [S]uppose an enterprise that wants to get rid of rival businesses mails misrepresentations about them to their customers . . . but not to the rivals themselves. *If the rival businesses lose money as a result of the misrepresentations, it would certainly seem that they were injured in their business "by reason of" a pattern of mail fraud, even though they never received, and therefore never relied on, the fraudulent mailings.*

*Bridge v. Phoenix Bond & Indem. Co.*, 553 U.S. 639, 649-50 (2008) (emphasis added); s*ee also, e.g.*, *P&G v. Amway*, 242 F.3d 539, 561 (5th Cir. 2001) ("if P&G's customers relied on the fraudulent rumor in making decisions to boycott P&G products, this reliance suffices to show proximate causation"); *Mid-Atl. Telecom. v. Long Distance Servs.*, 18 F.3d 260, 263 (4th Cir. 1994) (upholding RICO claim where plaintiff Mid-Atlantic alleged that defendants "engaged in fraudulent use of the mails and telephone

---

[15]    Facebook modified its Terms ¶ 3.2 *after* the filing of this action to provide that "we can remove or restrict access to your content, services, or information if we determine that doing so is reasonably necessary to avoid or mitigate adverse legal or regulatory impacts to Facebook." SAC ¶ 324. Facebook's prior Terms induced CHD, as a "trusting" user "to relax the care and vigilance which they would ordinarily exercise[,]" *United States v. Shields*, 844 F.3d 819, 822 (9th Cir. 2016), and rely on Facebook's implied representation that it would *not* do exactly what Terms ¶ 3.2 now permits it to do – restrict or remove content solely "to avoid or mitigate adverse legal or regulatory impacts" (*e.g.*, to preserve its section 230 immunity) or for adverse profit motives.

Plaintiff's Opposition to Defendants
Facebook and Zuckerberg's Motion to Dismiss
*CHD v. Facebook* et al.; Case No. 3:20-cv-05787-SI

wires to entice customers away from Mid-Atlantic"). Thus, CHD has plainly satisfied the proximate cause requirement for purposes of this Rule 12(b)(6) motion.[16]

### C.  CHD Has Adequately Pleaded a RICO Pattern.

Facebook argues that CHD's RICO claim fails because its fraud scheme targeted CHD alone and does not constitute a cognizable "pattern" of criminal racketeering activity. (MTD at 25-26.) Facebook is mistaken. A "pattern" requires at least two related predicate acts that amount to or pose a threat of continued criminal activity. It does not require multiple schemes or multiple victims. Here, CHD has alleged multiple wrongs by multiple defendants occurring over more than eighteen months. SAC ¶¶ 78, 79(A)-(J), 80-201, 374-75. Facebook's community of users—including but not limited to actual visitors to CHD's page—are significant third-party victims, too, albeit ones not positioned to bring suit. The level of misconduct alleged by CHD here far exceeds the isolated "single contract between two parties" which this Court dismissed as insufficient to constitute a RICO "pattern" in *Royce Int'l Broadcasting Corp. v. Field*, 2000 U.S. Dist. LEXIS 2369, at *10 (N.D. Cal. 2000).

In addition, Facebook's scheme poses "a threat of continuing activity" in recent specific, nonconclusory acts of retaliation (SAC ¶¶ 323-28) and ongoing false labels and demonetization. *Sun Sav. and Loan Ass'n v. Dierdorff*, 825 F.2d 187, 194 (9th Cir. 1987). Open-ended continuity under RICO involves "past conduct that by its nature projects into the future with a threat of repetition." *H.J. Inc. v. Nw. Bell Tel. Co.*, 492 U.S. 229, 241 (1989). CHD has thus alleged a RICO "pattern" of racketeering activity which harms more than CHD alone.

### IV. CHD HAS ADEQUATELY PLEADED ITS LANHAM ACT CLAIM (COUNT 2).

Against CHD's Lanham Act claims, Defendants argue: (1) that CHD lacks standing; and (2) that Defendants' falsehoods about CHD were not "commercial speech" because they did not propose a "commercial transaction." (MTD at 20-21.) Both arguments are baseless, either misrepresenting the law

---

[16]     Nor are CHD's lost donations too speculative to bar recovery. *Resolute Forest Prods. v. Greenpeace Int'l*, 2019 U.S. Dist. LEXIS 10263, at *48 (N.D. Cal. 2019) (plaintiff could state RICO injury to its business "if [its] customers relied on defendants' statements in a way that caused [plaintiff] to lose money); *see Harmoni Int'l Spice, Inc. v. Hume*, 914 F.3d 648, 653 (9th Cir. 2019) (lost sales); *Xcentric Ventures, LLC v. Borodkin*, 798 F.3d 1201, 1203 (9th Cir. 2015) (lost business opportunities); *Mendoza v. Zirkle Fruit Co.*, 301 F.3d 1163, 1166 (9th Cir. 2002) (fraud on the market for labor, in that wages were depressed when defendants hired undocumented workers, cognizable under RICO).

Plaintiff's Opposition to Defendants
Facebook and Zuckerberg's Motion to Dismiss
*CHD v. Facebook* et al.; Case No. 3:20-cv-05787-SI

or at most raising factual issues that cannot be resolved on a motion to dismiss.

## A. Defendants' Claim that CHD Lacks Standing Because Facebook "Does Not Compete" with CHD Contradicts Supreme Court Precedent.

Defendants' assertion that Plaintiff "cannot allege [a Lanham Act] injury because it does not compete with Facebook" directly contradicts *Lexmark International, Inc. v. State Control Components, Inc.,* 572 U.S. 118 (2004), in which the Supreme Court unanimously rejected lower court rulings that had limited standing to sue for false advertising under Section 43(a) only to competitors of a defendant. "[A] rule categorically prohibiting suits by noncompetitors would read too much into the [Lanham] Act's reference to 'unfair competition'.… It is thus a mistake to infer that because the Lanham Act treats false advertising as a form of unfair competition, it can protect *only* the false advertiser's direct competitors." *Id.* at 136, 139. *See also Ariix, LLC v. NutriSearch, Corp.,* 2021 U.S. App. LEXIS 1776, at *32 (9th Cir. Jan. 22, 2021) ("The court [in *Lexmark*] rejected that limitation [the requirement of competitor status] because it could not be found in the text of the Lanham Act, nor could it be deduced from the limitations that are found in that text.")

Instead, Lanham Act standing merely requires a plaintiff to allege an injury within the "zone of interests" that the Act protects, such as damage to "reputation or sales." *Lexmark,* 572 U.S. at 132. And it is well established that a nonprofit's reputational damage or loss of donation revenue constitutes actionable commercial injury under the Lanham Act. *See, e.g.*, *Committee for Idaho's High Desert, Inc. v. Yost,* 92 F.3d 814 (9th Cir. 1996) (permitting Lanham Act suit by non-profit organization); *Cal Pure Pistachios, Inc. v. Primex Farms, LLC,* 2010 U.S. Dist. LEXIS 148263, at *11 (C.D. Cal. 2010) ("No legal authority is offered in support of Defendants' implicit contention that a non-profit corporation cannot sue for false advertising under the Lanham Act, and the Court will reject it."); *Birthright v. Birthright, Inc.*, 827 F. Supp. 1114, 1138-39 (D.N.J. 1993) (ruling in favor of nonprofit organization's Lanham Act false advertising claim); *cf. Camps Newfound/Owatonna v. Town of Harrison,* 520 U.S. 564, 585-86 (1997) (nonprofits' activities are "commercial" or "in commerce" for purposes of the Commerce Clause and federal statutes regulating commercial activity). Because CHD has alleged that Defendants' falsehoods damaged its reputation and caused significant loss of donation revenues, it has fully and adequately pleaded Lanham Act standing.

17

**Plaintiff's Opposition to Defendants Facebook and Zuckerberg's Motion to Dismiss**
*CHD v. Facebook* et al.; Case No. 3:20-cv-05787-SI

**B.  CHD Has Adequately Alleged Promotion and Commercial Speech.**

Defendants assert that commercial speech "does no more than propose a commercial transaction" and that their false "fact-check" labels on CHD's page "do not propose commercial transactions at all." Once again Defendants are wrong on both counts.

While commercial speech "*usually*" "does no more than propose a commercial transaction," "this definition," as the Ninth Circuit held just weeks ago, is "*just a starting point*." *Ariix*, 2021 U.S. App. LEXIS 1776, at *13 (emphasis added). Instead, the inquiry is case-by-case and "fact-driven," *id*., with the critical factor being "economic motivation" and, specifically, whether "economic benefit was the primary purpose for speaking." *Id.* at *17. Contrary to Defendants' assertion, "economic motivation is not limited simply to the expectation of a direct commercial transaction with consumers." *Id.* It can include "indirect benefits, such as . . . improvements to a brand's image, general exposure of a product, and protection of licensee's interests." *Id.* (citations omitted). Here, CHD has alleged in detail Defendants' "economic motivation" for disparaging, censoring, and deplatforming CHD's efforts to expose the truth about the dangers of mandatory universal vaccine programs: Facebook and Zuckerberg have at least a fifty-billion dollar interest in those programs, in the form of both Zuckerberg's investments in for-profit vaccine development corporations and Facebook's ad revenue derived from vaccine manufacturers. Defendants' enormous financial interest in the very vaccine programs that CHD is warning against makes it eminently "plausible" that Defendants' "primary purpose" for falsely branding "false" the opinions and accurate data posted on CHD's page was economic in nature. At the very least, this "fact-driven" issue cannot be resolved against CHD on a Rule 12(b)(6) motion. *See, e.g.*, *P&G*, 242 F. 3d at 552-53 (remanding to trier of fact to determine on all relevant evidence if speech was economically motivated and thus commercial speech).

In addition, Defendants' false fact-check labels and overlays on CHD content expressly touted the putatively superior information provided by Facebook's fact-checking partners and the CDC, all of which compete with CHD for donation revenue. In other words, Defendants actively "promoted" the "products and services" of CHD's competitors. Moreover, Defendants' labels and overlays urged users to click through to those competitors' sites, and on those websites users would find prominent

**Plaintiff's Opposition to Defendants
Facebook and Zuckerberg's Motion to Dismiss**
*CHD v. Facebook* et al.; Case No. 3:20-cv-05787-SI

invitations to donate—*i.e.*, to engage in commercial transactions.[17] *See, e.g.*, *Birthright*, *supra*, 827 F. Supp. at 1138-39 (treating nonprofits' solicitations as commercial transactions for Lanham Act purposes).

While Facebook attempts to describe its fact-checking content as noncommercial speech on matters of public concern, merely offering a dispassionate review of CHD's scientific content, as the court aptly pointed out in *Ariix*, "it is not controversial to conclude that 'liability can arise under the Lanham Act if websites purporting to offer reviews are in reality stealth operations intended to disparage a competitor's product while posing as a neutral third party.'" *Id.* at *22; *see also Mimedx GRP., Inc. v. Osiris Therapeutics, Inc.,* 2017 U.S. Dist. LEXIS 114105, at *17 (S.D.N.Y. 2017) ("'Advertisements do not become immune from Lanham Act scrutiny simply because their claims are open to scientific or public debate. Otherwise, the Lanham Act would hardly ever be enforceable – many, if not most, products may be tied to public concerns with the environment, energy, economic policy, or individual health and safety.'") (*quoting Eastman Chemical Co. v. Plastipure, Inc.,* 775 F.3d 230, 236-37) (2014) (*quoting Cent. Hudson Gas & Elec. Corp. v. Pub. Serv. Comm'n of N.Y.*, 447 U.S. 557, 563 n.5 (1980)). Thus CHD has fully and adequately alleged commercial speech and commercial promotion.[18]

## V. DEFENDANTS' AFFIRMATIVE DEFENSES FAIL AS A MATTER OF LAW.

### A. The First Amendment Does Not Bar Claims Based in Fraud.

The First Amendment does not protect Defendants from liability for knowing or reckless falsehoods, e.g., speech that is "integral to criminal conduct," *Giboney v. Empire Storage & Ice Co.*, 336

---

[17]     Ninth Circuit case law holds that a Lanham Act advertisement or promotion must be "for the purpose of influencing consumers to buy *defendant's* goods or services." *Ariix*, *supra*, at *12 (emphasis added). Defendants do not mention this requirement in their opening brief and have therefore waived any argument thereunder. *See Lauren Moshi LLC*, *supra*, at *18. In any event CHD's allegations satisfy this requirement too. Defendants were seeking to influence consumers to buy the goods and/or services of Facebook's fact-checking partners, who, as set forth above, are Facebook's agents, and an "agency relationship" can satisfy this requirement. *See Ariix*, *supra*, at *25 n.10 ("agency relationship" can satisfy requirement); *id.* at *39 (Collins, J., dissenting) (agency relationship would satisfy requirement).

[18]     Defendants assert in a footnote that "CHD has not pleaded falsity of the alleged false statements with Rule 9(b) specificity." (MTD at 22, n.14.) Defendants are mistaken. The SAC meets Rule 9(b) in that it is "specific enough to give the defendants notice of the particular misconduct which is alleged to constitute the fraud charged so they can defend against the charge and not just deny that they have done anything wrong." *TransFresh Corp. v. Ganzerla & Assoc.*, 862 F. Supp. 2d 1009, 1017 (N.D. Cal. 2012); *see* SAC ¶¶ 79(A)-(J), 115-99, Exh. "B."

**Plaintiff's Opposition to Defendants
Facebook and Zuckerberg's Motion to Dismiss**
*CHD v. Facebook* et al.; Case No. 3:20-cv-05787-SI

U.S. 490 (1949), fraud, *Virginia State Board of Pharmacy v. Virginia Citizens Consumer Council*, 425

U.S. 748, 771 (1976), or defamation. *See New York Times Co. v. Sullivan*, 376 U.S. 254 (1964).

Defendants have no special First Amendment immunity for their own actionable falsehoods or for other

acts, *e.g.*, demonetization, demotion of content, retaliation, which furthered the scheme. SAC ¶ 78-79,

323-28, 385. *See Cohen v. Cowles Media Co.*, 501 U.S. 663, 670 (1991) (newspaper publisher has "no

special privilege to invade the rights and liberties of others."). As Judge Alsup observed in

*Dreamstime.com, LLC v. Google, LLC*, 2019 U.S. Dist. LEXIS 94573, at *4-5 (N.D. Cal. 2019), "[j]ust

like a fast-talking con-artist cannot hide behind the First Amendment, neither can Google." Nor can

Facebook.

**B.  Defendants' Actual Malice Defense Fails as a Matter of Law and Fact.**

Defendants contend that CHD: (1) was required to plead actual malice for its RICO and Lanham

Act claims; and (2) that CHD has not done so. Both contentions are false.

**1.  The Actual Malice Requirement Does Not Apply to CHD's RICO or Lanham Act Claims.**

Defendants assert that the actual malice standard applies to "civil RICO claims based on fraud."

(MTD at 15.) That is emphatically not the law. A multitude of fraud cases, including RICO cases, have

been decided without any mention of actual malice, because fraud claims are not subject to the actual

malice standard. *See, e.g.*, *SEC v. Pirate Investor LLC*, 580 F.3d 233, 255 (4th Cir. 2009) (rejecting

actual malice requirement for fraud claims); *Feminist Women's Health Ctr. v. Roberts*, 1989 U.S. Dist.

LEXIS 5837, at *25 (W.D. Wash. 1989) (mail fraud statute); *cf. P&G*, 242 F.3d at 555, 565 (upholding

fraud-based civil RICO claims in case where plaintiff had, with respect to other claims, been deemed a

public figure and had been found not to have pleaded actual malice).[19]

Nor does the actual malice requirement apply to CHD's Lanham Act claim. A plaintiff "is not

required to show actual malice in proving its Lanham Act claim" where (as here) the Lanham Act claim

is brought under Section 43(a)(1)(B), because that section applies only to "false commercial speech,"

---

[19]    The single case on which Defendants rely, *Savage v. Council on Am.-Islamic Relations, Inc.*, 2008 U.S. Dist. LEXIS 60545 (N.D. Cal. 2008), was decided on a standing issue and related to political speech. *Id.* at *34.

20                    **Plaintiff's Opposition to Defendants**
**Facebook and Zuckerberg's Motion to Dismiss**
***CHD v. Facebook* et al.; Case No. 3:20-cv-05787-SI**

1   which has no protection under the First Amendment. *P&G*, 242 F.3d at 557; *see Hoffman v. Capital*

2   *Cities/ABC Inc.*, 255 F.3d 1180, 1185 (9th Cir. 2001) ("When speech is properly classified as

3   commercial, a public figure plaintiff does not have to show that the speaker acted with actual malice.").

4   As noted above, determining if statements qualify as unprotected "commercial speech" raises substantial

5   factual issues, including significantly whether defendant had an "economic motivation," *Ariix*, *supra*, at

6   *17, which CHD has plausibly alleged. If "the trier of fact determines that [defendant's] motives in

7   spreading the [alleged false statements] were economic and that the speech was therefore commercial,

8   this false commercial speech cannot qualify for the heightened protection of the First Amendment, so

9   [plaintiff] is not required to show actual malice." *P&G*, 242 F.3d at 557.[20]

10          **2.  CHD Has Adequately Pleaded Actual Malice.**

11       Actual malice exists where defendants have made false statements either knowingly or with

12   reckless disregard for the truth. *Harte-Hanks Comms., Inc. v. Connaughton*, 491 U.S. 657, 667 (1989).

13   Here, CHD has more than plausibly pleaded knowing falsehood.

14       As alleged in the SAC, Facebook repeatedly labeled CHD's vaccine safety warnings "false,"

15   while representing to users that this determination had been reached by trustworthy "fact-checkers"

16   measuring CHD's content against scientific data. At the same time, Facebook publicly represented that

17   matters of opinion would not be labeled "false." Accordingly, Facebook's "false" labels on CHD's posts

18   communicated to users that CHD's vaccine safety warnings had been proven false by scientific data and

19   were not matters on which reasonable scientists or doctors could have differing opinions. But that

20   statement itself (by Facebook) was a knowing falsehood. Facebook's fact-checkers had *not* determined

21   that CHD's vaccine safety warnings had been proven false.[21] As specifically alleged, the fact-checkers

22

23   [20]    Defendants cite *Eastwood v. National Enquirer, Inc.*, 123 F.3d 1249, 1250 (9th Cir. 1999), which
24   did apply actual malice to a Lanham Act claim, but defendants fail to mention that *Eastwood* involved
     non-commercial speech and that the Lanham Act claim there was made under Section 43(a)(1)(A) (false
25   endorsement), which is not limited to commercial speech, whereas CHD's claim is stated under Section
     43(a)(1)(B) (false advertising and promotion), which is so limited. *See, e.g.*, *Coastal Abstract Serv. v.*
26   *First Am. Title Ins. Co.*, 173 F.3d 725, 735 (9th Cir. 1999) (statements must be "commercial speech" to
     violate Lanham Act Section 43(a)(1)(B)).

27   [21]    Often, Defendants' "fact-checks" offer no rebuttal at all (SAC ¶¶ 173-75, 194) or cite unrelated
     sources. *Id.*, ¶¶ 144-49, 191-92. One links to a German-language post to "fact-check" RFK, Jr.'s
28   English-language opinion. *Id.* ¶¶ 168-69.

**Plaintiff's Opposition to Defendants**
**Facebook and Zuckerberg's Motion to Dismiss**
*CHD v. Facebook* et al.; Case No. 3:20-cv-05787-SI

had in many cases merely determined that CHD's content was "*unsupported*." SAC ¶¶ 116, 132, 143, 144. CHD believes the fact-checkers' statements are false and meet the actual malice standard, because all of CHD's content has evidentiary support. SAC ¶¶ 26-34. But, the actual malice allegation here stands on the difference between Defendants' "false" label and their fact-checkers' assertion that CHD's content was merely "unsupported."

The difference is critical. Unsupported does not mean false. In 1950, the warning that cigarette smoking caused cancer was *unsupported* (in the sense that scientific data had not yet proven it), but it was *not false*. On the contrary, it was true. A cigarette manufacturer who said in 1950, "the claim that cigarette smoking causes cancer has been proven false" would have been acting with actual malice—engaging in a knowing falsehood—provided the cigarette manufacturer knew that the statement "cigarette smoking causes cancer" was merely *unsupported*.

That is precisely what Facebook did here, accepting CHD's allegations as true. Facebook told users that CHD's vaccine safety warnings had been proven false, and were not matters on which reasonable scientists or doctors could have differing opinions, when Facebook's own fact-checkers had concluded that CHD's warnings were merely "unsupported." Because Facebook's fact-checkers were Facebook's agents or employees—an allegation that must be taken as true on this motion—Facebook is chargeable with knowing what they knew. *See, e.g.*, *United States ex rel. Polukoff v. St. Mark's Hosp*., 895 F.3d 730, 745 n.9 (10th Cir. 2018) ("It is well established that a corporation is chargeable with the knowledge of its agents and employees acting within the scope of their authority."). Thus, Facebook acted with actual malice, labeling CHD content "false" when it knew CHD's vaccine safety warnings were at most "unsupported."[22] Moreover, Defendants took action just days after CHD's letter gave them reasons to doubt Mr. Schiff's premises and to investigate before labeling any CHD post "false." CHD's

---

[22]   Facebook similarly engaged in knowing falsehood by labeling CHD content "false" or "inaccurate" when its agents: believed that the content was merely "misleading"; knew that CHD was merely truthfully reporting others' findings; or knew that their own "fact-checking" determinations contradicted known facts and data. SAC ¶¶ 158, 162, 164, 178. Nor can Defendants claim that the fact-checkers' explanation pages cured the misrepresentation effected by Facebook's "false" label, because most ordinary Facebook users would not click through to, or understand, those explanation pages. *Cf., e.g.*, *Eastwood*, 123 F.3d at 1256 (newspaper liable for Lanham Act violations because front-page headline communicated falsehood to "the ordinary reader of their publication—*as well as those who merely glance at the headlines while waiting at the supermarket checkout counter*") (emphasis added).

22          **Plaintiff's Opposition to Defendants**
**Facebook and Zuckerberg's Motion to Dismiss**
*CHD v. Facebook* et al.; Case No. 3:20-cv-05787-SI

allegations of prejudgment show deliberate avoidance of truth which, along with evidence of knowing falsehood, and motive, are sufficient to plead actual malice. *See, e.g.*, *Suzuki Motor Corp. v. Consumers Union of United States, Inc.*, 330 F.3d 1110, 1134, 1136 (9th Cir. 2003) ("[a]lthough failure to investigate will not alone support a finding of actual malice, the purposeful avoidance of the truth is in a different category").

### C.  Defendants Are Not Entitled to Dismissal on the Basis of Section 230 Immunity.

Defendants claim that Section 230 immunizes them against CHD's Lanham Act and RICO counts ignores the law and raises factual issues improper on a Rule 12(b)(6) motion.

### 1.  Section 230 Immunity Does Not Apply to Lanham Act or RICO Claims Alleging "Anti-Competitive Conduct."

Section 230 "immunity . . . does not extend to anti-competitive conduct." *Enigma Software Grp. USA, LLC v. Malwarebytes, Inc*., 946 F.3d 1040, 1054 (9th Cir. 2019). *Enigma* held that Section 230 immunity is inapplicable to Lanham Act claims "deriving from the statute's false advertising provision" and to plaintiff's other claims, including tort claims and "deceptive business practice" claims, because they too were "based on allegations of [anticompetitive] conduct" *Id.* at 1052, 1054. All of CHD's Lanham Act and RICO claims are "based on allegations of [anticompetitive] conduct." As stated above, Facebook's fact-checking entities—who are its agents—are direct competitors of CHD: as nonprofits putatively providing accurate health safety information online, they compete with CHD both in the services they offer and in seeking users' donation dollars. CHD has alleged specifically and in detail how, given their commercial interests in pharmaceutical ad revenue, vaccine development, and 5G technology, Defendants' fraudulent targeting of CHD was undertaken to damage or destroy their competitor (CHD) while promoting CHD's competitors in order to increase Defendants' own profit. SAC ¶¶ 8, 330-34, 375. Thus under the Ninth Circuit's decision in *Enigma*—which Defendants fail to cite or address—Defendants' Section 230 defense must be rejected. [23]

---

[23]     Any claim Defendants may make that their conduct was not "anti-competitive" would raise factual issues improper on a Rule 12(b)(6) motion. *See Enigma*, 946 F.3d at 1054 (so long as a claim is "based on allegations of [anticompetitive] conduct," it "survives dismissal"). *Asurvio LP v. Malwarebytes Inc.*, 2020 U.S. Dist. Lexis 53906 (C.D. Cal. 2020), distinguishing *Enigma*, is not to the contrary. There, the court found that plaintiff and defendant were not competitors. *Id.* at *10. Here, CHD

**Plaintiff's Opposition to Defendants**
**Facebook and Zuckerberg's Motion to Dismiss**
*CHD v. Facebook* et al.; Case No. 3:20-cv-05787-SI

### 2. Section 230 Also Does Not Apply By Its Own Terms.

Even if Section 230 immunity were not barred by *Enigma*, it would be of no avail to Defendants. Section 230 protects a website that serves merely as a "passive transmitter of information provided by others." *Fair Hous. Council v. Roommates.com, LLC*, 521 F.3d 1157, 1162, 1166 (9th Cir. 2008) (en banc). But Section 230 does not apply if the website itself posted or created the content at issue or was "'responsible, in whole or in part, for the creation or development of the offending content.'" *Id.* (*quoting* 47 U.S.C. § 230(f)(3)); *M.L.* v. *Craigslist, Inc.*, 2020 U.S. Dist. LEXIS 166334, at *7 (W.D. Wash. Sept. 11, 2020); *see, e.g.*, *Huon v. Denton*, 841 F.3d 733, 742 (7th Cir. 2016) (a "company can, however, be liable for creating and posting, inducing another to post, . . . actively participating in the posting," or "help[ing] develop the information"). Determining whether a website was "in part" responsible for certain content is highly fact-intensive.[24] A "complaint need only plead enough facts" to lift this issue "above a speculative level" to survive dismissal. *Huon*, 841 F.3d at 742 (*quoting Twombly*, 550 U.S. at 555). As shown in the next two sections, CHD has more than satisfied that burden here.

### 3. CHD Has Adequately Pleaded Agency.

It is well established that if a website's *agent* posted the challenged content, the website is the content provider and no Section 230 immunity applies. *Enigma Software Grp. USA, LLC v. Bleeping Computer LLC*, 194 F. Supp. 3d 263, 276 (S.D.N.Y. 2016) (stating the rule and collecting cases). Here, CHD has alleged—and it is not seriously disputed—that Facebook selects and appoints its fact-checkers; gives them special authority to evaluate the truth of users' posts; tells users that the fact-checkers have this authority; and represents to its users that its fact-checkers can be trusted to provide accurate information. CHD alleges numerous additional specific facts indicative of control and of a principal-agent relationship, including that Facebook:

- maintains extensive supervision and control of its fact-checker processes;
- directs content to fact-checkers prejudged as false by its own algorithms;
- trains its fact-checkers and provides manuals and cabined scoring options;

directly competes with Facebook's agents, its fact-checkers, whom Defendants fraudulently promoted with the deliberate intention of damaging CHD.

[24]      Facebook suggests that its fact-checkers make all relevant judgments "alone." MTD at 18 n.13. But this requires accepting *as true* the ipse dixit pronouncements on Facebook's webpage which exceeds the proper scope of judicial notice and Rule 12(b)(6).

24                    **Plaintiff's Opposition to Defendants**
**Facebook and Zuckerberg's Motion to Dismiss**
*CHD v. Facebook* et al.; Case No. 3:20-cv-05787-SI

- subsidizes Poynter's IFCN "certification";
- determines what posts qualify as "protected opinion";
- pays its fact-checkers and provides their operating budgets (directly and through controlled entities), in ways that incentivize them to execute Facebook's prejudgment of falsity; and
- retains final control of all fact-checker ratings and has in fact altered such ratings.

SAC ¶¶ 5, 9, 20-21, 58, 72, 87-97, 105-14. These facts are far more than sufficient to allege agency. *See, e.g.*, *Mavrix Photographs, LLC v. LiveJournal, Inc.*, 873 F.3d 1045, 1053-55 (9th Cir. 2017) (reversing summary judgment and holding that genuine issues of fact existed as to agency, making website potentially liable for its moderators' posts, where website allegedly "selected moderators," gave them special authority to "review" posts, "provided them with specific directions," and led users to believe that moderators "acted on behalf" of website); *Enigma Software Group*, *supra*, 194 F. Supp. 3d at 275-76 (denying Section 230 motion to dismiss where plaintiff sufficiently pleaded agency in alleging that defendant selected forum moderators, gave moderators special authority to decide whether user posts complied with terms of service, and represented to users that moderators could be "trusted" to give correct answers).[25]

Indeed, given Facebook's extensive control over its fact-checkers' work, CHD's allegations suggest that Facebook's fact-checkers are its *employees*. *See Huon*, 841 F.3d at 872 (no Section 230 immunity where content was posted by website's employees); Cal. Lab. Code, §§ 2775-76 (deeming individuals who perform remunerated work employees unless defendant proves lack of control). Under California law, Facebook must prove lack of control, *see id*. Cal. Lab. Code, § 2776, subd. (a)(1), which Defendants have not done and cannot do on a Rule(12)(b)(6) motion.

### 4. CHD Plausibly Alleges that Defendants Are Responsible for the Creation and Development of Fact-Checker Content That Precludes Section 230 Immunity.

Wholly apart from agency, CHD has pleaded facts sufficient to show Facebook's responsibility

---

[25] Facebook disregards CHD's allegation that it demonstrably altered fact-checker ratings of other users' content. (MTD at 19.) But, agency is established by the principal's right to control the activities of the agent. *"It is not essential that the right of control be exercised or that there be actual supervision of the work of the agent; the existence of the right establishes the relationship." Castillo v. Glenair, Inc.*, 23 Cal. App. 5th 262, 278 (Cal. App. 2018) (citations omitted) (emphasis added). Facebook's altering of other fact-checks establishes its "*right to control*" its fact-checkers' work, and the right to control establishes agency, precluding Section 230 immunity.

Plaintiff's Opposition to Defendants
Facebook and Zuckerberg's Motion to Dismiss
*CHD v. Facebook* et al.; Case No. 3:20-cv-05787-SI

for fact-checker content. CHD alleges that it was Facebook, not the fact-checkers, that actually created and posted the grey warning overlays on CHD pages, falsely stating that CHD content contained misinformation.[26] *See Huon*, 841 F.3d at 742 (a "company can, however, be liable for *creating and posting*" the challenged content) (emphasis added). Moreover, Facebook created and developed the entire fact-checking program, specified the ratings, designed and ran algorithms to flag so-called misinformation, and paid its fact-checkers to review such flagged content. Regardless of agency, these allegations preclude Section 230 immunity. *See FTC v. Accusearch Inc*., 570 F.3d 1187, 1199-200 (10th Cir. 2009) (concluding that a website developed information by devising plan to create and post information and then "pay[ing] researchers to obtain it").

Further, CHD alleges that Facebook played the dominant role in determining that the fifteen specific CHD posts in question were either "false" or "partly false" by: flagging as misinformation CHD content through Facebook's own algorithms; directing its fact-checkers not to treat CHD posts as protected opinion; and partnering with the CDC/WHO to determine what counted as "true" with respect to vaccine information. *See supra*, at 2-4. These allegations clearly support a non-speculative, plausible inference that Facebook was "responsible, in whole or in part, for the creation and development" of the posts at issue in this case, precluding Section 230 immunity.[27] *See* 47 U.S.C. § 230(f)(3); *Roommates.com*, 521 F.3d at 1162.

### 5. As Applied Here, Section 230's Constitutionality Would Raise Serious Issues of Law and Fact That Cannot Be Resolved on this Rule 12(b)(6) Motion.

Finally, if Section 230 applied to this case, serious issues of law and fact concerning its constitutionality would be raised that could not be properly addressed on this motion. It is "axiomatic

---

[26]     Facebook's fallacious labels here were affixed directly on CHD's product, i.e., as an overlay, on CHD's user page content. The effectiveness of Facebook's false advertising is magnified by the kind of direct placement employed here.

[27]     Facebook's use of algorithms to flag "vaccine misinformation" is not a content-neutral tool akin to translating third-party location data into map form *without passing on its accuracy*, *Marshall's Locksmith Service, Inc. v. Google*, LLC, 925 F.3d 1263, 1271 (D.C. Cir. 2019) or third-party reviews into star-ratings *without endorsement or agency*, *Kimzey v. Yelp! Inc.*, 836 F.2d 1263 (9th Cir. 2016). Further, CHD alleges Facebook did not act in "good faith" under 47 U.S.C. § 230(c)(2)(A). SAC ¶¶ 296, 328, 350. Nor was Facebook's takedown of CHD's donate function directed at "material" under Section 230(c)(2)(A).

Plaintiff's Opposition to Defendants
Facebook and Zuckerberg's Motion to Dismiss
*CHD v. Facebook* et al.; Case No. 3:20-cv-05787-SI

that [the government] may not induce, encourage, or promote private persons to accomplish what it is constitutionally forbidden to accomplish." *Norwood v. Harrison*, 413 U.S. at 465; *George v. Edholm*, 752 F.3d 1206, 1215 (9th Cir. 2014). Yet that is exactly what Section 230 deliberately and very successfully has done. Moreover, in *Denver Area Educ. Telecomm. Consortium, Inc. v. FCC*, 518 U.S. 727 (1996), the Supreme Court applied heightened First Amendment scrutiny to, and struck down, federal statutory provisions permitting—but not compelling—cable companies to block "offensive" content on television. *Id.* at 741, 766 (plurality opinion) (applying "close judicial scrutiny"); *id.* at 805 (Kennedy, J., concurring and dissenting) (applying "strict scrutiny"). Thus, if Section 230 applied to this case, this Court should apply heightened First Amendment scrutiny. *See Roberts v. AT&T Mobility LLC*, 877 F.3d 833, 841 (9th Cir. 2017). Such heightened scrutiny requires careful judicial "balancing" of interests, examination of the platforms' actual control over the medium in question, and consideration of potentially less restrictive measures, *see Denver Area*, 518 U.S. at 744-45, 763-64 (plurality opinion); *id.* at 806-09 (opinion of Kennedy, J.). Moreover, "once a statute triggers heightened scrutiny, the party *defending* the statute bears the burden of proof." *Atlantic Coast Demolition & Recycling v. Board of Chosen Freeholders*, 112 F.3d 652, 665 (3d Cir. 1997) (emphasis in original). Defendants have not pleaded, much less proven, any part of the factual showing that would be necessary to establish that Section 230 survives heightened scrutiny, and they cannot do so on a Rule 12(b)(6) motion.

## VI. CHD HAS ADEQUATELY PLEADED CLAIMS AGAINST ZUCKERBERG.

Zuckerberg's direct personal involvement in the acts giving rise to CHD's claims has been plausibly alleged, and he should not be dismissed as a defendant. First, Zuckerberg is the Co-Founder, Chairman, CEO and majority shareholder (53.3%) of Facebook. SAC ¶¶ 17-19. Clearly he had authority within Facebook to authorize, direct and participate in the censorship and fraudulent scheme directed against CHD. "'A corporate officer or director is, in general, personally liable for all torts which he authorizes or directs or in which he participates, notwithstanding that he acted as an agent of the corporation and not on his own behalf.'" *Coastal Abstract Serv. v. First Am. Title Ins. Co.*, 173 3d at 734. Zuckerberg cannot "'hide behind the corporation where he is an actual participant in the tort.'" *Id.* (citation omitted).

Second, Defendants do not dispute that Zuckerberg's management style is "hands-on," and that

recently, he relies even more heavily on his own instincts and judgment. SAC ¶¶ 216, 260, 266, 271.

That Zuckerberg is the public face of Facebook is well known. He has made it his personal concern to

testify frequently before Congress regarding freedom of speech (which he purports to favor), censorship,

and issues relating to vaccines and 5G. *Id.* ¶¶ 266-68. He testified before Congress regarding his policy

to discourage Facebook users from joining groups to discuss what he terms "anti-vaccination content."

*Id.* ¶ 268. He stated elsewhere that his Facebook "team is working urgently to remove dangerous and

deadly 'fake news' posts about 5G. … We take that down." *Id.* ¶ 74. These statements leave little doubt

that Zuckerberg is personally involved in Facebook's campaign.

Third, Congressman Adam Schiff has directed intense pressure at Zuckerberg to marginalize and

censor content on Facebook, such as CHD's, that discusses possible adverse consequences of vaccines

and questions their efficacy. SAC ¶¶ 60-64. Shortly after Schiff's pressure on Zuckerberg, Facebook

initiated its censorship and demonetization campaign against CHD. *Id.* ¶¶ 60, 70, 78-79, 198. The timing

of this comprehensive campaign against CHD plausibly indicates that it was initiated in response to

pressure that Congressman Schiff brought to bear in the course of personal communications with

Zuckerberg.

Fourth, Zuckerberg has been personally involved in a number of Facebook's censorship

decisions. SAC ¶¶ 269-71. Defendants' effort to argue that such decisions are irrelevant because they

were "unrelated to CHD, vaccines or 5G" misses the point. (MTD at 27.) These allegations demonstrate

Zuckerberg's personal participation in Facebook's censorship decisions involving public issues and

political figures, and support the reasonable inference that he was involved in decisions here. CHD's

content clearly involved significant public issues – vaccines and 5G technology. Significant public

figures were also involved. Common sense and judicial skepticism cut in favor of the allegations in the

SAC and against the implausible conclusion that Zuckerberg was uninvolved in the conduct at issue. The

plausibility requirement "'simply calls for enough facts to raise a reasonable expectation that discovery

will reveal evidence of'" the facts alleged. *Hartman v. Gilead Sciences, Inc.*, 536 F.3d 1049, 1057 (9th

Cir. 2008) (*quoting Twombly*, 550 U.S. at 556). CHD has pleaded sufficient facts to meet that standard.

## CONCLUSION

Defendants' motion to dismiss the Second Amended Complaint should be denied.

Plaintiff's Opposition to Defendants
Facebook and Zuckerberg's Motion to Dismiss
*CHD v. Facebook* et al.; Case No. 3:20-cv-05787-SI

Dated:   February 5, 2021          Respectfully submitted,



ROBERT F. KENNEDY, JR.
Founder and Chairman, Children's Health Defense



MARY S. HOLLAND
General Counsel, Children's Health Defense



ROGER I. TEICH

Counsel for Plaintiff
Children's Health Defense

**Plaintiff's Opposition to Defendants
Facebook and Zuckerberg's Motion to Dismiss**
*CHD v. Facebook* et al.; Case No. 3:20-cv-05787-SI