1

**JASSY VICK CAROLAN LLP**
KEVIN L. VICK (SBN 220738)
 kvick@jassyvick.com
800 Wilshire Boulevard, Suite 800
Los Angeles, CA 90017
Telephone: (310) 870-7048
Facsimile: (310) 870-7010

*Attorneys for Defendant The Poynter
Institute for Media Studies, Inc.*

**THOMAS & LOCICERO PL**
CAROL JEAN LOCICERO (*pro hac vice*)
 clocicero@tlolawfirm.com
MARK R. CARAMANICA (*pro hac vice*)
 mcaramanica@tlolawfirm.com
 601 South Boulevard
Tampa, FL 33606
Telephone: (813) 984-3060
Facsimile: (813) 984-3070

 -and-

DANIELA B. ABRATT (*pro hac vice*)
 dabratt@tlolawfirm.com
 915 Middle River Drive, Suite 309
Fort Lauderdale, FL 33304
Telephone: (954) 703-3416
Facsimile: (954) 400-5415

*Attorneys for Defendant The Poynter
Institute for Media Studies, Inc.*

## UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

## SAN FRANCISCO DIVISION

| | |
|---|---|
| CHILDREN'S HEALTH DEFENSE, a Georgia non-profit organization,<br><br>                    Plaintiff,<br><br>        v.<br><br>FACEBOOK, INC., a Delaware corporation; MARK ZUCKERBERG, a California resident; SCIENCE FEEDBACK, a French corporation; THE POYNTER INSTITUTE FOR MEDIA STUDIES, INC., a Florida corporation; and DOES 1-20.<br><br>                    Defendants. | Case No.:  3:20-cv-05787-SI<br><br>**DEFENDANT THE POYNTER INSTITUTE FOR MEDIA STUDIES, INC.'S REPLY MEMORANDUM IN SUPPORT OF ITS MOTION TO DISMISS VERIFIED SECOND AMENDED COMPLAINT**<br><br>DATE: MARCH 23, 2021<br>TIME: 11:00 A.M.<br>COURTROOM: 1-17TH FLOOR |

1

## **TABLE OF CONTENTS**

2   TABLE OF AUTHORITIES ............................................................................................. ii

3   REPLY MEMORANDUM OF POINTS AND AUTHORITIES ................................... 1

4       I.      INTRODUCTION ................................................................................. 1

5       II.     THE COURT NEED NOT ACCEPT IMPLAUSIBLE ALLEGATIONS
6             AS TRUE....................................................................................................... 2

7       III.    CHD'S COUNTS ALSO SUBSTANTIVELY FAIL AS A MATTER OF LAW ....... 5

8            A.  As to *Bivens*, CHD Argues State Action Grounded in Tortured Conspiracy
            Theory, Ingoring that No Claim Lies Against Corporate Entities Like Poynter  ... 5

9               *State Actor Status Predicated on an Implausible Conspiracy Theory* ................... 5
10

11              *No Bivens Claim Lies Against Corporations Like Poynter, No Matter the*
            *Grounds* .......................................................................................................... 8

12           B.  The False Advertising Claim Fails Because it is Vague, CHD and Poynter are
13              Not Competitors, and the PolitiFact Fact-Check is Not Commercial Speech ...... 10

14           C.  The RICO Count Fails to Plead Predicate Acts and Remaining RICO Elements ..13

15           D.  The Declaratory Relief Would Unconstitutionally Restrain Protected Speech....15

16      IV.    CONCLUSION ......................................................................................... 15

17  SIGNATURE ATTESTATION ......................................................................................... 17

18  CERTIFICATE OF SERVICE ........................................................................................ 17

19

20

21

22

23

24

25

26

27

28

CASE NO.: 3:20-CV-05787-SI

THE POYNTER INSTITUTE FOR MEDIA
STUDIES, INC.'S REPLY MEMORANDUM IN
SUPPORT OF ITS MOTION TO DISMISS
VERIFIED SECOND AMENDED COMPLAINT

# TABLE OF AUTHORITIES

**CASES**

*Ariix, LLC v. NutriSearch Corp.*, No. 19-55343, 2021 WL 221878 (9th Cir. Jan. 22, 2021)..........12

*Ashcroft v. Iqbal*, 556 U.S. 662 (2009) ................................................................. ..*passim*

*Association of American Physicians & Surgeons v. Schiff*,
No. 20-106 (RC), 2021 WL 354174 (D. D.C. Feb. 2, 2021). ....................................... 7

*Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007) ............................................... *passim*

*Bivens v. Six Unknown Named Agents of the Federal Bureau of Narcotics*,
403 U.S. 388 (1971)................................................................... *passim*

*Bly-Magee v. California*, 236 F.3d 1014 (9th Cir. 2001) ................................................ 4

*Bolger v. Youngs Drug Products Corp.*, 463 U.S. 60 (1983) ..................................... 12, 13

*Boule v. Egbert*, 980 F.3d 1309 (9th Cir. 2020) ......................................................... 9

*Bowyer v. Ducey*, No. CV-20-02321-PHX-DJH, 2020 WL 7238261 (D. Ariz. Dec. 9, 2020)........ 3, 4

*Brentwood Academy v. Tennessee Secondary School Athletic Association*, 531 U.S. 288 (2001) .. 5, 6

*Camps Newfound/Owatonna, Inc. v. Town of Harrison, Maine*, 520 U.S. 564 (1997)..................... 12

*Contawe v. County of San Mateo*,
No. 15-cv-00222-JD, 2015 WL 9311919 (N.D. Cal. Dec. 23, 2015)................................. 4

*Correctional Services Corp. v. Malesko*, 534 U.S. 61 (2001). ................................... 8, 9, 10

*Davison v. Facebook, Inc.*, 370 F. Supp. 3d 621 (E.D. Va. 2019). ..................................... 9

*Eclectic Properties East, LLC v. Marcus & Millichap Co.*, 751 F.3d 990 (9th Cir. 2014) ................ 3

*Federal Agency of News LLC v. Facebook, Inc.*, 432 F. Supp. 3d 1107 (N.D. Cal. 2020) ................ 9

*Feminist Women's Health Center v. Roberts*,
No. C86-161Z, 1989 WL 56017 (W.D. Wash. May 5, 1989)…………………………………………14

*Freedom Watch, Inc. v. Google, Inc.*, 368 F. Supp. 3d 30 (D. D.C. 2019)........................................ 9

*Hoffman v. Capital Cities/ABC, Inc.*, 255 F.3d 1180 (9th Cir. 2001).................................... 13

*In re Century Aluminum Co. Securities Litigation*, 729 F.3d 1104 (9th Cir. 2013) ........................... 4

ii

THE POYNTER INSTITUTE FOR MEDIA
STUDIES, INC.'S REPLY MEMORANDUM IN
SUPPORT OF ITS MOTION TO DISMISS
VERIFIED SECOND AMENDED COMPLAINT

*In re Gilead Sciences Securities Litigation*, 536 F.3d 1049 (9th Cir. 2008)...................................2, 3

*Kelly v. United States*, 140 S. Ct. 1565 (2020) .........................................................................14

*Lexmark International, Inc. v. State Control Components, Inc.*, 572 U.S. 118 (2014) .............10, 11

*Manhattan Community Access Corp. v. Halleck*, 139 S. Ct. 1921 (2019).....................................5, 6

*Mimedx Group, Inc. v. Osiris Therapeutics, Inc.*,
   No. 16 Civ. 3645 (KPF), 2017 WL 3129799 (S.D.N.Y. July 21, 2017) ........................................5

*Moss v. United States Secret Service*, 572 F.3d 962 (9th Cir. 2009) ................................................2

*Nebraska Press Association v. Stuart*, 427 U.S. 539 (1976) .........................................................15

*Perez v. LinkedIn Corp.*, No. 5:20-cv-07238-EJD, 2021 WL 519379 (N.D. Cal. Feb. 5, 2021).......9

*Planned Parenthood Federation of America, Inc. v. Center For Medical Progress*,
   No. 16-cv-00236-WHO, 2020 WL 2065700 (N.D. Cal. Apr. 29, 2020)......................................15

*Prager University v. Google LLC*,
   No. 17-CV-06064-LHK, 2018 WL 1471939 (N.D. Cal. Mar. 26, 2018) ........................................9

*Scheidler v. National Organization for Women, Inc.*, 537 U.S. 393 (2003) ...................................14

*Smith v. United Healthcare Insurance Company*,
   No. 18-cv-06336-HSG, 2019 WL 3238918 (N.D. Cal. July 18, 2019) ......................................4, 5

*Sprewell v. Golden State Warriors*, 266 F.3d 979 (9th Cir. 2001) ...................................................2

*Thermolife International LLC v. Sparta Nutrition LLC*,
   No. CV-19-01715-PHX-SMB, 2020 WL 248164 (D. Ariz. Jan. 16, 2020) ................................11

*United States v. Garlick*, 240 F.3d 789 (9th Cir. 2001). ...............................................................14

*United States v. Rezko*, No. 05 CR 691, 2007 WL 2904014 (N.D. Ill. Oct. 2, 2007)...............14, 15

*Vess v. Ciba-Geigy Corp. USA*, 317 F.3d 1097 (9th Cir. 2003) ....................................................10

*Wilson v. Twitter*, No. 3:20-cv-00054, 2020 WL 3410349 (S.D. W. Va. May 1, 2020) .................9

**STATUTES**

18 U.S.C. § 1343 .......................................................................................................................13

THE POYNTER INSTITUTE FOR MEDIA
STUDIES, INC.'S REPLY MEMORANDUM IN
SUPPORT OF ITS MOTION TO DISMISS
VERIFIED SECOND AMENDED COMPLAINT

**FEDERAL RULES**

Fed. R. Civ. P. 8 ........................................................................................................4

Fed. R. Civ. P. 9(b) ...............................................................................................4, 10

**MISCELLANEOUS**

*All Issues*, POLITIFACT, https://www.politifact.com/issues/ ..........................................2

Charlie Warzel, *Don't Go Down the Rabbit Hole,* N.Y. TIMES, Feb. 18, 2021,
    https://www.nytimes.com/2021/02/18/opinion/fake-news-media-attention.html .....................1, 2

*CHD Legal Team Led by Robert F. Kennedy, Jr. Sues Facebook, Mark Zuckerberg, and Three of
    Facebook's So-Called "Fact-Checkers"*, CHILDREN'S HEALTH DEFENSE, Aug. 18, 2020, (last
    visited Feb. 28, 2021),
    https://childrenshealthdefense.org/press-release/chd-legal-team-led-by-robert-f-kennedy-jr-sues-
    facebook-mark-zuckerberg-and-three-of-facebooks-so-called-fact-checkers-for-government-
    sponsored-censorship-false-dispar/ .................................................................11

*CHD Holds Press Conference with Legal Team and Plaintiff in Lawsuit Against Facebook, Mark
    Zuckerberg, and Three of Facebook's So-Called "Fact-Checkers"*, CHILDREN'S HEALTH
    DEFENSE, Aug. 20, 2020 (last visited Feb. 28, 2021),
    https://childrenshealthdefense.org/news/chd-holds-press-conference-with-legal-team-and-
    plaintiff-in-lawsuit-against-facebook-mark-zuckerberg-and-three-of-facebooks-so-called-fact-
    checkers/ ...............................................................................................................11

*International Fact-Checking Network Transparency Statement*, POYNTER, *available at,*
    https://www.poynter.org/international-fact-checking-network-transparency-statement/ ..............7

*Largest funders of Poynter*, POYNTER, https://www.poynter.org/major-funders/ ...........................7

*People and Groups*, POLITIFACT, https://www.politifact.com/personalities/ ...................................2

1

**REPLY MEMORANDUM OF POINTS AND AUTHORITIES**

2

*The simplest solution is preferable to one that is more complex. - Occam's razor*

3

**I.     INTRODUCTION**

4

In times when visions of conspiracy too often drive public discourse and burden the judiciary

5

with lawsuits devoid of substance, CHD's Opposition Memorandum (Dkt. No. 70, the "Opposition")

6

continues pushing a victimhood fantasy rooted in "deep state" conspiracies. It strings together

7

disparate allegations—a letter from a Congressman, CDC/WHO vaccine policy, Facebook's private

8

speech platform, a fact-checking process, and non-profit funding—in an attempt to state claims

9

intended to punish civil rights violations by state actors, organized crime syndicates, and false

10

advertising that hurts commercial consumers.

11

Dubious vaccine-related information propagated on Facebook is rightfully subject to

12

scrutiny. Ironically, while CHD argues for its own free speech rights, it eschews the very

13

marketplace of ideas resting at the First Amendment's core, diving deeper into the imaginings

14

underlying its Verified Second Amended Complaint ("SAC"). Because it cannot compete on ideas,

15

CHD turns to this Court in hopes of violating The Poynter Institute for Media Studies, Inc.'s

16

("Poynter") right to comment on speech about vaccines CHD deems counter to its anti-vaxxer

17

theories. Even crediting its implausible version of reality, no *Bivens*, civil RICO, or Lanham Act

18

claims can be sustained. Thus, no matter how many paranoid allegations are posited in this third

19

round of pleading, this lawsuit must be dismissed with prejudice.

20

And while CHD's claims fail no matter what deference is given at this stage, their

21

implausibility under *Iqbal/Twombly* cannot be ignored. CHD views the Defendants as a collective,

22

veiled government-controlled cabal specifically conceived to destroy CHD's reputation and cripple

23

its fundraising, while also promoting Mark Zuckerberg's alleged financial interest in 5G buildout.[1]

24

---

25

[1] CHD would have this Court believe the Defendants have singled out it and its founder, Robert F.

26

Kennedy, Jr., but Mr. Kennedy's anti-vaxxer activism attracts a much wider critical audience. Academics studying digital media literacy view him as a textbook opportunity to educate about

27

problematic message sources through a process known as SIFT: (S)top, (I)nvestigate the source, (F)ind better coverage, (T)race claims, quotes, and media to the original context. *See* Charlie Warzel,

1

28

THE POYNTER INSTITUTE FOR MEDIA
STUDIES, INC.'S REPLY MEMORANDUM IN
SUPPORT OF ITS MOTION TO DISMISS
VERIFIED SECOND AMENDED COMPLAINT

But plausibility, judicial experience, and common sense counsel that, in reality, Facebook simply sought to stem misinformation on the social media platform it owns and engaged fact-checking organizations like Poynter to assess public health information postings at odds with scientific consensus. This better explains why, for example, third-party content shared on CHD's Facebook page that was fact-checked by Poynter was corrected consistent with Poynter's critique—and is not part of a nefarious plot against CHD.

## II.   THE COURT NEED NOT ACCEPT IMPLAUSIBLE ALLEGATIONS AS TRUE

CHD misconstrues applicable motion to dismiss standards, inviting this Court to stretch the deference given to the "truth" of pleading allegations into one that blindly accepts every conclusion alleged, no matter how disjointed or far-fetched. This is not the standard. As set forth in Poynter's Motion to Dismiss and Incorporated Memorandum (Dkt. No. 68, "Poynter Memo"), to survive a motion to dismiss, a plaintiff must plead enough facts to state a claim that on its face is not simply a possibility but actually plausible based on context, judicial experience, and common sense. *See* Poynter Memo at 7-8. Unsurprisingly, CHD focuses on deference and its claimed need to take discovery to expose the imagined conspiracy. *See* Opposition at 6-7.

Accepting CHD's conclusions would turn *Iqbal/Twombly* on its head. First, despite the general deference complaints receive at this stage, courts are *not* required to credit "unreasonable inferences" or "unwarranted deductions of fact" to save plaintiffs from motions to dismiss. *See Moss v. U.S. Secret Serv.*, 572 F.3d 962, 971 (9th Cir. 2009) (citing *Sprewell v. Golden State Warriors*, 266 F.3d 979, 988 (9th Cir. 2001)); *In re Gilead Sciens. Sec. Litig.*, 536 F.3d 1049,

---

*Don't Go Down the Rabbit Hole*, N.Y. TIMES, Feb. 18, 2021, *available at*: https://www.nytimes.com/2021/02/18/opinion/fake-news-media-attention.html. Moreover, CHD's claim that Poynter/PolitiFact exist to undermine CHD's message is belied by, for example, the wide-ranging topics PolitiFact covers. Since its inception in 2007, PolitiFact has covered hundreds upon hundreds of topics and people/organizations of public interest. *See* https://www.politifact.com/issues/; https://www.politifact.com/personalities/. It is equally absurd that Poynter's International Fact-Checking Network ("IFCN"), founded years before any allegations in this lawsuit to develop best practices and collaboration among fact-checkers, exists to provide a veneer of credibility to organizations whose true mission is solely to discredit CHD.

THE POYNTER INSTITUTE FOR MEDIA STUDIES, INC.'S MOTION TO DISMISS VERIFIED SECOND AMENDED COMPLAINT

1055 (9th Cir. 2008) (same). In fact, when assessing plausibility, courts must also consider an "obvious alternative explanation" for a defendant's alleged conduct. *See Eclectic Props. E., LLC v. Marcus & Millichap Co.*, 751 F.3d 990, 996 (9th Cir. 2014) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 567 (2007)). A complaint should be dismissed "when defendant's plausible alternative explanation is so convincing that plaintiff's explanation is *implausible*." *Id.* (emphasis in original).

For example, in *Eclectic Property East*, plaintiff alleged that defendants acted with intent to defraud under RICO when they inflated real estate prices and corresponding rent payments based on sham appraisals. *Id.* at 994-95. The court applied the standards under *Iqbal/Twombly* as well as their "judicial experience and common sense" to reject the contention that the allegations were plausible, instead finding real estate values can fluctuate based on market conditions: "The Plaintiffs' fraud theory is not plausible when considered in light of the innocent explanation that failure of franchise businesses in making rental payments, and their abandonment of leases, took place in the context of a deep national recession." *Id.* at 998-99.

One of the many failed recent election challenges also illustrates the point. In *Bowyer v. Ducey*, plaintiffs sought to overturn the 2020 presidential election results based on claims that the election was fraudulent. They relied on over 300 pages of attachments to the complaint to support claims of conspiracy to manipulate results, "irregularities" with the signature matching process and voting machines, and voting machine hacking to preload blank ballots and then cast them for President Biden. *See Bowyer v. Ducey*, No. CV-20-02321-PHX-DJH, 2020 WL 7238261, at *13-14 (D. Ariz. Dec. 9, 2020). The court rightfully noted that "[a]lthough a plaintiff's specific factual allegations may be *consistent* with a plaintiff's claim, a district court must assess whether there are other 'more likely explanations' for a defendant's conduct such that a plaintiff's claims cannot cross the line 'from conceivable to plausible.'" *Id.* at *13 (emphasis added).

THE POYNTER INSTITUTE FOR MEDIA
STUDIES, INC.'S MOTION TO DISMISS
VERIFIED SECOND AMENDED COMPLAINT

The *Bowyer* court granted the motion to dismiss because the plaintiff failed to adequately plead fraud, holding that while a spike in votes for President Biden "*could* be explained by an illicit hacking of the voting machinery in Arizona, the spike is 'not only compatible with, but indeed was more likely explained by, lawful, unchoreographed' reporting of early ballot tabulation." *Id.* at *14 (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 680 (2009)) (emphasis in original); *see also In re Century Aluminum Co. Sec. Litig.*, 729 F.3d 1104, 1108 (9th Cir. 2013) (dismissing complaint because allegations were only "*possible* rather than plausible" and noting where allegations were "'merely consistent with' their favored explanation but are also consistent with the alternative explanation...[s]omething more is needed, such as facts tending to exclude the possibility that the alternative explanation is true.") (emphasis in original).

CHD also seeks to avoid dismissal of the SAC by arguing it should be permitted discovery to substantiate its claims. *See* Opposition at 6-7, 20. This too is wrong. The law does not permit CHD to simply draw claims from thin air, aver Poynter is magically in possession of information that would prove its theories, and then argue entitlement to discovery before dismissal can occur. Plausibility must always be established first. *See, e.g.*, *Contawe v. Cty. of San Mateo*, No. 15-cv-00222-JD, 2015 WL 9311919, at *3 (N.D. Cal. Dec. 23, 2015) (rejecting plaintiff's argument that "[f]urther facts in support of the complaint can be obtained through discovery" because the "notice-pleading standard under Rule 8 'does not unlock the doors of discovery for a plaintiff armed with nothing more than conclusions.'") (quoting *Iqbal*, 556 U.S. at 678-79). When, as here, fraud allegations are present, the same is true under Rule 9 which "serves not only to give notice to defendants of the specific fraudulent conduct against which they must defend, but also 'to deter the filing of complaints as a pretext for the discovery of unknown wrongs...'" *Bowyer*, 2020 WL 7238261 at *12 (quoting *Bly-Magee v. Cal.*, 236 F.3d 1014, 1018 (9th Cir. 2001)).

CHD's reliance on *Smith v. United Healthcare Insurance Company* is unavailing. *See* Opposition at 6-7. In *Smith*, a plaintiff asserted a Parity Act violation against an insurer, alleging it discriminated against mental health services. *Smith v. United Healthcare Ins. Co.*, No. 18-cv-

- 4 -

06336-HSG, 2019 WL 3238918, at *2 (N.D. Cal. July 18, 2019). The court was not evaluating whether the claim was "plausible." *See id.* at *5-6. Instead, the court rejected defendant's argument that plaintiff was required at the outset to identify a specific "medical or surgical analogue for which [defendant] does not apply a comparable reimbursement reduction." *Id.* at *6. Such pleading was not required when the analogue was "peculiarly within the possession and control of" the defendant. *Id.* CHD's citation to *Mimedx Group, Inc. v. Osiris Therapeutics, Inc.* is equally unavailing. The salient issue again was whether the allegations were specific enough given that certain details would be difficult to allege absent discovery. Again, the court did not question the actual plausibility of the claims. *See Mimedx Grp., Inc. v. Osiris Therapeutics, Inc.*, No. 16 Civ. 3645 (KPF), 2017 WL 3129799, at *8 (S.D.N.Y. July 21, 2017). All told, courts do not permit a "ready-fire-aim" pleading approach that later asserts a need for discovery to prove facially implausible claims. CHD's arguments in this regard should be rejected.

## III.   CHD'S COUNTS ALSO SUBSTANTIVELY FAIL AS A MATTER OF LAW

### A.   As to *Bivens*, CHD Argues State Action Grounded in Tortured Conspiracy Theory, Ignoring that No Claim Lies Against Corporate Entities Like Poynter.

#### *State Actor Status Predicated on an Implausible Conspiracy Theory*

"[S]tate action may be found if, though only if, there is such a 'close nexus between the State and the challenged action' that seemingly private behavior 'may be fairly treated as that of the State itself.'" *Brentwood Acad. v. Tenn. Secondary Sch. Athletic Ass'n*, 531 U.S. 288, 295 (2001) (citation omitted). CHD wields the state action doctrine as a sword, but it is better viewed as a shield to enforce the "boundary between the governmental and the private" thus "protect[ing] a robust sphere of individual liberty." *Manhattan Cmty. Access Corp. v. Halleck*, 139 S. Ct. 1921, 1928 (2019). This is particularly so when the First Amendment is implicated. *Id.* at 1932 (rejecting theory that state regulation makes a private party a state actor, and noting that "would significantly endanger individual liberty and private enterprise" and "would be especially problematic in the

- 5 -

speech context, because it could eviscerate certain private entities' rights to exercise editorial control over speech and speakers on their properties or platforms.").

CHD argues certain *Brentwood* indicia of state action conclusively establish it here. *See* Opposition at 9-10. But *Brentwood* does not lay down a rigid test as no "set of circumstances [is] absolutely sufficient, for there may be some countervailing reason against attributing activity to the government." *Brentwood*, 531 U.S. at 295 (citations omitted). Nevertheless, CHD concludes Poynter's alleged conduct a) results from coercive government power, b) is joint action with government, and c) encouraged by government. CHD gets there by playing an implausible game of "six degrees of separation" that fails to establish a "close nexus." *See* Opposition at 9-10. Because CHD cannot allege any plausible, direct relationship between Poynter and a government plot to silence CHD, it resorts to circular allegations requiring multiple fantastical leaps. PolitiFact is operated by Poynter, a non-profit that has for decades been a center for developing impactful journalism and ethics. Yet, CHD wants this Court to now assume that Poynter is the antithesis of a journalism center: a covert arm of government.

CHD first envisions a vendetta among Facebook, Mr. Zuckerberg and the CDC/WHO to attack CHD. *See, e.g.*, SAC, Dkt. No. 65-1 at ¶ 9. This has its roots in a February 2019 letter from Rep. Adam Schiff warning Facebook to take action on vaccine misinformation on its platform or potentially risk losing certain immunities under Section 230 of the CDA. *See id.* at ¶¶ 60-68. Facebook and Mr. Zuckerberg then allegedly cave, begin working at the behest of the CDC/WHO, and design a nefarious fact-checking campaign aimed at CHD. *See id.* at ¶¶ 69-80.[2]

CHD then posits Facebook engages Poynter, which has operated IFCN since 2015 (*see* SAC at ¶ 98), four years before the Schiff letter, to supply accredited fact-checking services like

---

[2] At the same time Facebook and Mr. Zuckerberg are allegedly being strong-armed by government, CHD also pleads that Mr. Zuckerberg has independent, personal motivations in promoting sound vaccine policy and has connections to a charity (CZI) that promotes this as well. *See* SAC at ¶¶ 281-83. This contradicts any claims of coercion, encouragement, or joint action.

- 6 -

1  PolitiFact. The SAC contains no allegations that Poynter had contact with Rep. Schiff or the

2  CDC/WHO, that Poynter knew of the alleged interactions with Facebook, or that there was any

3  coercion/meeting of the minds to implement a government censorship scheme and anoint fact-

4  checkers whose mission was to flag content on CHD's page.[3] Instead, CHD concludes Facebook

5  controls the entirety of the fact-checking process, assuming sinister motivations for Facebook, and

6  labeling Poynter Facebook's hand puppet. *See* Opposition at 8. This Court is left to leap to the

7  conclusion that Poynter is now knowingly doing the government's bidding.

8      CHD then turns to Poynter's finances—drawing wild connections between Facebook,

9  unrelated government funders,[4] 2016 Presidential executive orders, and Rep. Schiff—to conclude

10  Poynter is on the take, doing government's bidding. Poynter allegedly gets funding from

11  Facebook and the National Endowment for Democracy, which allegedly receives Congressional

12  funding through the State Department. *See* SAC at ¶ 98; Opposition at 10. The State Department

13  also is alleged to provide funding to IFCN and to be tasked with implementing Executive Order

14  ("EO") 13747, the "Global Health Security Agenda." Among many things, the EO seeks to

15  improve immunization rates. *See id.* at ¶ 99. CHD next concludes that the State Department/NED

16  funding was made for Poynter to execute EO 13747 to "induce fact-checker censorship" of CHD.

17  *See id.* at ¶ 101. CHD then alleges that Rep. Schiff sits on NED's advisory board. *See id.* at ¶ 98.

18  For CHD, this all again supports a conclusion that Poynter, who is levels removed from Rep.

19  Schiff and executive orders, is somehow working in concert with government.

20

21

22  [3] Rep. Schiff was recently sued by a different group of anti-vaxxers who claimed his 2019 letter to

23  Facebook (and similar letters to Amazon and Google) rendered them unable to receive vaccine-
   related information they sought online. The case was dismissed. Among other things, the court

24  noted ***the implausible nature*** of allegations that Rep. Schiff's "very generalized public
   statements" regarding vaccine misinformation on social media would cause companies to alter

25  editorial policy or modify their specific treatment of the plaintiff. *See Ass'n of Am. Physicians &*

26  *Surgeons v. Schiff*, No. 20-106 (RC), 2021 WL 354174, at *6 (D. D.C. Feb. 2, 2021).

27  [4] In reality, Poynter has numerous funding sources that CHD ignores. Its major funding sources
   are publicly available: https://www.poynter.org/major-funders/. IFCN's are too:

28  https://www.poynter.org/international-fact-checking-network-transparency-statement/.

THE POYNTER INSTITUTE FOR MEDIA
STUDIES, INC.'S MOTION TO DISMISS
VERIFIED SECOND AMENDED COMPLAINT

All told, CHD pleads a conspiracy requiring this Court to make several implausible connections and assumptions at multiple levels. But arguing such allegations that could be *consistent* with a conspiracy to execute the state's will falls far short of alleging something that is *plausible*. Poynter is simply not a state actor and no *Bivens* claim lies.

### No Bivens Claim Lies Against Corporations Like Poynter, No Matter the Grounds

CHD argues that because the Ninth Circuit has recognized First Amendment-based *Bivens* claims and it allegedly has no alterative remedies, it is permitted to pursue its *Bivens* damages claim against Poynter regardless of the Supreme Court's express admonition against suing corporate entities under *Bivens*. *See* Opposition at 10-11. CHD is wrong because: (1) Supreme Court precedent is clear that *Bivens* claims cannot be brought against a corporation, irrespective of the alleged nature of the constitutional violation; (2) CHD is not claiming violation of any "well established" First Amendment right; and (3) *Bivens* is rarely extended.

CHD is seeking money damages under Count I (*see* Opposition at 11; SAC at ¶ 304), and Supreme Court precedent is clear that *Bivens* is limited to providing a damages remedy against *individual federal officers* for constitutional deprivations when no alternative remedy exists. *See Corr. Servs. Corp. v. Malesko*, 534 U.S. 61, 70-71 (2001). As noted in Poynter's memorandum, the Court was explicit that permitting *Bivens* to be extended to corporate entities would wholly undermine its purpose of deterring individual action. *See* Poynter Memo at 10. Further, while *Malesko* did discuss that it was not a situation where the plaintiff lacked alternative remedies (thus further undermining any *Bivens* claim), it did not hold, as CHD would apparently have this Court find, that the absence of an adequate alternative legal remedy would then permit a plaintiff to proceed under *Bivens* against a corporate entity. *See Malesko*, 534 U.S. at 72-73. In all circumstances, and regardless of the nature of the claimed constitutional deprivation, *Bivens* is limited to remedies against individual federal officers. *Id.* at 66.

THE POYNTER INSTITUTE FOR MEDIA STUDIES, INC.'S MOTION TO DISMISS VERIFIED SECOND AMENDED COMPLAINT

Yet, CHD argues that because the Ninth Circuit in *Boule v. Egbert* extended *Bivens* to apply to certain First Amendment violations, it is now somehow permitted to pursue Poynter for money damages. *See* Opposition at 11. CHD misreads the significance of *Boule*. Boule filed a *Bivens* claim against Egbert, an individual federal border patrol agent. *See Boule v. Egbert*, 980 F.3d 1309, 1312 (9th Cir. 2020). He alleged that after complaining to Egbert's superiors about an immigration check inquiry Egbert initiated on Boule's business property, Egbert retaliated by, among other things, requesting the IRS look into Boule's tax status. *Id.*

First, the *Boule* case dealt with the application of *Bivens* to an individual federal officer, not a private corporate entity. *See id.* at 1312-13. It does not interpret *Malesko*, nor does it ever cite the case. Second, the *Boule* court, cognizant of the hesitance of courts to even modestly extend *Bivens* to establish new implied rights, permitted a First Amendment-based claim to proceed because the particular facts of that case set out a "well established" First Amendment retaliation claim. *See id.* at 1316. CHD's claim in this case—that its speech on a private social media platform is protected by the First Amendment and trumps others' speech rights—is anything but well-established. Indeed, as the growing body of case law addressing the issue establishes, such claims—often in *Bivens* contexts with courts (including this Court) questioning imparting state actor status on social media companies—are rejected.[5]

---

[5] *See, e.g.*, *Perez v. LinkedIn Corp.*, No. 5:20-cv-07238-EJD, 2021 WL 519379 (N.D. Cal. Feb. 5, 2021); *Fed. Agency of News LLC v. Facebook, Inc.*, 432 F. Supp. 3d 1107 (N.D. Cal. 2020); *Prager Univ. v. Google LLC*, No. 17-CV-06064-LHK, 2018 WL 1471939 (N.D. Cal. Mar. 26, 2018), *aff'd*, 951 F.3d 991 (9th Cir. 2020); *Wilson v. Twitter*, No. 3:20-cv-00054, 2020 WL 3410349 (S.D. W. Va. May 1, 2020), *report and recommendation adopted*, 2020 WL 3256820 (S.D. W. Va. June 16, 2020); *Freedom Watch, Inc. v. Google, Inc.*, 368 F. Supp. 3d 30 (D. D.C. 2019), *aff'd*, 816 F. App'x 497 (D.C. Cir. 2020), *cert. petition filed*, Jan. 2, 2021; *Davison v. Facebook, Inc.*, 370 F. Supp. 3d 621 (E.D. Va. 2019), *per curiam aff'd*, 774 F. App'x 162 (4th Cir. 2019), *cert. denied*, 140 S. Ct. 1111 (2020).

1    Finally, because *Bivens* jurisprudence counsels a limited remedy applicable to few

2    circumstances, it should not be gratuitously extended, as CHD urges. *See Malesko*, 534 U.S. at 68-

3    69. There simply is no *Bivens* claim here.

4        **B.    The False Advertising Claim Fails Because it is Vague, CHD and Poynter are**
         **Not Competitors, and the PolitiFact Fact-Check is Not Commercial Speech.**
5

6    CHD's argument that it has pled a Lanham Act false advertising claim aptly illustrates the

7    attenuated nature of this lawsuit. It argues that (1) it has plead fraud sufficiently; (2) as non-

8    profits, CHD and Poynter are competitors because all non-profits seek donor dollars; and (3) a

9
     fact-check of third-party speech about public health matters is commercial speech. *See* Opposition
10
     at 15-18. CHD is again wrong.
11

12   First, CHD has *not* satisfied the fraud particularity requirements of Rule 9(b). To do so, it

13   must satisfy "the who, what, when, where, and how" of the claimed fraud. *Vess v. Ciba-Geigy*

14   *Corp. USA*, 317 F.3d 1097, 1106 (9th Cir. 2003). CHD cannot plead anything more than strained

15   conspiracy theories. It does not identify a single "consumer" who was "defrauded" by the fact-

16
     check, when that fraud occurred, or how consumers were "defrauded" by a fact-check whose basis
17
     was fully disclosed. This is of course impossible to do when the subject reporting on third-party
18
     Collective Evolution's headline was deemed a valid critique by Collective Evolution itself. CHD
19
     also cannot specifically allege how the "false" fact-check on the Collective Evolution article led to
20
     any fundraising harm to CHD, or any fundraising boon for Poynter. Fraud allegations cannot rest
21
     in thin air, and CHD has failed to satisfy Rule 9(b).
22

23   Second, CHD implausibly argues (but does not allege in the SAC) that it and Poynter are

24   competitors under the Lanham Act.[6] *See* Opposition at 6, 15. CHD cites *Lexmark* for the
25

26   _____

27   [6] CHD takes another leap by suggesting that "donate" buttons appearing on PolitiFact's website
     are designed to drive donations away from CHD to it. *See* Opposition at 6. Like most non-profits,
28   PolitiFact's public website contains donate buttons just as CHD's public website contains a

THE POYNTER INSTITUTE FOR MEDIA
                                                           STUDIES, INC.'S MOTION TO DISMISS
                                                           VERIFIED SECOND AMENDED COMPLAINT

proposition that one need not be a *direct* competitor to assert a Lanham Act false advertising

claim. *See* Opposition at 15. Yet in *Lexmark*, there was a clear competitive nexus between the

companies that could influence consumer behavior: a printer/toner cartridge company and a

company selling components used in aftermarket to refurbish cartridges. CHD further ignores the

additional *Lexmark* holding that false "advertising" must have also proximately caused

commercial injury. *See Lexmark Int'l, Inc. v. State Control Components, Inc.*, 572 U.S. 118, 132-

34 (2014) (noting the key inquiry is whether "the harm alleged has a sufficiently close connection

to the conduct the [Lanham Act] prohibits"). CHD's allegations of alleged harm and its causes fail

*Iqbal/Twombly* and are speculative and conclusory. *See Iqbal*, 556 U.S. at 680. They further do

not satisfy the threshold "zone of interests" test set out in *Lexmark*. *See Thermolife Int'l LLC v.*

*Sparta Nutrition LLC*, No. CV-19-01715-PHX-SMB, 2020 WL 248164, at *9 (D. Ariz. Jan. 16,

2020) (dismissing complaint that failed to "connect[] the dots" between the purported false

advertising and alleged harm noting that the "attenuated relationship between Plaintiff and

Defendant's products warrants no inference that a profit gained by Defendant would have

necessarily gone to Plaintiff."). The mental leaps required to substantiate CHD's allegations doom

the Lanham Act claim.

   The additional case law CHD cites in support of its "competitor" argument is

unremarkable. It seizes on general points of law, grounded in entirely different scenarios: (1) non-

---

"Support Our Efforts" page and "Donate" links throughout. And similar to recent voter "fraud"
cases, CHD is fundraising off this lawsuit, holding "press conferences" and issuing releases that
include donation solicitations. *See, e.g.*, https://childrenshealthdefense.org/press-release/chd-legal-
team-led-by-robert-f-kennedy-jr-sues-facebook-mark-zuckerberg-and-three-of-facebooks-so-
called-fact-checkers-for-government-sponsored-censorship-false-dispar/, Aug. 18, 2020 (last
visited Feb. 28, 2021); https://childrenshealthdefense.org/news/chd-holds-press-conference-with-
legal-team-and-plaintiff-in-lawsuit-against-facebook-mark-zuckerberg-and-three-of-facebooks-so-
called-fact-checkers/, Aug. 20, 2020 (last visited Feb. 28, 2021).

THE POYNTER INSTITUTE FOR MEDIA
STUDIES, INC.'S MOTION TO DISMISS
VERIFIED SECOND AMENDED COMPLAINT

profits can acquire trademark rights and sue for infringement and (2) non-profits are not precluded

from suing for damages under the Lanham Act. *See* Opposition at 16. Similarly, CHD then cites

*Camps Newfound/Owatonna, Inc. v. Town of Harrison, Me.*, 520 U.S. 564 (1997), holding non-

profit activity can be commercial activity for purposes of the dormant commerce clause. *See*

Opposition at 16. These cites do nothing to support CHD's claim that Poynter is its competitor.

Finally, CHD argues Poynter's critique of a third-party's speech about vaccine

effectiveness on certain coronaviruses is commercial. Poynter does not fully re-argue why this

critique does not qualify as commercial speech (*see* Poynter Memo at 12-15). It does, however,

highlight how case law cited in the Opposition does not help CHD. Presumably because it

involves a ratings/certification system, CHD cites to the recent Ninth Circuit decision in *Ariix*. *See*

Opposition at 16-17; *Ariix, LLC v. NutriSearch Corp.*, No. 19-55343, 2021 WL 221878, at *1-3

(9th Cir. Jan. 22, 2021). CHD focuses on the very different facts of *Ariix* concerning an alleged

"pay-to-play" certification system where a nutritional supplement company, Ariix, accused the

publisher of a well-known supplement guide of promoting a competitor and refusing to provide

certifications in exchange for direct payments and benefits. *See id.* Those facts are a far cry from

what CHD alleges here, and it ignores the bigger picture of whether speech is in fact commercial

for purposes of the Lanham Act. For example, citing *Bolger v. Youngs Drug Prods. Corp.*, 463

U.S. 60 (1983), the *Ariix* court specifically noted that the third *Bolger* commercial speech factor—

whether a speaker has an economic motivation[7]—asks whether a speaker "acted *primarily* out of

economic motivation, not simply whether the speaker had *any* economic motivation." *Id.* at *6

(emphasis in original). It goes further to note that not all economic motivation even qualifies. "A

simple profit motive to sell copies of a publication or to obtain an incidental economic benefit,

---

[7] The third element of a Lanham Act claim—whether speech was made to influence consumers to
buy a defendant's goods/services—similarly involves pleading plausible economic motivation.

without more, does not make something commercial speech. Otherwise, virtually any newspaper, magazine, or book for sale could be considered a commercial publication."[8] *Id.*

Under both *Bolger* and the Lanham Act itself, it is facially clear that Poynter's motivation was to fact-check the accuracy of a third-party headline, not somehow convince would-be CHD donors to instead contribute to Poynter. And even crediting such implausible claims, it could never plausibly be concluded that the primary purpose motivating the fact-check was an economic one. Count II fails, and this Court should dismiss it with prejudice.

### C.    The RICO Count Fails to Plead Predicate Acts and Remaining RICO Elements.

CHD argues it has plausibly pled a civil RICO claim. *See* Opposition at 12-14. As to Poynter, CHD focuses primarily on its allegations regarding the "predicate acts" element of a RICO claim. CHD theorizes that the predicate acts here were actions constituting wire fraud under 18 U.S.C. § 1343, namely, the subject Collective Evolution fact-check and Poynter's IFCN fact-checker certifications, which CHD claims are deceptive because these fact-checkers are allegedly controlled by Facebook. *See* Opposition at 12. But neither of these qualifies as a RICO "predicate act" because neither is itself an act of wire fraud.[9] Thus, CHD has failed to allege any *plausible* facts to establish all the three elements of wire fraud as to each alleged predicate act: "(1) a scheme to defraud, (2) use of the wires in furtherance of the scheme and (3) a specific intent to

---

[8] CHD's later reliance on *Hoffman v. Cap. Cities/ABC, Inc.*, further undermines its position. *See* Opposition at 19-20. In *Hoffman*, the defendant published a magazine article featuring altered images of celebrities from classic movies, including Dustin Hoffman. *See Hoffman*, 255 F.3d 1180, 1183 (9th Cir. 2001). Hoffman sued under the Lanham Act, arguing the publication was commercial speech. *Id.* The court declined to deem the publication "commercial" even though it was for-profit, the article may have helped sell copies, and a "shopper's guide" was printed in the back. *Id.* Because it was not commercial speech, actual malice applied. *Id.* at 1188-89.

[9] In its Opposition, CHD cites to a number of paragraphs in the SAC that purportedly allege predicate acts. But it fails to explain how they constitute wire fraud. For example, it cites to paragraphs regarding Poynter/IFCN's alleged receipt of state funding. *See* Opposition at 12 (citing SAC ¶¶ 98, 101). Government funding does not constitute wire fraud and is not a predicate act.

- 13 -

deceive or defraud." *United States v. Garlick*, 240 F.3d 789, 792 (9th Cir. 2001). Moreover, CHD has not alleged anything establishing how Poynter "used the wires" in certifying an organization under IFCN or receiving government funds in furtherance of the scheme. Instead, it takes random, unrelated facts, trying to patch together a Frankenstein-like assertion that the conspiracy itself is why the fact-check and the IFCN certification constitute predicate acts.[10]

CHD further conclusively posits that the scheme was to "defund and damage CHD," reviving its unpled argument that CHD and Poynter are somehow funding "competitors" and Poynter intended to steal CHD donations. *See* Opposition at 12-14. As noted earlier, CHD has not plausibly pled any such allegations and only suggests them through argument now in its Opposition. Even so, CHD cannot and, consequently, has not alleged Poynter actually obtained any money or property, a fatal deficiency. *See Scheidler v. Nat'l Org. for Women, Inc.*, 537 U.S. 393, 404-05, 411 (2003) (even if a defendant sought to deprive plaintiff of a property interest and succeeded in shutting down plaintiff's business, RICO claim failed because defendant obtained no money or property from plaintiff); *Kelly v. United States*, 140 S. Ct. 1565, 1571 (2020) (wire fraud statute requires a showing that defendant in fact obtained money or property from the person deceived to "prevent[] these statutes from criminalizing all acts of dishonesty."). Thus, even if somehow the SAC could plausibly allege an intent to deceive through Poynter's "false" rating or IFCN certification, the RICO claim would still fail because Poynter has no CHD property.

CHD also cites a single, non-binding case as support for the proposition that a wire fraud claim is properly pled where it alleges the defendant caused money to go to the defendant's "associates." *See* Opposition at 14. In *United States v. Rezko*, the court determined that the

---

[10] CHD cites *Feminist Women's Health Ctr. v. Roberts*, No. C86-161Z, 1989 WL 56017, at *7 (W.D. Wash. May 5, 1989) (*see* Opposition at 19), but there the court rejected an attempt to use the underlying conspiracy to buttress its statements establishing the predicate acts. *Id.*

- 14 -

THE POYNTER INSTITUTE FOR MEDIA STUDIES, INC.'S MOTION TO DISMISS VERIFIED SECOND AMENDED COMPLAINT

elements of wire fraud had been sufficiently pled in the indictment, but its analysis of financial gain pertained, not to wire fraud, but to whether the indictment sufficiently alleged a "private gain" under the Honest Services Act, if the defendant's associates received a portion of diverted funds. *See* No. 05 CR 691, 2007 WL 2904014, at *5 (N.D. Ill. Oct. 2, 2007). Clearly, that federal act is not at issue, nor has CHD alleged any such diversion of funds. *Rezko* in fact distinguished a case in which the court held an indictment was *not* adequately pled where it failed to allege the defendant had knowledge of a kick-back scheme. *See Rezko*, 2007 WL 2904014 at *4. All told, CHD has not plausibly pled anything establishing willful participation in a predicate act of fraud.

### D.    The Declaratory Relief Would Unconstitutionally Restrain Protected Speech.

CHD's request for injunctive/declaratory relief asks this Court to choose sides in the public debate on vaccines. CHD admits it seeks a prior restraint prohibiting Poynter from performing future fact-checks on its posts. *See* Opposition at 20-21. But the Supreme Court is resolute: prior restraints are the "most serious and the least tolerable infringement on First Amendment rights." *Neb. Press Ass'n v. Stuart*, 427 U.S. 539, 558-59 (1976) (an "injunction operates, not to redress alleged private wrongs, but to suppress, on the basis of previous publications, distribution" of future speech). CHD argues its request is "narrowly-tailored," citing a single, inapplicable case, *Planned Parenthood Fed'n of Am, Inc. v. Ctr. For Med. Progress*, No. 16-cv-00236-WHO, 2020 WL 2065700 (N.D. Cal. Apr. 29, 2020). *See* Opposition at 21. That case did not involve First Amendment speech rights, but did enjoin trespass, non-consensual recordings by anti-abortion activists, and misrepresenting identities. *See id.* at *17-23. In short, CHD wants this Court to elevate its speech and suppress Poynter's. It must reject that invitation.

### IV.    CONCLUSION

For the foregoing reasons, and for those in Poynter's Memo, Poynter's Motion to Dismiss the SAC should be granted with prejudice.

- 15 -

1    Dated: March 5, 2021

**JASSY VICK CAROLAN LLP**
By:    */s/ Kevin L. Vick*        
            KEVIN L. VICK

**THOMAS & LOCICERO PL**
By:    */s/ Carol Jean LoCicero*    
            CAROL JEAN LOCICERO

*Attorneys for Defendant, The Poynter Institute for Media Studies, Inc.*

- 16 -

1

**SIGNATURE ATTESTATION**

2

I am the ECF User whose identification and password are being used to file the foregoing.

3

Pursuant to Civil Local Rule 5-1(i), I hereby attest that the other signatures have concurred in this

4

filing.

5

Dated: March 5, 2021                    By:   */s/ Kevin L. Vick*_____

6
                                               Kevin L. Vick

7

**CERTIFICATE OF SERVICE**

8

I hereby certify that on March 5, 2021, I electronically filed the above document with the

9

Clerk of the Court using CM/ECF which will send electronic notification of such filing to all

10

11

registered counsel.

12

Dated: March 5, 2021                    By:   */s/ Kevin L. Vick*_____

13
                                               Kevin L. Vick

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

- 17 -

THE POYNTER INSTITUTE FOR MEDIA
STUDIES, INC.'S REPLY MEMORANDUM IN
SUPPORT OF ITS MOTION TO DISMISS
VERIFIED SECOND AMENDED COMPLAINT