SONAL N. MEHTA (SBN 222086)
 Sonal.Mehta@wilmerhale.com
WILMER CUTLER PICKERING
 HALE AND DORR LLP
2600 El Camino Real, Suite 400
Palo Alto, California 94306
Telephone: (650) 858-6000
Facsimile: (650) 858-6100

ARI HOLTZBLATT (*pro hac vice*)
 Ari.Holtzblatt@wilmerhale.com
MOLLY M. JENNINGS (*pro hac vice*)
 Molly.Jennings@wilmerhale.com
ALLISON SCHULTZ (*pro hac vice*)
 Allison.Schultz@wilmerhale.com
WILMER CUTLER PICKERING
 HALE AND DORR LLP
1875 Pennsylvania Ave, NW
Washington, DC 20006
Telephone: (202) 663-6000
Facsimile: (202) 663-6363

*Attorneys for Defendants*
FACEBOOK, INC. and
MARK ZUCKERBERG

**UNITED STATES DISTRICT COURT**

**NORTHERN DISTRICT OF CALIFORNIA**

**SAN FRANCISCO DIVISION**

| | |
|---|---|
| CHILDREN'S HEALTH DEFENSE,<br><br>Plaintiff,<br><br>v.<br><br>FACEBOOK, INC., ET AL.,<br><br>Defendants. | Case No.  3:20-cv-05787-SI<br><br>**DEFENDANTS FACEBOOK, INC.'S AND MARK ZUCKERBERG'S REPLY IN SUPPORT OF MOTION TO DISMISS SECOND AMENDED COMPLAINT**<br><br>Hon. Susan Illston<br>Courtroom 1 – 17th floor<br>Date: March 23, 2021<br>Time: 11:00 a.m. |

## TABLE OF CONTENTS

I.  CHD HAS NOT STATED A *BIVENS* CLAIM .......................................... - 1 -

    A.  CHD Cannot Plead State Action .................................................. - 1 -

        1.  CHD has not plausibly alleged coercion ............................... - 2 -

        2.  CHD has not plausibly alleged encouragement ................................. - 3 -

        3.  CHD has not plausibly alleged joint action ..................... - 4 -

    B.  CHD's *Bivens* Claim Would Require A Disfavored Expansion in *Bivens* Liability .......................................................................... - 5 -

    C.  Facebook Is Not A Proper *Bivens* Defendant ................................ - 5 -

II. THE FIRST AMENDMENT BARS CHD'S LANHAM ACT AND RICO CLAIMS .......................................................................... - 6 -

    A.  The Speech At Issue Is Fully Protected Under The First Amendment ........ - 6 -

    B.  CHD Must, But Has Not, Alleged Actual Malice ........................ - 7 -

III. THE CDA ALSO BARS CHD'S LANHAM ACT AND CIVIL RICO CLAIMS .. - 8 -

IV. CHD HAS NOT STATED A CLAIM UNDER THE LANHAM ACT ................. - 11 -

    A.  CHD's Claimed Injuries Are Not Within The Lanham Act's "Zone Of Interests" ......................................................................... - 11 -

    B.  CHD Has Not Alleged Commercial Speech ................................ - 11 -

V.  CHD HAS NOT STATED A CIVIL RICO CLAIM .................................. - 12 -

    A.  CHD Has Not Alleged Predicate Acts Of Wire Fraud ............................. - 12 -

    B.  CHD Lacks Standing To Pursue A Civil RICO Claim ............................. - 14 -

    C.  CHD Has Not Alleged A Civil RICO Pattern ............................. - 14 -

VI. CHD HAS NOT STATED ANY CLAIM AGAINST MARK ZUCKERBERG ... - 15 -

CONCLUSION .......................................................................... - 15 -

1

## TABLE OF AUTHORITIES

2

**Page(s)**

3

**Cases**

4

*Anza v. Ideal Steel Supply Corp.*,
5
   547 U.S. 451 (2006)...................................................................................................14

6

*Asurvio LP v. Malwarebytes Inc.*,
   2020 WL 1478345 (N.D. Cal. Mar. 26, 2020)........................................................8, 9

7

*Azad v. Tokio Marine HCC-Medical Insurance Services LLC*,
8
   2017 WL 3007040 (N.D. Cal. 2017) ...........................................................................5

9

*Barnes v. Yahoo!, Inc.*,
   570 F.3d 1096 (9th Cir. 2009) .....................................................................................9

10

*Ben Ezra, Weinstein, & Co. v. America Online*,
11
   206 F.3d 980 (10th Cir. 2000) ...............................................................................9, 10

12

*Birthright v. Birthright, Inc.*,
13
   827 F. Supp. 1114 (D.N.J. 1993) ...............................................................................11

14

*Blumenthal v. Drudge*,
15
   992 F. Supp. 44 (1998) .........................................................................................9, 10

16

*Bolger v. Youngs Drug Products Corp.*,
   463 U.S. 60 (1983)......................................................................................................12

17

*Boule v. Egbert*, 980 F.3d 1309,
18
   85 F.3d 422 (9th Cir. 2020) .........................................................................................5

19

*Bridge v. Phoenix Bond & Indemnity Co.*,
   553 U.S. 639 (2008)....................................................................................................14

20

*Broad v. Sealaska Corp.*,
21
   85 F.3d 422 (9th Cir. 1996) .........................................................................................5

22

*Cal Pure Pistachios, Inc. v. Primex Farms, LLC*,
23
   2010 WL 11523590 (C.D. Cal. Jan. 7, 2010) ...........................................................11

24

*Camps Newfound/Owatonna, Inc. v. Town of Harrison*, Maine,
   520 U.S. 564 (1997)....................................................................................................11

25

*Carlin Communications v. Mountain States Telephone and Telegraph Co.*,
26
   827 F.2d 1291 (9th Cir. 1987) .....................................................................................2

27

*Carlson v. Green*,
28
   446 U.S. 14 (1980)........................................................................................................5

*Carpenter v. United States*,
    484 U.S. 19 (1987)....................................................................................................................13

*Chaiken v. VV Publishing Corp.*,
    119 F.3d 1018 (2d Cir. 1997)....................................................................................................7, 8

*Committee for Idaho's High Desert, Inc. v. Yost*,
    92 F.3d 814 (9th Cir. 1996) ......................................................................................................11

*Connick v. Myers*,
    461 U.S. 138 (1983)....................................................................................................................6

*Coral Ridge Ministries Media, Inc. v. Amazon.com, Inc.*,
    406 F. Supp. 3d 1258 (M.D. Ala. 2019), *appeal docketed*,
    No. 19-14125 (11th Cir. argued Dec. 15, 2020) ........................................................................7

*Correctional Services Corp. v. Malesko*,
    534 U.S. 61 (2001)..................................................................................................................1, 5

*Denver Area Educational Telecommunications Consortium, Inc. v. Federal Communications
    Commission*, 518 U.S. 727 (1996) .......................................................................................10, 11

*Dex Media West, Inc. v. City of Seattle*,
    696 F.3d 952 (9th Cir. 2012) ....................................................................................................12

*Divino Group LLC v. Google LLC*,
    2021 WL 51715 (N.D. Cal. Jan. 6, 2021) .................................................................................11

*Eastwood v. National Enquirer, Inc.*,
    123 F.3d 1249 (9th Cir. 1997) ....................................................................................................7

*Enigma Software Group USA, LLC v. Bleeping Computer LLC*,
    194 F. Supp. 3d 263 (S.D.N.Y. 2016)........................................................................................10

*Enigma Software Group USA, LLC v. Malwarebytes, Inc.*,
    946 F.3d 1040 (9th Cir. 2019) ....................................................................................................8,

*Farah v. Esquire Magazine*,
    736 F.3d 528 (D.C. Cir. 2013) ..................................................................................................11

*Federal Agency of News LLC v. Facebook, Inc.*,
    432 F. Supp. 3d. 1107 (N.D. Cal. Jan. 13, 2020) ........................................................................9

*Ferrari v. Mercedes-Benz USA, LLC*,
    2016 WL 7188030 (N.D. Cal. Dec. 12, 2016) ..........................................................................15

*Fyk v. Facebook, Inc.*,
    808 F. App'x 597 (9th Cir. 2020) ................................................................................................9

*Gordon & Breach Science Publishers S.A. v. American Institute of Physics*,
  859 F. Supp. 1521 (S.D.N.Y. 1994)............................................................................6, 12

*Gorenc v. Salt River Project Agricultural Improvement and Power District*,
  869 F.2d 503 (9th Cir. 1989) ............................................................................................4

*Holmes v. Securities Investor Protection Corp.*,
  503 U.S. 258 (1992)....................................................................................................14, 15

*Hunt v. City of Los Angeles*,
  638 F.3d 703 (9th Cir. 2011) ..........................................................................................12

*In re Actimmune Marketing Litigation*,
  614 F. Supp. 2d 1037 (N.D. Cal. 2009), *aff'd*, 464 F. App'x 651 (9th Cir. 2011) ......................14

*Isuzu Motors Ltd. v. Consumers Union of United States, Inc.*,
  12 F. Supp. 2d 1035 (C.D. Cal. 1998) ..............................................................................6

*Jian Zhang v. Baidu.com Inc.*,
  10 F. Supp. 3d 433 (S.D.N.Y. 2014).................................................................................6

*Kimzey v. Yelp! Inc.*,
  836 F.3d 1263 (9th Cir. 2016) ..........................................................................................9

*Kirtley v. Rainey*,
  326 F.3d 1088 (9th Cir. 2003) ..........................................................................................2

*Levitt v. Yelp! Inc.*,
  2011 WL 5079526 (N.D. Cal. Oct. 26, 2011)....................................................................8

*Lewis v. Google, LLC*,
  461 F. Supp. 3d 938 (N.D. Cal. 2020), *appeal docketed*, No. 20-16073
  (9th Cir. June 1, 2020) ....................................................................................................10

*Lexmark International, Inc. v. Static Control Components, Inc.*,
  572 U.S. 118 (2014).........................................................................................................11

*Manhattan Community Access Corp. v. Halleck*,
  139 S. Ct. 1921 (2019)....................................................................................................2, 6

*Marshall's Locksmith Service Inc. v. Google*,
  LLC, 925 F.3d 1263 (D.C. Cir. 2019) ..............................................................................8

*Mavrix Photographs, LLC v. LiveJournal, Inc.*,
  873 F.3d 1045 (9th Cir. 2017) ........................................................................................10

*Medallion Television Enterprises, Inc. v. SelecTV of Cal., Inc.*,
  833 F.2d 1360 (9th Cir. 1987) ........................................................................................15

*Mireskandari v. Daily Mail and General Trust PLC*,
  2013 WL 12129944 (C.D. Cal. Jan. 14, 2013) ..................................................................1

*POM Wonderful LLC v. Purely Juice, Inc.*,
  362 F. App'x 577 (9th Cir. 2009) ..................................................................................15

*Prager University v. Google LLC*,
  2018 WL 1471939 (N.D. Cal. Mar. 26, 2018), *aff'd* 951 F.3d 991 (9th Cir. 2020) ..................11

*Rabieh v. Paragon Systems, Inc.*,
  316 F. Supp. 3d 1103 (N.D. Cal. 2018) ..............................................................................5

*Railway Employees' Department v. Hanson*,
  351 U.S. 225 (1956) ..................................................................................................3, 4

*Riley v. Harr*,
  292 F.3d 282 (1st Cir. 2002) ..........................................................................................7

*Riley v. National Federation of the Blind of North Carolina, Inc.*,
  487 U.S. 781 (1988) ..........................................................................................................6

*Roberts v. AT&T Mobility LLC*,
  877 F.3d 833 (9th Cir. 2017) ........................................................................................11

*Ruiz v. Affinity Logistics Corp.*,
  754 F.3d 1093 (9th Cir. 2014) ......................................................................................10

*Sever v. Alaska Pulp Corp.*,
  978 F.2d 1529 (9th Cir. 1992) ......................................................................................15

*S.H.A.R.K. v. Metro Parks Serving Summit County*,
  499 F.3d 553 (6th Cir. 2007) ..........................................................................................3

*Skinner v. Railway Labor Executives' Association*,
  489 U.S. 602 (1989) ..........................................................................................................3

*Sonora Diamond Corp. v. Superior Court of Tuolumne County*,
  83 Cal. App. 4th 523 (Cal. Ct. App. 2000) ....................................................................10

*Soto-Torres v. Fraticelli*,
  654 F.3d 153 (1st Cir. 2011) ........................................................................................15

*Sutton v. Providence St. Joseph Medical Center*,
  192 F.3d 826 (9th Cir. 1999) ..........................................................................................2

*United States v. Alvarez*,
  567 U.S. 709 (2012) ......................................................................................................6, 7

*United States v. Lew*,
  875 F.2d 219 (9th Cir. 1989) ........................................................................................13

*United States v. Lloyd,*
  807 F.3d 1128 (9th Cir. 2015) ................................................................................7

*United States v. Sorich,*
  523 F.3d 702 (7th Cir. 2008) ...............................................................................13

*United States v. Spano,*
  421 F.3d 599 (7th Cir. 2005) ...............................................................................13

*Wilkie v. Robbins,*
  551 U.S. 537 (2007).................................................................................................5

*Ziglar v. Abbasi,*
  137 S. Ct. 1843 (2017).............................................................................................5

**Rules, Regulations, Statutes**

15 U.S.C. § 1127 (Lanham Act) ...................................................................... *passim*

18 U.S.C. § 1343 ...................................................................................................13

18 U.S.C. § 1961 (RICO)................................................................................. *passim*

47 U.S.C. § 230 ............................................................................................... *passim*

**Miscellaneous**

Press Release, Congressman Adam Schiff, *Schiff Sends Letter to Google, Facebook Regarding
  Anti-Vaccine Misinformation* (Feb. 14, 2019), https://tinyurl.com/8zvnsk7z ...................2, 3, 15

1

2

3

4

5

6

7

8

9

     Children's Health Defense's ("CHD") opposition, like its Second Amended Complaint ("SAC"), is founded on irrelevant allegations and inapposite legal theories. Throughout, CHD grasps for a theory for imposing liability on private actors Facebook and Mark Zuckerberg for their vaccine-related speech. But no theory fits CHD's allegations for one simple reason: as CHD concedes, vaccine-related speech is "constitutionally protected speech on matters of serious public concern." Opp. 2. And CHD's assorted allegations about the vaccine-related endeavors of various federal (and non-federal) actors do not create even an inference that any federal actor was involved in any action taken against CHD's Facebook content. Facebook's decisions with respect to that content are fully protected private speech.

10

11

12

13

14

15

16

17

18

19

     The weakness of CHD's statutory claims underscores the importance of that constitutional bar. CHD's attenuated profit-motive theory does not establish that Facebook's labels were either commercial speech cognizable under the Lanham Act or wire fraud cognizable under the Racketeer Influenced and Corrupt Organizations Act. Despite three attempts—spanning *more than 1,000 paragraphs across nearly 400 pages of complaints*—CHD still presents nothing but scattershot grievances that in no way justify stripping Defendants of their own constitutional protections. And CHD's vague assertions about what discovery might show are no substitute for sufficient pleading, particularly where discovery itself would be "expression-chilling," *Mireskandari v. Daily Mail & General Trust*, 2013 WL 12129944, at *3 (C.D. Cal. Jan. 14, 2013). A fourth bite at the apple will not save its untenable legal theories. The SAC should be dismissed with prejudice.

20

## I.   CHD HAS NOT STATED A *BIVENS* CLAIM

21

### A.   CHD Cannot Plead State Action

22

23

24

25

26

27

28

     CHD's opposition offers no answer to the fundamental flaw in its *Bivens* theory: *Bivens* provides a remedy only against "individual *federal* officers," *Correctional Services Corp. v. Malesko*, 534 U.S. 61, 70 (2001) (emphasis added), not *private* actors, such as Facebook and Mr. Zuckerberg. CHD invokes three theories of state action—coercion (Opp. 5-6), encouragement (Opp. 6-7), and joint activity (Opp. 7-8)—but none compensates for the absence of a single allegation that any federal actor was involved in any decision to fact-check its content or restrict its access to fundraising tools. Because the SAC fails to plausibly allege federal action, dismissal is required.

*See, e.g.*, *Kirtley v. Rainey*, 326 F.3d 1088, 1093-1096 (9th Cir. 2003) (affirming dismissal of § 1983 claim for failure to allege state action). That is particularly so here, where permitting this claim to proceed would convert the First Amendment's protections into a sword against Defendants' private and protected speech. *See Manhattan Cmty. Access Corp. v. Halleck*, 139 S. Ct. 1921, 1932 (2019).

### 1. CHD has not plausibly alleged coercion

CHD's coercion theory fails at the threshold because Ninth Circuit precedent forecloses imposing liability on "a truly private entity" solely because it was compelled to act by the government. *Sutton v. Providence St. Joseph Med. Ctr.*, 192 F.3d 826, 843 (9th Cir. 1999). As the Ninth Circuit explained in *Sutton*, a "private party" facing government compulsion "is left with no choice of his own and consequently should not be deemed liable." *Id.* at 838 (quotation marks and citation omitted). CHD ignores this precedent even though Defendants cited it in their opening brief. *See* Mot. 7 n.6. Instead, CHD relies on *Carlin Communications v. Mountain States Telephone & Telephone Co.*, 827 F.2d 1291 (9th Cir. 1987), but *Carlin*'s narrow holding is irrelevant here.

*First*, as the Ninth Circuit explained in *Sutton*, *Carlin*'s reasoning is limited to heavily regulated public utilities. *See* 192 F.3d at 843. In *Carlin*, "[t]he fact that the telephone company [was] a heavily regulated public utility … should be accorded significant weight and tip the balance toward state action." *Id.* The only "regulation" of Facebook CHD points to is Section 230—which, as explained below, *infra* pp. 10-11, imposes no affirmative obligations on Facebook. That single statutory provision is a far cry from the extensive regulatory scheme at issue in *Carlin*.

*Second*, *Carlin* involved specific government directives "to take a specific (allegedly unconstitutional) action against a specific person." *Sutton*, 826 F.3d at 843. There, a deputy county attorney told a telecommunications company that it was illegal to carry Carlin's message on its network, instructed the company to terminate Carlin's service, and specifically threatened to prosecute the company if it did not comply. 827 F.2d at 1295. Here, by contrast, CHD hangs its coercion theory on a letter[1] from Representative Schiff asking Facebook to describe the steps it "currently take[s] to address misinformation related to vaccines," and a statement by Representative

---

[1]  Schiff Sends Letter to Google, Facebook Regarding Anti-Vaccine Misinformation, https://tinyurl.com/8zvnsk7z (last accessed Feb. 28, 2021) (incorporated by reference at SAC ¶ 60).

Schiff, several months later, that Congress might "have to think about whether [Section 230] immunity still makes sense," SAC ¶¶ 63-64. Representative Schiff never instructed Facebook to take any action with respect to vaccine misinformation generally or CHD's content specifically, nor did he threaten to revoke Section 230 if Facebook failed to comply with any specific directive. Indeed, Representative Schiff could not singlehandedly threaten to change the law; any amendment to Section 230 would require agreement from a majority in the House as well as the Senate and President. His statements do not establish government coercion. *Compare S.H.A.R.K. v. Metro Parks Serving Summit Cty.*, 499 F.3d 553, 565 (6th Cir. 2007) (no coercion where state actor asked private actor "if [he] knew how to erase the tapes" but did not direct their erasure).

### 2. CHD has not plausibly alleged encouragement

CHD likewise fails to establish state action on the ground (Opp. 6-7) that Section 230 "encouraged" Defendants' conduct. For one thing, CHD cites no case holding that a private actor can be held liable for actions encouraged by the federal government. It relies on *Skinner v. Railway Labor Executives' Association*, 489 U.S. 602 (1989) (at Opp. 6-7)—a case the SAC frames as one piece of an abandoned "immunity plus pressure" theory, SAC ¶¶ 297-300—but that case involved claims directly against a federal agency. *Id.* at 612. And *Railway Employees' Department v. Hanson*, 351 U.S. 225 (1956) (discussed at Opp. 6), though in the context of a dispute between private parties, addressed only the constitutionality of a federal law, not whether that law provided a basis upon which to hold private actors liable for alleged constitutional violations. *See id.* at 230-233, 238.

But even if an encouragement theory could apply here, CHD's allegations fall far short of what it requires. *Skinner* concerned regulations that provided detailed instructions for carrying out precisely the conduct alleged to have violated the plaintiffs' rights and precluded railroads from contracting away the authority the regulations conferred. *See Id.* at 611-612, 615. Section 230, by contrast, is silent as to the specific conduct about which CHD complains—it nowhere mentions fact-checks, vaccine misinformation, or fundraising tools—and leaves internet service providers free to contract away its protections. CHD offers no response to these distinctions. And *Hanson*, to the extent relevant at all, held that a federal law authorizing union shop agreements and preempting prohibitory state laws raised justiciable First and Fifth Amendment issues, even

though the law was only "permissive" in nature, because the law was "the source of the power and authority by which any private rights [were] lost or sacrificed" through subsequent union shop agreements. 351 U.S. at 232. Here, by contrast, Facebook's authority to exercise editorial control over its platform is independent of Section 230. *See infra* pp. 6-7.

### 3. CHD has not plausibly alleged joint action

With respect to joint action, CHD's opposition simply lists allegations from its SAC without responding to any of Defendants' legal arguments about why those allegations fail to establish that the federal government was "a joint participant in the challenged activity," *Gorenc v. Salt River Project Agric. Improvement & Power Dist.*, 869 F.2d 503, 507 (9th Cir. 1989). Defendants explained (Mot. 7-8) that CHD's allegations with respect to the WHO, CDC Foundation, InfraGard, and British Government are irrelevant because none of those entities are *federal* actors. CHD offers no response. And Defendants also explained (Mot. 8-10) that the remainder of CHD's joint-action allegations fall short of establishing any federal involvement in the *specific conduct* alleged to have violated CHD's rights, as is the joint action test requires. Again, CHD offers no response.

The few allegations involving federal actors that CHD cites illustrate its disregard for the requirement to link those actors to the *specific* challenged conduct. CHD recites (Opp. 7) allegations that the CDC and Facebook have worked together to deliver "targeted health information," including by developing a preventive health app that, among other things, reminds users to get vaccinated, SAC ¶¶ 49-52, 56-58;[2] that the State Department coordinates with unidentified entities in "the private sector"—notably, CHD nowhere alleges that the State Department actually has any relationship with Facebook—to "improve immunization rates," *id.* ¶¶ 99-100; and that the State Department contributes 10% of Poynter's International Fact-Checking Network's budget, *id.* ¶ 98. None of those allegations suggests any federal actor has been involved in any decision to remove any vaccine misinformation, let alone misinformation shared by CHD.

---

[2] CHD's suggestion (Opp. 7 n.5) that it can manufacture a question of fact by selectively quoting from Mr. Zuckerberg's public statements about Facebook's relationship with the CDC borders on the preposterous. The referenced context into which CHD claims to need discovery comes from the video incorporated by reference into CHD's *own complaint. See* SAC ¶ 52.

**B.     CHD's *Bivens* Claim Would Require A Disfavored Expansion in *Bivens* Liability**

CHD does not dispute that expanding *Bivens* is disfavored. It instead argues only that the Ninth Circuit has already recognized a First Amendment *Bivens* claim. Opp. 8-9 (citing *Boule v. Egbert*, 980 F.3d 1309, 1316 (9th Cir. 2020)). But as the Supreme Court has held, what makes the context of one *Bivens* claim different from another is not whether "the right and the mechanism of injury [a]re the same" but whether "the case is different in a meaningful way from previous *Bivens* cases." *Ziglar v. Abbasi*, 137 S. Ct. 1843, 1859 (2017). In *Malesko*, for example, the Supreme Court declined to expand *Bivens* to reach an Eighth Amendment claim against a *private* prison operator even though *Carlson v. Green*, 446 U.S. 14 (1980), had previously approved a nearly identical Eighth Amendment claim against *federal* prison officials. *See Ziglar*, 137 S. Ct. at 1859. Just as in *Malesko*, there is a meaningful difference between the federal officer defendants in *Boule* and the private internet-service provider defendants here. *See also, e.g.*, *Rabieh v. Paragon Sys., Inc.*, 316 F. Supp. 3d 1103, 1108 (N.D. Cal. 2018) (finding Fourth Amendment claim to arise in "a new *Bivens* context" due to private status of defendant).[3]

**C.     Facebook Is Not A Proper *Bivens* Defendant**

Nor does CHD dispute that *Malesko* "foreclosed" "inferring a constitutional tort remedy against a private entity." *Malesko*, 534 U.S. at 70-71. Instead, CHD asserts that "*Malesko* doesn't apply" because CHD has no other remedy against Facebook. Opp. 9. But even if true, that does not justify an expansion in *Bivens* liability. "[E]ven in the absence of an alternative [remedy], a *Bivens* remedy is a subject of judgment … ." *Wilkie v. Robbins*, 551 U.S. 537, 550 (2007). "[B]efore authorizing a new kind of federal litigation," courts also must "pay[] particular heed … to any special factors counseling hesitation." *Id.* And CHD does not even attempt to dispute that, as Facebook explained (Mot. 12), the First Amendment concerns implicated here are precisely the kind

---

[3] Despite alleging Fifth Amendment violations only in the context of its *Bivens* claim, *see* SAC ¶¶ 304, 319-322, CHD now purports to have raised an independent takings claim. Opp. 9 n.8. The Court should not consider this unpleaded legal theory, *see Azad v. Tokio Marine HCC-Med. Ins. Servs. LLC*, 2017 WL 3007040, at *7 (N.D. Cal. 2017), but in any event, holding private actors liable for alleged constitutional violations still requires state action regardless of whether framed as a *Bivens* claim or a takings claim, *see Broad v. Sealaska Corp.*, 85 F.3d 422, 430-431 (9th Cir. 1996) (takings claim "fail[ed] for lack of sufficient government action").

1  of factors that caution against expanding *Bivens* liability. *See Halleck*, 139 S. Ct. at 1932.[4]

2  **II.    THE FIRST AMENDMENT BARS CHD'S LANHAM ACT AND RICO CLAIMS**

3       **A.    The Speech At Issue Is Fully Protected Under The First Amendment**

4       CHD offers no response to the First Amendment precedent that Defendants cited (Mot. 14)

5  that bars CHD's claims insofar as they challenge Facebook's decisions to filter, demote, or remove

6  content, or to restrict access to advertising or fundraising tools. This case law establishes that CHD

7  may not invoke the power of this Court to "tell [Facebook] what to include or not to include in

8  speech about" vaccine safety, *Jian Zhang v. Baidu.com Inc.*, 10 F. Supp. 3d 433, 437 (S.D.N.Y.

9  2014). Having failed to respond, CHD concedes the point.

10      CHD likewise concedes (Opp. 2) that speech regarding the safety and efficacy of vaccines

11 is "constitutionally protected speech on matters of serious public concern." For this reason, the

12 labels Facebook places on potentially misleading posts about vaccine safety and efficacy "occup[y]

13 the highest rung of the hierarchy of First Amendment values, and [are] entitled to special

14 protection." *Connick v. Myers*, 461 U.S. 138, 145 (1983). CHD's only response (Opp. 19-21) is to

15 contend that the First Amendment does not protect fraud, false commercial speech, or defamation.

16 But CHD has not asserted a claim for defamation (nor could it, *see infra* pp. 7-8), and CHD is wrong

17 that it can evade constitutional scrutiny by simply styling a claim as involving fraud or commercial

18 speech, *see, e.g.*, *Gordon & Breach Sciences Pubs. S.A. v. American Inst. of Physics*, 859 F. Supp.

19 1521, 1543 (S.D.N.Y. 1994) (rejecting "court-sanctioned discovery" on Lanham Act claim absent

20 "prima facie showing that speech which appears fully protected is in fact undeserving of First

21 Amendment protection"). Thus, regardless of their truth or falsity, the warnings and fact-checks are

22 entitled to full First Amendment protection. *See United States v. Alvarez*, 567 U.S. 709, 718 (2012)

23 (there is no "general exception to the First Amendment for false statements").

24

---

25 [4] CHD contends (Opp. 9) that its claim for injunctive relief survives even if its *Bivens* claim does

26 not. But the relief it seeks is barred by the First Amendment. CHD seeks an order requiring "Facebook to remove its warning labels" and "to make a public retraction of [Defendants'] false

27 statements." SAC Prayer For Relief ¶¶ C, F. Such relief would impermissibly chill protected speech, *see, e.g.*, *Isuzu Motors Ltd. v. Consumers Union of U.S., Inc.*, 12 F. Supp. 2d 1035, 1048 (C.D. Cal.

28 1998), and "mandate[e] speech that [Defendants] would not otherwise make," *Riley v. National Fed'n of the Blind of N.C., Inc.*, 487 U.S. 781, 795 (1988).

Further, CHD nowhere disputes that Facebook provided its fact-checkers' detailed explanations for each label. As Facebook explained (Mot. 13-14), it is not actionable to identify a statement as false when the reasoning for that conclusion is provided. *E.g.*, *Riley v. Harr*, 292 F.3d 282, 291 (1st Cir. 2002) (statement someone had lied was not actionable when reasons for conclusion provided). CHD's sole response (Opp. 22 n.22) is to cite *Eastwood v. National Enquirer, Inc*, 123 F.3d 1249 (9th Cir. 199), but that case has nothing to do with explanatory statements. The magazine at issue was false through and through; its contents repeated, rather than explained, the false headline. *See id.* at 1255-1256. Because CHD challenges only the labels and not the underlying explanation that Facebook provided, its RICO and Lanham Act claims must be dismissed.

## B.      CHD Must, But Has Not, Alleged Actual Malice

CHD is wrong that the actual-malice standard has no bearing here. Whether framed as malice or simply the elements of a claim, liability for fraud requires that a statement "be a knowing or reckless falsehood." *Alvarez*, 567 U.S. at 719-720; *accord United States v. Lloyd*, 807 F.3d 1128, 1164 (9th Cir. 2015) (mail fraud requires at least "reckless indifference as to whether a representation is true or false."). And as CHD recognizes (Opp. 21), it is only speech "properly classified as commercial" to which the actual-malice standard does not apply. Because the speech at issue is not commercial, *see infra* pp. 11-12, and because it involves matters of public concern, *see* Opp. 2, CHD must plead actual malice on its Lanham Act claim. *See, e.g.*, *Coral Ridge Ministries Media, Inc. v. Amazon.com, Inc.*, 406 F. Supp. 3d 1258, 1286 (M.D. Ala. 2019) (actual-malice standard applies to Lanham Act claim involving speech on matters of public concern).

CHD is also wrong that its allegations establish actual malice. CHD does not even attempt to argue that Facebook acted with actual malice as to the page-level notices. And the opposition all but abandons the March 4, 2019 letter on which CHD relied to allege malice in the SAC (at ¶ 357), instead arguing only that Facebook knew that it was false to label as "false" content that fact-checkers had determined was "unsupported." Opp. 21-22. But CHD mischaracterizes the fact-checks. By the SAC's own allegations, Facebook merely labeled posts as containing "false information" when its fact-checkers identified that the posts contained *affirmative claims* made without support. *See, e.g.*, SAC ¶¶ 131-134, 141-143, 186-188; *see also Chaiken v. VV Publ'g Corp.*,

119 F.3d 1018, 1032 (2d Cir. 1997) (no liability for relying on accuracy of information provided by reputable source absent "obvious reason" for doubt). For example, Facebook labeled a post as containing "False Information" because it included the claim that "[v]accinated children are more likely to have adverse health outcomes … compared to unvaccinated children," a claim its fact-checker determined to be "unsupported" because it relied upon a single, biased study and had been contradicted by "[l]arge-scale, reputable studies." SAC ¶ 134. CHD nowhere explains how Facebook could have known that it was false to label as "false" an unsupported claim like that.[5]

### III.    THE CDA ALSO BARS CHD'S LANHAM ACT AND CIVIL RICO CLAIMS

CHD fares no better in seeking to avoid Section 230(c)(1). As Defendants explained (Mot. 16-20), Section 230 bars CHD's claims because they impermissibly challenge Facebook's publishing or de-publishing of content created not by Facebook but by third parties—the third-party fact-checkers and CHD itself. None of CHD's counterarguments is persuasive.

*First*, CHD is wrong (Opp. 23) that it can circumvent Section 230(c)(1) just by alleging anticompetitive conduct. CHD cites *Enigma Software Group USA, LLC v. Malwarebytes, Inc*., 946 F.3d 1040 (9th Cir. 2019), but that case involved a *different* subsection of Section 230, Section 230(c)(2), which provides a "distinct" immunity from the provision at issue here, Section 230(c)(1), *Levitt v. Yelp! Inc*., 2011 WL 5079526, at *7 n.4 (N.D. Cal. Oct. 26, 2011). Critically, the language that the court interpreted in *Enigma*—"otherwise objectionable content"—appears nowhere in Section 230(c)(1). Unsurprisingly, courts have repeatedly applied Section 230(c)(1) to reject claims purportedly founded on unfair competition theories. *See Marshall's Locksmith Serv. Inc. v. Google*, LLC, 925 F.3d 1263, 1267 (D.C. Cir. 2019) (Lanham Act); *Asurvio LP v. Malwarebytes Inc*., 2020 WL 1478345, at *6 (N.D. Cal. Mar. 26, 2020) (same). And in any event, CHD does not dispute that Facebook and Mr. Zuckerberg do not "direct[ly] compet[e]" with CHD, *Enigma*, 946 F.3d at 1050, which independently dooms CHD's attempts to plead around Section 230, *see Asurvio*, 2020 WL

---

[5] CHD's argument does not apply to over half of the fact-checks identified in SAC; CHD makes no attempt (beyond a conclusory footnote, *see* Opp. 22 n.22) to allege actual malice with respect to the eight fact-checks that either did not label the underlying post as containing false information or that Facebook's fact-checkers determined to be something other than "unsupported." *See* SAC ¶¶ 126, 152, 157-159, 179, 180-183, 184, 191, 194.

1478345 at *6 (*Enigma* does not apply where plaintiff is not a direct competitor of defendant).

*Second*, CHD is also wrong that it can evade Section 230 on the ground that Facebook and/or Mark Zuckerberg created the content at issue. This argument is irrelevant insofar as CHD seeks to hold Defendants liable for restricting access to articles shared by CHD (*e.g.*, by demoting CHD content or removing it's donate button). CHD does not dispute that it created the articles, or that restricting or removing them is protected by Section 230(c)(1). *See Barnes v. Yahoo!, Inc.*, 570 F.3d 1096, 1103 (9th Cir. 2009); *Fyk v. Facebook, Inc.*, 808 F. App'x 597, 598 (9th Cir. 2020); *Federal Agency of News v. Facebook, Inc.*, 432 F. Supp. 3d 1107, 1119-1120 (N.D. Cal. Jan. 13, 2020).

Section 230(c)(1) likewise bars CHD's attempts to hold Defendants liable for overlays indicating that third-party fact-checkers had rated CHD posts as false or misleading. Contrary to what CHD argues (Opp. 24), Section 230 protects far more than just "passive transmitter[s]" of third-party information. In *Blumenthal v. Drudge*, for example, the court held that AOL could not be held liable for an allegedly defamatory story authored by Matt Drudge, even though AOL had contracted with Drudge to provide the specific "kind of material"—"gossip and rumor"—at issue, "tout[ed]" Drudge to its subscribers, paid him, and retained the contractual right to "remove" or "require reasonable changes to" any of Drudge's articles. 992 F. Supp. 44, 51 (1998). The Tenth Circuit reached the same conclusion about claims based on allegedly false stock information even though AOL had contracted with two entities for the information, communicated with them about the errors, and deleted some information to correct those errors—all because AOL itself had not created or developed the information at issue. *See Ben Ezra, Weinstein, & Co. v. America Online*, 206 F.3d 980, 984-86 (10th Cir. 2000). Under these cases, it does not matter that Facebook allegedly created and operated a fact-checking infrastructure and published the resulting fact-checks. *See* Mot. 19. What matters is whether Defendants were specifically "responsib[le] for what makes the displayed content allegedly illegal or actionable." *Kimzey v. Yelp!*, 836 F.3d 1263, 1269 n.4 (9th Cir. 2016). Because CHD does not dispute that "what makes the displayed content [allegedly] unlawful" is the determination that CHD's posts were false and also does not dispute that that determination was made by fact-checkers alone, Section 230 bars its claims.

Rather than grapple with these Section 230 precedents, CHD relies instead (Opp. 25-26) on

cases applying common-law agency and employment concepts to argue that Facebook and Mr. Zuckerberg are responsible for everything the fact-checkers do. Such concepts cannot be used to override the core command of Section 230 not to hold online service providers liable for content created by "*another* information content provider," 47 U.S.C. § 230(c)(1) (emphasis added)—as the decisions in *Blumenthal* and *Ben Ezra* illustrate. Indeed, despite the extensive ties between Drudge and AOL summarized above, the court in *Blumenthal* rejected the view that "Drudge is or was an employee or agent of AOL." 992 F. Supp. at 50.

In any event, CHD's agency arguments fail on their own terms because CHD fails to allege Facebook exercised "pervasive and continual control" over the fact-checkers, as required to establish an agency relationship between two entities that have distinct identities and provide distinct services. *Sonora Diamond Corp. v. Superior Court*, 83 Cal. App. 4th 523, 541 (Cal. Ct. App. 2000). It is not enough to allege Facebook "establish[ed] [a] general policy and direct[ed]" the fact-checkers; CHD would have to plausibly allege that Facebook "in effect [has] taken over performance of the subsidiary's *day-to-day* operations in carrying out that policy." *Id.* at 542 (emphasis added). CHD has not done so. For the same reasons, CHD's conclusory allegations cannot plausibly establish that the fact-checkers were Facebook employees under California law. *E.g.*, *Ruiz v. Affinity Logistics Corp.*, 754 F.3d 1093, 1100 (9th Cir. 2014) ("the right to control *work details* is the most important or most significant consideration" in determining employee status).[6]

*Finally*, CHD further errs in asserting that Section 230 cannot constitutionally be applied here. Section 230 merely establishes limits on liability for certain internet companies; it "does not ban or restrict any speech." *Lewis v. Google, LLC*, 461 F. Supp. 3d 938, 952-953 (N.D. Cal. 2020). That precludes CHD's reliance on *Denver Area Educational Telecommunications Consortium, Inc. v. FCC*, 518 U.S. 727 (1996). The statute at issue in *Denver Area* was unconstitutional because

---

[6] CHD's cases (Opp. 25-26) are readily distinguishable. *Mavrix Photographs, LLC v. LiveJournal, Inc.*, 873 F.3d 1045, 1053-1055 (9th Cir. 2017)—which did not concern Section 230—involved not distinct entities but a team of individual moderators over whom the defendant exercised "significant control" by providing "substantive supervision," "select[ing] and remov[ing] moderators," and "exercis[ing] control over the moderators' work schedule." 873 F.3d. at 1055-56. And *Enigma Software Group USA v. Bleeping Computer*, 194 F. Supp. 3d 263, 275 n.11 (S.D.N.Y. 2016), concerned an individual moderator, not an entity, who the defendant considered a "staff member."

1   *Congress*, not a private actor, singled out particular types of speech as suitable for censorship by a

2   government-regulated utility. *See Roberts v. AT&T Mobility LLC*, 877 F.3d 833, 840-841 (9th Cir.

3   2017). Section 230 does no such thing, which is why two other courts in this District have rejected

4   the argument that Section 230 is constitutionally suspect under *Denver Area. See Divino Group LLC*

5   *v. Google LLC*, 2021 WL 51715, at *7 (N.D. Cal. Jan. 6, 2021); *Prager University v. Google LLC*,

6   2018 WL 1471939, at *8 (N.D. Cal. Mar. 26, 2018), *aff'd* 951 F.3d 991 (9th Cir. 2020).

7   **IV.   CHD HAS NOT STATED A CLAIM UNDER THE LANHAM ACT**

8   **A.   CHD's Claimed Injuries Are Not Within The Lanham Act's "Zone Of Interests"**

9   Contrary to CHD's mischaracterization (Opp. 17), CHD lacks standing under the Lanham

10   Act not because it is not a direct competitor of Facebook's, but because it has not alleged an injury

11   within the Act's zone of interests. *See Mot. 20.* To state a claim under the Lanham Act, "a plaintiff

12   must allege an injury to a commercial interest in reputation or sales," *i.e.*, harm to its "position in

13   the marketplace." *Lexmark Int'l, Inc. v. Static Control Components, Inc.*, 572 U.S. 118, 131-132,

14   137 (2014). CHD does not dispute that the only marketplace in which it operates is the marketplace

15   of ideas and "messaging," *see* SAC ¶ 333, nor that its alleged injuries are those of a Facebook

16   consumer, not competitor. Yet each point independently establishes that CHD lacks standing under

17   the Act. *See Mot. 20.* CHD's only response (Opp. 17) is to cite cases that either do not address

18   standing, *see Committee for Idaho's High Desert, Inc. v. Yost*, 92 F.3d 814 (9th Cir. 1996);

19   *Birthright v. Birthright, Inc.*, 827 F. Supp. 1114 (D.N.J. 1993); or reach the irrelevant conclusion

20   that *some* nonprofits can engage in commerce by "purchas[ing] goods and services in competitive

21   markets," *Camps Newfound/Owatona v. Town of Harrison*, 520 U.S. 564, 585-586 (1997), or suffer

22   commercial injuries when they operate in competitive markets for goods and services, *Cal Pure*

23   *Pistachios, Inc. v. Primex Farms, LLC*, 2010 WL 11523590, at *4 (C.D. Cal. Jan. 7, 2010). Because

24   CHD competes only "*in the marketplace of ideas*," its alleged loss of donations "is not sufficient to

25   invoke the Lanham Act." *Farah v. Esquire Magazine*, 736 F.3d 528, 541 (D.C. Cir. 2013).

26   **B.   CHD Has Not Alleged Commercial Speech**

27   CHD does not dispute that the caselaw Defendants cited (Mot. 21-22) establishes that the

28   warnings and fact-checks at issue do not propose commercial transactions. It instead argues that the

warnings and fact-checks are nonetheless commercial speech cognizable under the Lanham Act because Defendants allegedly had an "economic motivation" for posting them. Opp. 18. But "economic motive in itself is insufficient to characterize a publication as commercial." *Dex Media W., Inc. v. City of Seattle*, 696 F.3d 952, 960 (9th Cir. 2012) (collecting cases). Commercial speech must *also* refer to a specific product and/or be made in the context of an advertisement, *Bolger v. Youngs Drug Products Corp.*, 463 U.S. 60, 66-67 (1983)—requirements that CHD nowhere attempts to satisfy. And, in any event, economic motivation is relevant only in cases that present "close[] question[s]," *Hunt v. City of Los Angeles*, 638 F.3d 703, 715 (9th Cir. 2011), such as cases addressing mixed-content publications, *see Dex Media W., Inc.*, 696 F.3d at 957-958. CHD never explains why this case presents a "close question."

CHD's suggestion (Opp. 18-19) that promoting the fact-checkers' "superior information" constitutes commercial speech flies in the face of the Lanham Act's careful delineation between commercial speech, on the one hand, and constitutionally protected speech on the other. The fact-checkers "must be free to participate fully in the marketplace of ideas without fear of sanctions, even if such participation [allegedly] redounds to their financial benefit." *Gordon & Breach Science Pubs. S.A.*, 859 F. Supp. at 1541.

## V.   CHD HAS NOT STATED A CIVIL RICO CLAIM

Far from a scheme of "organized, long-term criminal activity," the Complaint and opposition accuse Defendants of posting inaccurate fact-checks that allegedly diverted some traffic from CHD's Page—all supposedly to benefit "the immense financial interests Defendants have in the vaccines and technologies whose health dangers CHD exposes." Opp. 11. That is a conspiracy theory, not a "scheme to defraud" cognizable under the wire fraud statute or otherwise.

### A.   CHD Has Not Alleged Predicate Acts Of Wire Fraud

At the threshold, the opposition fails to persuasively explain how Defendants are alleged to have obtained "money or property" from anyone they allegedly deceived, as is required to plead a RICO claim predicated on wire fraud. *See* Mot. 23-24. Besides a conclusory assertion that Facebook's statements "were aimed at deceiving CHD" (Opp. 15), CHD offers no explanation or argument about how statements made to CHD or its agents were false or misleading. Instead, CHD

1   primarily attempts to argue that Facebook deceptively acquired money or property from visitors to

2   CHD's Page. But neither theory CHD advances on that front can support its civil RICO claim.

3       *First*, CHD contends (Opp. 12-13) Facebook attempted to "deceive" visitors into donating

4   "to competing nonprofit organizations" by diverting visitors from CHD's Page to the websites of

5   those other organizations. Tellingly, CHD does not allege that any visitor to its Page was in fact

6   deceived into donating to another organization. Nor does this theory appear anywhere in the SAC.

7   That alone merits disregarding it. More fundamentally, CHD's theory fails as a matter of law. The

8   two out-of-circuit cases CHD cites (Opp. 12) merely state that a person could be guilty of fraud

9   even if he obtained kickbacks and "wanted the kickbacks to go to charity," *United States v. Sorich*,

10  523 F.3d 702, 709-710 (7th Cir. 2008), or if he "is an altruist and all the benefits of the fraud accrue

11  to other participants" of the fraud, *United States v. Spano*, 421 F.3d 599, 603 (7th Cir. 2005). But

12  CHD has not alleged that Defendants deceptively obtained kickbacks and then donated them

13  elsewhere or even that they defrauded users into sending money to a third party. At most, they have

14  asserted that Defendants diverted the *attention* of some individuals from CHD's Page to the websites

15  of other organizations and that some of those individuals might have then decided to donate to those

16  organizations. That does not establish that Defendants deceptively "obtain[ed] money or property"

17  from any visitor to CHD's Page. *United States v. Lew*, 875 F.2d 219, 221 (9th Cir. 1989).

18      *Second*, CHD argues (Opp. 13) that Facebook "sought to obtain property" from visitors to

19  CHD's Facebook page "by taking from them the right to control whether or how much of their

20  money to spend on CHD" when Facebook disabled CHD's "donate" button. Once again, the SAC

21  nowhere alleges this. And CHD never explains how removing a donate button or allowing users to

22  navigate to fact-checkers' web-pages are fraudulent acts. In any event, this vague "right to control"

23  does not qualify as "money or property." *See* 18 U.S.C. § 1343. Such "ethereal" interests fall outside

24  the scope of the mail and wire fraud statutes, which stem from "'the desire to protect individual

25  property rights.'" *Carpenter v. United States*, 484 U.S. 19, 25 (1987). And CHD does not explain

26  how closing one way for donating to CHD deprives users of the "right to control" their own finances

27

28

when those users could still, for example, donate to CHD through other means.[7]

### B.    CHD Lacks Standing To Pursue A Civil RICO Claim

As Defendants explained (Mot. 25), the SAC's multi-step theory of causation asks the Court to engage in disfavored intricate and speculative inquiry by going far beyond the "first step" in the relevant causal chain. *Holmes v. Securities Investor Protection Corp.*, 503 U.S. 258, 271 (1992). Regardless whether a court might conclude in *some* hypothetical case that lost profits or revenue were sufficiently directly tied to an underlying predicate act to support a proximate-cause finding, *cf.* Opp. 16 n.16, the facts CHD has alleged in *this* case fall well short of the mark. To demonstrate proximate cause here, CHD would have to establish that some subset of visitors to its Page who otherwise would have chosen to donate to CHD did not do so in reliance on the fact-checks affixed to CHD's content—not because of any other non-fraudulent action that Defendants took (*e.g.*, the removal of the donate button), and not because of any of the many other potential causes that may have depressed donations to CHD (*e.g.*, economic disruption caused by the COVID-19 pandemic). *See Anza v. Ideal Steel Supply Corp.*, 547 U.S. 451, 459 (2006) (injury must be proximately caused by the pleaded predicate act); *see also Bridge v. Phoenix Bond & Indemn. Co.*, 553 U.S. 639, 658 (2008) (some degree of reliance necessary to plead proximate cause for civil RICO purposes).

CHD has not done so. Apart from injuries tied directly to removal of the donate button (SAC ¶ 223), CHD merely claims that "[a]s a result of defendants' actions, third-party user visits from CHD's Facebook page to CHD's website declined significantly." SAC ¶ 225. That conclusory statement is not enough. *See In re Actimmune Mktg. Litig.*, 614 F. Supp. 2d 1037, 1051 (N.D. Cal. 2009) ("mere recitals of the causation element of the RICO claim" were "not sufficient grounds for entitlement to relief" and could not survive a motion to dismiss).

### C.    CHD Has Not Alleged A Civil RICO Pattern

Finally, as explained (Mot. 25-26), even where a plaintiff alleges "a number of acts," if those

---

[7] To the extent that CHD premises its RICO claim on an omission theory, *see* Opp. 14-15, that theory fails for the same reasons discussed above. CHD's omission argument, if accepted, would impose a duty on social media platforms to disclose how their display algorithms affect *all content*—not just that whose reach is restricted for violating the platform's terms of use. CHD can point to no authority imposing such a duty, and for good reason: it would be entirely unadministrable.

acts are in effect "a single episode having [a] singular purpose," no civil RICO pattern exists. *Sever v. Alaska Pulp Corp.*, 978 F.2d 1529, 1535 (9th Cir. 1992); *accord Medallion Tel. Enter., Inc. v. SelecTV of Cal., Inc.*, 833 F.2d 1360, 1364 (9th Cir. 1987). Nothing in the opposition alters the fact that the SAC focuses on CHD's relationship with Facebook—the type of business dispute that this court has previously held falls far short of the "pattern" required under civil RICO.[8]

## VI.   CHD HAS NOT STATED ANY CLAIM AGAINST MARK ZUCKERBERG

CHD does not dispute that personal liability under each of its claims requires direct involvement in the allegedly unlawful conduct. *See* Mot. 11-12, 26-28. CHD instead argues that it has alleged the requisite involvement because Mr. Zuckerberg is a "hands on" CEO with the authority to direct the conduct and who has been involved in *other* "censorship decisions." Opp. 27-28. That is plainly insufficient to establish individual liability. Allegations that a CEO "influenced" the allegedly unlawful conduct, *see Ferrari v. Mercedes-Benz USA, LLC*, 2016 WL 7188030, at *3 (N.D. Cal. Dec. 12, 2016) (RICO claim), or was generally "in charge" of relevant decisions, *see Soto-Torres v. Fraticelli*, 654 F.3d 153, 160 (1st Cir. 2011) (*Bivens* claim), cannot support individual liability. *Cf. POM Wonderful LLC v. Purely Juice, Inc.*, 362 F. App'x 577, 581 (9th Cir. 2009) (individual liability under Lanham Act where corporate president was personally involved in unlawful conduct). And neither law nor common sense supports CHD's argument that Mr. Zuckerberg can be personally liable for any actions taken with respect to CHD simply because Representative Schiff addressed to him a letter inquiring about the steps that Facebook takes with respect to vaccine misinformation. Because CHD has not plausibly alleged that Mr. Zuckerberg was personally involved in any decision regarding CHD, the claims against him must be dismissed.

## CONCLUSION

The Second Amended Complaint should be dismissed with prejudice.

---

[8] CHD now claims (Opp. 16) that "Facebook's community of users" are also victims of this purported civil RICO scheme. But CHD identifies no authority suggesting that the existence of third parties allegedly affected by the particular acts about which CHD complains is relevant to the question whether those acts constitute a civil RICO pattern. And such a conclusion would be in tension with the Supreme Court's explanation that a third party "who complained of harm flowing merely from the misfortunes" of others was "too remote" to sustain an action. *Holmes*, 503 U.S. at 268-269.

1

2  Dated: March 5, 2021

WILMER CUTLER PICKERING, HALE AND
DORR LLP

3

4  By:   */s/ Sonal N. Mehta*
SONAL N. MEHTA

5  *Attorney for Defendants*
Facebook, Inc. and Mark Zuckerberg

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on March 5, 2021, I electronically filed the above document with the Clerk of the Court using CM/ECF which will send electronic notification of such filing to all registered counsel.

Dated: March 5, 2021                               By:    */s/ Sonal N. Mehta*
                                                                          Sonal N. Mehta