ROGER I. TEICH
California State Bar No. 147076
290 Nevada Street
San Francisco, CA 94110
Telephone: (415) 948-0045
E-Mail Address: rteich@juno.com

ROBERT F. KENNEDY, JR.
MARY HOLLAND
Children's Health Defense
1227 North Peachtree Parkway, Suite 202
Peachtree City, GA 30269
Telephone: (917) 743-3868
E-Mail Address: mary.holland@childrenshealthdefense.org

Attorneys for Plaintiff
CHILDREN'S HEALTH DEFENSE

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| CHILDREN'S HEALTH DEFENSE,<br><br>Plaintiff,<br><br>v.<br><br>FACEBOOK, INC., et al.,<br><br>Defendants. | Case No. 3:20-cv-05787-SI<br><br>**PLAINTIFF'S REPLY IN SUPPORT OF MOTION TO SUPPLEMENT SECOND AMENDED COMPLAINT**<br><br>F.R.C.P 15(d)<br><br>Hon. Susan Illston<br>Courtroom 1 – 17th Floor<br>Date: May 5, 2021<br>Time: 10:30 a.m. |

Plaintiff's Reply ISO Motion to Supplement
Second Amended Complaint
*CHD v. Facebook* et al.; Case No. 3:20-cv-05787-SI

1

## **TABLE OF CONTENTS**

2

Page #

3  TABLE OF AUTHORITIES ......................................................................................................ii

4  MEMORANDUM OF POINTS AND AUTHORITIES ......................................................... 1

5      I.      OVERVIEW .................................................................................................... 1

6      II.    CHD HAS ACTED IN GOOD FAITH AND WITHOUT PREJUDICE.......................... 2

7      III.   PLAINTIFF'S SUPPLEMENT IS NOT FUTILE........................................ 5

8            A.    Defendants Ignore Common Sense and Rule 12(b)(6) Interpretative Canons

9                  in Assessing CHD's "Federal Actor" Allegations ................................... 5

10            B.    Injury to CHD Arising From Mr. Kennedy's Instagram Termination................. 10

11            C.    Injury to CHD Arising From Facebook's Third-Party User Warnings ............... 13

12            D.    The Supplement Supports CHD's Allegations of Cognizable RICO Injury ........ 15

13      IV.   CONCLUSION.................................................................................... 15

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

Plaintiff's Reply ISO Motion to Supplement
Second Amended Complaint
***CHD v. Facebook*** et al.; Case No. 3:20-cv-05787-SI

## <u>TABLE OF AUTHORITIES</u>

**Federal Cases**

*Adickes v. S. H. Kress & Co.*,
   398 U.S. 144 (1970).................................................................................................6, 7

*Adult Video Ass'n v. Barr*,
   960 F.2d 781 (9th Cir. 1992) ...............................................................................12

*Adult Video Ass'n v. Reno*,
   41 F.3d 503 (9th Cir. 1994) .................................................................................12

*Albert v. Embassy of Music GMBH*,
   2020 U.S. Dist. LEXIS 132657 (N.D. Cal. July 27, 2020)....................................4

*Alpha Energy Savers, Inc. v. Hansen*,
   381 F.3d 917 (9th Cir. 2004) ...............................................................................12

*Ashcroft v. Iqbal*,
   556 U.S. 662 (2009)................................................................................................5

*Bastidas v. Good Samaritan Hosp. LP*,
   2016 U.S. Dist. LEXIS 33405 (N.D. Cal. 2016) .................................................13

*Bell Atl. Corp. v. Twombly*,
   550 U.S. 544 (2007)................................................................................................5

*Blum v. Yaretsky*,
   457 U.S. 991 (1982)................................................................................................6

*Brown v. Board of Education*,
   347 U. S. 483 (1954)...............................................................................................6

*Burton v. Wilminton Parking Auth.*,
   365 U.S. 715 (1961)................................................................................................6

*Circle Click Media LLC v. Regus Mgmt. Grp. LLC*,
   2016 U.S. Dist. LEXIS 140002 (N.D. Cal. Oct. 7, 2016)......................................3

*Coalition of Clergy, Lawyers & Professors v. Bush*,
   310 F.3d 1153 (9th Cir. 2002) .............................................................................11

*Coszalter v. City of Salem*,
   320 F.3d 968 (9th Cir. 2003) ...............................................................................12

*Eminence Capital, LLC v. Aspeon, Inc.*,
   316 F.3d 1048 (9th Cir. 2003) ...............................................................................4

ii                          Plaintiff's Reply ISO Motion to Supplement
                                          Second Amended Complaint
                            *CHD v. Facebook* et al.; Case No. 3:20-cv-05787-SI

*Evans v. Valero Energy Corp.*,
    No. CV F 07-0130, 2007 U.S. Dist. Lexis 21402 (E.D. Cal. Mar. 6, 2007)..........................................6

*Fed. Agency of News LLC v. Facebook, Inc.*,
    432 F. Supp. 3d 1107 (N.D. Cal. 2020) ....................................................................9, 10

*Foman v. Davis*,
    371 U.S. 178 (1962)................................................................................................2, 3

*Godinez ex rel. Godinez v. City of Chicago*,
    2019 U.S. Dist. LEXIS 187994 (N.D. Ill. 2019) ....................................................13

*Hang On, Inc. v. City of Arlington*,
    65 F.3d 1248 (5th Cir. 1995) ..................................................................................12

*Hartman v. Gilead Scis., Inc. (In re Gilead Scis. Sec. Litig.)*,
    536 F.3d 1049 (9th Cir. 2008) ..................................................................................6

*Hunt v. Cromartie*,
    526 U.S. 541 (1999)................................................................................................13

*Keith v. Volpe*,
    858 F.2d 467 (9th Cir. 1988) ..............................................................................4, 12

*Keyser v. Sacramento City Unified Sch. Dist.*,
    265 F.3d 741 (9th Cir. 2001) ..................................................................................12

*Louisiana Comm'n for Needy Children v. Poindexter*,
    393 U.S. 17 (1968)..................................................................................................11

*Miller v. Rykoff-Sexton, Inc.*,
    845 F.2d 209 (9th Cir. 1988) ....................................................................................5

*Pasquantino v. United States*,
    544 U.S. 349 (2005)................................................................................................15

*Planned Parenthood of Southern Ariz. v. Neely*,
    130 F.3d 400 (9th Cir. 1997) ..........................................................................4, 11, 12

*Poindexter v. Louisiana Fin. Assistance Comm'n*,
    296 F. Supp. 686 (E.D. La.) ....................................................................................11

*Reno v. Adult Video Ass'n*,
    509 U.S. 917 (1993)................................................................................................12

*S.O.C., Inc. v. County of Clark*,
    152 F.3d 1136 (9th Cir. 1998) ................................................................................12

*Sorosky v. Burroughs Corp.*,
    826 F.2d 794 (9th Cir. 1987) ....................................................................................3

iii

Plaintiff's Reply ISO Motion to Supplement
Second Amended Complaint
*CHD v. Facebook* et al.; Case No. 3:20-cv-05787-SI

*Ulrich v. City & County of San Francisco,*
    308 F.3d 968 (9th Cir. 2002) ................................................................................12

*United Brentwood Acad. v. Tenn. Secondary Sch. Athletic Ass'n,*
    531 U.S. 288 (2001) .............................................................................................1

*United States v. Avenatti,*
    432 F. Supp. 3d 354 (S.D.N.Y. 2020) ................................................................15

*United States v. George,*
    477 F.2d 508 (7th Cir. 1973) ..............................................................................15

*United States v. Louderman,*
    576 F.2d 1383 (9th Cir. 1978) ............................................................................15

United States v. Menendez,
    132 F. Supp. 3d 635 (D.N.J. 2015) ....................................................................15

*United States v. Siegelman,*
    640 F.3d 1159 (11th Cir. 2011) ..........................................................................15

*United States v. Sorich,*
    523 F.3d 702 (7th Cir. 2008) ..............................................................................15

*Yartzoff v. Thomas,*
    809 F.2d 1371 (9th Cir. 1987) ............................................................................13

**United States Constitution**

    First Amendment ....................................................................................2, 11, 12

**Federal Statutes**

    47 U.S.C. § 230 ....................................................................................................6

    42 U.S.C. § 1983 ..................................................................................................7

**Federal Rules of Civil Procedure**

    Rule 12 .................................................................................................................2
    Rule 12(b)(6) ...........................................................................................3, 4, 5, 9
    Rule 15(a) .............................................................................................................2
    Rule 15(a)(1)(B) ..................................................................................................2
    Rule 15(a)(2) ........................................................................................................2
    Rule 15(d) ...............................................................................................1, *passim*
    Rule 16 .................................................................................................................4
    Rule 42(a) ...........................................................................................................11

iv          Plaintiff's Reply ISO Motion to Supplement
Second Amended Complaint
*CHD v. Facebook* et al.; Case No. 3:20-cv-05787-SI

**Federal Rules of Evidence**

Rule 201(b)(2)...................................................................................................8
Rule 408.............................................................................................................4
Rule 408(b) ........................................................................................................4

**Civil Local Rules**

Rule 6-1(b) .........................................................................................................4

**Other Authorities**

*Adickes v. S. H. Kress & Company*, Oyez,
    https://www.oyez.org/cases/1969/79 (last visited Mar 29, 2021).......................7

Editorial Board, *Congress Summons its Speech Regulators*, WALL STREET JOURNAL
    (Mar. 26, 2021),
    https://www.wsj.com/articles/congress-summons-its-speech-regulators-
    11616711928?mod=opinion_lead_pos3 .............................................................9

"Event 201" pandemic war-gaming exercise,
     https://www.centerforhealthsecurity.org/event201/media ................................8

Jesse O'Neil, *White House working with social media giants to silence anti-vaxxers*, NEW
    YORK POST (Feb. 19, 2021),
    https://nypost.com/2021/02/19/white-house-working-with-social-media-to-silence-
    anti-vaxxers..................................................................................................9

6A Wright, Miller & Kane, Federal Practice and Procedure:
    Civil 2D § 1506 (1990) ..................................................................................11

v                          Plaintiff's Reply ISO Motion to Supplement
                                       Second Amended Complaint
                              *CHD v. Facebook* et al.; Case No. 3:20-cv-05787-SI

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

## MEMORANDUM OF POINTS AND AUTHORITIES

Plaintiff Children's Health Defense's ("CHD") submits this reply on its motion to supplement its Second Amended Complaint ("SAC") pursuant to Fed. R. Civ. P. 15(d) (hereafter "Rule 15(d)"). Contrary to Defendants' opposition, CHD's motion to supplement is neither dilatory nor in bad faith, and would cause no prejudice to Defendants. Nor is it futile.[1] The supplementation order should issue with direction that the parties may commence discovery relating to the well-founded allegations of CHD's supplemented SAC.

### I.       OVERVIEW

This is not an ordinary case. These are not ordinary times. Private party conduct becomes state action "when [the private party's conduct] results from the State's exercise of 'coercive power,' when the State provides 'significant encouragement, either overt or covert,' or when a private actor operates as a 'willful participant in joint activity'" with the government." *United Brentwood Acad. v. Tenn. Secondary Sch. Athletic Ass'n*, 531 U.S. 288, 298 (2001). Elements of all three are present in Facebook's recent acts against CHD, and in the government's involvement in those acts.

CHD's supplement pleads new retaliatory acts by Facebook against CHD through direct action against Mr. Robert F. Kennedy, Jr., CHD's founder and chairman, and through statements by federal actors and Facebook itself publicizing both significant encouragement and joint action to censor COVID-19 vaccine "misinformation." These recent actions highlight the existence of ongoing, and increasingly flagrant collusion between Facebook and U.S. government officials and agencies.

Facebook acknowledges in its own recent Policy Guidelines that it does not censor vaccine and coronavirus information on the basis of *actual* falsity. Rather, in partnership and working jointly with the Centers for Disease Control and Prevention ("CDC") -- a federal agency, as alleged in the SAC -- it censors information "*when public health authorities conclude that the information is false*." Thus, when individuals and actors such as Plaintiff CHD post *true* information contradicting CDC pronouncements, Facebook—in partnership and through joint activity with the CDC—labels such posts "misinformation"

---

[1]       Defendant The Poynter Institute for Media Studies ("Poynter"), one of Facebook's "fact-checkers," is alleged to be a spoke in a larger hub-and-spokes conspiracy. (SAC ¶¶ 21-22, 79, 90, 93-108, 151-155.) Poynter's opposition essentially adopts Facebook's opposition, and should be rejected for the same reasons, as shown herein.

1       Plaintiff's Reply ISO Motion to Supplement
Second Amended Complaint
*CHD v. Facebook* et al.; Case No. 3:20-cv-05787-SI

and restricts or removes them.

Recent occurrences set forth in CHD's supplement underscore the Executive Branch's involvement and that Facebook is essentially serving as the censorship arm of a United States agency. The First Amendment does not permit viewpoint-based censorship of speech. Outside of narrowly defined categories of unprotected speech (such as obscenity or incitement, which have no applicability here), the First Amendment bars content-based restrictions of speech unless the restrictions are narrowly tailored to further compelling governmental interests. It is for this Court to apply that rigorous standard to Facebook, a federal actor engaged in impermissible censorship of vaccine-related speech. The Court is also called upon to decide that Facebook's false statements in this context are actionable as fraud and false promotion. Respectfully, the Court should grant the supplement, deny the motion to dismiss, and allow the parties to develop the record on this urgent First Amendment matter.

## II.    CHD HAS ACTED IN GOOD FAITH AND WITHOUT PREJUDICE

Defendants argue that CHD's supplement is "dilatory" (Dkt. 82 at 1) because it follows previous amendments of the complaint: first, by right under Fed. R. Civ. Pro. 15(a)(1)(B), (Dkt. 64), and again -- with Defendants' consent -- pursuant to Rule 15(a)(2) (Dkts. 65-1, 67). Defendants assert that "Rule 12 motions are not a game of whack-a-mole." (Dkt. 82 at 5.) Plaintiff has engaged in no such maneuver, which would serve no one's interest. Defendants' factually baseless effort to impugn CHD's motives is no substitute for legal argument. Contrary to Defendants' implicit assertion, CHD's previous – and uncontested – amendments in no way invalidate the present supplementation.

Rule 15(d) allows a party to supplement a pleading when events occur after the filing of that pleading that are material to the case. That is, exactly and simply, what happened here. Days after filing its Reply in support of its Motion to Dismiss, Defendants took new actions injurious to CHD, and both White House officials and Facebook itself newly confirmed "direct" joint activity between them to censor vaccine-related speech online. A Rule 15(d) supplement is therefore squarely appropriate here.

Motions to supplement are to be freely granted in the absence of: (1) undue delay, (2) bad faith or dilatory motive on the part of the movant, (3) repeated failure of previous amendments, (4) undue prejudice to the opposing party, and (5) futility of the amendment. *See Foman v. Davis*, 371 U.S. 178, 182 (1962). Both of Plaintiff's prior amendments were proper under Rule 15(a). CHD's operative

2    Plaintiff's Reply ISO Motion to Supplement
Second Amended Complaint
*CHD v. Facebook* et al.; Case No. 3:20-cv-05787-SI

complaint has not been tested, much less "repeatedly failed." *Foman*, *id*. Defendants' Rule 12(b)(6) motion to dismiss the SAC is fully-briefed and calendared for hearing on a schedule to which Defendants themselves agreed. CHD has acted with dispatch, not delay. Moreover, Defendants ask the Court to treat their previously-filed motion to dismiss as directed to CHD's "new allegations" (Dkt. 82 at 11), conceding both that Plaintiff is adding new *facts* - *not* new "claims" or causes of action - and that Defendants suffer no legitimate prejudice from the inclusion of new facts at the Rule 12(b)(6) stage.

Facebook's "bad faith" argument is misplaced. The nature and timing of CHD's supplement of the *factual* basis of existing claims, *e.g.*, for prospective relief, bear none of the marks of gamesmanship in belated attempts to add new parties, theories or claims to defeat jurisdiction or an adverse ruling. *Cf.* Dkt. 82 at 3, 4 n.3; *Sorosky v. Burroughs Corp.*, 826 F.2d 794, 805 (9th Cir. 1987) (plaintiff conceded that motion to amend would "destroy diversity"); *Circle Click Media LLC v. Regus Mgmt. Grp. LLC*, 2016 U.S. Dist. LEXIS 140002, at *11 (N.D. Cal. Oct. 7, 2016) (plaintiffs waited *15 months* to seek leave to amend). CHD's supplement (Dkt. 76-1) indisputably raises "occurrence[s] or event[s] that have happened since the date of the pleading to be supplemented[,]" pursuant to Rule 15(d) -- *i.e.*, since the date the SAC became operative on December 15, 2020. (Dkt. 67.) Consistent with the Rule, Plaintiff has informed the Court of four *recent* significant acts by Defendants in furtherance of Defendants' scheme and in violation of the laws cited in the SAC: (1) Facebook's termination of Mr. Kennedy's Instagram account (Feb. 10, 2021); (2) Facebook's press statement falsely disparaging Mr. Kennedy (Feb. 11, 2021); (3) Facebook's acknowledgment of "direct engagement" with the White House to censor vaccine-related speech online; and (4) CHD's discovery of a new falsely-disparaging notice on a third-party user's Facebook account warning her to "unfollow CHD," accompanied by an icon enabling her to do that, and encouraging her instead to go to the WHO to "correct common, untrue rumors about COVID-19" (March 5, 2021). (Dkt. 76-1 at 2-3, 14, 40 [Exhs. 1, 3, 6].) Tellingly, Facebook waited until *after* CHD had filed its opposition to Defendants' motion to dismiss to take adverse action against Mr. Kennedy. While the timing of the rollout of Facebook's new third-party warning label is known only to Facebook, this too appears to be very recent. Facebook is the one playing games here, not CHD.

Consistent with Rule 15(d), CHD has also informed the Court of recent public statements by the Executive Branch that add to and provide additional plausible support for CHD's pleaded allegations of

3                    Plaintiff's Reply ISO Motion to Supplement
Second Amended Complaint
*CHD v. Facebook* et al.; Case No. 3:20-cv-05787-SI

*continuing* encouragement and joint action by Facebook in concert with the federal government to censor so-called "vaccine misinformation." (Dkt. 76-1 at 2-3, 10-12, 21, 36-38, [Exhs. 1, 2, 4, 5].) CHD has pleaded, with as much detail as the often exiguous public record permits, ongoing overlapping circles of collusion between Facebook and various federal government officials to suppress disfavored vaccine-related speech by CHD and Mr. Kennedy. CHD acted with dispatch in filing its supplement on March 8, and moving to shorten time under Civil L.R. 6-1(b) – not the typical artifice of those seeking delay – at the hearing on Defendants' motion to dismiss.[2] Supplementation aligns with Rule 15(d)'s important goal of promoting judicial efficiency. *See Planned Parenthood of Southern Ariz. v. Neely*, 130 F.3d 400, 402 (9th Cir. 1997); *Keith v. Volpe*, 858 F.2d 467, 473 (9th Cir. 1988).

Absent prejudice or a "strong showing" of any other *Foman* factor, there is a presumption in favor of granting leave to supplement. *Eminence Capital, LLC v. Aspeon, Inc.*, 316 F.3d 1048, 1052 (9th Cir. 2003). Defendants' sole claim of "prejudice" -- purportedly resulting from rescheduling the March 23 hearing to May 5 -- rings hollow given their prior stipulations agreeing to (1) filing of the SAC, (2) the briefing schedule on the motion to dismiss the SAC, and (3) the current hearing date. (Dkts. 66-1, 78.) Defendants do not and cannot argue legitimate prejudice because the supplement relates to their own recent acts, CHD's theories are the same, no Rule 16 scheduling order has issued, and discovery is stayed. Defendants' request that the Court treat its motion to dismiss as directed to CHD's new allegations effectively concedes that there is no prejudice because Defendants' futility argument is coextensive with the motion to dismiss. (Dkt. 82 at 11.)

The supplemented SAC asserts claims which are certainly "stable" enough to pass the Rule 12(b)(6) test (Dkt. 82 at 5). CHD's allegations of Defendants' escalating tactics are plausibly, if not certainly, evidence of Facebook's ongoing collusion with federal actors or retaliation against CHD, or

---

[2]     Defendants' disingenuous "delay" argument ignores Facebook's own part in this matter – specifically, Mr. Kennedy's written offer to have his matter heard by Facebook's Oversight Board which was made on February 24, 2021, but only responded to by Facebook on March 16, 2021. Teich Dec. ¶2 & Ex. 1; *See e.g.*, Fed. R. Evid. 408(b) (permitting use of offer of compromise evidence to "negat[e] a contention of undue delay"); *Albert v. Embassy of Music GMBH*, 2020 U.S. Dist. LEXIS 132657, **16-19 (N.D. Cal. July 27, 2020) (effort to initiate settlement discussion which never took place not excluded by Fed. R. Evid. 408). Defendants' lack of candor with the Court requires submission of the correspondence between counsel to set the record straight.

4          Plaintiff's Reply ISO Motion to Supplement
Second Amended Complaint
*CHD v. Facebook* et al.; Case No. 3:20-cv-05787-SI

1 both. Do they pass the line from conceivable to plausible? Just ask the cartoon "Pearls before Swine."[3]

2     **III.    PLAINTIFF'S SUPPLEMENT IS NOT FUTILE**

3     "[A] proposed amendment is futile only if no set of facts can be proved under the amendment to

4 the pleadings that would constitute a valid and sufficient claim or defense." *Miller v. Rykoff-Sexton, Inc.*,

5 845 F.2d 209, 214 (9th Cir. 1988). Nonetheless, Defendants argue that the supplement does not add

6 support to any of CHD's four claims for relief: (1) *Bivens*; (2) Lanham Act; (3) RICO Act; or (4)

7 Declaratory/Injunctive Relief. Defendants are mistaken as to all four counts.

8     **A.    Defendants Ignore Common Sense and Rule 12(b)(6) Interpretative Canons**

9         **in Assessing CHD's "Federal Actor" Allegations**

10     Facebook argues that CHD's supplement falls short of the "plausibility" standard of *Bell Atl.*

11 *Corp. v. Twombly*, 550 U.S. 544, 557 n.5 (2007) and *Ashcroft v. Iqbal*, 556 U.S. 662 (2009), because it

12 does not definitively link any federal actor to any particular Facebook CHD content decision. (Dkt. 82 at

13 6-7.)[4] Facebook would have the Court apply the Rule 12(b)(6) test too restrictively. "A claim has facial

14 plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable

15 inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678. A reasonable

16 inference or warranted deduction arises from the close temporal connection between federal officials'

17 statements of "direct engagement" with "social media platforms" or "Big Tech" to censor or deter the

18 spread of "vaccine misinformation," and Defendants' adverse actions against CHD, even without

19



26 [3]
27 [4]    The White House source's opinion that "it is too soon to say whether or not [the administration's outreach] translates into lessening the spread of misinformation" supports rather than rebuts the reasonable inference that the White House is actively encouraging Facebook to do just that. *Cf.* Dkt. 82 at 7 n.4.

5    Plaintiff's Reply ISO Motion to Supplement
Second Amended Complaint
*CHD v. Facebook* et al.; Case No. 3:20-cv-05787-SI

specific mention by name of Facebook or Zuckerberg, or CHD, in every cited allegation. *See, e.g.,*

*Hartman v. Gilead Scis., Inc. (In re Gilead Scis. Sec. Litig.)*, 536 F.3d 1049, 1057 (9th Cir. 2008) ("But

so long as the plaintiff alleges facts to support a theory that is not facially implausible, the court's

skepticism is best reserved for later stages of the proceedings when the plaintiff's case can be rejected

on evidentiary grounds.").

Common sense and experience also have a role to play in the Court's assessment that CHD's

supplemented SAC allegations of federal actor coercion, encouragement, and joint activity with

Facebook in vaccine-related speech censorship are "plausible," not merely "conceivable." The SAC

alleges that federal actors actively participated in the program design and methods by which Facebook

identified and labeled particular CHD speech content as "false." (SAC ¶¶ 49-52, 69-70, 308, 314-17.)

Facebook concedes, as it must, that the SAC and the supplement show both "outreach" and a "common

goal," but insists that more is needed to make the connection between shared ends and means

"plausible." (Dkt. 82 at 7.) Defendants are mistaken.

The case law recognizes that government participation may assume "non-obvious" or "covert"

forms, necessitating a fact-bound inquiry into the totality of the circumstances. *Blum v. Yaretsky*, 457

U.S. 991, 1004 (1982); *see also Burton v. Wilminton Parking Auth.*, 365 U.S. 715, 722 (1961) ("private

conduct abridging individual rights does no violence to the Equal Protection Clause unless to some

significant extent the State in *any of its manifestations* has been found to have become involved in it")

(emphasis added); *Adickes v. S. H. Kress & Co.*, 398 U.S. 144 (1970); *see also Evans v. Valero Energy

Corp.*, No. CV F 07-0130, 2007 U.S. Dist. Lexis 21402 at *9 (E.D. Cal. Mar. 6, 2007).

There was, for example, no pleaded allegation that an overt agreement or "specific custom"

existed between the Hattiesburg, Mississippi police department and the S.H. Kress & Co. restaurant, that

a Kress waitress could refuse to serve Sandra Adickes, a white woman, because she was in the company

of six African-Americans, and that the police would arrest Ms. Adickes for vagrancy upon her departure

from the store. What Ms. Adickes knew, and could plead, was the backdrop of a Mississippi trespass

statute, enacted after *Brown v. Board of Education*, 347 U. S. 483 (1954), which gave Kress the right to

choose customers by refusing service (*id.* at 147 n.3) (not unlike, in our day, 47 U.S.C. § 230); the

statement of a waitress that "we have to serve the colored, but we don't have to serve the whites who

6     Plaintiff's Reply ISO Motion to Supplement
Second Amended Complaint
*CHD v. Facebook* et al.; Case No. 3:20-cv-05787-SI

come in with them"; and testimony that a policeman went into the store and gave an "eye signal" to one of the waitresses. As Eleanor Jackson Piel, Ms. Adickes' attorney, argued before the High Court, "you can say that's not conclusive proof, but we have a right to go to trial on these issues. We have a right to draw whatever comfort that we can from the inferences that come out of this situation." *Adickes v. S. H. Kress & Company*, Oyez, https://www.oyez.org/cases/1969/79 (last visited Mar 29, 2021).

The Supreme Court agreed and reversed summary judgment for Kress, holding that Ms. Adickes would be entitled to relief under 42 U.S.C. § 1983 if she could prove, *through discovery and trial*, that those public and private actors "somehow reached an understanding" or "meeting of the minds" to deny Ms. Adickes service or to cause her subsequent arrest because she was a white person in the company of African-Americans. *Adickes*, 398 U.S. at 146, 151-52. Kress's motive was also an issue best reserved for trial. *Id.* at 174. *Adickes*, with its spectral echoes from the 1964 Mississippi "Freedom Summer," carries special resonance with CHD's current pursuit of judicial protection of its fundamental individual rights in our day, when such rights – here, the freedom from viewpoint censorship – are vulnerable to new and increasingly insidious encroachments. Like the Kress restaurant in *Adickes*, Facebook's test of pleading sufficiency is far too restrictive, ignoring the growing evidence of collusion between the federal government and social media companies to censor online speech and the degree to which such government and private actor partnership has undoubtedly been strategized and effected in secret, making discovery crucial. CHD's pleading evidence is like Ms. Adickes' witness affidavit that the policeman was in the restaurant and exchanged eye-signals with the waitress when she was refused service. CHD needs, just as Ms. Adickes was afforded, full discovery of the state-private actor conspiracy at issue in light of the "inferences that come out of the situation." *Adickes v. S. H. Kress & Company*, Oyez, https://www.oyez.org/cases/1969/79 (last visited Mar 29, 2021).

Facebook argues that the White House Executive Order and CDC Director's public statement referencing the need to curb vaccine-related "misinformation" (Dkt. 76-1) do not "plausibly suggest any connection whatsoever between Facebook and any federal action." (Dkt. 82 at 7.) But, the Court need not ignore recent events -- both those cited in the supplement and those which have occurred since – in making that determination.

Immediately after taking office on January 20, 2021, President Joseph Biden pledged a "full-

Plaintiff's Reply ISO Motion to Supplement
Second Amended Complaint
*CHD v. Facebook* et al.; Case No. 3:20-cv-05787-SI

scale wartime effort" to combat COVID-19. The White House did not have to invent its "wartime"

strategy from scratch. In October 2019, a high-level pandemic war-gaming exercise called "Event 201"

took place in New York City. *See, e.g.*, https://www.centerforhealthsecurity.org/event201/media.

Among its participants were past, present, and future U.S. governmental officials, including

representatives of the CDC and former CIA Deputy Director Avril Haines. A major topic at Event 201

was governmental control of what was described as vaccine "misinformation" and "disinformation" on

social media. Ms. Haines stated: "obviously you want to work with the private sector and those who are

spreading information generally to see that they can bring things down that are in fact lies or false

information." Numerous participants agreed with Ms. Haines that managing the problem of so-called

"misinformation" online was critical and that to achieve this goal, reducing the overall information

available to the public would be justifiable. Said one: "If the solution means controlling and reducing

access to information, I think it's the right choice."[5]

On January 21, 2021, Avril Haines became President Biden's Director of National Intelligence,

overseeing eighteen intelligence agencies, including the CIA and National Security Agency. President

Biden's "wartime effort" to combat COVID-19 implemented the policy advocated by participants at

Event 201, including Director of National Intelligence Haines, of seeing to it that social media

companies block what the government deems vaccine misinformation. In late January or early February,

2021, according to an unnamed senior administration official speaking to the Reuters news organization,

the White House commenced "direct engagement" with "social media" companies, including Facebook,

to "clamp down" on "COVID misinformation." (Dkt. 76-1.)

The unnamed administration official further stated: "Disinformation that causes vaccine

hesitancy is going to be a huge obstacle to getting everyone vaccinated and there are no larger players in

that than the social media platforms. We are talking to them . . . so they understand the importance of

misinformation and disinformation and how they can get rid of it quickly." *Id.* (emphasis added).

Facebook has confirmed its participation in this "direct engagement" between the White House and

---

[5]   Under Fed. R. Evid. 201(b)(2), "the Court may judicially notice a fact that is not subject to
reasonable dispute because it can be accurately and readily determined from sources whose accuracy
cannot reasonably be questioned. These facts concerning Director Haines' participation in Event 201 are
proper subjects of judicial notice.

8        Plaintiff's Reply ISO Motion to Supplement
Second Amended Complaint
*CHD v. Facebook* et al.; Case No. 3:20-cv-05787-SI

social media platforms. Again as reported by Reuters, a Facebook spokesperson confirmed Facebook's communication with White House officials and that Facebook had agreed to supply "*any assistance we can provide*" in cracking down on so-called "vaccine misinformation." *Id.* (emphasis added.) Thus, as of early February, 2021, Facebook by its own admission was directly engaged with the federal government in censoring so-called "vaccine misinformation," and the White House was by its own admission "directly engaged with Silicon Valley in censoring social media users." Jesse O'Neil, *White House working with social media giants to silence anti-vaxxers*, NEW YORK POST (Feb. 19, 2021), https://nypost.com/2021/02/19/white-house-working-with-social-media-to-silence-anti-vaxxers.

On the issue of federal actor "coercion," as alleged in the SAC, a March 26, 2021 Wall Street Journal editorial aptly placed Zuckerberg's most recent appearance before the House of Representatives in context:

> Progressives have deputized Big Tech executives as de facto regulators of American debate. Hearings like this one - as well as Congressional letters to the CEOs - have become so frequent because social media management is now performing what has all the hallmarks of a quasi-governmental function. Congress regularly enforced the arrangement through legislative threats.

The Editorial Board, *Congress Summons its Speech Regulators*, WALL STREET JOURNAL (Mar. 26, 2021), https://www.wsj.com/articles/congress-summons-its-speech-regulators-11616711928?mod=opinion_lead_pos3. CHD alleges that, as part of this "direct engagement," Defendants were specifically and explicitly instructed and/or encouraged by White House officials and/or other federal governmental actors in late January or early February, 2021, to target, restrict and remove certain content or accounts identified by the CDC or other governmental agents associated with "vaccine misinformation," including content posted by or accounts belonging to CHD, or Mr. Kennedy. The supplement meets the test of Rule 12(b)(6) and is not futile.

Facebook next argues that the supplement is "wholly irrelevant" because it "post-dates" the allegations of the SAC. (Dkt. 82 at 6.) Facebook relies on *Fed. Agency of News LLC v. Facebook, Inc.*, 432 F. Supp. 3d 1107 (N.D. Cal. 2020), but that case is readily distinguishable. In *Fed. Agency of News LLC*, plaintiff Federal Agency of News, LLC ("FAN") sued over Facebook's decision to remove FAN's profile and content following the 2016 presidential election. The Court dismissed FAN's *Bivens* claim because FAN's only allegation was that Facebook provided information to the government *after that*

9       Plaintiff's Reply ISO Motion to Supplement
Second Amended Complaint
*CHD v. Facebook* et al.; Case No. 3:20-cv-05787-SI

1   *removal* relating to the government's investigation into Russian interference with the 2018 midterm

2   elections, not the 2016 presidential election, and that responding to government requests for information

3   alone cannot form the basis for joint action. *Id.* at 1121, 1125-26. But, none of FAN's post-2018

4   allegations plausibly related to Facebook's *earlier* deletion of FAN's Facebook page. *Id.* at 1126.

5         Here, by contrast, CHD alleges (which FAN did not) *ongoing* acts of retaliation by Facebook

6   since the filing of this action, SAC at ¶¶ 323-328, and a claim for declaratory relief for injuries which

7   are *continuing in nature* and require injunctive relief. *Id.* at ¶¶ 387-391. Facebook's recent acts of

8   terminating Mr. Kennedy's Instagram account, for which it widely disseminated a false reason as its

9   basis -- that Mr. Kennedy has "repeatedly shared debunked claims about the coronavirus or vaccines" --

10  and of issuing new warning labels to third-party users to "unfollow" CHD's Facebook page and instead

11  urging them to follow a direct CHD competitor, the World Health Organization ("WHO") (Dkt. 76-1 at

12  2-3, 14, 40 [Exhs. 1, 3, 6]), are clearly actionable under CHD's retaliation theory and its claim for

13  prospective relief. The recent statements of federal officials regarding joint action between Facebook

14  and the federal government to suppress disfavored vaccine-related speech are also clearly relevant to the

15  recent acts set forth in CHD's supplemental pleading. *Id.* at 2-3, 10-12, 21, 36-38 (Exhs. 1, 2, 4, 5). The

16  White House now says that it is "specifically pushing" Facebook to suppress or prevent from reaching

17  wide audiences "chatter that deviates from officially distributed COVID-19 information," and Facebook

18  confirms that it has offered "any assistance we can provide" to the federal government's effort to block

19  what it describes as the "spread" of "vaccine misinformation." *Id.* The actions under coordination are a

20  far cry from merely "responding to government requests for information alone." *Fed. Agency of News*

21  *LLC* does not apply to the particular facts or circumstances of CHD's case.

22        **B.**    **Injury to CHD Arising From Mr. Kennedy's Instagram Termination**

23        CHD alleges that Facebook's attack on Mr. Kennedy's vaccine-related posts is an attack on

24  CHD's credibility and reliability, since Mr. Kennedy is CHD's founder and chairman, and their separate

25  accounts and pages are often cross-linked. (Dkt. 76 at 6; *see also* SAC ¶¶ 14-15, 24, 30, 68-69, 125.)

26  CHD frequently disseminates Mr. Kennedy's opinions and expression on a variety of health-related

27  issues. Defendants' attempt to invoke "alter ego" doctrine to deny this close relationship is misplaced.

28  (Dkt. 82 at 10.) CHD is a separate legal non-profit entity, not a mere shell or conduit for Mr. Kennedy's

10      Plaintiff's Reply ISO Motion to Supplement
Second Amended Complaint
*CHD v. Facebook* et al.; Case No. 3:20-cv-05787-SI

affairs. But, at the same time, since CHD and Facebook were *already* litigants in this First Amendment action, CHD can plausibly assert an injury-in-fact *to CHD's* standing, reputation, and capacity to raise funds from Facebook's post-filing acts of retaliation and false disparagement of its founder and chairman's truthful speech activities.

Facebook argues that CHD lacks standing to raise these new allegations. (Dkt. 82 at 10.) Defendants are wrong. CHD asserts that the supplemental allegations describe further actionable harms *to itself* just as in the SAC, *e.g.*, chilling of its First Amendment rights, damage to CHD's goodwill and decrease in donations, from Facebook's recent actions against Mr. Kennedy. Unlike the putative plaintiffs who brought suit on behalf of detainees in *Coalition of Clergy, Lawyers & Professors v. Bush*, 310 F.3d 1153, 1163 (9th Cir. 2002), CHD does not sue as "next-friend" to redress Mr. Kennedy's own reputational harm and denial of constitutional rights. Additionally, CHD and Facebook were adverse parties in litigation when Facebook took action against Mr. Kennedy, a classic case of indirect retaliation. Mr. Kennedy's separate entitlement to pursue any independent remedies as *may* exist before Facebook's Oversight Board,[6] or a potential consolidated action in this Court,[7] cannot abrogate or subvert CHD's present right to seek redress for its own injuries. *Cf. Planned Parenthood v. Neely*, 130 F.3d at 402 (plaintiff sought to supplement its complaint in the original action, which had reached final judgment four years earlier, with no retention of jurisdiction in the district court, with a challenge to a different state statute). Indeed, *Planned Parenthood* makes clear that the goal of Rule 15(d) is judicial efficiency. "To determine if efficiency might be achieved, courts assess 'whether the entire controversy between the parties could be settled in one action . . . .' 6A Wright, Miller & Kane, Federal Practice and Procedure: Civil 2D § 1506 (1990). *Id.* Such is the case with CHD's supplement. The Ninth Circuit also cites with approval cases which permitted supplementation, even post-judgment, where the Court had retained jurisdiction to supervise the parties' compliance with certain directives. *See, e.g., Poindexter v.*

---

[6]      On information and belief, Mr. Kennedy attempted to lodge his submission with the Oversight Board today. It remains far from clear whether he will be notified of its receipt, much less whether or not or when his matter may be heard there. (Teich Dec. ¶3.)

[7]      Far from being "separate" or "distinct," *Planned Parenthood*, 130 F.3d at 402, such an action, if filed, would involve these same "common questions of law and fact," the criteria for consolidation with his action under Fed. R. Civ. P. 42(a).

11                Plaintiff's Reply ISO Motion to Supplement
Second Amended Complaint
*CHD v. Facebook* et al.; Case No. 3:20-cv-05787-SI

*Louisiana Fin. Assistance Comm'n*, 296 F. Supp. 686, 688 (E.D. La.), *aff'd sub nom. Louisiana Comm'n for Needy Children v. Poindexter*, 393 U.S. 17 (1968) (enjoining defendants from enforcing a series of acts, each more "subtle" than the next, that had the effect of racially segregating the school system). Such is also the case with Facebook's recent series of acts against CHD which are both in furtherance of its ongoing joint action with federal officials and in retaliation for CHD filing suit. The Court should not permit any "technical obstacles," *Planned Parenthood*, 130 F.3d at 402-03, such as Defendants' plaint about "delay," to thwart its determination of the full extent of the controversy between the parties, and its award of "complete relief, or more nearly complete relief, in one action[.]" *Keith v. Volpe*, 858 F.2d 467, 473 (9th Cir. 1988).

Moreover, ordinary rules of standing are "relaxed" in First Amendment cases such as CHD's. *S.O.C., Inc. v. County of Clark*, 152 F.3d 1136, 1142-43 (9th Cir. 1998). Here, CHD can assert standing because its own First Amendment activities are chilled by the threat (and reality) of prosecution of a third party. *See, e.g., Adult Video Ass'n v. Reno*, 41 F.3d 503, 504 (9th Cir. 1994), *readopting holding of Adult Video Ass'n v. Barr*, 960 F.2d 781, 785 (9th Cir. 1992), *vac'd by Reno v. Adult Video Ass'n*, 509 U.S. 917 (1993). Moreover, CHD is legally entitled to assert the First Amendment rights of close associates where its own financial interest is affected. *Hang On, Inc. v. City of Arlington*, 65 F.3d 1248, 1251-52 (5th Cir. 1995) (topless bar owner had standing to assert First Amendment rights of dancers under city "no touching" ordinance; owner's financial interest affected). Facebook's recent retaliation against CHD through adverse actions against Mr. Kennedy threatens CHD's own speech and fundraising activities. No resort to principles of third-party standing is necessary to grant the supplement.

CHD clearly has standing to raise its retaliation theory based on post-filing actions taken against Mr. Kennedy. *See, e.g.*, *Alpha Energy Savers, Inc. v. Hansen*, 381 F.3d 917 (9th Cir. 2004). Moreover, Plaintiff's supplement alleges (i) proximity in time between CHD and Mr. Kennedy's expressive conduct and the allegedly retaliatory actions; (ii) Defendants expressed opposition; and (iii) that their proffered explanations for their adverse actions are false and pretextual. *Coszalter v. City of Salem*, 320 F.3d 968, 977 (9th Cir. 2003); *Keyser v. Sacramento City Unified Sch. Dist.*, 265 F.3d 741, 751-52 (9th Cir. 2001). "As with proof of motive in other contexts, this element of a First Amendment retaliation suit . . . involves questions of fact that normally should be left for trial." *Ulrich v. City & County of San*

12          Plaintiff's Reply ISO Motion to Supplement
Second Amended Complaint
*CHD v. Facebook* et al.; Case No. 3:20-cv-05787-SI

*Francisco*, 308 F.3d 968, 979 (9th Cir. 2002) (*citing Hunt v. Cromartie*, 526 U.S. 541, 552 (1999).)
CHD's supplementation is not futile as it relates to Facebook's recent actions against Mr. Kennedy.

SAC ¶¶ 69-70 alleges that two related events of significance occurred on September 4, 2019:
first, the WHO publicly lauded Facebook for its close collaboration with the WHO to "ensure people
can access authoritative information [] and reduce the spread of inaccuracies[,]" *and* second, Facebook
published its "Warning Label" on CHD's Facebook page. Similarly, here, Facebook terminated Mr.
Kennedy's Instagram account and widely disseminated a false basis for that act on February 10-11, 2021
-- a mere matter of days before White House officials publicly acknowledged that they had asked
Facebook to remove COVID-19 vaccine "misinformation." (Dkt. 76-1.) Temporal proximity is a fact or
circumstance that supports a plausible inference of causation. *Yartzoff v. Thomas*, 809 F.2d 1371, 1376
(9th Cir. 1987) ("inference of a causal link is strengthened by the closeness in time between particular
events"); *Bastidas v. Good Samaritan Hosp. LP*, 2016 U.S. Dist. LEXIS 33405, at *17 (N.D. Cal. 2016)
(Ilston, J.) (temporal proximity of protected activity and occurrence of adverse act can support an
inference of retaliatory causation). The allegations of the supplement, just like the SAC, of a causal link
between what the government says it has "asked" Facebook to do, and what Facebook does, are
plausible and should be permitted in this action. *See, e.g.*, *Godinez ex rel. Godinez v. City of Chicago*,
2019 U.S. Dist. LEXIS 187994, at **12-13 (N.D. Ill. 2019) (public officials' statements which
suggested that Chicago police "code of silence" was an ongoing issue were "admissions" showing that
judgment as a matter of law against plaintiff in civil rights action was inappropriate).

### C.   Injury to CHD Arising From Facebook's Third-Party User Warnings

On March 5, 2021, CHD learned that Facebook had issued a warning label not affixed on CHD's
page as alleged in the SAC ¶¶ 70, 79(C), 81-86, 339-56, but directly to the account of a third-party user.
That warning notice encourages and enables the third-party user to "unfollow" CHD and purports that
CHD's "information [] could mislead people about how to cure or prevent a disease or could discourage
people from seeking medical treatment." The warning also refers the user to the WHO, CHD's direct
competitor, and purports that the WHO "corrects common, untrue rumors about COVD-19." (Dkt. 76-1
at 2 [Rita Shreffler Dec. ¶7], 40 [Ex. 6].)

CHD contends that the Exhibit 6 warning label is actionable under all four counts for relief for

13       Plaintiff's Reply ISO Motion to Supplement
Second Amended Complaint
*CHD v. Facebook* et al.; Case No. 3:20-cv-05787-SI

1   the same pleaded reasons as the warning label affixed to CHD's page, and only Defendants know how

2   widely they have been disseminating (or have been covertly disseminating) these warning labels to

3   CHD's many other third-party users. Facebook argues that "CHD provides no context – for example,

4   what CHD post that (sic) this notice was displayed in connection with or when – to enable the Court to

5   evaluate the notice in connection with any of CHD's claims." (Dkt. 82 at 4 n.3.) Defendants' lack of

6   candor displayed in the above comment is cause for concern.

7        Facebook itself did *not* identify to the third-party user the particular CHD post or posts she had

8   "liked" or shared that purportedly violated Facebook's terms. Since Facebook has retroactively removed

9   multiple CHD posts, the information sufficient to identify the specific post or posts in question remains

10  in Defendants' sole possession, custody, or control. (Teich Dec. ¶4.) CHD has sought Defendants'

11  agreement to preserve Facebook's algorithms for identifying third-party users for such warning

12  notifications, and all communications with government actors, including but not limited to public health

13  officials, concerning the development of such algorithms, and related "misinformation" strategies, as

14  Defendants have agreed to do with respect to CHD's SAC allegations. (*Id.* ¶5 & Ex. 2) The Court should

15  not be misled by Facebook's suggestions that CHD's supplement is deficient for not providing that

16  context in detail at this stage, or that without it, the third-party warning label does not support CHD's

17  claims that Facebook is committing ongoing harms to its reputation and standing with its users and

18  capacity to raise funds. (Dkt. 82 at 4 n.3.)

19        Facebook is a difficult "mole" to "whack," but Rule 15(d) discretion thankfully exists for such

20  cases. Upon being informed of the facts, CHD promptly pled this most recent post-filing subterfuge of

21  Defendants to blacklist and warn third-party users who "like" or share CHD posts without CHD's

22  knowledge. Facebook argues that the third-party warning label (Dkt. 76-1 at 40 [Ex. 6]) is irrelevant

23  because it "relates entirely to content on another individual's Facebook page, not CHD's Facebook

24  page." (Dkt. 82 at 4, n.2.) Defendants ignore the plain text of their own warning label which tells the

25  third-party user(s), in pertinent part, "we don't allow false information that can cause physical harm[,]"

26  "Unfollow Children's Health Defense[.] Stop seeing posts from this Page[.]" and "See Facts about

27  COVID-19[.] The World Health Organization corrects common, untrue rumors about COVID-19[.]"

28  The new warning indisputably refers to, and as alleged in the Supplement, falsely disparages CHD and

14        Plaintiff's Reply ISO Motion to Supplement
Second Amended Complaint
*CHD v. Facebook* et al.; Case No. 3:20-cv-05787-SI

materially misleads third-party users to donate to CHD's rival non-profit philanthropy, the WHO. In material respects, this constitutes a continuation of Facebook's conduct in promulgating its prior warning labels as alleged in the SAC. In all of these respects, the Supplement bolsters CHD's pleaded allegations that Defendants have violated the Lanham and RICO Acts.

### D.   The Supplement Supports CHD's Allegations of Cognizable RICO Injury

Facebook argues that its recent third-party warning label does not "alter the fact that the SAC's multi-step theory of causation is too attenuated to support a RICO claim." (Dkt. 82 at 10, citing Dkt. 74.) For example, in its reply brief on the motion to dismiss, Facebook argues that fraudulently inducing users to donate to competing charities does not constitute fraud because Facebook did not *first* receive the money itself and *then* donate it. *See* Dkt. 74 at 13. But there is no such requirement. *See, e.g.*, *United States v. Siegelman*, 640 F.3d 1159, 1165-1166 (11th Cir. 2011) (defendant guilty of fraud after exchanging seat on state board for third party's donation to a foundation); *United States v. Sorich*, 523 F.3d 702, 709-10 (7th Cir. 2008) (defendant would be guilty of fraud if he told third parties "he only wanted the kickbacks to go to charity"); United States v. Menendez, 132 F. Supp. 3d 635, 640 (D.N.J. 2015) (fraud allegations sufficient where defendant said to have induced third party to donate money to independent organization.)

Facebook also claims that CHD must prove not only that Defendants fraudulently directed users to give money to competing charities, but that users actually did so. *See* Dkt. 74 at 13 ("CHD does not allege that any visitor to its Page was in fact deceived into donating to another organization.") This misrepresents well-settled law. The wire fraud statute "punishes the scheme, not its success." *Pasquantino v. United States*, 544 U.S. 349, 371 (2005); *United States v. Louderman*, 576 F.2d 1383, 1387 (9th Cir. 1978) (no proof required that "the intended victim suffered a loss"); *United States v. George*, 477 F.2d 508, 512 (7th Cir. 1973) (no requirement that government "allege or prove that the victim of the scheme was actually defrauded"); *United States v. Avenatti*, 432 F. Supp. 3d 354, 362 (S.D.N.Y. 2020) (same).

### IV.   CONCLUSION

For all of the foregoing reasons, Plaintiff CHD urges the Court to grant its motion to supplement.

15          Plaintiff's Reply ISO Motion to Supplement
Second Amended Complaint
*CHD v. Facebook* et al.; Case No. 3:20-cv-05787-SI

Dated:  March 29, 2021                    Respectfully submitted,

_____
ROBERT F. KENNEDY, JR.
Founder and Chairman, Children's Health Defense

_____
MARY S. HOLLAND
General Counsel, Children's Health Defense

_____
ROGER I. TEICH

Counsel for Plaintiff
Children's Health Defense

16          Plaintiff's Reply ISO Motion to Supplement
Second Amended Complaint
*CHD v. Facebook* et al.; Case No. 3:20-cv-05787-SI