ROGER I. TEICH
California State Bar No. 147076
290 Nevada Street
San Francisco, CA 94110
Telephone: (415) 948-0045
E-Mail Address: rteich@juno.com

ROBERT F. KENNEDY, JR.
MARY HOLLAND
Children's Health Defense
1227 North Peachtree Parkway, Suite 202
Peachtree City, GA 30269
Telephone: (917) 743-3868
E-Mail Address: mary.holland@childrenshealthdefense.org

Attorneys for Plaintiff
CHILDREN'S HEALTH DEFENSE

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| CHILDREN'S HEALTH DEFENSE,<br><br>    Plaintiff,<br><br>    v.<br><br>FACEBOOK, INC., et al.,<br><br>    Defendants. | Case No. 3:20-cv-05787-SI<br><br>**PLAINTIFF'S STATEMENT OF RECENT DECISION**<br><br>Hon. Susan Illston<br>Courtroom 1 – 17th Floor<br>Date: May 5, 2021<br>Time: 10:30 a.m. |

# STATEMENT OF RECENT DECISION

Pursuant to Civil Local Rule 7-3(d)(2), Plaintiff Children's Health Defense ("CHD") respectfully submits this Statement of Recent Decision to bring to this Court's attention the decision of the Supreme Court of the State of New York, County of Westchester (Wood, J.), in *Project Veritas v. The New York Times Company, et al.*, Index No. 63921/2020, at 5-6 (Sup. Ct. Westchester Cnty., NY March 18, 2021), notice of appeal filed April 8, 2021, available at https://iapps.courts.state.ny.us/nyscef/ViewDocument?docIndex=q1mYZza26a2VDhsyYtb_PLUS_mw==. A true and correct copy of that decision is attached hereto as Exhibit A. The decision was filed on March 18, 2021, after briefing was completed on Defendants' Motions to Dismiss the Second Amended Complaint. The decision is therefore appropriate for consideration by the Court. *See* Civil L.R. 7-3(d)(2) ("Before the noticed hearing date, counsel may bring to the Court's attention a relevant judicial opinion published after the date the opposition or reply was filed by filing and serving a Statement of Recent Decision, containing a citation to and providing a copy of the new opinion – without argument."). The *Project Veritas* decision is relevant to Plaintiff Children's Health Defense's argument that Defendants' use of the terms "deceptive," "false," and "without evidence" to describe Plaintiff's posts were assertions of fact, not "mere opinion incapable of being judged true or false." *See Project Veritas v. The New York Times Company, et al.*, Index No. 63921/2020, at 5-6.

Dated:  April 23, 2021                    Respectfully submitted,

ROBERT F. KENNEDY, JR.
Founder and Chairman, Children's Health Defense

MARY S. HOLLAND
General Counsel, Children's Health Defense

ROGER I. TEICH

Counsel for Plaintiff
Children's Health Defense

2

# EXHIBIT A

Case 3:20-cv-05787-SI   Document 88   Filed 04/23/21   Page 4 of 20

FILED: WESTCHESTER COUNTY CLERK 03/18/2021 01:55 PM               INDEX NO. 63921/2020
NYSCEF DOC. NO. 133                                               RECEIVED NYSCEF: 03/18/2021

SUPREME COURT OF THE STATE OF NEW YORK

Plaintiff,

v.

, and JOHN DOES 1-5,

ENTRY

PLEASE TAKE NOTICE that the within is a true copy of a Decision and Order of the Supreme Court of the State of New York, County of Westchester (Wood, J.), in the above-captioned action, dated March 18, 2021, and duly entered and filed on March 18, 2021.

DATED:   Brooklyn, New York
         March 18, 2021

**ABRAMS, FENSTERMAN,
FENSTERMAN, EISMAN,
FORMATO, FERRARA, WOLF
& CARONE, LLP**

 /s/ Justin T. Kelton
Justin T. Kelton
1 MetroTech Center, Suite 1701
Brooklyn, NY 11201
Tel: (718) 215-5300
Fax: (718) 215-5304
Email: jkelton@abramslaw.com
*Attorneys for Plaintiff*

FILED: WESTCHESTER COUNTY CLERK 03/18/2021 01:55 PM                INDEX NO. 63921/2020
NYSCEF DOC. NO. 131                                                  RECEIVED NYSCEF: 03/18/2021

To commence the statutory time period for appeals as of right
(CPLR 5513[a]), you are advised to serve a copy of this order, with
notice of entry, upon all parties.

**SUPREME COURT OF THE STATE OF NEW YORK**
**COUNTY OF WESTCHESTER**
------------------------------------------------------------------------x
**PROJECT VERITAS,**

                                         **Plaintiff,**

   -against-                                                                                   **DECISION & ORDER**
                                                                                                                             Index No. 63921/2020

**THE NEW YORK TIMES COMPANY, MAGGIE ASTOR,**
**TIFFANY HSU, and JOHN DOES 1-5,**                                     Seqs. No. 1 & 6

                                       **Defendants.**
------------------------------------------------------------------------x
**WOOD, J.**

       New York State Courts Electronic Filing ("NYSCEF") document numbers 13-93, 115, 119, were read in connection with the motion by Defendants, The New York Times Company ("NYT"), and NYT reporters Maggie Astor and Tiffany Hsu, to dismiss plaintiff Project Veritas' complaint, pursuant to CPLR 3211(a)(1) (based upon documentary evidence), CPLR 3211(a)(7) (for failure to state a cause of action), and CPLR 3211(g) (awarding mandatory attorneys' fees and costs pursuant to the "Anti-SLAPP Law").

       Plaintiff Project Veritas, a non-profit journalistic organization ("Veritas"), brought this action against Defendants for publishing five purportedly false and defamatory articles in September and October of 2020 ("the Articles"). The Articles reviewed a video report published on September 27, 2020 by Veritas ("the Video"), on the topic of alleged illegal voting practices, featuring a Somali-American Minneapolis campaign worker named Liban Mohamed. The Video also featured an interview with Omar Jamal, a community service officer for the Ramsey County Sherriff's Office, and a political consultant in the Minneapolis Somali-American community.

Case 3:20-cv-05787-SI   Document 88   Filed 04/23/21   Page 6 of 20

FILED: WESTCHESTER COUNTY CLERK 03/18/2021 01:55 PM        INDEX NO. 63921/2020
NYSCEF DOC. NO. 131                                        RECEIVED NYSCEF: 03/18/2021

Jamal stated that there was widespread corruption by Somali-American politicians, who were all part of an extended Somali-American "clan," including cash payments to elderly voters in exchange for their absentee ballots. Veritas claims that it did not selectively edit or doctor any of the interviews presented in the Video.

The Articles include three written by defendant Astor, the first on September 29, 2020, titled "Project Veritas Video Was a 'Coordinated Disinformation Campaign,' Researchers Say," which was published online by NYT (NYSCEF#5). On the same day, an abbreviated version titled "Researchers Say a Project Veritas Video Accusing Ilhan Omar of Voter Fraud Was a 'Coordinated Disinformation Campaign," was published online by NYT (NYSCEF#6). The last was on September 30, 2020, titled "Project Veritas Releases Misleading Video, Part of What Experts Call a Coordinated Effort," was published in print by NYT (NYSCEF#7).

Additionally, defendant Hsu wrote two articles about Veritas. The first, on October 25, 2020, titled "Conservative News Sites Fuel Voter Fraud Misinformation," was published online by NYT (NYSCEF#8). On October 26, 2020, a substantially similar version of the first Article, titled "False Voter Fraud Stories Are Churning on Conservative News Sites,'" was published in print by NYT (NYSCEF#9).

According to the complaint, NYT, Astor and Hsu were driven by resentment and journalistic competitiveness after NYT's "much-hyped story" about President Trump's tax returns was upstaged by Veritas' video report, as well as by "their own political biases against Veritas' perceived right-leanings," so they set out to discredit Veritas' reporting. Veritas asserts five counts of defamation, alleging that Defendants published false and defamatory statements impugning Veritas' journalism with reckless disregard for the falsity of those statements.

In the instant motion, Defendants argue that Veritas failed to adequately plead, and cannot demonstrate with clear and convincing evidence that there is a substantial basis in law and fact that Defendants acted with actual malice; Defendants' reporting on the Video was substantially true and corroborated by other media outlets and fact checkers; Veritas failed to allege a false or defamatory statement of fact; and Veritas's extensive reputation for publishing selectively edited videos makes it "libel-proof".

Now, based upon the foregoing, the motion is decided as follows.

Generally, CPLR 3211(a)(7) provides that "upon a motion to dismiss [for failure to state a cause of action], the sole criterion is whether the subject pleading states a cause of action, and if, from the four corners of the complaint, factual allegations are discerned which, taken together, manifest any cause of action cognizable at law, then the motion will fail. The court must afford the pleading a liberal construction, accept the facts alleged in the pleading as true, accord the plaintiff the benefit of every possible inference, and determine only whether the facts as alleged fit within any cognizable legal theory" (Esposito v Noto, 90 AD3d 825 [2d Dept 2011]; (Sokol v Leader, 74 AD3d 1180 [2d Dept 2010]).

Here, Veritas' complaint adequately pleaded the five causes of action sounding in defamation. Defamation can sound in libel or slander. Libel involves publication, something in writing or pictures, and slander involves statements, something spoken (Klein v McGauley, 29 AD2d 418, 421 [2d Dept 1968]). "The elements of a cause of action for defamation are (a) a false statement that tends to expose a person to public contempt, hatred, ridicule, aversion, or disgrace, (b) published without privilege or authorization to a third party, (c) amounting to fault as judged by, at a minimum, a negligence standard, and (d) either causing special harm or

constituting defamation per se" (Udell v NYP Holdings, Inc., 169 AD3d 954, 955 [2d Dept 2019]). In the context of deciding the issue of defamation on a motion to dismiss, the Second Department has held that:

> Truth is an absolute defense to a defamation action, and the test to determine whether a statement is substantially true "is whether [the statement] as published would have a different effect on the mind of the reader from that which the pleaded truth would have produced" (As only statements alleging facts can be the subject of a defamation action, "[a]n expression of pure opinion is not actionable,...no matter how vituperative or unreasonable it may be". The question is not whether there is an isolated assertion of fact; rather, it is necessary to consider the writing as a whole, including its tone and apparent purpose, as well as the overall context of the publication, to determine whether the reasonable reader would have believed that the challenged statements were conveying facts about the plaintiff Thus, "[i]n determining whether a complaint states a cause of action to recover damages for defamation, the dispositive inquiry is whether a reasonable listener or reader could have concluded that the statements were conveying facts about the plaintiff" (Udell, 169 AD3d at 956 (internal citations omitted).

Defendants claim that a reasonable reader would understand that the primary gist of the Articles was that the Video was deceptive because it failed, as the promotional materials for the Video and the Video itself claimed, to show that Rep. Omar's campaign was linked to the alleged ballot harvesting scheme. The link between Rep. Omar's campaign and the ballot fraud purportedly depicted in the Video is what the Articles identify as relying on "unidentified sources" and "with no verifiable evidence" and which led to the description of the Video as "deceptive"—not all aspects of the Video. The gist of those statements is that the allegations about Rep. Omar's campaign's connection to the ballot fraud are insufficiently supported—which is what numerous "independent reputable news sources and fact checkers" concluded. The defendants also appear to argue that "Tweets" or other marketing by Veritas and third parties to draw viewers to the Video by Veritas somehow made the contents of the Video itself deceptive.

In response, Veritas contends that NYT's own ethical policies—which NYT publishes on its website—prohibit news reporters from injecting their subjective opinions into news stories published by NYT, and thus a reasonable reader would expect a news reporter's statements to be assertions of fact and not opinion. However, Defendants rely on a recent federal case where the court rejected the argument that inclusion of an article "in the 'News' section rather than in the 'Opinion' section of NYT is dispositive of whether the statements contained in the article should be considered fact or opinion (Brimelow v New York Times Co., No. 20 CIV. 222 (KPF), 2020 WL 7405261, at 5 [S.D.N.Y. Dec. 16, 2020]).

Whether a statement constitutes fact or opinion is a question of law for the court to decide, considering the following three factors:

> (i) whether the statement in issue has a precise, readily understood meaning; (ii) whether the statement is capable of being proven true or false; and (iii) whether either the full context of the communication in which the statement appears or the broader social context and surrounding circumstances are such as to signal readers that what is being read is likely to be opinion, not fact. (*see* Mann v Abel, 10 NY3d 271, 276 [2008])

This court's review of the Articles involves considering the full text of the Article in which the purportedly defamatory statements were made.  Actionable assertions of fact are tightly intertwined with what defendants now characterize as opinion. In part, Defendants argue that their statements describing Veritas' Video as "deceptive," "false," and "without evidence" were mere opinion incapable of being judged true or false. However, if a writer interjects an opinion in a news article (and will seek to claim legal protections as opinion) it stands to reason that the writer should have an obligation to alert the reader, including a court that may need to determine whether it is fact or opinion, that it is opinion. The Articles that are the subject of this action called the Video

Case 3:20-cv-05787-SI   Document 88   Filed 04/23/21   Page 10 of 20

FILED: WESTCHESTER COUNTY CLERK 03/18/2021 01:55 PM                INDEX NO. 63921/2020
NYSCEF DOC. NO. 131                                         RECEIVED NYSCEF: 03/18/2021

"deceptive", but the dictionary definitions of "disinformation" and "deceptive" provided by defendants' counsel (NYSCEF doc 14 at footnote 29), certainly apply to Astor's and Hsu's failure to note that they injected their opinions in news articles, as they now claim.   Likewise, Defendants now appear to assert that the *promotion of* the video was where the deception was (Astor affidavit NYSCEF doc 85, at paragraphs 8-9; Hsu affidavit NYSCEF doc 86 at paragraphs 7-8; Memorandum of Law NYSCEF doc 14, at pages 7-8, 11-12, 23, 28).   But there is a difference between viewing a disappointing "fight of the century" and reporting that it was not worth the Pay-per-View fee or did not live up to the hype, and reporting to the public that Pay-per-View knowingly marketed a fight that was fixed.   Plaintiff is entitled to try to establish whether NYT's writers were purposely and/or recklessly inaccurate, or whether they were inaccurate, sloppy, or something less.

For instance, in defendant Astor's article dated September 29, 2020 (NYSCEF#5), she spends the majority of the article merely describing the Video, and speaks to the conclusions of researchers at Stanford University and the University of Washington, and others. There, Astor obviously reports on the findings of these groups, and throughout the article they are properly cited.   However, the source of the following statement is unclear, or if it is fact or opinion that: "Mr. O'Keefe and Project Veritas have a long history of releasing manipulated or selectively edited footage purporting to show illegal conduct by Democrats and liberal groups" (NYSCEF #5).

In the second Astor article, also dated September 29, 2020, there are citations to researchers, but this one statement is unclear whether its source is Astor, or if it is information told to her by the researchers: "Project Veritas had hyped the video on social media for several days before publishing it. In posts amplified by other prominent conservative accounts, Mr. O'Keefe teased what he

said was evidence of voter fraud, and urged people to sign up at "ballotharvesting.com" to receive the supposed evidence when it came out (None of the material in the video actually proved voter fraud)" (NYSCEF#6).

The third Astor article on September 30, 2020, is repetition of the other two articles. (NYSCEF#7).

Next, the subject articles written by Hsu on October 25, 2020 and October 26, 2020, contain questionable language, where fact and opinion converge:

> In a similar cycle, the Fox News host Sean Hannity and conservative publications magnified the reach of a deceptive video released last month by Project Veritas, a group run by the conservative activist James O'Keefe. The video claimed without named sources or verifiable evidence that the campaign for Representative Ilhan Omar, a Minnesota Democrat, was collecting ballots illegally (NYSCEF#8 and #9).

Stating that the video is "deceptive" and stating "without verifiable evidence" in a factual way in a news article certainly presents the statement as fact, not opinion. Further, the Astor and Hsu Articles could be viewed as exposing Veritas to ridicule and harm to its reputation as a media source because the reader may read these news Articles, expecting facts, not opinion, and conclude that Veritas is a partisan zealot group, deceptively editing video, and presenting it as news.

Upon review of the total context and tone of the stories, which clearly disparage Veritas and the Video, the court concludes that a reasonable reader could very well believe that the challenged statements were conveying facts about Veritas. The Articles certainly could be viewed as being purposely designed to appear that Defendants are imparting facts and evidence that Veritas' videos were deceptive and Veritas is merely a right-wing political group.

Alternatively, Defendants argue that even if the term "deceptive" could be given objective meaning as a factual statement, Defendants demonstrated that the Video is deceptive, and the

Case 3:20-cv-05787-SI   Document 88   Filed 04/23/21   Page 12 of 20

FILED: WESTCHESTER COUNTY CLERK 03/18/2021 01:55 PM       INDEX NO. 63921/2020
NYSCEF DOC. NO. 131                                       RECEIVED NYSCEF: 03/18/2021

challenged statement is substantially true, as so many news outlets and fact-checkers "independently determined." The truth is an absolute defense. Attached to Defendants' moving papers are over 52 sources describing Veritas' poor reputation for publishing deceptively edited and misleading videos. According to Defendants, those sources are not just "some criticism from mainstream and/or left-wing media, but rather, they come from a variety of reputable sources, including Fox News, the Cato Institute, The Los Angeles Times, Newsweek, The Washington Post, and The Blaze. Far from being "some criticism," these sources resoundingly describe Project Veritas as "partisan zealots," with "a history of distorting facts or context," "running cons," "misleadingly editing video," and being "known for its deceptively-edited videos" (See, e.g., Kurtzberg Aff. Exs. 18, 28, 33, 47, 49 NYSCEF#15).

While this is a lengthy media list, polling does not decide truth nor speak to evidence, and Defendants have not met their burden to prove that the reporting by Veritas in the Video is deceptive. Defendants' papers do not conclusively establish that the subject causes of action do not exist, and the Court's review of the complaint finds that Veritas adequately pleaded the five causes of action set forth in the complaint. "Whether a plaintiff can ultimately establish its allegations is not part of the calculus in determining a motion to dismiss" (EBC I, Inc. v Goldman, Sachs & Co., 5 NY3d 11, 19 [2005]).

Likewise, CPLR 3211(a)(1), also cited by Defendants, permits the use of "documentary evidence" in support of a motion to dismiss defamation claims "where the documentary evidence utterly refutes plaintiff's factual allegations, conclusively establishing a defense as a matter of law" (Goshen v Mutual Life Ins. Co., 98 NY2d 314, 326 [2002] [internal citation omitted]). Here, the court finds that the documentary evidence submitted by Defendants fails to refute plaintiff's factual

FILED: WESTCHESTER COUNTY CLERK 03/18/2021 01:55 PM INDEX NO. 63921/2020
NYSCEF DOC. NO. 131 RECEIVED NYSCEF: 03/18/2021

allegations. Notably, Veritas documented in its complaint metadata and screen shots that demonstrate the unlikelihood that Ms. Astor read and digested the EIP report/blog post, reviewed news reports on Minnesota ballot issues, viewed the Video online, obtained comment from Alex Stamos, wrote her own Article, submitted it to her editors, and had it posted online, all within 63 minutes (Complaint, at paragraphs 83-92, Astor Aff.).

Next, Defendants argue that Veritas is "libel proof". This is a question of law for the Court to decide (Stern v Cosby, 645 F.Supp.2d 258, 270 [S.D.N.Y. 2009]). The libel-proof plaintiff doctrine bars relief in a defamation action, as a matter of law, to a plaintiff whose "reputation with respect to a specific subject may be so badly tarnished that he cannot be further injured by allegedly false statements on that subject" (Guccione v Hustler Mag., Inc., 800 F2d 298, 303 [2d Cir 1986] cert. denied, 479 U.S. 1091 [1987]). Defendants failed to demonstrate that Veritas is a "classic libel-proof plaintiff", whose reputation is so bad that it simply cannot be defamed. That other media sources have criticized Veritas, or that Veritas may have suffered blows to its reputation, without more, fails to meet the standard.

Accordingly, Defendants' motion pursuant to 3211(a)(1) and (7), is denied.

Notwithstanding the foregoing, the analysis does not stop there. Defendants ask the court to apply the recently amended anti-SLAPP law, comprised of various provisions of Civil Rights Law §§ 70-a and 76-a, and CPLR 3211(g). The Strategic Lawsuit Against Public Participation ("SLAPP"), laws were enacted originally to broaden the protections of citizens facing litigation *arising from their public petition and participation* (Yeshiva Chofetz Chaim Radin, Inc. v Vill. of New Hempstead by its Bd. of Trustees of Vill. of New Hempstead, 98 F. Supp. 2d 347, 359 [S.D.N.Y. 2000]). In fact, this version of the law existed on November 2, 2020 (the

commencement date of this action) (Civ.Rights § 76-a). The purpose of the enactment of the Anti-SLAPP law was to stop meritless, nuisance litigation, by well-funded developers against average citizens who participated in public discourse against the developers or their projects (*see* 600 West 115th St. Corp. v Von Gutfeld, 80 NY2d 130, 137 [1993]).

Eight days after the commencement of this action, on November 10, 2020, the Anti-SLAPP law was amended, and under CRL §76-a (eff. 1992), the definition of an "action involving public petition and participation" was expanded to include:

> (1) any communication [as pertinent here, any writing] in a place open to the public or a public forum in connection with an issue of public interest; or
> (2) any other lawful conduct in furtherance of the exercise of the constitutional right of free speech in connection with an issue of public interest, or in furtherance of the exercise of the constitutional right of petition. (CRL § 76-a).

The next provision of the Anti-SLAPP Law falls under CPLR 3211(g), which provides that:

> A motion to dismiss based on [§3211(a)(7)], in which the moving party has demonstrated that the action, involves public petition and participation as defined in Civil Rights Law, 76-a shall be granted, "unless the party responding to the motion demonstrates that the cause of action has a substantial basis in law or is supported by a substantial argument for an extension, modification or reversal of existing law. The court shall grant preference in the hearing of such motion" (CPLR 3211(g)).

Civil Rights Law §70-a goes a step further, by creating an affirmative cause of action to recover damages from plaintiff, including attorneys' fees, and other damages from plaintiff in specified circumstances, if it can be shown that the applicant brought the action "without a substantial basis in fact and law" (CRL §70-a).

These recent amendments by the Legislature have turned the original purpose of the Anti-SLAPP law upside down. Here, one of the largest newspapers in the world since Abraham Lincoln was engaged in the private practice of law, is claiming protections from an upstart

competitor armed with a cell phone and a web site. Not only does the amended Anti-SLAPP law grant protection to a Goliath against a David, but 16 years after the SLAPP law was enacted, a newspaper had never qualified for SLAPP protection for its written articles (*see* Cholowsky v Civiletti, 116 Misc3d 1138 [Sup. Ct, Suffolk Cty 2007]; aff'd 69 AD3d 110 [2d Dept 2009]). Despite this dizzying turnabout created by the Legislature, the court agrees that this action meets the amended Anti-SLAPP standard, as it arises from NYT's reporting on an issue of public interest: allegations of systemic voter fraud and potential disinformation about such voter fraud.

Accordingly, since under CPLR 3211(g) defendants have moved to dismiss the action under CPLR 3211(a)(7), and demonstrated that this action entitles them to additional protections, CPLR 3211(g) shifts the standard burden for a motion to dismiss from Defendants to Veritas to "demonstrate that the cause of action has a substantial basis in fact and law." In opposition, Veritas argues that Civil Rights Law §76-a should not be given retroactive effect here, in that the text of the November 10, 2020 Act amending CRL §§ 70-a and 76-a, along with CPLR 3211(g), nowhere states that the amendments shall apply retroactively, but states only that the act "shall take effect immediately."

Retroactive operation is not favored by courts and "statutes will not be given such construction unless the language expressly or by necessary implication requires it" (Majewski v Broadalbin-Perth Cent. Sch. Dist., 91 NY2d 577, 584 [1998]). However, "remedial legislation should be given retroactive effect in order to effectuate its beneficial purpose" (In re Gleason (Michael Vee, Ltd.), 96 NY2d 117, 122 [2001]). Other factors pertinent here to consider whether the Amendment conveyed a sense of urgency; and whether the enactment itself reaffirms

Case 3:20-cv-05787-SI   Document 88   Filed 04/23/21   Page 16 of 20

FILED: WESTCHESTER COUNTY CLERK 03/18/2021 01:55 PM            INDEX NO. 63921/2020
NYSCEF DOC. NO. 131                                     RECEIVED NYSCEF: 03/18/2021

a legislative judgment about what the law in question should be (Nelson v HSBC Bank USA, 87 AD3d 995, 998 [2d Dept 2011]).

To date, three federal courts have ruled that the amended Anti-SLAPP Law should be given retroactive effect. In one case where NYT was a defendant, the Southern District ruled that "it is clear that §76-a is a remedial statute that should be given retroactive effect. The Legislature conveyed a sense of urgency by directing that the amendment was to take effect immediately" (Palin v New York Times Co., No. 17-CV-4853 (JSR), 2020 WL 7711593 [S.D.N.Y. Dec. 29, 2020]). Likewise, the Eastern District found the anti-SLAPP amendments are remedial, retroactive legislation:

> The memorandum accompanying the bill's introduction states that "as drafted, and as narrowly interpreted by the courts, the application of Section 76-a has failed to accomplish [its] objective." S52A Sponsor Mem. (July 22, 2020), https://www.nysenate.gov/legislation/bills/2019/s52. The memorandum expresses the specific intent that the proposed amendments will "better advance the purposes that the Legislature originally identified in enacting New York's anti-SLAPP law": to protect the free exercise of speech, particularly in public fora on matters of public interest. Id. The bill became effective "immediately." Id. Under New York law, these clear legislative expressions of remedial purpose and urgency give the amendments retroactive effect. See Palin, 2020 WL 7711593, at 5 (quoting Gleason, 96 N.Y.2d at 123 (These factors together persuade [the Court] that the remedial purpose of the amendment should be effectuated through retroactive application) (Steven Douglas Coleman, Plaintiff, v Maria Kim Grand, Defendant., No. 18CV5663ENVRLM, 2021 WL 768167, at 8 (E.D.N.Y. Feb. 26, 2021).

While the federal decisions are not binding on this court, here Veritas has not sufficiently raised any harsh impact that would preclude the applicability of the Anti-SLAPP statute, and thus, the court will apply the Anti-SLAPP statute retroactively.

Eventually, to prevail at trial, Veritas will have a high burden, to show actual malice by clear and convincing evidence. "The burden of proving 'actual malice' requires the plaintiff to demonstrate with clear and convincing evidence that the defendant realized that his statement was

Case 3:20-cv-05787-SI  Document 88  Filed 04/23/21  Page 17 of 20

FILED: WESTCHESTER COUNTY CLERK 03/18/2021 01:55 PM                INDEX NO. 63921/2020
NYSCEF DOC. NO. 131                                                RECEIVED NYSCEF: 03/18/2021

false or that he subjectively entertained serious doubt as to the truth of his statement "(<u>Prozeralik v Capital Cities Communications, Inc.</u>, 82 NY2d 466, 474 [1993]). Actual malice is a high bar and mere allegations about improper political or personal biases do not establish actual malice without additional facts to suggest the speaker acted pursuant to that bias (<u>McDougal v Fox News Network, LLC</u>, No. 1:19-CV-11161 (MKV), 2020 WL 5731954 [S.D.N.Y. Sept. 24, 2020]).

Veritas argues that not only does the complaint allege that Defendants had knowledge of the falsity of their defamatory statements at the time of publication, but it pleads detailed facts showing the presence of literally every "hallmark" of actual malice recognized by the law—including setting out with a preconceived narrative, being motivated by ill will and bias, failing to contact obvious sources of information, relying on biased and non-credible sources, violating journalistic standards, and refusing to retract. Veritas alleges that it has far exceeded that standard by pleading overwhelming circumstantial evidence of actual malice, including that:

- Astor and Hsu knew their claims about the video report were false because they had themselves reviewed the video report (Compl. ¶¶ 97-98, Veritas alleges that Defendants knew that Omar Jamal—the man they now acknowledge was the "primary named source" for the video report (Mem. at 25)—has long been considered a credible, on-the-record source by The Times itself. (Compl. ¶¶ 113-122)
- Defendants were motivated by bias and ill will because they believed that the video report was upstaging their story about President Trump's tax returns and because Defendants all disagree politically with what they perceive to be Veritas' rightward leanings (Id. ¶¶ 72-76, 156).
- Hsu's later October 2020 stories were motivated by vindictiveness and a desire to harm Veritas for demanding a correction of Astor's stories (Id. ¶¶ 148-154).
- The Times and its reporters set out with a preconceived storyline that the video report was manipulated and deceptive, and that they ignored any evidence that contradicted that prejudged narrative (Id. ¶¶ 75-76, 90, 202, 292).
- Both Astor and Hsu failed to conduct a reasonable investigation and intentionally failed to reach out to obvious sources they knew would contradict the claims they planned to publish—including Veritas and the named sources in the video report (Id. ¶¶ 123-125, 157).
- By intentionally declining to seek comment from Veritas prepublication, both Astor and Hsu blatantly violated NYT's own published policies and ethical guidelines requiring reporters to seek comment from story subjects (Id. ¶¶ 125, 157).
- While Defendants attempt to argue that Astor did not act with actual malice because she relied on a blog post by a group called the "Election Integrity Partnership," Veritas has alleged—and demonstrated through website metadata—that both the blog post and Astor's story were a joint and coordinated effort

13

between EIP and The Times to smear Veritas (Id. ¶¶ 77-92).
 • Veritas further alleges that Astor knew the EIP blog post authors were heavily biased, as one of the principal authors had previously been the subject of a Veritas story exposing wrongdoing on his part while employed by Facebook (Id. ¶ 91).

Defendants claim that Veritas fails to consider the six stories that preceded the Astor Articles and attacked the Video as deceptive and as providing insufficient support for its claims "connecting" Rep. Omar's campaign to the alleged pervasive ballot fraud scheme. It also fails to account for the fact that only two of the eight articles published after the Astor Articles make any reference to the them. Defendants argue that 14 sources concurred that the Video was deceptive and made unsupported claims purporting to link Congresswoman Omar's campaign to an illegal ballot fraud scheme, and numerous sources recounted Veritas' widespread reputation for deceptive editing, giving Defendants every reason to believe that the Video was deceptive. The court can take judicial notice of those sources — not for the truth of the matter asserted in their statements, but to determine that NYT did not act with "reckless disregard of the truth."

Defendants also point out that after the Video was released, they submitted reports of allegedly independent fact-checkers, news organizations, and reputable academics (from Defendants' point of view) as being, among other things, "misleading," "unfounded," part of a "disinformation campaign," and "false"; and that within days of the Video being released, Omar Jamal, a key source for the Video, went on Somali American TV and reportedly "backtracked" on the cash-for-ballots allegations. Another man featured in the Video, Liban Osman, told investigators at Fox News that he was offered a $10,000 bribe by Omar Jamal — to be paid by Project Veritas — to say (falsely) that he was collecting ballots for Rep. Omar.

Turning to the submissions of the parties, the court first must disagree with Defendants that the clear and convincing standard applies to this motion.  CPLR 3211(g) does not impose a "clear

14

and convincing" standard. The party opposing the motion must demonstrate that the cause of action "has a substantial basis in law" (CPLR 3211[g]); International Shoppes, Inc. v At the Airport, LLC, 131 AD3d 926, 929 (2d Dept 2015). Notably, CPLR 3211(h) contains the same "has substantial basis in law" language as CPLR 3211(g). In deciding a recent CPLR 3211(h) motion, the Second Department held that this standard was below the standard for summary judgment, and that "the plaintiff must adduce allegations and evidence that demonstrate the existence of triable issues of fact" (Golby v N&P Engrs. & Land Surveyor, PLLC. 185 AD3d 792,794 [2d Dept 2020]). The court finds that the documentary proof and the facts alleged by Veritas are sufficient to meet its burden. The facts submitted by Veritas could indicate more than standard, garden variety media bias and support a plausible inference of actual malice. There is a substantial basis in law to proceed to permit the plaintiff to conduct discovery and to then attempt to meet its higher standard of proving liability through clear and convincing evidence of actual malice. Malice focuses on the defendant's state of mind in relation to the truth or falsity of the published information. Here there is a substantial basis in law and fact that Defendants acted with actual malice, that is, with knowledge that the statements in the Articles were false or made with reckless disregard of whether they were false or not. Veritas alleged actual malice by providing facts sufficient to demonstrate Defendants' alleged disregard for the truthfulness of its statements. Accordingly, at this very early stage of the litigation, Veritas' submissions were sufficient to withstand defendants' motions, and further proceedings are necessary to resolve the issues raised.

In light of the court's rulings herein, plaintiff Veritas' motion (Seq. 6) for limited discovery in relation to the present motion (seq. 1) is deemed academic and moot.

Accordingly, based upon the stated reasons, it is hereby

FILED: WESTCHESTER COUNTY CLERK 03/18/2021 01:55 PM                INDEX NO. 63921/2020
NYSCEF DOC. NO. 133                                                 RECEIVED NYSCEF: 03/18/2021

ORDERED, that the motion by Defendants for an order pursuant to CPLR 3211(a)(1), (7), and CPLR 3211(g) dismissing the complaint and an award of attorney's fees on the defendant's counterclaim, is **denied**; their application for relief under New York's Anti–SLAPP statute is also **denied**; and it is further

ORDERED, that any future submissions by counsel shall adhere to the Uniform Court Rule 202.8-b; and it is further

ORDERED, that the parties shall appear at the Compliance Part, at a date, time, place, and manner as so designated by that Part.

This constitutes the Decision and Order of the Court.

Dated:  March 18, 2021
        White Plains, New York

                                            Charles D. Wood
                                            I am the author of this
                                            document
                                            2021.03.18 11:28:
                                            41-04'00'
                                            10.1.0
                                            _____
                                            **HON. CHARLES D. WOOD**
                                            **Justice of the Supreme Court**

To:     All Parties by NYSCEF