**JULIE A. ESPOSITO, SBN 177722**
**500 North Brand Boulevard, Suite 2200**
**Glendale, California 91203**
**TELEPHONE (818)546-8686**
**FACSIMILE  (818)546-8787**
**jesposito@colmanlawgroup.com**

Attorneys for *Amicus Curiae*
**THE RUTHERFORD INSTITUTE**

1
2
3
4
5
6
7

## UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| CHILDREN'S HEALTH DEFENSE, <br><br> Plaintiff, <br><br> vs. <br><br> FACEBOOK, INC., ET. AL. <br><br> Defendants. | Case No.: 3:20-cv-05787-SI <br><br> MOTION FOR LEAVE TO FILE BRIEF *AMICUS CURIAE*  and [PROPOSED] BRIEF OF THE RUTHERFORD INSTITUTE IN SUPPORT OF PLAINTIFF <br><br> Courtroom:1 <br> JUDGE: Hon. Susan Illston <br><br> [Re Defendants' Motion to Dismiss calendared for 5/5/2021] |

        The Rutherford Institute hereby requests permission to file the attached

*amicus curiae* brief in support of Plaintiff's Opposition to Defendant's Facebook and

Mark Zuckerberg's Motion to Dismiss the Second Amended Complaint (Doc. 71).

The Rutherford Institute is an international nonprofit organization headquartered in

Charlottesville, Virginia. Founded in 1982 by its President, John W. Whitehead, the

Institute specializes in providing legal representation without charge to individuals,

MOTION FOR LEAVE TO FILE BRIEF *AMICUS CURIAE*  and [PROPOSED] BRIEF OF THE
RUTHERFORD INSTITUTE IN SUPPORT OF PLAINTIFF

regardless of political affiliation, whose civil liberties are threatened or infringed and in educating the public about constitutional and human rights issues. The Rutherford Institute is interested in the resolution of this case because it touches upon core questions of individual liberty, which both the federal elements of our constitutional structure and the first eight Amendments in the Bill of Rights were created to protect and preserve.

The Rutherford Institute has reviewed the Second Amended Complaint, Motion for Dismiss, Opposition to Motion to Dismiss and Reply to Defendant's Opposition to Motion to Dismiss, and believes it can aid the Court in resolving the key issue pled in Defendant CHD's Second Amended Complaint: Whether the Plaintiff has stated claims that the actions of the government and the actions of the Defendants were interchangeably linked and thereby deprived Plaintiff CDH of its First Amendment rights to freedom of speech by  censoring, demonetizing and ultimately de-platforming CDH for its published postings on Facebook concerning medical evidence of the dangers of vaccinations, specifically in children.  The published content was deleted and barred by Defendants for no other reason than that they are contrary to the current view espoused by United States government agencies, members of Congress and Congressional committees, which, in order to obtain the complete acquiescence of Defendants, directed and coerced Defendants to delete all such content.

MOTION FOR LEAVE TO FILE BRIEF *AMICUS CURIAE*  and [PROPOSED] BRIEF OF THE
RUTHERFORD INSTITUTE IN SUPPORT OF PLAINTIFF

The Rutherford Institute believes that the clear entanglement and joint enterprise that has arisen between certain United States government agencies and actors and the named Defendants is sufficiently pleaded in Plaintiff's Second Amended Complaint, and further buttressed in its Opposition to Defendants' Motion to Dismiss; and that to continue to allow Defendants to do the state's bidding without repercussions or liability, is to allow private actors, acting as proxy for the government, to do that which the government acting alone is not permitted to do—engage in viewpoint discrimination by censoring and suppressing "unpopular" or "controversial" speech in violation of the First Amendment to the United State Constitution in the digital marketplace.

The proposed *amicus curiae* brief seeks to elaborate on this concern, serving as a supplement to the parties' briefing, with the aim of aiding the Court in rendering its decision on Defendants' motion to dismiss. Accordingly, The Rutherford Institute respectfully requests the Court's leave to file the attached *amicus curiae brief.* The Rutherford Institute has obtained consent to file the attached brief from Plaintiff CHD, although not from Defendants.

Dated: April 27, 2021                    THE RUTHERFORD INSTITUTE

                                         BY:/s/ *Julie A. Esposito*
                                         JULIE A. ESPOSITO
                                         Attorneys for *Amicus Curiae*
                                         and Affiliate of The Rutherford Institute

MOTION FOR LEAVE TO FILE BRIEF *AMICUS CURIAE*  and [PROPOSED] BRIEF OF THE
RUTHERFORD INSTITUTE IN SUPPORT OF PLAINTIFF

1 | **JULIE A. ESPOSITO, SBN 177722**
2 | **500 North Brand Boulevard, Suite 2200**
  | **Glendale, California 91203**
3 | **TELEPHONE (818)546-8686**
  | **FACSIMILE   (818)546-8787**
4 | jesposito@colmanlawgroup.com
5 |
6 | Attorneys for *Amicus Curiae*
  | **THE RUTHERFORD INSTITUTE**
7 |
8 |
9 |              **UNITED STATES DISTRICT COURT**
10 |             **NORTHERN DISTRICT OF CALIFORNIA**
11 |                  SAN FRANCISCO DIVISION
12 |
13 | CHILDREN'S HEALTH DEFENSE,          Case No.: 3:20-cv-05787-SI
   | A Georgia non-profit organization
14 |                                      *AMICUS CURIAE*  BRIEF OF THE
   |                  Plaintiff,          RUTHERFORD INSTITUTE IN
15 | vs.                                  SUPPORT  OF PLAINTIFF'S
   |                                      OPPOSITION TO DEFENDANTS'
16 | FACEBOOK, INC., a Delaware           MOTION TO DISMISS
   | Corporation, ET. AL.
17 |                  Defendants.
18 |
19 |
20 |
21 |
22 |
23 |
24 |
25 |
26 |
27 |
28 |

MOTION FOR LEAVE TO FILE BRIEF *AMICUS CURIAE*  and [PROPOSED] BRIEF OF THE
RUTHERFORD INSTITUTE IN SUPPORT OF PLAINTIFF

1

<u>**TABLE OF CONTENTS**</u>

2
**Page(s)**

3
**AMICUS CURIAE BRIEF OF THE RUTHERFORD INSTITUTE IN**
4
**SUPPORT OF PLAINTIFF'S OPPOSITION TO DEFENDANTS'**

**MOTION TO DISMISS**……………………………………………..        9

5

6    <u>**IDENTITY AND INTEREST OF AMICUS CURIAE**</u>……..…………..     9

7    <u>**SUMMARY OF ARGUMENT**</u>……………………………………...     9

8

9    **I.        <u>ARGUMENT</u>**…………………………………………       12

10

11   <u>**THE ACTION SHOULD PROCEED AS SUFFICIENT FACTS**</u>
     <u>**HAVE BEEN PLED IN THE SAC THAT DEFENDANTS**</u>
12   <u>**VIOLATED PLAINTIFF'S FIRST AMENDMENT RIGHTS IN**</u>
     <u>**THEIR ROLE AS GOVERNMENT ACTORS**</u>………………………       12
13

14       **A. <u>Whether State Action Exists is a Fact-Bound Inquiry And</u>**
         <u>**Plaintiff Has Met the Threshold Pleading Requirements**</u>
15       <u>**Precluding a Dismissal of the Complaint under Rule 12 (b) (6)**</u>…      12

16
         **B. <u>Plaintiff's SAC Alleges Sufficient Facts to State a Claim of</u>**
17       <u>**Government Action by Defendants Making This Case**</u>
         <u>**Distinguishable from Prager and Divino**</u> …………………………      15
18

19       **C. <u>Plaintiff Must Be Able to Go Forward With This Lawsuit To</u>**
20       <u>**Avoid Grave Injustice and Lack of a Remedy Where The**</u>
         <u>**Government Directly Acts Through Private Companies To**</u>
21       <u>**Violate Plaintiff's Constitutionally Protected Rights**</u>……………      18

22
23   **II.       CONCLUSION**…………………………………………..       23
24

25

26

27

28

MOTION FOR LEAVE TO FILE BRIEF *AMICUS CURIAE*  and [PROPOSED] BRIEF OF THE
RUTHERFORD INSTITUTE IN SUPPORT OF PLAINTIFF

1

2

3

## <u>TABLE OF AUTHORITIES</u>

**CASES**                                                                                                              **Page**

4

5
*Ashcroft v. Iqbal*, (2009)
556 U.S. 662; 678 783 F.3d 753……..………..…………………………...   14,
18

6

7
*Biden v. Knight First Amendment Institute*, No. 20-197
(U.S. Sup. Ct Apr. 4, 2021)…………………………………………………..   10

8

9

10
*Bivens v. Six Unknown Named Agents of Fed. Bureau of Narcotics*(1971)
403 U.S. 388 (1971)……………………………………………………….   13,
17,
18

11

12
*Blum v. Yaretsky,* (1982)
457 U.S. 991………………………………………………………………….   17

13

14

15

16
*Brentwood Acad, v. Tenn. Secondary Ach, Athletic Ass'n, (2001)*
531 U.S. 288, 296 298…………………………………………………..   12,
13,
15,
18

17
*Brunette v. Humane Soc'y of Ventura Cty.,(2002)*
 294 F.3d 1205, 1214 (9th Cir. 2002)………………………………………   15,
16

18

19

20
*Divino Group, LLC v. Google, LLC et.al.,(2021)*
2021 WL 5175 (N.D. Cal. Jan. 6, 2021)………………………………...   11,
16,
17

21

22
*Dobyns v. E-SAystems, Inc. (1982)*
 667 F. 2d 1219, 1226-1227 (5th Cir. 1982)…………………………………..   16

23

24
*Johnson v. Knowles*, (1997)
113 F.3d 1114, 1115 (9th Cir. 1997)……………………………………….   12

25

26
*Lugar v. Edmondson Oil Co.*, (1982)
457 U.S. 922, 939 …………………………………………………………….   13,
14

27

28
*Marsh v. Alabama*, (1946)
326 U.S 501……………………………………………………………..   15

*Packingham v. North Carolina*, (2017)

137 S.Ct. 1730……………………………………………………….. 9, 10, 19

*Prager University v. Google LLC*, (2020)

951 F. 3d 991(9th Cir. 2020)……………………………………. 11, 15, 16

*Prager University v. Google LLC fka Google, Inc; You Tube LLC*, (2020)

951 F.3d 991 (9th Cir. 2020) ("*Prager II*".)………………………….. 16, 17

*Rendell-Baker v. Kohn*, (1982)

457 U.S. 830, 842…………………………………………………… 16

*Tsao v. Desert Palace, Inc., (2012)*

698 F. 3d 1128, 1140 (9th Cir. 2012)……………………………… 15

## STATUTES

Federal Rules of Civil Procedure 12 (b) (6)……………...……………….. 12, 14, 16, 22, 23

Communications Decency Act, section 230...................................... 13, 17

U.S Internal Revenue Code, section 501(c)(3)(c)…........................... 15

42 U.S.C. § 1983………………………………………………… 17

## OTHER AUTHORITIES

Article 19 of the Universal Declaration of Human Rights………………….. 22

Hatmaker, Taylor,  "White House asks tech leaders for help with coronavirus response," *TechCrunch.com* (March 11, 2020) https://techcrunch.com/2020/03/11/white-house-cto-kratsios-tech-facebook-google-meeting/.............................................................................................. 19

MOTION FOR LEAVE TO FILE BRIEF *AMICUS CURIAE*  and [PROPOSED] BRIEF OF THE
RUTHERFORD INSTITUTE IN SUPPORT OF PLAINTIFF

Johnstone, Caitlin, "Why You Should Oppose the Censorship of David Icke (Hint: It Has Nothing to Do WithIcke)," *Medium.com* (May 2, 2020), https://medium.com/@caityjohnstone/why-you-should-oppose-the-censorshipofIcke……….............................................................................. 22

Kean,Sean, Sherr, Ian, "White House asks tech companies for help battling coronavirus," *C/NET* (March 12, 2020), https://www.cnet.com/news/white-house-asks-tech-companies-for-help-battling-coronavirus/.............................. 20

Romm, Tony, "White House asks Silicon Valley for help to combat coronavirus, track its spread and stop misinformation," *The Washington Post* (March 11, 2020) https://www.washingtonpost.com/technology/2020/03/11/white-house-tech-meeting-coronavirus............................................................................. 19

Shu, Catherine and Shieber, Jonathan, "Facebook, Reddit, Google, LinkedIn, Microsoft, Twitter and YouTube issue joint statement on misinformation," *TechCrunch.com* (March 16, 2020), https://techcrunch.com/2020/03/16/facebook-reddit-google-linkedin-microsoft-twitter-and-youtube-issue-joint-statement-on-misinformation.............................. 20

VanLandingham, Rachel *Incitement at 100--And 50--And Today: Words We Fear: Burning Tweets & the Politics of Incitement*, 85 Brook. L. Rev. 37 (2019)…………………………………………………………………. 21

MOTION FOR LEAVE TO FILE BRIEF *AMICUS CURIAE* and [PROPOSED] BRIEF OF THE
RUTHERFORD INSTITUTE IN SUPPORT OF PLAINTIFF

## IDENTITY AND INTEREST OF AMICUS CURIAE

The Rutherford Institute is an international nonprofit organization headquartered in Charlottesville, Virginia. Founded in 1982 by its President, John W. Whitehead, the Institute specializes in providing legal representation without charge to individuals whose civil liberties are threatened or infringed and in educating the public about constitutional and human rights issues. The Rutherford Institute is interested in the resolution of this case because it touches upon core questions of individual liberty, and in particular the right to freedom of expression, which is the bedrock for preservation of individual liberty, which both the federal elements of our constitutional structure and the Bill of Rights were created to protect and preserve. The Rutherford Institute writes in support of Plaintiff Children's Health Defense ("CHD"), which seeks to proceed with its Second Amended Complaint against Defendants Facebook, Inc. and Mark Zuckerberg, an individual. The purpose of this Brief is to address CHD's first cause of action for First and Fifth Amendment (*Bivens*) actions against the named Defendants.

## SUMMARY OF ARGUMENT

In *Packingham v. North Carolina*, 137 S.Ct. 1730 (2017), the United States Supreme Court unequivocally recognized the importance of an individual's right to participate in social media by striking down a state's prohibition on a convicted felon having access to the internet. In an 8-0 ruling, the Court held that the prevalence of

MOTION FOR LEAVE TO FILE BRIEF *AMICUS CURIAE* and [PROPOSED] BRIEF OF THE
RUTHERFORD INSTITUTE IN SUPPORT OF PLAINTIFF

social media in the current time render it near impossible to have "a voice," in any meaningful way without access to such technology. The court held that the state did not have a compelling interest in silencing Mr. Packingham's voice on social media even though he was a convicted felon.

*Packingham*, *supra,* demonstrated the high court's recognition of the prevalence and importance of the internet generally, and social media platforms in particular; and that depriving an individual of access to these platforms effectively quells their right to express themselves. The court found that the state of North Carolina did not have a compelling state interest to infringe on Packingham's fundamental first amendment rights. [1]

Of course, *Packingham* showed a clear case of state action—a state law. However, a less obvious, but no less genuine form of state action[2] is pleaded in CHD's Second Amended Complaint (also referred to as "SAC").  CHD has pleaded numerous concrete instances where Defendants have censored, censured, de-monetized and de-platformed CHD's postings thereon at the *direct* behest of government actors, who have made it clear that their orders are aimed at the *content* of CHD's postings. CHD has pled the names of the individual state actors, branches

---

[1] Recently, Justice Clarence Thomas remarked publicly that, given the importance of social media and the sway it holds (without any real competition), it will likely be regulated akin to public utility regulation in the future.  *Biden v. Knight First Amendment Institute*, No. 20-197 (U.S. Sup. Ct Apr. 4, 2021) (Thomas, J., concurring).

[2] The term "state action" as used herein includes the concept of "government action" that applies to actions by the government of the United States.

MOTION FOR LEAVE TO FILE BRIEF *AMICUS CURIAE*  and [PROPOSED] BRIEF OF THE RUTHERFORD INSTITUTE IN SUPPORT OF PLAINTIFF

of government and administrations, what they have told Defendants to do, when they have told Defendants to do it, and how Defendants unequivocally acquiesced to the direct orders of the government actors and admitted to doing so.

CHD has far surpassed the hurdle of state action in its pleadings that were not overcome in *Prager University v. Google LLC*, 951 F. 3d 991(9th Cir. 2020), or *Divino Group, LLC v. Google, LLC et.al*., 2021 WL 5175 (N.D. Cal. Jan. 6, 2021), set forth below. Both *Prager* and *Divino Group* were filed in the within Court. As set forth more fully below, both cases are highly distinguishable from the case at bar, as neither were able to plead a nexus between any government action and the private company defendant. The courts in both of these cases mentioned that what was lacking was a direct connection to government action that caused the harm. Yet, in both of these cases, the parties were given leave to amend.

The case at bar has pled a significant and unequivocal number of state actions performed by Defendants that directly led to the censorship of Plaintiff CHD on social media based upon content the government found objectionable.

Without being able to proceed in this lawsuit, Plaintiff CDF and others similarly situated would be left without any remedy for violation of their constitutional rights inflicted by government officials using big tech as their deputized proxy.

MOTION FOR LEAVE TO FILE BRIEF *AMICUS CURIAE*  and [PROPOSED] BRIEF OF THE RUTHERFORD INSTITUTE IN SUPPORT OF PLAINTIFF

1
2
3
4

Indeed, if the Court does not find the pleading of government action sufficient here, it is difficult to imagine what level of detail would be sufficient to overcome the granting of a Rule (12) (b) (6) motion based upon a failure to plead state action.

5

**I.**

6

7

**ARGUMENT**

8

9

**THE ACTION SHOULD PROCEED AS SUFFICIENT FACTS HAVE BEEN PLED IN THE SAC THAT DEFENDANTS VIOLATED PLAINTIFF'S FIRST AMENDMENT RIGHTS IN THEIR ROLE AS GOVERNMENT ACTORS**

10

11

12

13

**A.      Whether State Action Exists is a Fact-Bound Inquiry And Plaintiff Has Met the Threshold Pleading Requirements Precluding a Dismissal of the Complaint under Rule 12 (b) (6)**

14

15

16

17

18

19

20

21

22

23

24

25

26

27

The Court set forth a three-part test which amounts to a totality of the circumstances test for the existence of state action in *Brentwood Acad, v. Tenn. Secondary Ach, Athletic Ass'n*, 531 U.S. 288, 296 298 (2001). That test considers the following factors: (1) whether the private party's conduct results from the state's exercise of coercive power; (2) whether the state provides significant overt or covert encouragement in an activity; and (3) whether the private party operates as a willful participant in the government activity.  *Brentwood Acad.*, 531 U.S. at 296. *See also Johnson v. Knowles*, 113 F.3d 1114, 1115 (9th Cir. 1997) (willful participation by private party in joint activity with government actors is all that is required to find state action)

28

MOTION FOR LEAVE TO FILE BRIEF *AMICUS CURIAE*  and [PROPOSED] BRIEF OF THE
RUTHERFORD INSTITUTE IN SUPPORT OF PLAINTIFF

Plaintiff's SAC has alleged facts evidencing that Defendants herein were *de facto* state actors under all three of these tests. For example, the SAC cites a letter Congressman Adam Schiff sent to Defendants, threatening their immunity from suit under CDA section 230 if Defendants failed to censor content on their sites which Schiff and other congress members found objectionable. (SAC paras. 60-69.) Plaintiff has further alleged that Defendants were pressured by the United States Congress to suppress "vaccine information," which was defined as content that "casts doubt on the efficacy of vaccines;" and that Defendants acted in partnership with government actors including the CDC, a federal agency, and the CDC's proxy, the WHO, while Defendants promoted the CDC as the ultimate authority in the subject. (See, *e.g.,* SAC paras. 1, 40-51; 56-64; 70, 98-104; 308,312, 364-368).

Plaintiff has also pleaded that Defendant Zuckerberg individually repeatedly stated he was working directly with the government on these issues (SAC pars 49-45; 69-70; 308.)

These are but a few examples cited in the SAC that show that the Court must rule that Plaintiffs have met (if not surpassed) the pleading threshold for pleading that Defendants herein were deputized federal state actors who violated Plaintiff's First amendment rights under *Bivens.*

Indeed, the Supreme Court's *Brentwood Acad.* decision makes plain that whether a nominally private entity acts constitute state/government action is a "necessarily fact-bound inquiry," *id.,* 531 U.S. at 298 (quoting *Lugar v. Edmondson*

MOTION FOR LEAVE TO FILE BRIEF *AMICUS CURIAE*  and [PROPOSED] BRIEF OF THE
RUTHERFORD INSTITUTE IN SUPPORT OF PLAINTIFF

*Oil Co.*, 457 U.S. 922, 939 (1982)), the kind that is not suitable or appropriate for resolution on a motion to dismiss under Fed. R. Civ. P. 12(b)(6).  "What is fairly attributable [to the government] is a matter of normative judgment, and criteria lack rigid simplicity. . . .  Our cases have identified a host of facts that can bear on the fairness of such an attribution."  Because there are a range of circumstances that can point to the government being behind a nominally private decision, courts should be loath to grant a motion to dismiss for failure to allege state action, particularly when the facts are construed in a light most favorable to the plaintiff and the claim need only be "plausible" on its face.  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).  As discussed herein, the SAC sets forth compelling facts and circumstances showing that Defendants were operating as *de facto* government agents.

Moreover, dismissal of the SAC before any factual development of the circumstances surrounding the censorship and de-platforming of CHD would be an abdication of the responsibility to ensure that fundamental rights of free speech are not violated by *sub rosa* governmental action.  As the Supreme Court has declared:

> The judicial obligation is not only to preserve an area of individual freedom by limiting the reach of federal law and avoid the imposition of responsibility on a State for conduct it could not control, but also to assure that constitutional standards are invoked when it can be said that the State is responsible for the specific conduct of which the plaintiff complains.  If the Fourteenth Amendment is not to be displaced, therefore, its ambit cannot be a simple line between States and people operating outside formally governmental organizations, and the deed of an ostensibly private organization or individual is to be treated sometimes as if a State had caused it to be performed.

*Brentwood Acad.*, 531 U.S. at 295 (internal quotations omitted).

**B.  Plaintiff's SAC Alleges Sufficient Facts to State a Claim of Government Action by Defendants Making This Case Distinguishable from Prager and Divino**

In *Prager University v. Google, LLC*, *supra,* Plaintiff Prager University sued Google for censoring its content on the latter's platform, arguing that Defendants should be considered state actors under the "public function" test (citing *Tsao v. Desert Palace, Inc.,* 698 F. 3d 1128, 1140 (9th Cir. 2012).

Like Plaintiff herein, Prager University is an educational 501(c)(3)(c) corporation which filed a Complaint against defendants You Tube LLC ("You Tube") and Google LLC ("Google") alleging *inter alia*, a cause of action for violations of the First Amendment to the United States Constitution stemming from Defendants' censoring, restricting and filtering of the content of videos based upon Plaintiff's conservative viewpoint and political ideology.  Plaintiff's argument was that, in holding itself out as fora encouraging speech activity and asserting viewpoint neutrality, the Defendants were state actors under the "public function test."

The Court outlined the limited occasions where the courts have allowed the conversion of private action into public function, state action. The cases have been limited to activities performed by the private actor that were traditionally the exclusive prerogative of the State. *Marsh v. Alabama*, 326 U.S 501 (1946); *Brunette*

*v. Humane Soc'y of Ventura Cty.,* 294 F.3d 1205, 1214 (9th Cir. 2002) (quoting

*Rendell-Baker v. Kohn*, 457 U.S. 830, 842 (1982)).  Examples of functions that have

qualified have been to private entities, holding public elections, governing a town and

serving as an international peace-keeping force.  *Brunette, supra* at 1214*; and Dobyns*

*v. E-SAystems, Inc.* 667 F. 2d 1219, 1226-1227 (5th Cir. 1982).

The *Prager* Court found that Defendants YouTube and Google did not perform

functions that were traditionally the exclusive prerogative of the state, and therefore,

there was no state action under the First Amendment under the "public functions"

test. As Prager did not plead any other theory of state action under the First

Amendment, the Defendant's Rule 12(b) (6) motion was granted, and Prager was

given leave to amend its Complaint to allege state action.

Prager appealed the district court's decision, which was affirmed by the Ninth

Circuit. *Prager University v. Google LLC fka Google, Inc; You Tube LLC*, 951 F.3d

991 (9th Cir. 2020) ("*Prager II*".)

Following on the heels of *Prager* was this Court's ruling on a Rule 12(b)(6)

motion in *Divino Group LLC v. Google LLC,* 2021 WL 51715 (N.D. Cal. Jan. 6,

2021) *("Divino"),* wherein Divino Group also filed a complaint alleging censorship

and restriction of its content based upon its LGBTQ political identities and

viewpoints. Plaintiff again claimed its First Amendment rights were violated under

the "public function" test, arguing that since defendants designated themselves a

public forum for free expression, defendants had thereby taken on the traditional and

MOTION FOR LEAVE TO FILE BRIEF *AMICUS CURIAE*  and [PROPOSED] BRIEF OF THE
RUTHERFORD INSTITUTE IN SUPPORT OF PLAINTIFF

exclusive governmental function of regulating speech. The Court noted that this theory of public function was already rejected in *Prager II* wherein the Ninth Circuit held that the hosting of speech in a private platform is not a "traditional and exclusive government function," required for it to fall within the purview of the "public function test." *Prager III*, 951 F. 3d. at 997-998.

Divino Group's second argument was that Defendant's statutory protection against immunity under section 230 of the Communications Decency Act ("CDA") amounts to government endorsement of Defendant's alleged discrimination against Plaintiff's speech based upon content. The Court rejected this argument. First, Plaintiff had brought its claim under 42 U.S.C. § 1983, which applies exclusively to actions taken under color of state law, rather than federal law. A claim for a federal violation of constitutional rights must be brought under *Bivens v. Six Unknown Named Agents of Fed. Bureau of Narcotics* 403 U.S. 388 (1971). Plaintiffs in *Divino* did not plead a *Bivens* claim.

The court also remarked that a private entity could be considered a state actor when the government compels the private entity to take a particular action. *Divino*, 2021 WL 51715, *6 (citing *Blum v. Yaretsky,* 457 U.S. 991 (1982)).  However, the court found plaintiff did not plead any such compulsion, although plaintiffs were given leave to amend.

In the instant case, Plaintiff CHD is not relying upon the doctrine of public function as the legal basis for its First Amendment claims against Defendants herein.

The gravamen, and indeed the literal pleading of the SAC is that the federal government, through a plethora of government officials and actors, including but not limited to, Congressman Adam Schiff, directed, instructed, encouraged and compelled Facebook to censor the content of CDF, expressly because the government did not want any viewpoints contrary to its own on the efficacy of vaccinations in general and Covid-19 vaccinations in particular.

Plaintiff has in fact made and pled a *Bivens* claim in this action, and otherwise met the pleading requirements for its First Cause of Action herein.

**C.** **Plaintiff Must Be Able to Go Forward With This Lawsuit To Avoid Grave Injustice and Lack of a Remedy Where The Government Directly Acts Through Private Companies To Violate Plaintiff's Constitutionally Protected Rights**

The SAC makes numerous allegations supporting CHD's contention that federal actors and agencies encouraged, coerced and jointly participated in the censorship of CHD's expression on Facebook.  It is axiomatic that these allegations must be accepted as true for purposes of the motion to dismiss.  *Ashcroft v. Iqbal*, 556 U.S. at 678.  As the Supreme Court held in *Brentwood Acad.*, 531 U.S. at 29, the courts must remain available to those whose fundamental liberties are infringed by the government acting in a clandestine matter through private entities.   Indeed, it is particularly crucial that CHD's allegations of government direction of the suppression of expression by the Defendants be fully and fairly heard in light of growing evidence

MOTION FOR LEAVE TO FILE BRIEF *AMICUS CURIAE*  and [PROPOSED] BRIEF OF THE RUTHERFORD INSTITUTE IN SUPPORT OF PLAINTIFF

that the federal government is coopting the social media found so important in

*Packingham* to squelch disfavored speech.

For example, in March 2020, the United States government held a meeting

with Facebook, Google (YouTube's owner) and other tech giants for the purpose of

enlisting their assistance in suppressing information related to the COVID-19.

Numerous media outlets reported that on or about March 11, 2020, the White House

held a meeting with tech companies, including Facebook and Google, in which the

White House chief technology officer asked for the companies' help in spreading

accurate information and preventing the spread of misinformation about the

coronavirus outbreak.[3]  As reported by *The Washington Post*, White House chief

technology officer Michael Kratsios met with representatives of the tech companies

to enlist their help in augmenting the government's efforts in the fight against the

coronavirus, hoping that Silicon Valley might foster the government's efforts to track

the outbreak and disseminate accurate information:

> "Cutting edge technology companies and major online platforms will
> play a critical role in this all-hands-on-deck effort," Michael Kratsios,
> the White House's chief technology officer, said in a statement.
> "Today's meeting outlined an initial path forward and we intend to
> continue this important conversation."[4]

---

[3] See, e.g., Taylor Hatmaker, "White House asks tech leaders for help with coronavirus response," *TechCrunch.com* (March 11, 2020), https://techcrunch.com/2020/03/11/white-house-cto-kratsios-tech-facebook-google-meeting/.

[4] Tony Romm, "White House asks Silicon Valley for help to combat coronavirus, track its spread and stop misinformation," *The Washington Post* (March 11, 2020), https://www.washingtonpost.com/technology/2020/03/11/white-house-tech-meeting-coronavirus/.

MOTION FOR LEAVE TO FILE BRIEF *AMICUS CURIAE*  and [PROPOSED] BRIEF OF THE
RUTHERFORD INSTITUTE IN SUPPORT OF PLAINTIFF

A focus of the meeting was in getting such corporate entities as Facebook and Twitter to stop the spread of any so-called coronavirus conspiracy theories on their platforms.[5]

Acting on this government mandate, on March 16, Facebook, Google and other tech companies issued a joint statement pledging to "jointly combat[] fraud and misinformation about the virus, elevating authoritative content on our platforms, and sharing critical updates in coordination with government healthcare agencies around the world."[6]

Following this March 2020 meeting, aggressive censorship, including de-platforming emerged as the policy of Defendants herein, working in conjunction with government entities to block the online publication of ideas that do not comport with government messaging regarding the COVID-19 pandemic and other health-related issues. Such government directed actions have stymied CHD and other public interest groups in their ability to speak on issues of public concern to the audience that follows CHD and these issues.  Censorship of the kind CHD has been subjected to is increasing at a rate that poses a serious threat to the freedoms of all people, regardless

---

[5] Sean Kean, Ian Sherr, "White House asks tech companies for help battling coronavirus," *C/NET* (March 12, 2020), https://www.cnet.com/news/white-house-asks-tech-companies-for-help-battling-coronavirus/.

[6] Catherine Shu, Jonathan Shieber, "Facebook, Reddit, Google, LinkedIn, Microsoft, Twitter and YouTube issue joint statement on misinformation," *TechCrunch.com* (March 16, 2020), https://techcrunch.com/2020/03/16/facebook-reddit-google-linkedin-microsoft-twitter-and-youtube-issue-joint-statement-on-misinformation/.

MOTION FOR LEAVE TO FILE BRIEF *AMICUS CURIAE*  and [PROPOSED] BRIEF OF THE
RUTHERFORD INSTITUTE IN SUPPORT OF PLAINTIFF

of their views.  Moreover, it is wholly contrary to universal principles of freedom of speech that are the foundation for representative democracy.

What is at stake is no less than freedom of speech itself because of the coordinated actions of large technology corporations with control over access to information colluding with government entities to stifle any forms of dissent that challenge a chosen status quo.

The importance of this issue, which is raised by the subject SAC of the rise of government actors using private tech companies to do their bidding cannot be overstated. In her article, *Incitement at 100--And 50--And Today: Words We Fear: Burning Tweets & the Politics of Incitement*, 85 Brook. L. Rev. 37 (2019), author Rachel VanLandingham points out that Congress regularly summon social media executives and representatives, whom they then instruct to crack down on objectionable speech that they, Congress, cannot lawfully censor. As such, Ms. Van Landingham has written:

> This coercive mechanism can be cast as Congress laundering its censorious will through the platforms' Terms of Service which Congress is effectively dictating to these private entities. Hate speech and misinformation are, by and large, forms of speech which the Supreme Court has designated as protected. Therefore, by using their government position to advocate for censorship, members of Congress are converting a private entity's actions into state action, thereby allowing banned users to seek recourse in the courts under the Supreme Court's guidance in *Packingham*.

As another journalist observed:

MOTION FOR LEAVE TO FILE BRIEF *AMICUS CURIAE*  and [PROPOSED] BRIEF OF THE RUTHERFORD INSTITUTE IN SUPPORT OF PLAINTIFF

What matters is that we're seeing a consistent and accelerating pattern of powerful plutocratic institutions collaborating with the US-centralized empire to control what ideas people around the world are permitted to share with each other, and it's a very unsafe trajectory.[7]

As a civil liberties organization whose purpose is to ensure the preservation of a robust First Amendment, especially as it pertains to free speech and a free press, The Rutherford Institute is gravely concerned about the possibility that defendant social media platforms herein censored, censured, labeled, demonetized and deactivated the social media platforms for CHD; all at the bidding of the U.S. government in order to silence views of which the government disapproved.  The censorship of online speech at government behest constitutes government action in violation of the First Amendment's guarantee of free speech and the Universal Declaration of Human Rights.[8]

Because the clearly pled facts in the subject Second Amended Complaint clearly plead facts supporting its allegations that Defendants have acted as *de facto* deputized actors.  *Amicus curaie* herein submits that the totality of the circumstances test that must be applied to determine state action forecloses the possibility that the granting of a Rule 12 (b) (6) would be proper in the case at bar; and is further

---

[7] Caitlin Johnstone, "Why You Should Oppose the Censorship of David Icke (Hint: It Has Nothing to Do WithIcke)," *Medium.com* (May 2, 2020), https://medium.com//@caityjohnstone/why-you-should-oppose-the-censorshipofIcke.

[8] As Article 19 of the Universal Declaration of Human Rights affirms:  "Everyone has the right to freedom of opinion and expression; this right includes freedom to hold opinions without interference and to seek, receive and impart information and ideas through any media and regardless of frontiers."  https://www.un.org/en/universal-declaration-human-rights/.

concerned that the granting of a motion to dismiss under 12 (b) (6) in the face of such

detailed pleading of state involvement and coercion would render it a near

impossibility to plead sufficient facts showing the government acting by proxy

through technology in the future.

## II.

## <u>CONCLUSION</u>

The Rutherford Institute respectfully submits that the pleadings in this matter as

governed by the applicable law require this Court to allow this case to go forward. As

such, the Court is strongly urged to deny Defendants' Motion to Dismiss Plaintiff's

Second Amended Complaint, and allow the case to proceed on the merits and for

these crucial issues to be adjudicated.

Respectfully submitted,


Dated: April 27, 2021                    THE RUTHERFORD INSTITUTE

                                         BY:<u>/s/ *Julie A. Esposito*</u>
                                         JULIE A. ESPOSITO
                                         Attorneys for *Amicus Curiae*
                                         and Affiliate of The Rutherford Institute

MOTION FOR LEAVE TO FILE BRIEF *AMICUS CURIAE* and [PROPOSED] BRIEF OF THE
RUTHERFORD INSTITUTE IN SUPPORT OF PLAINTIFF

## CERTIFICATE OF SERVICE

I, the undersigned, declare that I am over the age of 18 and am not a party to this action. I am employed in the City of West Covina, California; my business address is 1609 West Garvey Ave. North, West Covina, CA 91790.

On the date below, I served a copy of the following document(s):

MOTION FOR LEAVE TO FILE BRIEF *AMICUS CURIAE*  and [PROPOSED] BRIEF OF THE RUTHERFORD INSTITUTE IN SUPPORT OF PLAINTIFF

on all interested parties in said case addressed as follows:
**via electronic filing/service and via US First Class Mail:**

Sonal N. Mehta-via email: sonal.mehta@wilmerhale.com
Allison Schultz-via email: allison.schultz@wilmerhale.com
Ari Holtzblatt- via email: ari.holtzblatt@whilmerhale.com
Molly Maureen Jennings-via email: molly.jennings@wilmerhale.com
Wilmer Cutler Pickering Hale and Dorr LLP
2600 El Camino Real, Suite 400
Palo Alto, CA 94306
Attorneys for Defendants, Facebook, Inc. and Mark Zuckerberg

Kevin Lester Vick-via email: kvick@jassyvick.com
Elizabeth Holland Baldridge-via email: ebaldridge@jassyvick.com
Jassy Vick Carolan LLP
800 Wilshire Blvd, Suite 800
Los Angeles, CA 90017
Attorneys for Defendants, The Poynter Institute for Media Studies, Inc.;
Politifact

Carol Jean LoCicero-via email: clocicero@tlolawfirm.com
March Richard Caramanica-via email: mcaramnica@tlolawfirm.com
Daniela B. Abratt-via email: dabratt@tlolawfirm.com
Thomas LoCicero PL
601 South Blvd.,
Tampa, FL 33606
Attorneys for Defendants, The Poynter Institute for Media Studies, Inc.;
Politifact (dismissed party)

Science Feedback
Emmanuel Vincent-President

MOTION FOR LEAVE TO FILE BRIEF *AMICUS CURIAE*  and [PROPOSED] BRIEF OF THE
RUTHERFORD INSTITUTE IN SUPPORT OF PLAINTIFF

1  7-9 Rue de Tocqueville
   75017 Paris, France

2

3

4      **BY MAIL:** By placing the envelope for collection and mailing following our
   ordinary business practices. I am readily familiar with the firm's practice of collecting

5  and processing correspondence for mailing. On the same day that correspondence is

6  placed for collection and mailing, it is deposited in the ordinary course of business
   with the United States Postal Service in West Covina, California, in sealed envelopes

7  with postage fully thereon.

8      I declare under penalty of perjury under the laws of the United States of

9  America that the foregoing is true and correct. I declare that I am employed in the
   office of a member of the Bar of this Court at whose direction the service was made.

10 This declaration is executed in West Covina, California, on April 27, 2021.

11

12                                          /s/   *Oxana G. Denisenko*

13                                          Oxana Denisenko

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

MOTION FOR LEAVE TO FILE BRIEF *AMICUS CURIAE*  and [PROPOSED] BRIEF OF THE
RUTHERFORD INSTITUTE IN SUPPORT OF PLAINTIFF