SONAL N. MEHTA (SBN 222086)
Sonal.Mehta@wilmerhale.com
WILMER CUTLER PICKERING HALE AND DORR LLP
2600 El Camino Real, Suite 400
Palo Alto, California 94306
Telephone: (650) 858-6000
Facsimile: (650) 858-6100

ARI HOLTZBLATT (*pro hac vice*)
Ari.Holtzblatt@wilmerhale.com
MOLLY M. JENNINGS (*pro hac vice*)
Molly.Jennings@wilmerhale.com
ALLISON SCHULTZ (*pro hac vice*)
Allison.Schultz@wilmerhale.com
WILMER CUTLER PICKERING HALE AND DORR LLP
1875 Pennsylvania Ave, NW
Washington, DC 20006
Telephone: (202) 663-6000
Facsimile: (202) 663-6363

*Attorneys for Defendants*
FACEBOOK, INC. and MARK ZUCKERBERG

ADDITIONAL COUNSEL LISTED ON
FOLLOWING PAGE

ROGER I. TEICH (SBN 147076)
rteich@juno.com
290 Nevada Street
San Francisco, California 94110
Telephone: (415) 948-0045

ROBERT F. KENNEDY, JR. (*pro hac vice*)
MARY HOLLAND (*pro hac vice*)
mary.holland@childrenshealthdefense.org
Children's Health Defense
1227 North Peachtree Parkway, Suite 202
Peachtree City, GA 30269
Telephone: (917) 743-3868

*Attorneys for Plaintiff*
CHILDREN'S HEALTH DEFENSE

# UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

## SAN FRANCISCO DIVISION

| | |
|---|---|
| CHILDREN'S HEALTH DEFENSE,<br><br>Plaintiff,<br><br>v.<br><br>FACEBOOK, INC. et al.,<br><br>Defendants. | Case No. 3:20-cv-05787-SI<br><br>**JOINT CASE MANAGEMENT STATEMENT AND PROPOSED ORDER**<br><br>**Date:** May 5, 2021<br>**Time:** 10:30 a.m.<br>**Place:** Videoconference |

1   KEVIN L. VICK (SBN 220738)
    kvick@jassyvick.com
2   ELIZABETH HOLLAND BALDRIDGE (SBN 313390)
    ebaldridge@jassyvick.com
3   JASSY VICK CAROLAN LLP
    800 Wilshire Blvd.
4   Suite 800
5   Los Angeles, California 90017
    Telephone: (310) 870-7048
6   Facsimile: (310) 870-7010

7   CAROL JEAN LOCICERO (*pro hac vice*)
8   clocicero@tlolawfirm.com
    MARK R. CARAMANICA (*pro hac vice*)
9   mcaramanica@tlolawfirm.com
    THOMAS & LOCICERO PL
10  601 South Boulevard
    Tampa, Florida 33606
11  Telephone: (813) 984-3060
12  Facsimile: (813) 984-3070

13  DANIELA B. ABRATT (*pro hac vice*)
    dabratt@tlolawfirm.com
14  THOMAS & LOCICERO PL
15  915 Middle River Drive, Suite 309
    Fort Lauderdale, Florida 33304
16  Telephone: (954) 703-3418
    Facsimile: (954) 400-5415
17

18  *Attorneys for Defendant*
    THE POYNTER INSTITUTE FOR MEDIA
19  STUDIES, INC.

20

21

22

23

24

25

26

27

28

Telephonic conferences in anticipation of a November 20, 2020 case management conference were held on October 30 and November 2, 2020 between Roger Teich and Mary S. Holland, counsel for Plaintiff Children's Health Defense ("CHD"), Sonal N. Mehta, counsel for Defendants Facebook, Inc. and Mark Zuckerberg, and Carol J. LoCicero, counsel for Defendant The Poynter Institute for Media Studies, Inc. ("Poynter"). Pursuant to the Court's August 27, 2020 Initial Case Management Guideline and Clerk's Notice, the *Standing Order for All Judges of the Northern District of California* and Civil Local Rule 16-9, and Federal Rule of Civil Procedure 26(f), the Parties further met and conferred on March 10, 2021, and now file this Joint Case Management Statement and Proposed Order in anticipation of the Case Management Conference pursuant to Fed. R. Civ. P. 16(b) and Civil L. R. 16-10, scheduled for May 5, 2021, at 10:30 a.m., and conducted via Zoom.

## 1.      Jurisdiction and Service.

This Court has personal jurisdiction over all defendants because they allegedly conducted business with and allegedly injured Plaintiff CHD in this District. Facebook itself is headquartered within the District, which is also where the individual Defendant and at least some of the Doe defendants reside.

The Court has subject matter jurisdiction pursuant to 28 U.S.C. § 1331 (federal question), § 1332(a) (complete diversity of the Parties, and the amount in controversy exceeds $75,000), § 2201 (declaratory relief), and § 2202 (further relief). The action asserts continuing violations of the First and Fifth Amendments, 18 U.S.C. §§ 1964(a), (c) of the Racketeer Influenced and Corrupt Organizations Act ("RICO"), and 15 U.S.C. § 1125(a) (Lanham Act), and there is an actual case or controversy.

Venue is proper under 18 U.S.C. §1965(a) and 28 U.S.C. § 1391(b) because Defendants allegedly transacted a substantial portion of their affairs and allegedly caused damages in this district. Moreover, Facebook's Terms of Service ("Terms") to which Plaintiff agreed, require that disputes be resolved in this forum and that the laws of the State of California apply. Terms at ¶ 4(4).

CHD states that, despite multiple prior attempts, it has not yet served Defendant Science Feedback, a French corporation, located in Paris, France. A new summons for a newly-ascertained address of Defendant Science Feedback was issued by the Court on October 20, 2020 (Dkt. #53). On December 15, 2021, CHD filed a Second Amended Complaint ("SAC") with consent. (Dkt. ##65-1, 67.)

1  On March 1, 2021, CHD transmitted its Request for Service of Judicial Documents, which includes

2  French translations of the SAC and its exhibits, and all other service documents, to the French authority

3  designated under the Hague Service Convention in order to effectuate service on Science Feedback by

4  that method.

5    2.    **Facts.**

6      A.    **Plaintiff's Description of the Case.**

7  As public health advocates, CHD and its founder Robert F. Kennedy, Jr. ("RFK, Jr.") have built

8  reputations as candid purveyors of essential information concerning the risks of environmental toxins,

9  vaccines, 5G and wireless networks, and the conflicts of interest involved in government oversight of

10 those products and services. CHD, through a rigorous internal review process, carefully reviews and

11 verifies material before it publishes such material on its website, its newsletter, and social media

12 platforms, including Facebook.

13 Facebook has promoted itself as a social media website for people "to talk openly about the

14 issues that matter to them, even if some may disagree or find them objectionable." *Community*

15 *Standards*, FACEBOOK, https://www.facebook.com/communitystandards/ (last visited Nov. 12, 2020).

16 CHD disputes that this is how Facebook actually operates. Facebook has 214 million users in the United

17 States and 2.2 billion worldwide. Users incur the cost of having their information mined and shared.

18 *Bass v. Facebook, Inc.*, 394 F. Supp. 3d 1024, 1037 (N.D. Cal. 2019).

19 In or about November 2017, CHD agreed to Facebook's Terms to create CHD's Facebook page

20 in an effort to broaden CHD's internet visibility and reach, make its online library more widely-

21 accessible, and increase its fundraising platform. CHD was successful in recruiting followers, driving

22 traffic to its website, and fundraising through Facebook, amassing over 100,000 followers. CHD has not

23 posted any content on its Facebook page that breached Facebook's terms or community standards or was

24 otherwise "unlawful, misleading, discriminatory or fraudulent." Terms at ¶ 3(2)(1).

25 Beginning in or about February 2019, Facebook, in concert with Democratic Congressman

26 Adam Schiff (D-CA), "privatized" the First Amendment to impermissibly censor speech. Schiff

27 threatened Facebook with loss of "service provider" immunity from liability under the Communications

28 Decency Act ("CDA") 47 U.S.C. § 230(c)(1) unless Facebook implemented algorithms to "distinguish"

1    and suppress "vaccine misinformation" and advertising. Facebook then collaborated closely and at

2    length with the Centers for Disease Control and Prevention ("CDC") and, under the CDC's aegis, with

3    the World Health Organization ("WHO") to suppress vaccine safety speech with a "warning label" and

4    other notices that censor valid and truthful speech, including speech critical of the WHO and CDC and

5    their policies. As set forth in the SAC, the United States government seeks through Facebook to engage

6    in censorship that the government is prohibited by the First Amendment from engaging in directly.

7    Facebook also receives substantial advertising revenue from pharmaceutical companies, and Facebook

8    and Zuckerberg have substantial investments and revenue relating to 5G and vaccines.

9          Beginning in March 2019 and increasingly since that time, Defendants – including Facebook,

10   Mark Zuckerberg ("Zuckerberg"), and "fact checkers"  such as Defendants The Poynter Institute for

11   Media Studies ("Poynter") (and its brand, Politifact) and Science Feedback – have engaged in efforts to

12   disparage and defraud CHD, to cause CHD to lose money and goodwill and reputation, and to obtain for

13   Defendants themselves, or for their affiliated non-profit "fact-checker" or public health entities, money

14   and property through three principal methods: (A) making materially false statements; (B) failing to

15   disclose material facts; and (C) creating a materially deceptive scheme. Defendants have created the

16   false appearance to all third-party users that CHD violates Facebook's Terms by publishing "false

17   information" about vaccine and 5G network safety, and Defendants have used that false rationale as a

18   basis to deactivate CHD's direct fundraising and reject its paid advertisements, censor CHD's content

19   and user posts, publish materially false or misleading content on CHD's page, "shadow ban" CHD and

20   "sandbox" third-party users. CHD has not posted any false information, promoted any false content, or

21   violated any fundraising or other terms of service.  Facebook's false and fraudulent actions and

22   statements drive traffic from CHD's page to the CDC's page, while advancing Facebook's significant

23   adverse business interests.

24         Further, on or about May 1, 2019, Facebook permanently disabled the "dispute" function on

25   CHD's account so that CHD could not challenge Facebook's actions through direct submission. Indeed,

26   over the past twenty-two months Facebook has ignored CHD's written requests that both its content and

27   full functionality be restored to CHD's page.

28         Even after CHD filed its complaint and the amended complaints, Defendants continued to "fact

**Joint Case Management Statement**
*CHD v. Facebook et al.*; Case No. 3:20-cv-05787-SI

1  check" and censor CHD's Facebook page while at the same time promoting the CDC, WHO, and similar

2  organizations from CHD's Facebook page. Similarly, Facebook is now taking action against RFK, Jr.,

3  the Chairman of the Board of CHD.

4      On February 10, 2021 Facebook de-platformed RFK, Jr. from Facebook-owned social media site

5  Instagram, on which RFK, Jr. had over 800,000 followers. As purported justification for this action,

6  Facebook apparently communicated to the media that RFK, Jr. has "repeatedly shared debunked claims

7  about the coronavirus or vaccines." *See* Bill Chappell, *Instagram Bars Robert F. Kennedy Jr. For*

8  *Spreading Vaccine Misinformation*, NATIONAL PUBLIC RADIO (February 11, 2021).

9  https://www.npr.org/sections/coronavirus-live-updates/2021/02/11/966902737/instagram-bars-robert-f-

10  kennedy-jr-for-spreading-vaccine-misinformation. CHD's counsel asked Facebook to retract the

11  statement but, to date, Facebook has not done so. Only a few days after the February 10 de-platforming,

12  the Biden Administration began making statements about its efforts to censor what it considers

13  "misinformation" or "disinformation" concerning COVID-19 and SARS-CoV-2 vaccines, including its

14  partnership with the private sector.

15      In February 2021, various news outlets published articles discussing Facebook's continuing role

16  as a government surrogate in censoring Plaintiff, RFK, Jr., and others. *See e.g.*, Jesse O'Neil, *White*

17  *House working with social media giants to silence antivaxxers*, NEW YORK POST (Feb. 19, 2021),

18  https://nypost.com/2021/02/19/white-houseworking-with-social-media-to-silence-anti-vaxxers/; Nandita

19  Bose, Exclusive: White House working with Facebook and Twitter to tackle anti-vaxxers, REUTERS

20  (Feb. 20, 2021), https://www.reuters.com/article/health-coronavirus-white-house-

21  exclusiveidINKBN2AK0HP; Glenn Greenwald, *Congress Escalates Pressure on Tech Giants to Censor*

22  *More, Threatening the First Amendment*, SUBSTACK (Feb. 20, 2021),

23  https://greenwald.substack.com/p/congress-escalates-pressure-on-tech. It should be noted that Plaintiff

24  and RFK, Jr. dispute and reject the use of the inaccurate term "anti-vaxxers" to the extent it is used to

25  describe either Plaintiff or RFK, Jr..[1]

26      In one article, a Facebook spokesperson acknowledged that "the company has reached out to the

27

28  ─────────────────
   [1]      CHD contends that the term "anti-vaxxer" is a slur used to denigrate the good faith of anyone
   who dares to question official orthodoxy on vaccine safety, efficacy, or oversight.

White House to offer 'any assistance we can provide . . .'" Nandita Bose, *Exclusive: White House working with Facebook and Twitter to tackle anti-vaxxers*, REUTERS (Feb. 20, 2021), https://www.reuters.com/article/health-coronavirus-white-house-exclusiveidINKBN2AK0HP.

### B.    Defendants' Description of the Case.

Facebook has developed an independent, third-party fact-checking program to identify false or misleading information on its platform.  Through that  program, Facebook's independent fact-checkers—including Science Feedback and PolitiFact (a service operated by Poynter)—identify and review Facebook posts containing potential misinformation.  After reviewing potential misinformation, fact-checkers can identify it as either false, altered, partly false, missing context, satire, or true.  The fact-checkers also provide explanations for their determinations.

When users share content that Facebook's fact-checkers have determined includes false or partly false information, Facebook displays labels on top of the content showing the fact-checker's determination.  Users can click a "See Link" button to see the shared content, and can also click a button to "See Why" the link was identified by Facebook's fact-checkers as containing "false" or "partly false" information.  Upon clicking the "See Why" button, users see a summary providing the fact-checker's designation (such as "false," or "partly false"), a definition of that designation, the fact checker responsible for the designation, and a brief explanation for the designation.  Users are then able  to click on that summary for more detail regarding the fact-checker's explanation for the designation.

In addition to the fact-check labels, content rated as false or partly false also appears lower in users' News Feed.  Similarly, Facebook may take action against Pages that repeatedly share information that fact-checkers identify as false, including by reducing the distribution of such Pages or removing their ability to advertise or solicit donations on Facebook.  Specifically, Facebook announced in March 2019 that it would reduce the ranking of Pages that spread misinformation about vaccinations in Facebook's News Feed and Search functions, and would remove such Pages' access to fundraising tools. Six months later, Facebook also began providing links to the WHO's website and other authoritative sources of vaccine-related information in response to searches for vaccine-related information and in connection with Pages identified by Facebook's fact-checkers to have repeatedly shared false vaccine-related information.

ActiveUS 187021207v.1

Between January 15, 2019, and September 28, 2020, Facebook's third-party fact-checkers identified a number of CHD vaccine and public-health related posts as containing false or partly false information.  As a result, Facebook labeled those posts in accordance with the fact-checkers' designations, and provided users with the fact-checkers' explanations for those designations.  With respect to the single Poynter fact-check at issue in this suit, CHD points to a fact-check conducted on an article CHD posted on its Facebook page that was authored by a third-party.  Poynter rated the headline to that article's headline as "false" and the third-party subsequently corrected the headline consistent with Poynter's fact-check critique. Facebook also took action against CHD at the account level in light of  its repeated violation of Facebook's policy against sharing misleading vaccine-related information, as identified by Facebook's fact-checkers.  In May 2019, for example, Facebook deactivated the "donate" button on CHD's Page and barred CHD from buying any new Facebook ads.  Then, in September 2019, Facebook published the following text at the top of CHD's Facebook Page: "This Page posts about vaccines. When it comes to health, everyone wants reliable, up-to-date information. The Centers for Disease Control (CDC) has information that can help answer questions you may have about vaccines. Go to CDC.gov."

**3.     Legal Issues.**

The principal legal issues in dispute are:

- Whether Defendants, private entities and individuals, whom CHD alleges acted herein as federal actors, violated CHD's First and Fifth Amendment rights by, among other things, purportedly censoring CHD's content, displaying the fact-checks and/or account-level warnings on CHD's Page, reducing the distribution of or removing some of CHD's content, and removing CHD's donate function, restricting access to fundraising tools and advertising, and engaging in other conduct as alleged in the supplemented SAC.

- Whether Defendants violated the Lanham Act's false advertising provision, 15 U.S.C. § 1125(a), by, among other things, displaying the fact-checks and/or account-level warnings on CHD's Facebook Page and engaging in other conduct as alleged in the supplemented SAC.

ActiveUS 187021207v.1

- Whether Defendants' acts violated the Racketeer Influenced and Corrupt Organizations Act ("RICO") by, among other things, displaying the fact-checks and/or account-level warnings on CHD's Facebook Page and engaging in other conduct as alleged in the supplemented SAC.

- Whether the First Amendment bars CHD's claims.

- Whether Section 230 of the Communications Decency Act bars CHD's claims.

- Whether CHD is entitled to declaratory, injunctive and/or monetary relief.

**4.    Motions.**

1. On September 10, 2020, Plaintiff CHD filed a motion for a case management order and for substituted service pursuant to Federal Rule of Civil Procedure 4(f)(3).  Dkt. No. 28. That motion was denied.  Dkt. No. 48.

2. On October 23, 2020, Defendants filed motions to dismiss the complaint, Dkt. Nos. 54 & 56, which were mooted when Plaintiff filed a First Amended Complaint on November 13, 2020.

3. On December 4, 2020, Plaintiff CHD moved to file its SAC (Dkt. #65). Defendants consented to that motion (Dkt. # 66).

4. Motions to Dismiss

   a. On December 21, 2020, Facebook and Zuckerberg moved to dismiss CHD's SAC against them (Dkt. #69), as did Poynter (Dkt. #68).

   b. On February 5, 2020, CHD filed its oppositions to Facebook's and Zuckerberg's motion to dismiss (Dkt. #71) and Poynter's motion to dismiss (Dkt. #70).

   c. On March 5, 2020, Facebook and Zuckerberg filed their reply (Dkt. #74), as did Poynter (Dkt. #73).

   d. These motions currently are scheduled for oral argument before the Court on May 5, 2021.

5. Motion for Leave to Supplement the SAC

   a. On March 8, 2021, CHD filed a Motion for Leave to Supplement the SAC (Dkt. #76) and a Motion to Shorten Time (Dkt. #75), under Fed. R. Civ. Pro. 15(d),

ActiveUS 187021207v.1

which "permit[s] a party to serve a supplemental pleading setting out any transaction, occurrence, or event that happened after the date of the pleading to be supplemented" with leave of the Court. CHD seeks leave to supplement the SAC, setting forth newly-occurred facts, including recent adverse actions which Facebook has taken against CHD and/or RFK, Jr., and recent White House officials' statements concerning government involvement with social media companies in speech censorship on their platforms. The motion to shorten time was mooted by the Court's scheduling orders.

b.   On March 11, 2021, Facebook opposed the Motion to Shorten Time (Dkt. #77).

c.   On March 22, 2021, Defendants filed their Oppositions to Plaintiff's Motion for Leave to Supplement the SAC. Defendants oppose the motion to supplement as futile, arguing that CHD acted with undue delay. Defendants argue that the proposed supplemental allegations do not entitle CHD to any relief, and in any event could have been alleged well before the parties completed briefing Defendants' motions to dismiss the SAC. Defendants alternatively ask the Court to dismiss the Supplement with prejudice for the reasons set forth in their motions to dismiss. On April 6, 2021, Defendants Facebook and Zuckerberg filed a Notice of Recent Decision (Dkt. #85).

d.   On March 29, 2021, CHD filed its reply on its Motion for Leave to Supplement the SAC (Dkt. #84), arguing that the supplement is not dilatory nor made in bad faith, and would not prejudice Defendants. CHD further argued that the motion is not futile, that CHD has standing to raise arguments with respect to Facebook's de-platforming of RFK, Jr. from Instagram, and that the supplemental allegations further support all of Plaintiff's claims. This motion currently is scheduled for oral argument before the Court on May 5, 2021.

**5.      Amendment of Pleadings.**

At this time, aside from the above-discussed Motion to Supplement the SAC, Plaintiff does not contemplate further amendment of the SAC, but reserves the right to request the Court's leave to do so

**Joint Case Management Statement**
*CHD v. Facebook et al.*; Case No. 3:20-cv-05787-SI

ActiveUS 187021207v.1

should circumstances warrant.

### 6.    Evidence Preservation.

The Parties have reviewed the Guidelines Relating to the Discovery of Electronically Stored Information ("ESI Guidelines"), and confirm that the Parties have met and conferred pursuant to Fed. R. Civ. P. 26(f) regarding reasonable and proportionate steps taken to preserve evidence relevant to the issues reasonably evident in this action.

### A.    Plaintiff's Statement

At the meet and confer held on November 2, 2020, Facebook's counsel confirmed that Facebook's litigation hold includes both internal communications as well as external communications between Facebook and third parties, including federal government officials and agencies, public health officials, and its external service providers, regarding strategies to address what Facebook purports to be "misinformation."

Following a November 18, 2020 email from Plaintiff's counsel, Facebook's and Zuckerberg's counsel, by letter dated December 4, 2020, confirmed Facebook and Zuckerberg's obligations under the Federal Rules of Civil Procedure or the Local Rules of the United States District Court for the Northern District of California (and without conceding that any information preserved would be "relevant to CHD's claims, that its production is proportionate to the needs of the case, or otherwise within the proper scope of discovery in this matter under Federal Rule of Civil Procedure 26") that Facebook would preserve several categories of documents as requested by Plaintiff's counsel. In particular, counsel stated that Facebook would preserve information concerning but not limited to ad purchases by pharmaceutical companies, and communications between Facebook and those entities relating to "vaccine hesitancy", and that its internal managers for Merck, Pfizer, Sanofi, and GlaxoSmithKline were informed of Facebook's litigation hold. Facebook's counsel also confirmed that its client was taking steps to preserve available data concerning vaccine-related ads placed by Merck, Pfizer, Sanofi, and GlaxoSmithKline in the Facebook U.S. market. Facebook's counsel further stated that materials relating to Facebook's internal endeavors to test the effectiveness of its various efforts to address posts identified as containing, in Facebook's estimation, vaccine "misinformation" are encompassed within Facebook's litigation hold. Additionally, counsel confirmed that Facebook is undertaking to preserve available

information concerning traffic to CHD's Facebook Page and click-throughs from that page to the CDC's website and to the articles drafted by fact-checkers.

Finally, Facebook and Zuckerberg's counsel also stated that they would send a letter on Zuckerberg's behalf to the Chan-Zuckerberg Institute and the Chan-Zuckerberg Biohub requesting that these entities take reasonable steps to preserve information, dated January 1, 2017 to the present, concerning or related to (1) any internal development of vaccines, (2) any partnerships with, or funding provided to, third parties for purposes of development of vaccines, and (3) any internal research into vaccine hesitancy, or funding provided to third parties for the purpose of researching vaccine hesitancy.

Plaintiff contends that much of, if not the vast majority of, the evidence relevant to the adjudication of this case rests within the exclusive possession, custody and control of the Defendants. Plaintiff also anticipates that much of the evidence will be in the form of electronically-stored information (ESI), making preservation of such evidence a paramount concern. Should additional disputes arise between Plaintiff and Facebook and Zuckerberg as to the scope of Facebook's and Zuckerberg's preservation obligations, the parties will attempt to settle such disputes among themselves before seeking judicial intervention pursuant to the Civil Local Rules. Plaintiff further contends that Defendants' preservation obligations extend to all communications and other evidence in Defendants' possession, custody, or control concerning or arising from the facts and circumstances at issue in Plaintiff's Motion to File a Supplement to the SAC (Dkt. #76).

On March 24, 2021, Plaintiff's counsel requested by letter that Facebook confirm that it will preserve all information and documents linking particular CHD posts with control mechanisms that blacklist and warn third-party users who "like" or share such posts; algorithms for identifying third-party users for any warning notifications; design documents used to generate such algorithms and measure their effectiveness; internal and external communications with government actors or outside private entities, concerning the development and deployment of such algorithms.  Counsel for Facebook did not respond.  Contrary to Defendants' statement in footnote 2, Plaintiffs disagree as to whether Defendants have taken reasonable steps to preserve documents and ESI, particularly, whether the scope of what Defendants consider relevant is adequate. To that end, while CHD hopes to avoid doing so, CHD specifically reserves the right to seek judicial intervention if necessary to resolve any dispute.

### B. Defendants' Statement

Defendants have taken reasonable steps to preserve documents and ESI that is relevant to the issues raised by CHD in this litigation. To the extent that Plaintiff has purported to summarize the parties' extensive discussions about preservation, the summary is necessarily incomplete because it does not include the full context of the parties' extensive meet and confer on these topics (multiple hours of phone conversations and multiple letters) which is set forth in transcripts of the parties' calls and the correspondence itself. Defendants do not burden the Court with that background here because there is no issue or dispute for the Court to resolve. Suffice it to say, Defendants have not always agreed with Plaintiff's views as to the scope or sources of relevant information in this case or Defendants' preservation obligations (including the scope of information that Plaintiff contends would be relevant), but Defendants have engaged in an extraordinarily extensive dialogue with Plaintiff about preservation issues and have taken reasonable steps to preserve evidence.[2]

### 7. Disclosures.

The Parties do not agree as to the schedule for exchanging their initial disclosures. Their respective views are set forth below.

### 8. Discovery.

Due to the stipulated stay during pendency of Defendants' motions to dismiss, no discovery has been taken to date. The Parties anticipate, upon lifting of that stay, taking depositions and serving document requests, interrogatories, and requests for admission. Plaintiff anticipates substantial fact and expert discovery, including depositions. Defendants believe it is premature to delimit the scope of expert discovery until the scope of the case is more precisely determined following disposition of the motions

---

[2]   CHD's reference to its March 24 correspondence is beside the point. Defendants are already taking reasonable steps to preserve evidence, including all the information Defendants have explained they are preserving over multiple phone calls and in multiple letters. Defendants are also taking reasonable steps to preserve information based on CHD's proposed supplemental pleading. To address that supplemental pleading, Defendants asked CHD to provide additional factual information about the unidentified screenshot attached to the supplemental pleading as Exhibit 6. Rather than respond, CHD sought to reopen already-settled (after multiple hours of meet and confer) questions as to evidence preservation. To the extent CHD has specific information about that exhibit that it can provide, it should provide Defendants with that information. Otherwise, the parties have already had lengthy and extensive discussions on evidence preservation well beyond anything required under the local rules.

**Joint Case Management Statement**
*CHD v. Facebook et al.*; Case No. 3:20-cv-05787-SI

ActiveUS 187021207v.1

to dismiss.

> **A.** **Rule 26(f)(1): What changes should be made in the timing, form, or requirement for disclosures under Rule 26(a), including a statement as to when disclosures under subdivision (a)(1) were made or will be made?**

The Parties will exchange initial disclosures within 21 days of the Court's lifting of the discovery stay, or oral ruling or written order on Defendants' motions to dismiss.

### i.   Plaintiff's Statement

Plaintiff requests that the Court lift the discovery stay at the May 5, 2021 hearing and conference, such that the Parties' initial disclosures will be due by <u>May 26, 2021.</u>

### ii.   Defendants' Statement

Consistent with the stipulation previously agreed to by the parties and entered by this Court, *see* Dkt. 63, Defendants respectfully request that discovery remain stayed unless and until the court denies Defendants' pending motions to dismiss.

> **B.** **Rule 26(f)(2): The subjects on which discovery may be needed, when discovery should be completed, and whether discovery should be conducted in phases or be limited to or focused upon particular issues.**

### i.   Plaintiff's Statement

Discovery will be taken on the issues of fact identified above and in the supplemented SAC as well as affirmative defenses or counterclaims, if any, raised by Defendants. Plaintiff does not believe that discovery should be phased, limited, or focused on particular issues. In the event the discovery stay is lifted on May 5, 2021, CHD will ask that discovery be taken and completed by February 18, 2022.

### ii.   Defendants' Statement

The scope of the case moving forward remains highly uncertain.  It is unclear whether and to what extent any of CHD's claims, which have now been serially amended, can survive Defendants' First Amendment, Section 230, and other challenges as raised in their respective motions to dismiss. CHD has also stated that RFK, Jr. anticipates filing a lawsuit relating to the suspension of his Instagram account, which CHD has stated it will seek to consolidate with this action.  Defendants' position is that, in the event that the Court denies in part or in full Defendants' motions to dismiss, the parties should meet and confer to address appropriate discovery limitations that are tailored to the scope of the claims and issues that remain in the case at that point and respectfully request that the Court set a Further Case

ActiveUS 187021207v.1

Management Conference for 30 days (or another date convenient for the Court) after any order denying in part or in full the pending motions to dismiss.

      **C.**    **Rule 26(f)(3): Any issues relating to disclosure of discovery of electronically stored information, including the form or forms in which it should be produced.**

The Parties should meet and confer and submit a proposed ESI Order to the Court within 14 days of the Court's oral or written ruling on the Defendants' motions to dismiss and Plaintiff's motion to supplement the SAC, and lifting of the discovery stay.

      **D.**    **Rule 26(f)(4): Any issues relating to claims of privilege or of protection as to trial-preparation material, including if the Parties agree on a procedure to assert such claims after production whether to ask the court to include their agreement in the order.**

      **i.**    **Plaintiff's Statement**

The Parties should meet and confer and submit a proposed protective order to the Court within 14 days of the Court's oral or written ruling on the Defendants' motions to dismiss and Plaintiff's motion to supplement the SAC, and lifting of the discovery stay.

      **ii.**    **Defendants' Statement**

If discovery opens, a protective order will be necessary in this case because the Parties anticipate that discovery would include confidential information. Defendants will provide to Plaintiff a proposed protective order within 14 days of any order lifting the discovery stay, and the Parties will work toward submitting a final proposed protective order to the Court for approval. The Parties do not currently anticipate any issues relating to claims of privilege or of protection as to trial-preparation material, but will address any such issues in the event they arise.

      **E.**    **Rule 26(f)(6): Any other orders that should be entered by the court under Rule 26(c) or under Rule 16 (b) and (c).**

The Parties have no such request at this time.

      **F.**    **Rule 26(f)(5): What changes should be made in the limitations on discovery imposed under the Federal Rules of Civil Procedure or the Local Rules, and what other limitations should be imposed?**

      **i.**    **Plaintiff's Statement**

Plaintiff agrees to meet and confer if more than ten (10) depositions are needed by each party.

1  Plaintiff does not believe that Defendants' request for a Further Case Management Conference should be

2  permitted to delay further the initiation of discovery procedures in this case.

3        **ii.**    **Defendants' Statement**

4        Defendants submit that the parties should meet and confer after the Court's decision on the

5  pending motions to dismiss to address appropriate discovery limitations that are tailored to the scope of

6  the claims and issues that remain in the case at that point and respectfully request that the Court set a

7  Further Case Management Conference for 30 days (or another date convenient for the Court) after any

8  order denying in part or in full the pending motions to dismiss. For example, it may be appropriate to

9  establish particular limits on written discovery, discovery into ESI, and Rule 30(b)(6) depositions,

10  depending on the scope of the case.

11        **9.**    **Related Cases.**

12        **A. Plaintiff's Statement**

13        There are currently no pending related cases. In its Rule 15(d) Motion, Plaintiff has raised the

14  chilling effects on its own free speech rights and other harms to CHD resulting from the fact that, on

15  February 10, 2021, Facebook took down the Instagram account of RFK, Jr., CHD's  Founder and

16  Chairman of the Board. Facebook owns Instagram, another social media platform. Plaintiff also raised

17  allegations of recent statements by White House officials that address the government's "direct

18  engagement" with social media companies in censoring speech on their platforms. On February 24,

19  2021, RFK, Jr. sent a letter to Facebook's counsel demanding a retraction of Facebook's statement that

20  he has "repeatedly shared debunked claims about the coronavirus or vaccines." In that letter, RFK, Jr.

21  also offered to submit the matter for a hearing before Facebook's Oversight Board and proposed a

22  tolling agreement so that, if necessary, RFK, Jr. could later pursue his legal remedies in court without

23  prejudice. Counsel for the Parties exchanged correspondence, but did not agree on a means of alternate

24  dispute resolution for that matter.

25        Plaintiff disputes, contrary to Defendants' assertion below, that *The Informed Consent Action*

26  *Network v. YouTube LLC*, 4:20-cv-09456-JST (the "ICAN case") is a "related" case to the instant action.

27  There is, in particular, only one party (Facebook) in common between the two cases, and an additional

28  defendant (YouTube) not present here. Additionally, the ICAN case pleads only one cause of action (a

**Joint Case Management Statement**
*CHD v. Facebook et al.*; Case No. 3:20-cv-05787-SI

ActiveUS 187021207v.1

*Bivens* claim), based on allegations of Legislative inducement/encouragement but not Executive joint action as pleaded here, and does not seek the same forms of relief sought by CHD here. In particular, while both complaints seek (different) injunctive/declaratory relief as well as attorney fees, costs and expenses, the SAC seeks substantial additional relief for CHD, including compensatory, treble, and punitive damages.

**B.  Defendants' Statement**

A case pending before Judge Tigar—*The Informed Consent Action Network v. YouTube LLC*, 4:20-cv-09456-JST—raises related issues regarding social-media platform's liability for content-moderation decisions.

As to Plaintiff's statement that RFK, Jr. anticipates filing suit, Plaintiff has never articulated any claim or basis for any claim relating to Instagram's suspension of RFK, Jr. If such a suit is ultimately filed, Facebook will review the allegations and address whether they are related or not as appropriate under the Local Rules. Moreover, Poynter would never be a proper party in any potential suit related to RFK, Jr. and his Instagram account thus it has no bearing on the resolution of the claims made against Poynter in this suit.

**10.  Relief.**

CHD in its SAC seeks the following relief:

a)   Compensatory damages in an amount to be determined by the Jury, but not less than $5,000,000. Among other things, damages will be based on the following: Plaintiff has lost third-party donations to Plaintiff's organization, speaker fees, and book and other sales that would have accrued to Plaintiff but for Defendants' misconduct. Additionally, as set forth in the SAC, Plaintiff was deprived of freedom of speech; suffered reputational harm; was foreclosed from future opportunities to reach subscribers on Facebook; and lost status and prestige among Facebook followers, the general public and the journalistic community.

b)   An award of treble damages to Plaintiff in an amount to be determined at trial;

c)   An injunction and declaratory judgment ordering Facebook to remove its allegedly materially misleading warning labels and misclassification of all content on Plaintiff's Facebook page, and to desist from any further or future warnings or classifications;

d)   An award of attorneys' fees and costs to Plaintiff in an amount to be determined at trial;

ActiveUS 187021207v.1

1

2    e)    An award of punitive damages to Plaintiff in an amount to be determined at trial; and

3    f)    An order requiring defendants to make a public retraction of their false statements, as well as such other and further relief deemed appropriate by the Court.

4

5    Defendants' position is that CHD is not entitled to any relief because its claims are barred on

6    multiple constitutional and statutory grounds.  As to relief requested by Defendants, Defendants' time to

7    answer the SAC has not yet run.  Defendants will include any counterclaims in their answers, if they are

8    filed.

9    **11.    Settlement and ADR.**

10    The Parties have met and conferred regarding both settlement and ADR. Currently, the Parties

11    are not able to settle this matter, particularly in light of Defendants' pending motions to dismiss.

12    Similarly, the Parties do not believe that ADR would be beneficial and a good use of the Parties'

13    resources at this time given the pending motions to dismiss, and that no discovery has taken place to

14    date. To the Parties' knowledge, this case has not been referred to the ADR Multi-Option Program.

15    **12.    Consent to Magistrate Judge For All Purposes.**

16    Whether **all** Parties will consent to have a magistrate judge conduct all further proceedings

17    including trial and entry of judgment.       ___ Yes       _X_ No

18    **13.    Other References.**

19    The parties do not believe that this case is suitable for reference to binding arbitration, a special

20    master, or the Judicial Panel on Multidistrict Litigation.

21    **14.    Narrowing of Issues.**

22    At this juncture the Parties have been unable to narrow the issues by agreement, though

23    Defendants' position is that the issues may be narrowed substantially (if not eliminated in their entirety)

24    after a ruling on their motions to dismiss. Plaintiff's position is that the motions to dismiss should be

25    denied in their entirety and thus would not result in a narrowing of issues. However, upon lifting of the

26    discovery stay, Plaintiff will serve Requests for Admission to attempt to narrow issues and expedite the

27    presentation of evidence at trial; Defendants' position is that they will proceed with discovery as

28    appropriate once the scope of the case is determined.

ActiveUS 187021207v.1

**15.    Expedited Trial Procedure.**

The Parties agree that this is not a case appropriate for the Expedited Trial Procedure of General Order No. 64 Attachment A. Scheduling.

**16.    Proposed dates for designation of experts, discovery cutoff, hearing of dispositive motions, pretrial conference and trial.**

**A.    Plaintiff's Statement.**

Plaintiff believes that an expedited pretrial schedule is warranted here in light of the compelling First Amendment interests involved, the alleged escalating retaliatory conduct of Defendants described herein and in CHD's Motion to Supplement, and the need for declaratory relief to clarify and enforce Plaintiff's rights. Accordingly, Plaintiff proposes the following:

| | |
|---|---|
| Exchange of Initial Disclosures | May 26, 2021 |
| Designation of Experts | October 22, 2021 |
| Discovery to be completed by | February 18, 2022 |
| Dispositive Motions to be filed by | April 22, 2022 |
| Final Pre-Trial Conference | June 20, 2022 |
| Trial | July 25, 2022 |

Plaintiff disputes and denies the accuracy of Defendants' argumentative statements and allegations in Section 17(B), below.

**B.    Defendants' Statement.**

In light of the pending motions to dismiss and uncertainty as to the scope of this case following the motions to dismiss phase (including Plaintiff's statement that RFK, Jr. intends to file a new suit and seek to consolidate it with this one), Defendants respectfully submit that it is premature to establish dates for the designation of experts, discovery cutoffs, a pretrial conference, and trial. In the event that the pending motions to dismiss are denied in whole or in part, the parties will meet and confer on a proposed schedule in light of the scope of claims and issues that remain in the case at that point, and respectfully request that the Court set a Further Case Management Conference for 30 days (or another date convenient for the Court) after the order resolving the pending motions to dismiss.

In any case, and even to the extent that the Court is inclined to set a schedule at this juncture,

**Joint Case Management Statement**
*CHD v. Facebook et al.*; Case No. 3:20-cv-05787-SI

ActiveUS 187021207v.1

Plaintiff's schedule is untenable. After serially amending its pleading and repeatedly negotiating extended schedules for briefing on Defendants' motions to dismiss (insisting for example, that CHD have from December 21 to February 5 to file its oppositions), Plaintiff's suggestion that there is now some urgency to getting this case rings hollow. There is no emergency here, and certainly no reason to impose the burden of compressed and expedited proceedings on Defendants.

This is especially true because CHD's evolving and unfocused allegations and assertions as to the scope of relevant information raise serious concerns that CHD may seek sweeping discovery into factual allegations far afield of the core legal issues in this case. There is perhaps no better evidence of the how unfocused CHD's allegations are than its own initial estimate that the trial in this matter will take four weeks, which CHD has now revised to three *weeks*. And because CHD appears to believe that the "vast majority" of relevant information will come from Defendants, CHD's proposal to complete fact discovery in only five months would put a disproportionate burden on Defendants that is not justified in these circumstances. Likewise, CHD appears to contemplate "substantial" expert discovery but proposes that all of that discovery take place in just four months, while fact discovery is still ongoing.

Defendants respectfully submit that the Court's ruling on the motions to dismiss will provide critical guidance to the scope of the claims, if any, that will go forward and that the parties and the Court will be much better positioned to set a reasonable schedule with that information in hand.

**17. Trial.**

CHD has requested a trial by jury. CHD anticipates that the trial will last <u>3 weeks</u>.  Defendants anticipate that a trial will last 7-8 days.

**18. Disclosure of Non-party Interested Entities or Persons.**

All corporate Parties have filed disclosures required by Civil Local Rule 3-15. In addition, each party must restate in the case management statement the contents of its certification by identifying any persons, firms, partnerships, corporations (including parent corporations) or other entities known by the party to have either: (i) a financial interest in the subject matter in controversy or in a party to the proceeding; or (ii) any other kind of interest that could be substantially affected by the outcome of the proceeding. In any proposed class, collective, or representative action, the required disclosure includes

any person or entity that is funding the prosecution of any claim or counterclaim. CHD has no supplemental disclosure to make.  Facebook and Poynter are not aware of any persons or entities with a financial or other interest in the subject matter in controversy other than the named parties.

**19.    Professional Conduct.**

All attorneys of record for the Parties have reviewed the Guidelines for Professional Conduct for the Northern District of California.

**20.    Other Matters.**

The Parties are not presently aware of any other matters at this time impacting the resolution of this matter.

Dated: April 29, 2021

By:    /s/ Roger I. Teich
          ROGER I. TEICH

*Attorney for Plaintiff*
Children's Health Defense

Dated: April 29, 2021

WILMER CUTLER PICKERING, HALE AND DORR LLP

By:    /s/
          SONAL N. MEHTA

*Attorney for Defendants*
Facebook, Inc. and Mark Zuckerberg

Dated: April 29, 2021

THOMAS & LOCICERO PL

By:    /s/
          CAROL JEAN LOCICERO

*Attorney for Defendant*
The Poynter Institute for Media Studies, Inc.

**Joint Case Management Statement**
*CHD v. Facebook et al.*; Case No. 3:20-cv-05787-SI

ActiveUS 187021207v.1

1

**CASE MANAGEMENT ORDER**

2

The above JOINT CASE MANAGEMENT STATEMENT & PROPOSED ORDER is approved

3

as the Case Management Order for this case and all Parties shall comply with its provisions. [In

4

addition, the Court makes the further orders stated below:]

5

6

IT IS SO ORDERED.

7

Dated:

8

_____

9

UNITED STATES DISTRICT JUDGE

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**Joint Case Management Statement**
*CHD v. Facebook et al.*; Case No. 3:20-cv-05787-SI

ActiveUS 187021207v.1

**ATTORNEY ATTESTATION**

I, Roger Teich, am the ECF User whose ID and password are being used to file this Stipulation and accompanying proposed order. In compliance with Civil Local Rule 5-l(i)(3), I hereby attest that concurrence in the filing of this document and all attachments has been obtained from each signatory.


Dated: April 29, 2021                          By:

ROGER I. TEICH

Counsel for Plaintiff
Children's Health Defense

ActiveUS 187021207v.1