1

ROGER I. TEICH
California State Bar No. 147076

2

290 Nevada Street
San Francisco, CA 94110

3

Telephone:  (415) 948-0045
E-Mail Address:  rteich@juno.com

4

5

ROBERT F. KENNEDY, JR.
MARY HOLLAND
Children's Health Defense

6

1227 North Peachtree Parkway, Suite 202
Peachtree City, GA 30269

7

Telephone:  (917) 743-3868
E-Mail Address:  mary.holland@childrenshealthdefense.org

8

9

Attorneys for Plaintiff
CHILDREN'S HEALTH DEFENSE

10

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF CALIFORNIA

11

SAN FRANCISCO DIVISION

12

13

CHILDREN'S HEALTH DEFENSE,

14

Plaintiff,

15

v.

16

FACEBOOK, INC., et al.,

17

18

Defendants.

Case No. 3:20-cv-05787-SI

**PLAINTIFF'S MOTION TO FURTHER SUPPLEMENT ITS SECOND AMENDED COMPLAINT AND FOR *IN CAMERA* INSPECTION UNDER THE ALL WRITS ACT; RITA SHREFFLER DECLARATION AND EXHIBITS**

F.R.C.P 15(d); 28 U.S.C. § 1651
Hearing Date: _____ __, 2021

19

20

<u>**NOTICE OF MOTION TO SUPPLEMENT THE SECOND AMENDED COMPLAINT**</u>

21

<u>**AND FOR *IN CAMERA* INSPECTION UNDER THE ALL WRITS ACT**</u>

22

PLEASE TAKE NOTICE THAT Plaintiff Children's Health Defense ("CHD") hereby

23

moves for leave to file a pleading supplementing its Second Amended Complaint ("SAC") pursuant

24

to Fed. R. Civ. P. 15(d). Under the extraordinary circumstances presented in this case, CHD also

25

seeks an Order under the All Writs Act, 28 U.S.C. § 1651, for the Court to inspect *in camera* the

26

unredacted March 15, 2020 email proposal which Defendants Mark Zuckerberg and Facebook

27

tendered to Dr. Anthony Fauci, Director of the U.S. National Institute of Allergy and Infectious

28

1   Diseases and Chief Medical Adviser to the President, so that the Court may avoid a miscarriage of

2   justice, and fully and fairly adjudicate the pending Fed. R. Civ. P. 12(b)(6) motions.

3

4                          **STATEMENT OF REQUESTED RELIEF**

5          In the last two weeks, new factual developments highly material to this case have taken

6   place. These new facts confirm that Defendants Facebook and Zuckerberg: (1) deliberately,

7   knowingly, and secretly embarked on a campaign to block speech and information according to a

8   COVID "vaccine hesitancy" algorithm[1] *regardless of the truth or falsity* of that speech, even as

9   Facebook was proclaiming (falsely) to its users and the public that Facebook only blocked "false"

10  COVID vaccine-related content; (2) undertook through private communication with Fauci to work

11  directly with the federal government in connection with COVID-related information online, although

12  the full content of this joint activity is still secret as a result of redactions on recently released

13  documents.  Accordingly, CHD respectfully requests leave to supplement the pleadings pursuant

14  Fed. R. Civ. P. 15(d) and requests judicial inspection under seal of the critical redaction.

15

16                    **MEMORANDUM OF POINTS AND AUTHORITIES**
                             **IN SUPPORT OF MOTION**

17

18                              **Factual Statement**

19         As this Court is well aware, this lawsuit alleges, *inter alia*, that Defendants have, and are

20  actively: (1) colluding with federal governmental actors to violate CHD's free speech rights; (2) have

21  and are systematically  censoring *true* online content and information while falsely stating that the

22  censored content is false; and (3), as set forth in CHD's first Rule 15(d) supplemental pleading, have

23  entirely banished CHD's founder and chair, Robert F. Kennedy, Jr., from a Facebook platform, for

24  posting *true* COVID and vaccine-related information while asserting falsely to the public that Mr.

25  Kennedy was being censored because he had posted false content.  In the last two weeks, new factual

26

27  [1]      Facebook's stated goal in implementing the algorithm is to "drastically reduce user exposure to
    vaccine hesitancy (VH) in comments," including by blocking or removing content from "dedicated
28  vaccine discouraging entities" classifiers. (Schreffler Dec. Exh. 3.)

                       2            Plaintiff's Motion to Serve a Supplemental
                                    Pleading and Request for *In Camera* Inspection
                                    *CHD v. Facebook* et al.; Case No. 3:20-cv-05787-SI

1    developments that are material to these claims have occurred. Specifically:

2    ☐   On or about May 10, 2021, a high-ranking Facebook officer expressly admitted that, contrary

3         to Facebook's public and official Policy Statement, which asserts that Facebook removes

4         COVID- and vaccine-related content only when such content is "false," Facebook was

5         actually removing content critical of, or questioning the safety of, the COVID vaccines

6         *regardless of whether that content was true or false*.  According to a Facebook vice

7         president, the company is "removing groups, pages and accounts that deliberately discourage

8         people from taking vaccines, *regardless of whether the information can be verified as false*

9         *or not*."  BBC News, *The volunteers using "honeypot" groups to fight anti-vax propaganda*,

10        May 10, 2021, https://www.bbc.com/news/blogs-trending-57051691 (emphasis added); cf.

11        Facebook, COVID-19 & Vaccine Policy Updates & Protections,

12        www.facebook.com/help/230764881494641 (repeatedly stating that Facebook removes

13        "false information" or "false claims" relating to COVID and vaccines).

14   ☐   On or about May 24, 2021, a Facebook whistleblower (subsequently fired) went public with

15        internal Facebook documents showing that, notwithstanding the company's public

16        declarations that it censored only "false" vaccine-related claims, Facebook was (and is) in

17        fact systematically and covertly censoring *true* vaccine-related content, as well as mere

18        expressions of *opinion*, provided such content was (or is) deemed capable of leading to

19        "vaccine hesitancy." *See* Project Veritas, *BREAKING: Facebook Whistleblowers Expose*

20        *LEAKED INTERNAL DOCS Detailing New Effort to Secretly Censor Vaccine Concerns on a*

21        *Global Scale*, May 24, 2021, https://www.projectveritas.com/news/breaking-facebook-

22        whistleblowers-expose-leaked-internal-docs-detailing-new. (Shreffler Dec. Ex. 2.)

23   ☐   On or about May 25, 2021, Facebook reversed its pre-existing ban on content suggesting that

24        COVID was "manmade or manufactured."  Cristiano Lima, *Facebook no longer treating*

25        *'man-made' Covid as a crackpot idea*, POLITICO, May 25, 2021,

26        https://www.politico.com/news/2021/05/26/facebook-ban-covid-man-made-491053. This

27        abrupt reversal followed on the heels of Fauci's similar backtracking from his own earlier

28        dismissals of the hypothesis that COVID originated in a Wuhan laboratory.  *See* Jonathan

3                    Plaintiff's Motion to Serve a Supplemental
                                          Pleading and Request for *In Camera* Inspection
                                          *CHD v. Facebook* et al.; Case No. 3:20-cv-05787-SI

Turley, *Facebook says mentions of COVID-19's possible origins in Wuhan are now allowed. How generous*, FOX NEWS, May 27, 2021, https://www.foxnews.com/opinion/facebook-covid-19-origins-wuhan-jonathan-turley ("Now, however, President Joe Biden's chief medical adviser Dr. Anthony Fauci, and others have acknowledged that there is a basis for suspect[ing] the lab as the origin of the outbreak. So now Facebook will allow you to talk about it.").

☐ On or about June 3-4, 2021, Defendant Zuckerberg and Facebook Vice-President Heidi Swarz essentially admitted in a video that the whistleblower-leaked documents were authentic Facebook documents. https://www.youtube.com/watch?v=2S3246XJBOI.  Neither denied the existence of Facebook's massive "vaccine hesitancy" censorship program, in which content, including completely true information and/or expression of opinion, is blocked or restricted if it criticizes or questions the safety, efficacy, or necessity of the COVID vaccines. *Id.*

☐ On or about June 1-5, 2021, a large number of previously undisclosed emails by or to Dr. Fauci were released to the public as a result of Freedom of Information Act requests.  One such email, dated March 15, 2020, was written to Fauci by Defendant Zuckerberg, proposing a collaboration related to COVID and vaccine-related information. *See* https://www.documentcloud.org/documents/20793561-leopold-nih-foia-anthony-fauci-emails; https://www.buzzfeednews.com/article/nataliebettendorf/fauci-emails-covid-response. (Shreffler Dec. Ex. 3.)  The email discloses to Fauci not-yet-public Facebook plans to launch a COVID information "hub" that would be visible to all of Facebook's billions of users and proposes collaboration on that "hub" to help "get your message out." *Id*. The full extent of the proposed collaboration is, however, unknown because four critical lines have been redacted. *Id.*

☐ Referring to this portion of Zuckerberg's email to Fauci, National Institutes of Health communications director Courtney Billet sent Fauci an email (also just disclosed, but also partially redacted) the next day, March 16, 2020, saying: "But an even bigger deal is his [Zuckerberg's] offer [CONTENT REDACTED].  The sooner we get that offer up the food

4        Plaintiff's Motion to Serve a Supplemental
Pleading and Request for *In Camera* Inspection
*CHD v. Facebook* et al.; Case No. 3:20-cv-05787-SI

1 chain the better.  I gave Bill a heads-up and he is standing by to discuss this with HHS and

2 WH comms, but I didn't want him to do anything without you being aware of the offer.  Is it

3 OK if I hand this aspect off to Bill to determine who the best point of contact would be so the

4 Administration can take advantage of this offer, soonest?  Do you plan to call MZ?  His cell

5 number is in his message below." (Ex. 3.)

6 ☐ Fauci responded by email to Billet the following day, March 17, 2020: "I will write to or call

7 Mark and tell him that I am interested in doing this.  I will then tell him that you will get for

8 him the name of the USG  point of contact." *Id.*

9 ☐ Fauci also responded to Zuckerberg that day, March 17, 2020: "Your idea and proposal

10 sound terrific.  I would be happy to do a video for your hub. . . .  Also, your idea about

11 [REDACTED] is very exciting.  I am . . . copying the Director of my Communications and

12 Government Relations Group.  She can put your people in touch with the best person who

13 could be the US Government point of contact for [REDACTED.]" (*Id.*)

14 ☐ All the redactions referred to in the above emails are notated "(b)(4)" (as the legal basis for

15 the redaction), indicating "trade secrets and commercial or financial information." 5 U.S.C.

16 § 552(b)(4).

17 **ARGUMENT**

18 A. **Second Request to Supplement the SAC**

19 Federal Rule of Civil Procedure 15(d) "permit[s] a party to serve a supplemental pleading setting

20 out any transaction, occurrence, or event that happened after the date of the pleading to be

21 supplemented." While a motion pursuant to Rule 15(d) is "addressed to the sound discretion of the

22 District Court," *United States v. Reiten*, 313 F.2d 673, 675 (9th Cir. 1963), "leave to permit

23 supplemental pleading is 'favored.'" *Verinata Health, Inc. v. Sequenom, Inc.*, No. C 12-00865 SI, 2014

24 U.S. Dist. Lexis 67221 at * 6 (N.D. Cal. May 14, 2014) (quoting *Planned Parenthood of So. Ariz. v.*

25 *Neely*, 130 F.3d 400, 402 (9th Cir. 1997).  In general, Rule 15(d) motions "should be granted '[u]nless

26 undue prejudice to the opposing party will result.'"  *LaSalvia v. United Dairymen of Ariz.*, 804 F.2d

27 1113, 1119 (9th Cir. 1986) (citation omitted).

28

Plaintiff's Motion to Serve a Supplemental
Pleading and Request for *In Camera* Inspection
*CHD v. Facebook* et al.; Case No. 3:20-cv-05787-SI

1    The allegations set forth in a Rule 15(d) supplemental pleading need not arise from the same

2   "transaction" or facts set forth in the original pleading; instead, all that is required is a "relationship"

3   between the subject of the original pleading and the subsequently occurring facts.  *Keith v. Volpe*, 858

4   F.2d 467, 474 (9th Cir. 1988) ("While some relationship must exist between the newly alleged matters

5   and the subject of the original action, they need not all arise out of the same transaction."); *Verinata*

6   *Health, Inc.*, *supra* at * 6.

7    The new facts alleged in CHD's supplemental pleading readily pass this test.  They bear not only

8   "some relationship" to the "subject of the original action," *Keith v. Volpe*, 858 F.2d at 474, but a direct,

9   important, and supporting relationship to the crux of the  claims made in the SAC.

10    *First*, the disclosure of Facebook's secret "vaccine hesitancy" censorship program confirms and

11   further evidences CHD's core allegation that Defendants covertly censor *true* COVID- and vaccine-

12   related information, as well as opinions critical of the COVID vaccines, while publicly claiming

13   (falsely) that their censorship of such content is based solely on factual falsity.  This in turn bolsters the

14   plausibility of CHD's central claim that Defendants have been—not to put too fine a point on it—lying

15   in their repeated assertions that CHD and Mr. Kennedy were censored because they posted false content.

16   The true reason why CHD and Mr. Kennedy have been censored, as further evidenced by the new

17   disclosures, is that their content is critical of, and reveals true information that could raise concerns

18   about, the COVID vaccines.

19    *Second*, Facebook's abrupt decision to stop banning mentions of the COVID lab-leak hypothesis,

20   following Dr. Fauci's similar about-face, confirms, further evidences, and makes more plausible CHD's

21   allegations that: (1) Facebook has been banning true content while claiming such content to be false;

22   (2) Facebook has banned core protected speech (the hypothesis that COVID originated in a Wuhan

23   laboratory was and is as legitimate, as a matter of free speech, as Galileo's hypothesis about the Earth's

24   motion around the sun) under the pretext of restricting misinformation; and (3) that Facebook is acting

25   as a censor for the federal government, willfully participating in joint activity with federal officials to

26   decide what speech will and won't be permitted on its platforms, banning information when federal

27   officials want it banned and permitting information when federal officials change their minds.

28

6                    Plaintiff's Motion to Serve a Supplemental
Pleading and Request for *In Camera* Inspection
*CHD v. Facebook* et al.; Case No. 3:20-cv-05787-SI

*Third*, the email exchange between Zuckerberg and Fauci further evidences and makes more plausible CHD's core allegation that Defendants actively and willfully participate in *ongoing* joint activity with federal officials in the suppression of COVID- and vaccine-related speech.  While the full nature and extent of the collaboration proposed by Zuckerberg to Fauci in the March 15, 2020 email cannot be known at this time—because it has been redacted— it is highly plausible to infer, given the subject matter of the email (Facebook efforts to deal with COVID-related information), the timing of Zuckerberg's "offer," the legal basis noted for redacting it, the importance attributed to it by governmental officials, and the alacrity with which they responded, that: (a) the offer was acted upon; and (b) that it concerned working together on Facebook's efforts to censor COVID-related content.

The email's timing is especially indicative of this conclusion.  In March of 2020, the month when Zuckerberg sent this email, Facebook was then intensely engaged in its early effort to devise methods to "suppress misinformation about the Coronavirus."  Jeff Horwitz, *Facebook Fights Hoaxes and Hysteria in Its Virus-Themed Groups*, WALL ST. J., Mar. 6, 2020, https://www.wsj.com/articles/facebook-fights-hoaxes-and-hysteria-in-its-virus-themed-groups-11583505221. The next month, April 2020, as alleged in the SAC, Facebook would begin what became a concerted, massive, system-wide program of monitoring COVID-related content and suppressing posts deemed (often falsely) to be "misinformation."  Moreover, as further alleged in the SAC, Facebook would later admit that in determining what COVID-related content counted as misinformation, Facebook was "advised" by "public health authorities." It is therefore plausible to believe that Facebook, as part of this effort, was seeking assistance, advice, and collaboration between itself or its fact-checkers with federal health organizations such as the CDC, HHS, or the NIH to identify for or with Facebook specific types of information which those organizations wanted to be suppressed, that Zuckerberg was proposing such a collaboration to Fauci, and that Fauci, through his reply to Zuckerberg, initiated this collaboration. Indeed, as set forth in the SAC, Facebook began "fact-checking" CHD's COVID-related posts almost immediately after Zuckerberg's March 15, 2020 "even bigger deal" proposal, *e.g.*, April 9, 2020 RFK, Jr. post on Gates/vaccine development; April 16, 2020 flu vaccine and Coronavirus; April 16, 2020 Dr. Montagnier origin of COVID; May 26, 2020 RFK, Jr. video on Fauci vaccines. (Dkt. 65-1 [SAC ¶¶ 125-128, 151-155. 168-175, 189-190].)

7                    Plaintiff's Motion to Serve a Supplemental
Pleading and Request for *In Camera* Inspection
*CHD v. Facebook* et al.; Case No. 3:20-cv-05787-SI

1    This conclusion would also explain the legal basis offered for the redaction—that the redacted

2    content was a "trade secret"—because Facebook was then and is even today attempting to keep secret its

3    massive, evolving "vaccine-misinformation" surveillance and censorship program.  The "trade secret"

4    redaction plausibly suggests that Zuckerberg was offering up a proprietary means to sift and siphon out

5    from the global dialogue that side which runs counter to the views of Fauci, the "WH," or "HHS," as

6    reflected in its "vaccine hesitancy classifier" score. As alleged in the SAC, and bolstered by these

7    supplemental allegations, Facebook has partnered from the very start with the federal government in its

8    COVID censorship regime. These allegations are of particular significance to Count 4 of the SAC,

9    which seeks declaratory relief to redress continuing harms and chilling effects on CHD's exercise of

10   First Amendment rights. Facebook makes its censorship decision in concert with the government and

11   with what the government says is true and false. This is ongoing joint activity.

12        Plaintiff CHD is therefore entitled to supplement its pleading with these new factual disclosures

13   and to discovery of the collaboration between Facebook and the federal government to which the

14   Zuckerberg/Fauci email refers. Defendants can claim no surprise or prejudice in the addition of these

15   facts to the pleadings. The new facts involve actions taken by Defendants themselves and are thus within

16   Defendants' own knowledge. Moreover, there can be no "prejudice" to Defendants in the legal sense

17   when their new acts furthering or evidencing the very same illegal courses of conduct originally pleaded

18   are brought before the Court.

19        **B.     Request for _In Camera_ Inspection of Zuckerberg-Fauci March 15, 2020 Email**

20               **Proposal**

21        The All Writs Act, 28 U.S.C. § 1651, empowers the Court to issue all writs necessary or

22   appropriate "to assist [it] in conducting factual inquires." _Harris v. Nelson_, 394 U.S. 286, 300 (1969)

23   (citation omitted); 28 U.S.C. § 1651 ("The Supreme Court and all courts established by Act of Congress

24   may issue all writs necessary or appropriate in aid of their respective jurisdictions and agreeable to the

25   usages and principles of law"). Defendants seek dismissal with prejudice of CHD's _Bivens_ and

26   declaratory relief claims on the grounds that none of their challenged conduct is "fairly attributable" to

27   the federal government, Zuckerberg was not plausibly involved in any such conduct, and no amendment

28   could cure those deficiencies. (Dkt. 69 at 7, 26-8.)  To resolve those potentially case-dispositive issues,

8          Plaintiff's Motion to Serve a Supplemental
Pleading and Request for _In Camera_ Inspection
_CHD v. Facebook_ et al.; Case No. 3:20-cv-05787-SI

1    CHD asks that the Court lift the discovery stay for the limited but essential purpose of requiring

2    Facebook to lodge with the Court *under seal* an *unredacted* copy of the March 15, 2020 Zuckerberg-

3    Fauci email proposal. Having the authority to issue such an Order, the Court's review of the four

4    unredacted lines of text in that single document in conjunction with its Rule 12(b)(6) adjudication is

5    both necessary and warranted. *See also Jimenez v. City of Napa*, 2017 U.S. Dist. LEXIS 93284, at *12

6    (N.D. Cal. 2017) (district court alluded to the "chicken or egg" problem that often occurs in the context

7    of *Monell* claims under 42 U.S.C. § 1983, and noted its practice to allow the plaintiff to make a *prima*

8    *facie*-type showing which would then permit some limited discovery prior to full adjudication of a

9    12(b)(6) motion.)

10          In *Cheney v. U.S. Dist. Court for Dist. of Columbia*, 542 U.S. 367, 380 (2004), the Supreme

11   Court set forth three conditions that must be satisfied before issuance of a writ under § 1651:

12          First, the party seeking issuance of the writ [must] have no other adequate means to attain
            the relief he desires. . . . Second, the petitioner must satisfy the burden of showing that
13          [his] right to issuance of the writ is "clear and indisputable." Third, even if the first two
            prerequisites have been met, the issuing court, in the exercise of its discretion, must be
14          satisfied that the writ is appropriate under the circumstances.

15   *Id.* at 380-81. CHD meets all three conditions for issuance of the writ. First, CHD has no other means to

16   furnish the Court with the unredacted Zuckerberg-Fauci March 15, 2020 email proposal given the pre-

17   discovery posture of the case. Second, the portion of that email which is now a matter of public record

18   contains at least a *prima facie* indication of joint action between Facebook and the federal government.

19   *See e.g.*, *Jiminez*, 2017 U.S. Dist. LEXIS 93284, at *12 (leaving the door open to "narrow, focused

20   discovery" on *Monell* prior to adjudication of a Rule 12(b)(6) motion). Third, the writ is appropriate

21   under the circumstances because it is narrowly-tailored to CHD's demonstrable need; it may avert a

22   potential miscarriage of justice should CHD's case be dismissed with prejudice while Zuckerberg's

23   proposal to Fauci remains secret and operative; and inspection under seal fully respects and accords

24   protection to whatever legitimate trade secret privilege Facebook may still possess in the redacted

25   portion of the document.

26   ///

27   ///

28   ///

9          Plaintiff's Motion to Serve a Supplemental
Pleading and Request for *In Camera* Inspection
*CHD v. Facebook* et al.; Case No. 3:20-cv-05787-SI

**CONCLUSION**

For the reasons stated above, Plaintiff CHD respectfully requests that the Court grant its motion to supplement the pleadings pursuant to Fed. R. Civ. P. Rule 15(d), and for *in camera* inspection of the unredacted March 15, 2020 Zuckerberg-Fauci email proposal.

Dated: June 7, 2021                     Respectfully submitted,



ROBERT F. KENNEDY, JR.
Founder and Chairman, Children's Health Defense

MARY S. HOLLAND
General Counsel, Children's Health Defense

ROGER I. TEICH

Counsel for Plaintiff
Children's Health Defense

10                     Plaintiff's Motion to Serve a Supplemental
Pleading and Request for *In Camera* Inspection
*CHD v. Facebook* et al.; Case No. 3:20-cv-05787-SI