SONAL N. MEHTA (SBN 222086)
Sonal.Mehta@wilmerhale.com
WILMER CUTLER PICKERING
 HALE AND DORR LLP
2600 El Camino Real, Suite 400
Palo Alto, California 94306
Telephone: (650) 858-6000
Facsimile: (650) 858-6100

ARI HOLTZBLATT (*pro hac vice*)
Ari.Holtzblatt@wilmerhale.com
MOLLY M. JENNINGS (*pro hac vice*)
Molly.Jennings@wilmerhale.com
ALLISON SCHULTZ (*pro hac vice*)
Allison.Schultz@wilmerhale.com
WILMER CUTLER PICKERING
 HALE AND DORR LLP
1875 Pennsylvania Ave, NW
Washington, DC 20006
Telephone: (202) 663-6000
Facsimile: (202) 663-6363

*Attorneys for Defendants*
FACEBOOK, INC. and
MARK ZUCKERBERG

**UNITED STATES DISTRICT COURT**

**NORTHERN DISTRICT OF CALIFORNIA**

**SAN FRANCISCO DIVISION**

| | |
|---|---|
| CHILDREN'S HEALTH DEFENSE,<br><br>　　　　　　　Plaintiff,<br><br>　v.<br><br>FACEBOOK, INC., ET AL.,<br><br>　　　　　　　Defendants. | Case No. 3:20-cv-05787-SI<br><br>**DEFENDANTS FACEBOOK INC.'S AND MARK ZUCKERBERG'S OPPOSITION TO PLAINTIFF'S MOTION TO FURTHER SUPPLEMENT ITS SECOND AMENDED COMPLAINT AND FOR *IN CAMERA* INSPECTION**<br><br>Hon. Susan Illston<br>Courtroom 1 – 17th Floor<br>Date: July 16, 2021<br>Time: 10:00 a.m. |

Children's Health Defense ("CHD") now seeks its *fifth* modification to the complaint it originally filed nearly a year ago. Including the allegations in CHD's pending motions to supplement, the operative pleading would span 431 paragraphs over three separate filings. But the allegations in the second proposed supplement—like those in the first proposed supplement and many of those in the Second Amended Complaint ("SAC") itself—have nothing to do with any claimed injury to CHD. The latest proposed allegations concern, instead, efforts by Defendants Facebook, Inc. and Mark Zuckerberg ("Defendants") to remove *groups, Pages, and accounts* that promote vaccine hesitancy and to demote *comments* that do the same—initiatives with no relevance to Facebook *posts* of the kind at issue here and distinct from the fact-checking program that forms the core of this case. CHD's attempts to prolong this litigation—and delay adjudication of the incurable defects in its claims—through successive supplemental pleadings should be put to an end. Its latest supplementation is too little to save its claims, too late. CHD's motion should be denied, and its case dismissed with prejudice.

## FACTUAL STATEMENT

CHD filed the original Complaint in this action on August 17, 2020. ECF No. 1. As set forth in more detail in Facebook's Opposition to CHD's first Motion to Supplement, CHD has since filed two amended complaints and a motion to supplement, serially waiting until after Defendants had addressed the previous iteration of its allegations before seeking to shift the target. *See* ECF No. 82 at 1-2. Now, after Defendants' motion to dismiss has already been argued and taken under submission by this Court, and after CHD filed two unauthorized submissions to further augment the record, CHD once again seeks to lob in new allegations to its ever-changing complaint.

## ARGUMENT

As fully briefed in the context of CHD's last motion to supplement, there are five factors relevant to a motion to supplement pleadings: "(1) undue delay, (2) bad faith or dilatory motive on the part of the movant, (3) repeated failure of previous amendments, (4) undue prejudice to the opposing party, and (5) futility of the amendment." *Lyon v. U.S. Immigration & Customs Enforcement*, 308 F.R.D. 203, 214 (N.D. Cal. 2015) (quoting *Foman v. Davis*, 371 U.S. 178, 182 (1962)); *see also Yates v. Auto City 76*, 299 F.R.D. 611, 614 (N.D. Cal. 2013) (the same standard

applies to motions to supplement under Rule 15(d) as to motions to amend under Rule 15(a)). While there is a general presumption in favor of granting leave to amend, "prejudice or a 'strong showing'" on the other factors outweighs that presumption. *Lyon*, 308 F.R.D. at 214. (quoting *Eminence Capital, LLC v. Aspeon, Inc.*, 316 F.3d 1048, 1052 (9th Cir. 2003)). Because each factor weighs against supplementation, CHD's motion should be denied. Alternatively, even if the Court were to grant CHD's motion to supplement, it should dismiss CHD's SAC, twice supplemented, with prejudice. Any further amendment, just like the instant motion to supplement, would be futile.

## I. SUPPLEMENTATION WOULD BE FUTILE BECAUSE CHD'S *FIFTH* ATTEMPT TO STATE A CLAIM STILL FAILS

CHD's proposed second-supplemental allegations do nothing to bolster its claims, and its motion should be denied as futile. Even if the proposed new allegations had *any* bearing on the claims in the SAC (they do not), the proposed supplemental allegations fail to support any claim for relief as they neither render it any more plausible that Facebook made any false statements relating to CHD nor plausibly allege that any federal actor was involved in any decision with respect to CHD, as is required to allege state action, *see Belgau v. Inslee*, 975 F.3d 940, 946 (9th Cir. 2020) (state action requires that "the challenged conduct that caused the alleged constitutional deprivation [be] 'fairly attributable' to the state[]" (citation omitted)).

*First*, CHD is wrong that the new allegations that Facebook takes action against COVID- and vaccine-related content even if not verifiably false renders it any more plausible that Facebook falsely labeled CHD's posts as containing false information. *See* Mot. 6. The relevant supplemental allegations are wholly unrelated to the claims in this case:

- The May 11, 2021 article relied upon in paragraphs 1 and 2 of CHD's proposed supplemental allegations explains that Facebook "is *now* removing *groups, pages and accounts* that deliberately discourage people from taking vaccines, regardless of whether the information can be verified as false or not," describing that as "a shift in policy." BBC Trending, *The Volunteers Using 'Honeypot" Groups To Fight Anti-Vax Propaganda* (May, 11, 2021), https://tinyurl.com/bbchoneypot (quoted at ECF No. 103-1 Ex. 1 ¶ 2). That is irrelevant to CHD's claims for at least two reasons: (1) the policy postdates any

alleged action against CHD by approximately *eight months*, *see* SAC ¶¶ 173, 180, 184, 191, 194 (alleging that Facebook most recently took action against CHD posts in September 2020); and (2) the SAC does not allege that CHD has had any group, Page, or account removed.[1]

- The documents published by Project Veritas and relied upon in paragraphs 3, 4, and 5 of the proposed supplement pertain only to "[c]omment [d]emotion" as a way to "reduce user exposure to vaccine hesitancy (VH) in comments." ECF No. 103-1 at 18. That effort—which uses an algorithm to identify and demote comments with statements promoting vaccine hesitancy, *see id.* at 18-31—has no bearing on content that a user posts directly to his or her own Facebook Page (as CHD alleges it did here, *see, e.g.*, SAC ¶¶ 1, 33, 129, 139). It is also distinct from the fact-checking program that forms the basis of CHD's complaint, in which third-party fact-checkers identify whether a post contains false or misleading information, *see* ECF No. 69 at 3-4 (explaining Facebook's fact-checking program). CHD does not allege that Facebook has ever demoted or otherwise taken action against any comment it has posted.

*Second*, the allegation that Facebook revised its position with respect to the COVID lab-leak hypothesis, *see* Mot. 6; ECF No. 103-1 Ex. A ¶¶ 22-24, does not support any inference that Facebook either falsely identified CHD's posts as containing false information or made any content-moderation decision—and certainly no decision with respect to CHD's content—at the behest of the federal government. CHD does not allege that it ever posted any content regarding the lab-leak hypothesis or that Facebook took action against any such content. Nor does CHD allege that Facebook had any reason to doubt its stance on the lab-leak hypothesis prior to its official change in position. Rather, the only reasonable inference supported by the allegation is that Facebook revises its policies as new facts emerge. On May 14, 2021, for example—approximately a week-and-a-half before Facebook's alleged reversal—a letter in *Science* published by a group of academic

---

[1] Even if CHD's supplemental allegation regarding the suspension of non-party Robert F. Kennedy, Jr. from Instagram was relevant here, *but see* ECF No. 82 at 10-11, that, too, occurred prior to the change in policy referenced in CHD's supplemental allegations. *See* ECF No. 76-1 Ex. 1 ¶ 2 (alleging that Mr. Kennedy's Instagram account was terminated on February 10, 2021).

researchers noted that "more investigation is still needed to determine the origin of the [COVID-19] pandemic" and that "[t]heories of accidental release from a lab and zoonotic spillover both remain viable." Jesse D. Bloom et al., *Investigate the Origins of COVID-19*, 372 Science 694, 694 (May 14, 2021), https://tinyurl.com/sciencemagcovidorigins.[2] And around the time of Facebook's change in policy, the global media reported that the lab-leak hypothesis "ha[d] been gaining traction" following the release of a report indicating that "researchers at the Wuhan laboratory were treated in hospital in November 2019, just before the virus began infecting humans in the city." BBC News, *Covid Origin: Why the Wuhan Lab-Leak Theory is Being Taken Seriously* (May 27, 2021), https://tinyurl.com/bbccovidorigin.[3] The mere fact that Facebook revised its position on the lab-leak hypothesis in the face of this emerging recognition of its potential validity does not support an inference of state action. Nor does the fact that Dr. Fauci changed his position around the same time. General alignment in views or even a "shared goal" does not support state action unless the shared goal is specifically to "violat[e] a plaintiff's constitutional rights." *Franklin v. Fox*, 312 F.3d 423, 445 (9th Cir. 2002). That test is plainly not met here, given that CHD does not allege that it ever posted any content related to the lab-leak hypothesis.

*Third*, the email communications between Mr. Zuckerberg and Dr. Fauci relied upon in paragraphs 6 through 21 of CHD's amended allegations do not lend credibility to CHD's claims. As CHD recognizes in its motion, the allegations in this case focus on the alleged "suppression of COVID- and vaccine-related speech" **by CHD**. Mot. 7. The referenced communications, by contrast, concern only promoting authoritative information about COVID-19, not suppressing or even fact-checking any other information, let alone any posts by CHD. The communications discuss "a few

---

[2] The Court may take judicial notice of the fact that, on May 14, 2021, a group of academics published an article noting the viability of the lab-leak hypothesis. *See Threshold Enters. Ltd. v. Pressed Juicery, Inc.*, 445 F. Supp. 3d 139, 146 (N.D. Cal. 2020). The existence and content of the letter cannot reasonably be disputed as they can be readily determined from reliable sources—namely, the *Science* publication and website.

[3] The Court may take judicial notice of the fact that a May 27, 2021 BBC article stated that the lab-leak hypothesis was gaining traction because of recently released information. *See Threshold Enters. Ltd.*, 445 F. Supp. 3d at 146. The existence and content of the article cannot reasonably be disputed as they can be readily determined from a reliable source—namely, the BBC website.

ideas of ways [Facebook] could help get [Dr. Fauci's] message out," including by "building a Coronavirus Information Hub" to make available "authoritative information" and "encourage people to practice social distance" and by creating "a series of livestreamed Q&As with health experts." ECF No. 103-1 at 37-38. And public statements from Facebook's Policy Communications Director explain that the redacted portions of the emails similarly have nothing to do with misinformation or factchecking. Rather, consistent with the subject of amplifying authoritative information, Mr. "Zuckerberg told Dr. Fauci of [Facebook's] plan … to share Facebook ad credits with government agencies to help them run coronavirus PSAs." Twitter, *Andy Stone on Twitter* (June 9, 2021), tinyurl.com/andystonetwitter.

Those communications are irrelevant here. CHD does not and could not allege any injury in connection with the Coronavirus Information Hub, any livestreamed Q&As, or any public service announcements. Nor do the communications support any inference of state action. Absent specific "language suggesting or requiring" the allegedly unconstitutional conduct—which here consists of the fact-checking, demotion, and removal of various CHD posts as well as the deactivation of fundraising tools, none of which is so much as referenced in the email communications—general "offer[s] to assist" between state and private actors do not give rise to state action. *Lansing v. City of Memphis*, 202 F.3d 821, 833 (6th Cir. 2000); *see also Morse v. North Coast Opportunities, Inc.*, 118 F.3d 1338, 1343 (9th Cir. 1997) (state action requires sufficient government involvement that it be "fair to attribute *the challenged activity* to … the federal … government" (emphasis added)). Facebook's offer to help the government combat the coronavirus in ways wholly unrelated to CHD's claims therefore fall far short of alleging state action with respect to any actions taken against CHD.

More fundamentally, CHD's proposed supplemental allegations point to nothing but Facebook and Mr. Zuckerberg's exercise of their own constitutionally protected rights. As private actors, defendants have the First Amendment right to exercise their own discretion regarding the content distributed or promoted through their platforms. *See, e.g.*, *Jian Zhang v. Baidu.com Inc.*, 10 F. Supp. 3d 433, 443 (S.D.N.Y. 2014) (First Amendment protects the decision to block content from search results). They may decide what messages to exclude from their platforms, *see Miami Herald*

*Publ'g Co. v. Tornillo*, 418 U.S. 241, 258 (1974), as well as what messages to amplify, even if those messages originate from the federal government.

Ultimately, as with CHD's prior attempts to state a claim, the supplemental allegations fail to establish any state action with respect to the activity challenged in CHD's amended counterclaim, and the motion to supplement should be denied as futile. Alternatively, and for the same reasons, if the Court grants CHD's motion to supplement, it should dismiss the SAC as supplemented with prejudice. CHD has now had *five attempts* to state a claim for relief based on the fact-checking of its posts and Facebook's related content-moderation decisions. No further amendments will be any more fruitful.

## II. CHD HAS ACTED WITH UNDUE DELAY AND BAD FAITH AND SUPPLEMENTATION WOULD UNDULY PREJUDICE DEFENDANTS

CHD's motion should also be denied for the independent reason that CHD's supplementation is the result of undue delay and not brought in good faith.

As this Court is well aware, CHD has repeatedly sought to alter its pleadings while a motion to dismiss was pending before the Court. First, CHD sought to file a First Amended Complaint rather than respond to Defendants' original motion to dismiss, filed on October 23, 2020. ECF No. 56. Then, on December 4, 2020—two weeks before Defendants' motions to dismiss CHD's First Amended Complaint were due, CHD sought leave to file a SAC. ECF No. 65. Three days after completion of briefing on Defendants' motion to dismiss the SAC, CHD filed its first motion to "supplement"; almost all of the proposed supplemental allegations were known to CHD well before briefing on the motion to dismiss was complete, but CHD waited until after Defendants had briefed the motion to come forward with them. ECF No. 82. Most recently, after the Court had already heard extended oral argument on Defendants' motions to dismiss and taken them under submission, CHD lobbed in yet more unauthorized submissions, including a "Request for Judicial Notice" that was nothing more than a thinly-veiled supplemental brief attempting to submit new argument and authority to the Court. ECF No. 97.

Distressingly, CHD's latest submission is more of the same. The latest supplement does not even attempt to add factual allegations that would address the fundamental failings in CHD's legal

theories that have been exposed by Defendants' motions to dismiss. As described above, *see supra* pp. 2-3, many of CHD's proposed supplemental allegations of purported collaboration between Facebook and the federal government post-date the alleged conduct set forth in CHD's SAC. Of course, allegations of federal-private interactions that "post-date the relevant conduct that allegedly injured Plaintiff[]" "do not establish joint action," *Federal Agency of News LLC v. Facebook, Inc.*, 432 F. Supp. 3d 1107, 1125-1126 (N.D. Cal. 2020). CHD's other proposed supplemental allegations concern specific moderation activity distinct from the third-party independent fact-checking program at issue here.[4]

Eleven months (and 100+ docket entries) into this case, Defendants have expended substantial resources in addressing CHD's successive pleadings and multiple unauthorized submissions. And significantly, the Court has already invested substantial time in considering the viability (or lack of viability) of CHD's claims in conjunction with the latest motion to dismiss. Whatever extrajudicial reasons CHD may have for seeking to delay adjudication of the pending motions to dismiss, it has by now pled its best case—a few times over. CHD must stop attempting to move the target and allow the Court to rule.

### III.   CHD'S REQUEST FOR *IN CAMERA* INSPECTION SHOULD BE DENIED

CHD's request for *in camera* inspection of a March 2020 email must be denied as well. Curiously, CHD styles its motion as a motion pursuant to the All Writs Act, 28 U.S.C. § 1651, but that law applies only in "the most critical and exigent circumstances," *Brown v. Gilmore*, 533 U.S.

---

[4] Indeed, even after Defendants have highlighted the troubling pattern of CHD's filings in this case, CHD persists. *See* ECF No. 82 at 5 ("CHD's latest amendment continues the same strategy: let Defendants expend time and money addressing the insufficiency of CHD's pleading, and then, at the eleventh hour, change the pleading to avoid or delay adjudication of that question. It is time for the Court to put this maneuvering to a stop. Rule 12 motions are not a game of whack-a-mole. At some point, the plaintiff must state claims that are stable enough for the Court to evaluate them. Here, after multiple amendments and over 150 pages, CHD has surely pled its best case. The Court must now rule on whether that pleading states a viable claim. ECF No. 99 n.1 ("[T]he pattern and timing of CHD's serial supplements and motions is troubling to say the least. CHD's latest submissions only exacerbate the concern that CHD is unjustifiably prolonging and multiplying these proceedings, thereby imposing unreasonable burden and expense not only on Defendants but also on the Court.").

1301 (2001) (Rehnquist, C.J., in chambers) (quoting *Ohio Citizens for Responsible Energy, Inc. v. NRC*, 479 U.S. 1312, 1313 (1986) (Scalia, J. in chambers)). Relief under the All Writs Act is available "only if the legal rights at issue are indisputably clear." *Id*. (internal quotation marks omitted).

CHD fails to explain why such extraordinary relief would be warranted here, and for good reason: it is not. The communication between Mr. Zuckerberg and Dr. Fauci described in the motion to supplement does not support CHD's fact-checking claims. To the contrary, it concerns distinct efforts to promote authoritative information about a developing global pandemic. As noted above, public statements from Facebook's Policy Communications Director explain that the redacted portions of the emails are not related to misinformation or factchecking. Consistent with the subject of amplifying authoritative information, Mr. "Zuckerberg told Dr. Fauci of [Facebook's] plan … to share Facebook ad credits with government agencies to help them run coronavirus PSAs." Twitter, *Andy Stone on Twitter* (June 9, 2021), tinyurl.com/andystonetwitter.

Of course, if the Court wishes to review the document at issue *in camera* and confirm for itself that the unredacted document is irrelevant to CHD's claims, Defendants stand ready to submit the document for the Court's review.

## CONCLUSION

CHD's Motion to Further Supplement and for *In Camera* Inspection should be denied, or, if granted, its Second Amended Complaint should be dismissed with prejudice because the supplemental allegations still fail to cure its fatal defects.

Dated: June 21, 2021

WILMER CUTLER PICKERING, HALE AND DORR LLP

By: /s/ Sonal N. Mehta
SONAL N. MEHTA

*Attorney for Defendants*
Facebook, Inc. and Mark Zuckerberg

## CERTIFICATE OF SERVICE

I hereby certify that on June 21, 2021, I electronically filed the above document with the Clerk of the Court using CM/ECF which will send electronic notification of such filing to all registered counsel.

Dated: June 21, 2021By:*/s/ Sonal N. Mehta*
Sonal N. Mehta

- 1 -

CASE NO.: 3:20-CV-05787-SIFACEBOOK'S OPP. TO MOT. TO SUPPL.