ROGER I. TEICH
California State Bar No. 147076
290 Nevada Street
San Francisco, CA 94110
Telephone:  (415) 948-0045
E-Mail Address:  rteich@juno.com

ROBERT F. KENNEDY, JR.
MARY HOLLAND
Children's Health Defense
1227 North Peachtree Parkway, Suite 202
Peachtree City, GA 30269
Telephone:  (917) 743-3868
E-Mail Address:  mary.holland@childrenshealthdefense.org

Attorneys for Plaintiff
CHILDREN'S HEALTH DEFENSE

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF CALIFORNIA
SAN FRANCISCO DIVISION

| | |
|---|---|
| CHILDREN'S HEALTH DEFENSE,<br><br>        Plaintiff,<br><br>     v.<br><br>FACEBOOK, INC., et al.,<br><br>        Defendants. | Case No. 3:20-cv-05787-SI<br><br>**PLAINTIFF'S REPLY IN SUPPORT OF RULE 15(d) MOTION TO FURTHER SUPPLEMENT SECOND AMENDED COMPLAINT AND FOR *IN CAMERA* INSPECTION**<br><br>Hon. Susan Illston<br>Courtroom 1 – 17th Floor<br>Date: July 16, 2021<br>Time: 10:00 a.m. |

**<u>PLAINTIFF'S REPLY MEMORANDUM IN SUPPORT OF ITS
SECOND MOTION TO SUPPLEMENT THE PLEADINGS</u>**

**<u>Overview</u>**

Despite Defendants' crocodile tears of protest, CHD's motion to supplement the pleadings is unobjectionable. There is no prejudice, no undue delay, no bad faith. What has happened is straightforward.  New factual developments have occurred directly relevant to this lawsuit, material to and confirmatory of Plaintiff's core claims for relief. In such circumstances, a Rule 15(d) motion to supplement is the necessary and proper vehicle for bringing Defendants' ongoing misconduct before this Court.

1

Plaintiff's Reply ISO Motion to
Supplement the Pleadings
*CHD v. Facebook* et al.; Case No. 3:20-cv-05787-SI

Proof has now emerged that Facebook has (as CHD has alleged all along) been knowingly censoring true COVID-related information while claiming to censor only "false information."  Also just disclosed are previously secret emails between Facebook CEO Mark Zuckerberg and NIAID Director Anthony Fauci, evidencing an ongoing COVID-information partnership of unknown scope between Facebook and the federal government dating back to March, 2020. Facebook's strained and factually false objections to this motion simply bespeak fear of having these new facts become part of the record. If Facebook weren't afraid of the new facts — if Facebook genuinely believed what it asks this Court to believe, that these facts are immaterial (Dkt. #104 at 1-2) — it wouldn't bother opposing, and it certainly wouldn't resort to falsehood (detailed below) in its effort to keep these facts out.

## ARGUMENT

In general, Rule 15(d) motions are "favored," *Planned Parenthood of So. Ariz. v. Neely*, 130 F.3d 400, 402 (9th Cir. 1997), and "should be granted '[u]nless undue prejudice to the opposing party will result.'" *LaSalvia v. United Dairymen of Ariz.*, 804 F.2d 1113, 1119 (9th Cir. 1986) (citation omitted). The new allegations need not arise from the same "transaction" set forth in the original pleading; instead, all that is required is "some relationship" between the original pleading and the new facts.  *Keith v. Volpe*, 858 F.2d 467, 474 (9th Cir. 1988) ("While some relationship must exist between the newly alleged matters and the subject of the original action, they need not all arise out of the same transaction."); *Verinata Health, Inc. v. Sequenom, Inc.*, No. C 12-00865 SI, 2014 U.S. Dist. Lexis 67221 at * 6 (N.D. Cal. May 14, 2014).

### A.    The new facts are related to and supportive of CHD's state action claim (Counts 1 and 4)

A core allegation of CHD's First Amendment claims is that Facebook's ongoing censorship of CHD is the result of Defendants' "willful participa[tion] in joint activity" with federal actors, which under well-established law suffices to establish state action. *United Brentwood Acad. v. Tenn. Secondary Sch. Athletic Ass'n*, 531 U.S. 288, 298 (2001).  This allegation was already supported by the following well-pleaded facts, *inter alia*:

- The CDC has publicly stated that it "is engaging [social media] partners" to "contain the spread of [vaccine-related] misinformation." (Dkt. #65-1 at 20 [Second Amended

Plaintiff's Reply ISO Motion to
Supplement the Pleadings
*CHD v. Facebook* et al.; Case No. 3:20-cv-05787-SI

Complaint, hereafter referred to as "SAC" at ¶50].)

- Zuckerberg has publicly stated that Facebook "is working with" the CDC "to remove" COVID-related "misinformation." (Dkt. #65-1 at 20 [SAC ¶ 52].)

- Facebook publicly states that it "remove[s] misinformation when public health authorities conclude that the information is false and likely to contribute to imminent violence or physical harm." (Facebook COVID-19 and Vaccine Policy Updates & Protections, https://www.facebook.com/help/230764881494641, last accessed June 27, 2021.)[1]

- Facebook further publicly states that it is "*advised*" by government health authorities as to which vaccine-related speech to censor. *Id.* (stating that Facebook "does not allow false claims about the vaccines or vaccination programs which public health authorities have advised us could lead to COVID-19 vaccine rejection").

- The new presidential Administration is by its own admission involved in "direct engagement" with social media companies, including Facebook, to "clamp down on" so-called "vaccine misinformation." (Dkt. #76-1 at 6-7 of 40 [Exh. 1 of SAC Supplement].)

- Facebook has publicly acknowledged that it agreed to the Administration's proposed "direct engagement," offering to "provide any assistance we can" to achieve the White House's objective of suppressing so-called "vaccine misinformation." (*Id.*)

Together with CHD's allegations of congressional pressure and federal statutory immunity, these facts showing willful participation in joint activity to achieve an unconstitutional objective—*i.e.*, the suppression of presumptively protected (though unpopular or disfavored) speech under the First Amendment —more than suffice to state a plausible claim of state action.

In any other context, there would be no doubt about this conclusion. Say that the FBI announced it was "partnering" and "directly engaged" with a major private airline to have suspicious suitcases searched on less than probable cause or to have Muslims excluded from certain flights; that the airline

---

[1]     The Court may take judicial notice of the existence and content of statements on Facebook's website, particularly where these constitute admissions against interest, though not (as Facebook contends) of the truth of its many self-serving proclamations. *See Threshold Enters. Ltd. v. Pressed Juicery, Inc.*, 445 F. Supp. 3d 139, 146 (N.D. Cal. 2020).

3                                          Plaintiff's Reply ISO Motion to
Supplement the Pleadings
*CHD v. Facebook* et al.; Case No. 3:20-cv-05787-SI

publicly stated that it was "working with" the FBI to achieve these ends; that the airline further stated it was being "advised" by the FBI as to which bags were suspicious and which passengers were Muslim; that Congress then held a half-dozen hearings threatening the airline with catastrophic economic consequences if it did not pursue these objectives more aggressively; that Congress passed a statute immunizing airlines from liability for any acts taken to pursue these objectives; and that as a result of all this, the airline did in fact adopt policies of aggressively searching suitcases and excluding Muslims using *standards of decision* supplied by the FBI. *See Mathis v. Pacific Gas & Elec. Co.*, 891 F.2d 1429, 1433-1434 (9th Cir. 1989) (reversing dismissal of *Bivens* action where, at time of plaintiff's discharge, "there is little question that *the NRC was not shrinking from suggesting a standard of decision* for the exclusion of illegal drug users from access to protected areas). No court in the country would fail to find that these facts stated a claim of state action. Essentially identical facts are already pleaded here.

The new allegations that CHD seeks to add through the present motion bolster this claim of state action.  Among the new facts is Defendants' sudden about-face on COVID's origins: until recently, prominent federal health officials declared the lab-leak theory of COVID's origin false and Facebook did so as well, banning people from even discussing it; recently, however, Dr. Fauci backtracked on his dismissal of that theory, and immediately thereafter Facebook did so as well, suddenly lifting its ban. (Dkt. #103-1 at 10-11 of 38 [Exh. 1 of SAC 2nd Supplement].)   These facts are plainly material and supportive to the inference that Facebook is taking direction from the federal government about what COVID-related speech to censor and what not to censor.

Facebook makes two arguments that its recent about-face on COVID's origins is immaterial to this lawsuit. Both fail.

First, Facebook asserts—not once, but twice—that "CHD does not allege that it ever posted any content related to the lab-leak hypothesis" of COVID's origins.  (Dkt. #104 at 3, 4.)  This assertion is simply false.  Paragraph 189 of the SAC alleges that: "[o]n April 16, 2020, CHD posted a link to an editorial in the journal Jewish Voice, stating that 'Nobel Prize Winner Dr. Luc Montagnier has unique insights regarding COVID-19';" that "Facebook labeled the post 'False Information';" that Facebook pinned onto CHD's page a Science Feedback "fact-check" claiming that Dr. Montagnier's assertions were inaccurate; that Facebook later apparently removed the post completely; and that "Science

Plaintiff's Reply ISO Motion to
Supplement the Pleadings
*CHD v. Facebook* et al.; Case No. 3:20-cv-05787-SI

1  Feedback's 'fact-check' is an  attempt to censor a debate on the open question of the origins of COVID-

2  19."  (Dkt. #65-1 at 72-73 [SAC ¶¶ 189-190].) Exhibit B to the SAC reproduces the banned editorial,

3  which states: "Every day it is becoming clearer that COVID-19 came from the laboratory in Wuhan. . . .

4  It seems totally credible that this virus somehow escaped from the lab and did not come from bats in a

5  'wet market.'" (Dkt. #65-4 at 73, 77 [SAC Exh. B].) Indeed, Science Feedback's (false) "fact-check"

6  was titled, "Nobel laureate Luc Montagnier inaccurately claims that the novel coronavirus is man-made

7  . . . ." (*Id.* at 76-79.)

8         Second, Defendants declare that that the "only reasonable inference" to be drawn from its about-

9  face on COVID's origins is that Facebook "revises its policies as new facts emerge." (Dkt. #104 at 3.)

10  This assertion is absurd.  Given that no "new facts" had actually emerged, that Facebook's about-face

11  followed immediately after Dr. Fauci's similar reversal, that Defendants have repeatedly stated that

12  Facebook "works with" and is "advised" by government authorities in determining what COVID-related

13  speech is "false," and that newly disclosed emails show Zuckerberg and Fauci agreeing to collaborate on

14  COVID-related information as far back as March, 2020, another quite reasonable inference is that

15  Facebook's about-face was a stark, confirmatory example of Facebook's following federal officials'

16  directives about what to censor and what not to censor.  On a motion to dismiss, CHD is of course

17  entitled to that inference, and under Rule 15(d) CHD is entitled to add these facts to the pleadings.

18         Moreover, the newly disclosed emails just referred to, between Zuckerberg and Fauci, are

19  themselves evidence supportive of CHD's state action claim.  Facebook argues that these March, 2020

20  emails only concerned promoting the federal government's affirmative messages, not restricting third-

21  party content.  (Dkt. #104 at 5.) But  these emails are redacted at critical places, and the follow-up

22  communications to which they refer (between Facebook and other federal health officials) have not yet

23  been released. Given numerous additional facts already pleaded—for example, that Facebook began

24  aggressively censoring so-called COVID "misinformation" shortly after  the March, 2020 email

25  exchange, that Zuckerberg would state in September, 2020 that Facebook "work[s] with" the CDC in

26  suppressing COVID-related speech, that Facebook has admitted it is "advised" by government health

27  authorities in determining what COVID-related speech to censor, and that the federal government's

28  official policy is not only to promote its own position on COVID *but also* to suppress speech

5                                    Plaintiff's Reply ISO Motion to
Supplement the Pleadings
*CHD v. Facebook* et al.; Case No. 3:20-cv-05787-SI

contradicting governmental orthodoxy[2]—it is a wholly reasonable inference that the Facebook/federal government partnership proposed by Zuckerberg and agreed to by Fauci in March, 2020 pursued *both* promotion *and* suppression.    In other words, Facebook is asking the Court to draw factual inferences about the scope of the Facebook/federal partnership in *Defendants'* favor, when on a motion to dismiss inferences must of course be drawn in *Plaintiff's* favor.

### B.      The new facts relate to and are supportive of CHD's claims of fraud.

A core allegation of CHD's fraud claims (under the Lanham Act and RICO) is that Facebook has been knowingly censoring *true* vaccine and COVID-related content while purporting publicly to censor only *false* content, and labeling that which it censors *false*. The new factual disclosures offer proof that this duplicity is exactly what Facebook has been engaging in, and continues to carry out.

We now know—through the admission of a Facebook vice-president and documents leaked by a whistleblower—that Facebook embarked on a "vaccine hesitancy" censorship campaign that targeted completely accurate information. (Dkt. #103-1 at 5-6, 13-33 of 38 [Exhs. 1-2 of SAC 2nd Supplement].) CHD seeks to add these facts to its pleadings because they are rare, direct evidence of fraudulent conduct: when in May, 2021 Facebook's vice-president revealed that the company was knowingly censoring *true* vaccine-related information, Facebook's official policy statement still declared that the company was censoring only "*false*" claims. (*Id.*)

Again Facebook resorts to falsehood to argue that the new facts are somehow immaterial.  For example, Facebook asserts that its vaccine hesitancy censorship campaign "only" threatened the removal of entire "groups, pages, and accounts," and CHD (according to Facebook) has not complained of "any group, Page, or account" being "removed." (Dkt. #104 at 3). In fact, on February 10, 2021, as CHD has specifically alleged, Facebook took down the entire Instagram account of CHD's founder, chief spokesman, chief fundraiser and chairman—Robert F. Kennedy, Jr.—accusing him (falsely) of disseminating false information, and thereby inflicting direct, significant damage to CHD. That is, in part, what necessitated CHD's first Rule 15(d) motion to supplement. (Dkt. ##76, 76-1.)

---

[2]    *See* Executive Order Jan. 20, 2021, Dkt. #76-1 at 10 of 40 (declaring that federal policy is "to further public understanding of the pandemic and the response, and to deter the spread of misinformation and disinformation.").

Plaintiff's Reply ISO Motion to
Supplement the Pleadings
*CHD v. Facebook* et al.; Case No. 3:20-cv-05787-SI

Next Defendants assert that the termination of Mr. Kennedy's account "occurred prior to the change in policy," (Dkt. #104 at 3 n.1), where "policy" euphemistically refers to Facebook's censorship of completely accurate "vaccine hesitancy" content.  This claim is unsupported and misleading.  While Mr. Kennedy's de-platforming (in February, 2021) occurred prior to the first public *revelation* (in May, 2021) of Facebook's vaccine-hesitancy censorship campaign, it remains currently unknown when that campaign *actually began*. Given that Mr. Kennedy expressly advocates COVID vaccine hesitancy, it is a perfectly reasonable inference—to which CHD is entitled on a motion to dismiss—that Facebook's vaccine-hesitancy censorship campaign in fact started substantially earlier, and that Mr. Kennedy's take-down was an implementation thereof. The gravamen of CHD's fraud allegations is that Facebook has engaged in similar duplicity with regard to truthful vaccine-related content since at least May 2019. The new revelations plainly add to the plausibility of this claim.  *See Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 556 (2007) (motion to dismiss must be rejected so long as facts are "suggestive enough to render" claims "plausible" regardless of whether judge believes that the claims are "improbable" and "that a recovery is very remote and unlikely"); *Williams v. Yamaha Motor Co*., 851 F.3d 1015, 1025 (9th Cir. 2017) (same).

At the same time, CHD has alleged that it is now substantially self-censoring its own Facebook content (Dkt. #65-1 at 148-149 [SAC Count 4], #103-1 at 7 of 38 [2nd Supplement to SAC]), out of a well-justified fear that *CHD's* entire account will similarly be taken down.  Thus CHD has alleged not one but two account-takedowns (Mr. Kennedy's actual deplatforming and CHD's threatened deplatforming) targeted by Facebook's vaccine hesitancy censorship campaign. Accordingly, the disclosure of that campaign is highly material to this lawsuit, and further evidences Facebook's fraudulent scheme of knowingly censoring true COVID-related content while claiming to censor only false content.

### C.     The Court should review the Zuckerberg/Fauci secret emailed proposal

Facebook backhandedly concedes, as it must, that the Court has authority under the All Writs Act, 28 U.S.C. § 1651, to inspect Zuckerberg's unredacted March 15, 2020 "proposal" to Fauci:

Plaintiff's Reply ISO Motion to
Supplement the Pleadings
*CHD v. Facebook* et al.; Case No. 3:20-cv-05787-SI

"Defendants stand ready to submit the document for the Court's review."[3] (Dkt. #104 at 8.)  That portion of the public record which contains Zuckerberg's four-line "proposal," as reproduced in Plaintiff's proposed 2nd Supplement (Dkt. #103-1 at 7-8, 34-38 of 38), is redacted. The next day, March 16, 2020, Courtney Billet, Fauci's assistant at NIH/NIAID, wrote Fauci that Zuckerberg's "offer" was "an even bigger deal" [than Facebook's COVID information hub] and "[t]he sooner we get that offer up the food-chain the better." Fauci then wrote to Zuckerberg, "[y]our idea and proposal sound terrific[,]" and "very exciting" and put Zuckerberg in touch with a "U.S. government point of contact" [at the White House and/or HHS] for moving forward with it. (Dkt. #103-1 at 35-38 of 38.)

Facebook argues that this exchange, and the proposal itself, "do not lend credibility to CHD's claims" because Twitter statements by Andy Field, Facebook's Policy Communications Director, explain that, in the redacted portion of his March 15, 2020 email, "Zuckerberg told Dr. Fauci of [Facebook's] plan … to share Facebook ad credits with government agencies to help them run coronavirus PSAs." (Dkt. #104 at 5, 8.) This is, essentially, a plea for special dispensation for Facebook itself to shut down this case by Tweet. But, as the Supreme Court has observed when assessing the plausibility of state action allegations, "[p]leas for special treatment are hard to sell." *Brentwood Acad. v. Tenn. Secondary Sch. Ath. Ass'n.*, 531 U.S. 288, 305 (2001).

In its present posture, this case presents the unusual "critical and exigent circumstances" for which the All Writs Act serves as authority for the Court to act to avoid a potential miscarriage of justice. *Ohio Citizens for Responsible Energy, Inc. v. NRC*, 479 U.S. 1312, 1313 (1986) (Scalia, J., in chambers). The Fifth Amendment Due Process Clause establishes Plaintiff's right to not "be deprived of life, liberty, or property, without due process of law." It provides a fundamental safeguard against the use of governmental power for purposes of oppression, *see e.g.*, *Daniels v. Williams*, 474 U.S. 327, 331 (1986) (citing cases), and assures the fairness of judicial proceedings. *See also Pennsylvania v. Ritchie*, 480 U.S. 39 (1987) (requiring state's production of potentially material evidence for trial court's *in camera* review under the Fourteenth Amendment Due Process Clause). The information at issue is not

---

[3]     Facebook has waived any objection based on trade secret or other privilege to the Court's *in camera* review of the document at issue.

Plaintiff's Reply ISO Motion to
Supplement the Pleadings
*CHD v. Facebook* et al.; Case No. 3:20-cv-05787-SI

available from any other source, and *in camera* review furthers the vital role of this Court under Art. III to "ensure that justice is done" in the search for truth. *United States v. Nixon*, 418 U.S. 683, 707 (1974).

The Court should review Zuckerberg's unredacted March 15, 2020 emailed proposal – which the record shows was accepted by the federal government – to assure itself, the parties, and the public that no miscarriage of justice has, or is occurring, with respect to Plaintiff's free speech rights on matters of utmost public importance — the health and safety of the public during a time of asserted public emergency.

## **CONCLUSION**

For the reasons stated above and in its moving papers, Plaintiff CHD respectfully requests that the Court grant its motion to supplement the pleadings pursuant to Fed. R. Civ. P. Rule 15(d), and for *in camera* inspection of the unredacted March 15, 2020 Zuckerberg-Fauci email proposal.

Dated: June 28, 2021                    Respectfully submitted,

ROBERT F. KENNEDY, JR.
Founder and Chairman, Children's Health Defense

MARY S. HOLLAND
General Counsel, Children's Health Defense

ROGER I. TEICH

Counsel for Plaintiff
Children's Health Defense

Plaintiff's Reply ISO Motion to
Supplement the Pleadings
*CHD v. Facebook* et al.; Case No. 3:20-cv-05787-SI